**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
Actava TV, Inc., Master Call Communications, Inc.,
Master Call Corporation, and Rouslan Tsoutiev,                    18-CV-06626 (ALC)

               Plaintiffs,

        -against-

Joint Stock Company "Channel One Russia Worldwide,"
Closed Joint Stock Company "CTC Network," Closed
Joint Stock Company "New Channel", Limited Liability
Company "Rain TV-Channel," Closed Joint Stock
Company "TV DARIAL," Limited Liability
Company "Comedy TV," and Kartina Digital GmbH

               Defendants.
-----------------------------------------------------------------X

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**</u>

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

FACTS ...........................................................................................................................................4

    A.  Actava Is Not a Liciensed Broadcaster of Broadcasters' Programming............................5

    B.  Broadcasters Sue Actava in November 2015 Due to Its Industrial Level Piracy of Broadcasters' Programming.................................................................................................5

    C.  Actava Agrees to A Broad Release of Any Claims Against Broadcasters Related to the *Actava* or *Infomir* Actions.................................................................................................6

    D.  Broadcasters Agree to Settle Their Claims Against Actava Provided It Enters Into Stipulated Injunctions While Actava Schemes to Evade Them..........................................6

    E.  Broadcasters' 2016 License With Matvil Forbids Sublicensing........................................7

    F.  Actava Enters Into A Confidential So-Called Referral Agreement With Matvil ...............8

    G.  Upon Discovery of Actava's Confidential Relationship with Matvil, Broadcasters Issue a Notice of Suspected Breach to Actava....................................................................8

    H.  Broadcasters File a Contempt Motion After Actava's Unrelenting Efforts to Illegally Utilize and Promote Broadcasters' Content........................................................................9

    I.  Matvil Noticed Its Intent to Terminate the Referral Agreement Prior to Actava Suing Broadcasters.....................................................................................................................10

    J.  Broadcasters Do Not Conduct Business In New York ....................................................10

    K.  Actava Fails to Serve Kartina, a German Limited Liability Company, via the Hague Convention.......................................................................................................................10

ARGUMENT.................................................................................................................................11

    I.  The Complaint Is Barred By the Doctrine of Collateral Estoppel Because Actava Has No Right To Distribute Broadcasters' Content and Judge Moses' Order Did Not Find that the Contempt Motion Was Brought in Bad Faith ......................................................11

    II.  The Complaint Should Be Dismissed As Against Broadcasters For Lack Of Personal Jurisdiction Because The Court's Jurisdiction Over Broadcasters Is Strictly Limited To The Injunctions And Underlying Settlement...............................................................13

III. The Complaint Should Be Dismissed For Failure To State A Claim Because
Purported Termination Of The Referral Agreement Post-Dates The Filing Of The
Complaint and All Four Causes of Action Fail to State a Claim ......................................14

    a.  Because Actava's Complaint Incorporates the Injunctions and the Settlement
Agreement Relinquishing any Right to Distribute Broadcasters' Content, It
Cannot Plausibly State Any Cause of Action Based on Broadcasters' Enforcement
of Its Distribution Methods ........................................................................................14

    b.  The First Cause of Action Fails to State A Claim For Tortious Interference with
Contract Against All Defendants .................................................................................15

    c.  The Second Cause of Action Fails to State A Claim For Malicious Prosecution
Against All Defendants .................................................................................................18

    d.  The Thirs Cause of Action Fails to State A Claim For Breach of Contract Against
Broadcasters .................................................................................................................19

    e.  The Fourth Cause of Action Fails to State A Claim For Violation of N.Y. General
Business Law § 349 by Kartina ....................................................................................19

    f.  The Complaint's Ambiguity About the Termination Date of the Referral
Agreement Fails To Provide Fair Notice to Broadcasters ...........................................22

IV.    The Settlement Agreement Contains a Broad General Release That Plainly
Forbids Actava's Complaint Against Defendants ........................................................22

V.    The Complaint Should Be Dismissed As Against Kartina For Insufficient Service
Of Process and Lack of Personal Jurisdiction .............................................................24

VI.    This Court Should Award Attorneys' Fees Recoverable for Breach of the
Injunctions and Settlement Agreement .......................................................................25

CONCLUSION ...................................................................................................................26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*2 Broadway L.L.C. v. Credit Suisse First Bos. Mortg. Capital L.L.C.*,
No. 00 CIV. 5773 GEL, 2001 WL 410074 (S.D.N.Y. Apr. 23, 2001) ....................................3

*2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*,
96 F. Supp. 3d 182 (S.D.N.Y. 2015)......................................................................................14

*71 Pierrepont Associates v. 71 Pierrepont Corp.*,
243 A.D.2d 625, 663 N.Y.S.2d 263 (N.Y.A.D. 2nd Dept.1997)............................................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................................14, 22

*Burda Media, Inc. v. Viertel*,
417 F.3d 292 (2d Cir. 2005)...................................................................................................25

*Closed Joint Stock Company "CTC Network" et al. v. Actava TV, Inc.*
15-CV-8681 (GBD)(BCM)............................................................................................ *passim*

*DeLuca v. AccessIT Grp., Inc.*,
695 F.Supp.2d 54 (S.D.N.Y. 2010) ........................................................................................24

*Document Techs., Inc. v. LDiscovery, LLC*,
731 F. App'x 31 (2d Cir. 2018) ..............................................................................................15

*Dollar Phone Corp. v. Dun & Bradstreet Corp.*,
No. 09-CV-3645(ILG)(SMG), 2010 WL 5313737 (E.D.N.Y. Sept. 2, 2010)........................19

*Engel v. CBS*,
145 F.3d 499 (2d Cir. 1998)...................................................................................................18

*Fifth St. Fin. Corp. v. Toll*,
No. 12 Civ. 5896(ER), 2013 WL 3757037 (S.D.N.Y. July 17, 2013)...........................3, 16, 17

*George v. Prof'l Disposables Int'l, Inc.*,
221 F. Supp. 3d 428 (S.D.N.Y. 2016).....................................................................................24

*Giraldo v. Kessler*,
694 F.3d 161 (2d Cir.2012)......................................................................................................4

*Gristede's Foods, Inc. v. Unkechauge Nation*,
532 F.Supp.2d 439 (E.D.N.Y.2007) .......................................................................................20

*Int'l Design Concepts, LLC v. Saks Inc.*,
    486 F. Supp. 2d 229 (S.D.N.Y. 2007) ..................................................................20

*Joint Stock Company "Channel One Russia Worldwide," et al. v. Infomir et al.*
    16-CV-01318 (GBD)(BCM) .................................................................4, 6, 23, 25

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006) ................................................................................15

*Korn v. Princz*,
    226 A.D.2d 278 (1st Dep't 1996) ........................................................................16

*Koulkina v. City of New York*,
    559 F. Supp. 2d 300 (S.D.N.Y. 2008) .................................................................14

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
    861 F. Supp. 2d 262 (S.D.N.Y. 2012) .................................................................11

*Liberty Synergistics, Inc. v. Microflo Ltd.*,
    50 F. Supp. 3d 267 (E.D.N.Y. 2014) ...................................................................18

*In re Magnetic Audiotape Antitrust Litig.*,
    334 F.3d 204 (2d Cir. 2003) ................................................................................13

*Matusovsky v. Merrill Lynch*,
    186 F. Supp. 2d 397 (S.D.N.Y. 2002) .............................................................22, 23

*Minnie Rose LLC v. Yu*,
    169 F. Supp. ........................................................................................................13

*Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*,
    898 F.3d 243 (2d Cir. 2018) ................................................................................15

*New York University v. Continental Ins. Co.*,
    87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995) ..............................20

*O'Brien v. Alexander*,
    898 F. Supp. 162 (S.D.N.Y. 1995), aff'd, 101 F.3d 1479 (2d Cir. 1996) ..............21

*PPX Enterprises Inc. v. Audiofidelity Enterprises, Inc.*,
    818 F.2d 266 (2d Cir.1987) .................................................................................15

*Patton Boggs LLP v. Chevron Corp.*,
    No. 12-CV-9176 (LAK), 2016 WL 7156593 (S.D.N.Y. Dec. 7, 2016) ................14

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*,
    507 F.3d 117 (2d Cir. 2007) ................................................................................22

iv

*Roe v. Johnson*,
    334 F. Supp. 2d 415 (S.D.N.Y. 2004) ..................................................................4

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir.2000) ...............................................................................4

*In re S. African Apartheid Litig.*,
    643 F. Supp. 2d 423 (S.D.N.Y. 2009) ..............................................................24

*Shou Fong Tam v. Metro. Life Ins. Co.*,
    79 A.D.3d 484, 913 N.Y.S.2d 183 (1st Dept. 2010) ..........................................21

*Strapex Corp. v. Metaverta N.V.*,
    607 F. Supp. 1047 (S.D.N.Y. 1985) ..................................................................15

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 659 (2d Cir. 2013) ............................................................................13

**Statutes**

17 U.S.C. § 106(5) ....................................................................................................12

Federal Communications Act ................................................................................5, 6

Federal Rule of Civil Procedure 4 ...........................................................................24

Federal Rule of Civil Procedure 12(b)(1) .................................................................3

Federal Rule of Civil Procedure 12(b)(2) .............................................................3, 13

Federal Rule of Civil Procedure 12(b)(5) .........................................................3, 24, 25

Federal Rule of Civil Procedure 12(b)(6) ...........................................................3, 14

Federal Rule of Civil Procedure 12(c) ......................................................................3

Federal Rule of Evidence 201(b) ..............................................................................4

Gen. Bus Law § 349 ........................................................................................2, 5, 19, 21

## PRELIMINARY STATEMENT

Defendant Broadcasters Joint Stock Company "Channel One Russia Worldwide," Closed Joint Stock Company "New Channel," Closed Joint Stock Company "CTC Network," Limited Liability Company "Rain TV-Channel," Closed Joint Stock Company "TV Darial," and Limited Liability Company "Comedy TV" ("Broadcasters") and Defendant Kartina Digital GmbH ("Kartina," and with Broadcasters, "Defendants") now move to dismiss the Amended Complaint ("Complaint") (ECF 40) of Actava TV, Inc., Master Call Communications, Inc., Master Call Corporation, and Rouslan Tsoutiev (collectively "Actava" or "Plaintiffs").   This motion is submitted in accordance with the Court's Order dated December 19, 2018.  (ECF 62).

In this action, Plaintiffs seek to vindicate a right to distribute Broadcasters' content that has been foreclosed by a settlement agreement and permanent injunction specifically forbidding distribution of Broadcasters' content.   Accordingly, this action is barred entirely by the doctrines of *res judicata* and collateral estoppel.   Plaintiffs never had the right to distribute Broadcasters' content and thus violated the settlement agreement and the injunction by filing this action.   Even if not barred, Plaintiffs' bare allegations fail to state a claim.

This entire action violates Judge Daniels' injunction and the parties' settlement agreement.   Actava alleges that Matvil had the right to sublicense Broadcasters' content, an allegation that is demonstrably false.   Channel One's license agreement with Matvil annexed hereto shows that Matvil had no such right and Broadcaster affidavits show the same.   Indeed, Actava was warned that Matvil had no such right by the contempt motion that it now complains of, making counsel's bringing this lawsuit an entirely frivolous endeavor—legally and factually baseless.

1

Actava's Complaint alleges claims for (1) tortious interference with prospective economic advantage and (2) malicious prosecution against Defendants, breach of contract against Broadcasters and violation of Gen. Bus Law § 349 against Kartina.   The crux of Actava's Complaint is that Broadcasters, at Kartina's behest, made a contempt motion to enforce two stipulated permanent injunctions ("Injunctions").

At the core of this Complaint is a baseless assertion by Actava that it has the right to distribute  Broadcasters' content: an assertion that is barred by the doctrine of *res judicata* because Actava litigated this issue and lost.  Actava now contends that it is entitled to a mandatory license to sell, distribute and otherwise use Broadcasters' programming without paying a cent to Broadcasters.  Specifically, Actava entered into a confidential settlement ("Settlement") of two prior lawsuits with Broadcasters that resulted in two Injunctions issued by this Court.  The Injunctions prohibit Actava from using or promoting Broadcasters' content.

Following the issuance of the Injunctions, Broadcasters learned that Actava was claiming it had a right to sell access to Broadcasters' programming and ultimately moved for sanctions for breach of the Injunctions.  In response, Actava purported to have entered into a referral agreement ("Referral Agreement") with non-party Matvil Corp. ("Matvil") to sell subscriptions, including Broadcasters' content.  Stated differently, Actava knew it could not utilize Broadcasters' content under the terms of the Injunctions and Settlement and sought to evade this prohibition through the Referral Agreement.

Matvil also settled a prior lawsuit with Broadcasters and entered into a license agreement ("License Agreement") with Joint Stock Company Channel One Russia Worldwide ("Channel One") to broadcast several of Broadcasters' channels over internet protocol television ("IPTV"). The License explicitly provides that Channel One must provide written authorization concerning

any materials utilized to advertise Broadcasters' content and Matvil was expressly prohibited from distributing Broadcasters' content in any way other that those specified in the License, including any advertising.  Broadcasters never approved the alleged Referral Agreement and never approved Actava's conduct purportedly undertaken under the Referral Agreement.  In sum, Actava never had any authority to undertake these actions with which it claims Broadcasters and Kartina unlawfully interfered.

It is axiomatic that a party cannot run to a second judge in another court to sue, simply for making an unsuccessful motion before the first judge.

The Complaint should be dismissed for several reasons.  *First,* the claims against Broadcasters are barred by *res judicata* and collateral estoppel and should be dismissed pursuant to Rule 12(b)(6) or Rule 12(c) because the because this Court did not find that the contempt motion was made in bad faith; instead, Judge Moses found that ambiguities in the Injunctions precluded the certification of facts constituting contempt.  *Second,* Counts 1, 2, and 4 of the Complaint should be dismissed as to Broadcasters pursuant to Federal Rule of Civil Procedure 12(b)(1) and (2) because the Injunctions expressly limit the Court's jurisdiction to breaches of the Injunctions and Broadcasters are not otherwise within the personal jurisdiction of this Court.  *Second*, the Complaint should be dismissed pursuant to Rules 12(b)(2) for lack of Personal Jurisdiction over Broadcasters.  *Third,* the Complaint should be dismissed in its entirety against all Defendants pursuant to Rule 12(b)(6) for failing to state a cause of action.  *Fourth*, the Complaint should be dismissed against Broadcasters because it violates the terms of the broad general release in the Settlement Agreement.  *Fifth,* the pursuant to Rules 12(b)(2) and (5) for insufficient process and lack of personal jurisdiction because Kartina is a German entity and was never served.

In sum, this entire lawsuit is a frivolous attempt at an end-run around Judge Daniels'

injunctions.  It should be dismissed and an award of attorneys' fees should be assessed.

## FACTS

The following facts are derived from Actava's Amended Complaint (ECF 40); the

Declaration of Raymond J. Dowd, Esq., dated January 29, 2019 ("Dowd Decl."); the Declaration

of Alexander Shprekher, dated January 28, 2019 ("Shprekher Decl."); the Declaration of Natalya

Sindeeva, dated January 28, 2019 ("Sindeeva Decl."); the Declaration of Olga Panfilova dated

January 29, 2019 ("Panfilova Decl."); and documents filed in *Closed Joint Stock Company "CTC*

*Network" et al. v. Actava TV, Inc*. 15-CV-8681 (GBD)(BCM) ("Actava") and *Joint Stock*

*Company "Channel One Russia Worldwide," et al. v. Infomir et al*. 16-CV-01318 (GBD)(BCM)

("Infomir") (the "Prior Actions"); and the ECF Docket unless otherwise noted.  In addition to the

pleadings, the Court may consider "documents attached to the complaint as an exhibit or

incorporated in it by reference, matters of which judicial notice may be taken, or documents either

in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Roe*

*v. Johnson*, 334 F. Supp. 2d 415, 419–20 (S.D.N.Y. 2004)(quoting Chambers v. Time Warner,

Inc., 282 F.3d 147, 153 (2d Cir.2002).  *See also Giraldo v. Kessler*, 694 F.3d 161, 164 (2d

Cir.2012) (court may take judicial notice of relevant matters of public record).  A court may take

judicial notice of a public record pursuant to Federal Rule of Evidence 201(b).  *See Rothman v.*

*Gregor*, 220 F.3d 81, 92 (2d Cir.2000)("we take judicial notice of the Midway complaint as a

public record") (citing 5-*Star Management, Inc. v. Rogers*, 940 F.Supp. 512, 518 (court took

judicial notice of pleadings in other lawsuits attached to motion to dismiss)).

Actava alleges that it suffered irreparable damage due to Broadcasters' filing a motion for

contempt of the Injunctions entered in the Prior Actions.  (Compl. ¶¶ 1, 8, 70–80).  Based solely

on Broadcasters' filing a contempt motion before Judge Moses, Actava's Amended Complaint

purports to state claims for tortious interference with prospective economic advantage and malicious prosecution against Defendants, breach of contract against Broadcasters and violation of Gen. Bus Law § 349 against Kartina.

**A.  Actava Is Not a Licensed Broadcaster of Broadcasters' Programming**

Actava's Complaint concedes that Kartina and Matvil are two non-exclusive licensees of Broadcasters in the United States.  (Compl. ¶¶ 16–21).  Channel One and Rain TV have not entered into licensing agreements with Actava.   (Shprekher Decl. ¶ 6; Sindeeva Decl. ¶ 7).   In the Complaint Actava never describes itself as a licensee of Broadcasters but, rather, describes itself as a "set-top box provider and website operator catering to U.S.-based customers seeking access to Russian-language television channels, including content offered by the Defendant Channels. *(*Compl. ¶ 3).

**B.  Broadcasters Sue Actava in November 2015 Due to Its Industrial Level Piracy of Broadcasters' Programming**

On November 4, 2015, Closed Joint Stock Company "New Channel," Closed Joint Stock Company "CTC Network," and  Closed Joint Stock Company "TV Darial," sued Actava Inc. in the Southern District of New York alleging, among nine counts, violations of the Federal Communications Act ("FCA"), copyright infringement, and trademark infringement.  (Compl. ¶ 28; *Actava* ECF 1).  Actava admits it was broadcasting these three channels' "programming via internet and set-top box" and that it possessed the "technology infrastructure that it had purchased and configured at considerable expense for receiving, storing, and transmitting video over the internet." (Compl. ¶ 29, 32).  After Actava ignored service of the motion for default, Judge Daniels entered a default judgment.  (*Actava* ECF 18, 20). The injunction, among other things, enjoined Actava TV Inc. from "broadcasting, re-broadcasting or otherwise transmitting Plaintiffs' broadcasts via any medium, including, but not limited to, IPTV, . . . directly or indirectly infringing

or making any use of, in any manner whatsoever, Plaintiffs' broadcasts . . . [and] publishing or distributing any promotional materials or other communications referring to Plaintiffs' broadcasts in any medium…." (Actava ECF 20).

On February 29, 2016, the remaining Broadcasters in this action sued Actava and the other plaintiffs in this action asserting claims for violations of the FCA and copyright and trademark infringement (Compl. ¶ 30; *Infomir* ECF 1). After Actava's piracy was exposed, its revenues purportedly dropped considerably. (Compl. ¶ 33).

### C. Actava Agrees to A Broad Release of Any Claims Against Broadcasters Related to the *Actava* or *Infomir* Actions

On April 26, 2016, Actava and Broadcasters entered into the Settlement Agreement to resolve the Actava and Infomir cases. (Compl. ¶ 34).[1] Actava represented and warranted in Paragraph Six of the Settlement that it presently did not broadcast IPTV and would not in the future without Broadcasters' written consent. *See* Paragraph 6.d.ii.–iv of the redacted Settlement Agreement (Dowd Decl. Ex 1). The Settlement Agreement contained a Mutual General Release. (*Id*. ¶ 7). Actava agreed to "release and discharge [Broadcasters] from any and all claims that relate in any manner to the [Actava] Action and/or the [Infomir] Action. (*Id*.). Actava claims it complied with the Settlement Agreement in every respect. (Compl. ¶ 97).

### D. Broadcasters Agree to Settle Their Claims Against Actava Provided It Enters Into Stipulated Injunctions While Actava Schemes to Evade Them

On June 3 and 6, 2016 Judge Moses and Daniels entered stipulated injunctions. (Dowd Decl. Ex. 2, 3). The Injunctions bar Actava from broadcasting or transmitting Broadcasters'

---

[1] Broadcasters have since learned via discovery in another action that Actava was already in breach of the Settlement Agreement by not disclosing that it owned the domain for another unlicensed broadcaster, www.russiantelek.com. (*See* ECF 59-1) (November 16, 2018 Notice of Breach).

content, directly or indirectly making any use of Broadcasters' content and trademarks, or publishing promotional materials referring to Broadcasters' content and trademarks. (Compl. ¶ 35). According to Actava, sometime between the Spring and Summer of 2016, Matvil and Actava began discussing a business relationship. (*Id*. ¶¶42–43).

### E. Broadcasters' 2016 License With Matvil Forbids Sublicensing

On September 7, 2016, Channel One entered into a Licensing Agreement with Matvil ("Licensing Agreement") that is illustrative of the agreements Matvil signed with the other Broadcasters. According to Actava, Broadcasters authorized Matvil to "enga[ge] a third party to act as a dealer and/or marketer for Matvil's services—including the [Broadcasters'] programming. (Compl. ¶ 47). Other assurances by Matvil led Actava to have "no reason to doubt that" the Referral Agreement did not breach the Injunctions, Settlement Agreement, or licensing agreements Broadcasters had with Matvil. (*See id*. ¶¶ 48, 52).

Article 1.1 of the Licensing Agreement grants Matvil a "non-exclusive license to distribute via [IPTV] Service.[2] (Shprekher Decl. Ex. A at 2). Article 1.5 states: "No other rights, including the ability to enter into sublicense agreements in respect to provided rights hereunder as specified directly in this Agreement, are granted to [Matvil]." (*Id*.). Article 3.4 states Matvil "declares and warrants not to distribute the Channels in any other way, with exemption of ways specified directly in this agreement." (*Id*. at 7). As Judge Moses noted in the Order addressing Actava's contempt the Broadcasters did not submit any license agreements with the contempt motions, so Matvil CEO "Gayster's assertion that Matvil had whatever authority it needed from plaintiffs to engage Actava

---

[2] The Licensing Agreement defines "Service" broadly as a "system of ways and methods to provide Subscribers with the ability to view the Channels under the brands of . . . Matvil via IPTV in accordance with the description of series published on the website [of Matvil] . . . " (Shprekher Decl. Ex A at 1–2).

pursuant to the Referral Agreement must therefore be deemed undisputed." (Dowd Decl. Ex. 9 at 15 FN 13).  Matvil's purported authorization based on Actava's hearsay only led Judge Moses to find in Part III.A of the Order that Actava's sale of set-top boxes preloaded with Matvil software that accessed Broadcasters' programming show "clear and convincing" evidence that Actava violated the Injunction in light of the very high standard necessary to prove contempt. (*Id*. at 22–25).  Judge Moses further found that the "recurring question of 'authorization'" raised by Actava's characterizations of the Matvil license prevented her from determining if Actava's radio advertisement violated the Injunctions.  (*Id*. at 28).

**F.  Actava Enters Into A Confidential So-Called Referral Agreement With Matvil**

On September 8, 2016, Matvil and Actava—after "months of negotiations" and a mere day after Channel One agreed to the Licensing Agreement with Matvil—purportedly agreed to the Referral Agreement.  (Compl. ¶ 49).  Actava's belief that Matvil had the right to enter into the Referral Agreement were "assurances from Matvil".  (*Id*. ¶ 52).  The Referral Agreement with Matvil purportedly enabled Actava to market Broadcasters' content and operationalize set-top box distribution and implementation for consumers in New York and the Northeastern corridor. (Compl. ¶ 42).  Matvil immediately began to earn revenue from the monthly subscriber fees from Broadcasters' content it "split" with Actava. (*Id*. ¶¶ 51, 60).

**G.  Upon Discovery of Actava's Confidential Relationship with Matvil, Broadcasters Issue a Notice of Suspected Breach to Actava**

The Settlement Agreement specifically provides that if Broadcasters suspect Actava of a breach of the Settlement, Broadcasters must provide written notice to Actava of the suspected breach. (Compl. ¶ 38).  The Settlement Agreement further provides that if Actava fails to remedy the suspected breach within ten (10) business days of receiving such written notice, Broadcasters can seek relief against Actava for the breach. (*Id.*).

Upon learning of this suspected breach of the Injunctions and Settlement by distributing Broadcasters' content without permission, Broadcasters wrote to Actava on October 19, 2016 demanding that it cure the infringements of Broadcasters' rights under the Injunctions and Settlement. (Compl. ¶ 63). *See also* Dowd Decl. Ex. 4 (Notice of Suspected Breach). Consistent with Broadcasters' obligations under the Settlement Agreement, Broadcasters sent Actava the Notice of Breach and warned the Broadcasters would "pursue all judicial relief." (Compl. ¶¶ 63, 65). On October 26, 2016 Actava denied it was breaching the Settlement Agreement. (*Id*. ¶ 66). *See also* Dowd Decl. Ex. 5 (Actava's response). This was the first time Actava disclosed the existence of a purported "confidential" Referral Agreement. (Compl. ¶ 49). On November 14, 2018, Broadcasters sent a final warning to Actava. (*Id*. ¶ 67). *See also* Dowd Decl. Ex. 6.

## H. Broadcasters File a Contempt Motion After Actava's Unrelenting Efforts to Illegally Utilize and Promote Broadcasters' Content

Despite being provided with a notice of suspected breach by Broadcasters, Actava admits that it continued to distribute Broadcasters' content. Broadcasters filed a motion for contempt against Actava for breach of the Injunctions and Settlement on December 13, 2016. (Compl. ¶ 70).

Judge Moses made clear that Broadcasters' arguments in favor of contempt against Actava had "some force" (Dowd Decl. Ex. 9 at 23). Contempt failed because the ambiguities in the Injunctions could not be cured by referencing the underlying Settlement Agreement—over which the Court did not have jurisdiction—under the "four corners" rule or interpreting contempt of an injunction. (*Id*. at 24-25). Judge Moses expressed "no opinion as to whether Actava Defendants violated" the underlying Settlement Agreement. (*Id*. at Note 18). Significantly, Judge Moses did not find that Broadcasters acted inappropriately in moving for contempt nor did Actava cross-move or otherwise seek relief against Broadcasters from Judge Moses. *Id*. ¶ 22). Actava simply

resumed performing under the Referral Agreement after the Broadcasters told Actava that such activity was prohibited.  (Compl. ¶ 80).  Regardless, after the commencement of the contempt proceeding Actava maintained an income from the subscribers to Broadcasters' content it previously referred to Matvil.  (Compl. ¶ 77).  News of Actava's piracy and the resulting litigation by Broadcasters damaged its standing in the Russian community.  (*Id.*¶ 78).

## I.   Matvil Noticed Its Intent to Terminate the Referral Agreement Prior to Actava Suing Broadcasters

According to Actava's Amended Complaint, Matvil terminated the agreement "shortly after" July 30, 2018, five days after the original Complaint was filed due to pressure from Broadcasters. (Compl. ¶ 81).[3]  Section 2.b.ii-v. of the Referral Agreement requires Matvil to give Acatva ten days written notice before terminating the agreement. (Dowd Decl. Ex. 5 at 3). Pursuant to the notice provision of the Referral Agreement, the latest Matvil could have noticed its intent to terminate the Referral Agreement was July 20, three days *before* Actava filed the Complaint.  Thus, the ambiguous timeline pled by Actava suggests Matvil terminated the Referral Agreement *before* the filing of the Complaint and not as a result of the Complaint.

## J.   Broadcasters Do Not Conduct Business In New York

Broadcasters operations are centered in Russia, not New York, and none has an office or agent for service in New York.  (*See e.g.* Shprekher Decl. ¶ 5; Sindeeva Decl. ¶ 6).

## K.   Actava Fails to Serve Kartina, a German Limited Liability Company, via the Hague Convention

Kartina is a German "Gesellschaft mit beschränkter Haftung" or limited liability company located, doing business in, and organized under the laws of Germany.  (Panfilova Decl. ¶ 3).  *See also* Compl. ¶ 22 ("Defendant Kartina Digital GmbH is a limited liability corporation incorporated

---

[3] The original Complaint was filed on July 23, 2018.  (ECF 1)

and organized under the laws of Germany.  Its principal place of business is in Germany.").

Kartina does not have an office or agent for service of process in New York.  (Panfilova Decl. ¶

4).  Actava claims it served Kartina on October 12, 2018 at 1202 Kings Highway, Brooklyn, NY

11229.  (Panfilova Decl. ¶ 6, Ex. A).  Kartina has not been served in Germany. (Panfilova Decl. ¶

5).  Actava's affidavit of service incorrectly states that Kartina is a domestic corporation and that

Svitlana Derevianko was authorized to accept service.  (*Id*. ¶¶ 7–8).  However, Kartina is not

registered to do business in New York.  A search of the New York Department of State database

shows that Kartina Digital GmbH is not doing business in New York and has not appointed an

agent for service of process.  (*See* Dowd Decl. Ex.10 (attaching results of a NY Department of

State Search showing a "Kartina Inc." with an address of 3099 Brighton 1 PL Apt 1F)).

## ARGUMENT

### I.    The Complaint Is Barred By the Doctrine of Collateral Estoppel Because Actava Has No Right To Distribute Broadcasters' Content and Judge Moses' Order Did Not Find that the Contempt Motion Was Brought in Bad Faith

Actava's claims that it ever had a right to distribute Broadcasters' programming are

foreclosed by the express terms of the Injunctions and Settlement Agreement.

Collateral estoppel bars re-litigation of an issue where "(1) the identical issue was raised

in a previous proceeding; (2) the issue was actually litigated and decided in the previous

proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution

of the issue was necessary to support a valid and final judgment on the merits." *Liberty Media

Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 270 (S.D.N.Y. 2012) *quoting Boguslavsky

v. Kaplan,* 159 F.3d 715, 720 (2d Cir.1998).

Broadcasters' contempt motion failed based upon purported ambiguities in the Injunctions

caused by Actava misrepresenting the terms of the Matvil license—not because Actava's

underlying conduct was held to be proper. Actava did not cross-move or otherwise seek to recover

11

against Broadcasters before Judge Moses as it should have if aggrieved. Instead, Actava judge-shopped by belatedly filing this frivolous action. The Court should not permit this already-litigated matter to proceed any further and should dismiss the Complaint.

Judge Moses declined to certify facts constituting contempt to Judge Daniels in her order dated September 27, 2017. (Dowd Decl Ex. 9 at 2). In reaching her determination, Judge Moses analyzed the wording of the Injunctions (*Id*. at 5-6) and concluded that she could not certify facts constituting contempt because the Injunctions were not clear and unambiguous in certain material respects. (*Id* at 21, 25-29). Judge Moses did not find, as falsely alleged by Actava, that the contempt motion was filed "with substantial bad faith and without any quantum of merit" (Compl. ¶ 8); or "baseless" (Compl. ¶¶ 9, 71). Indeed, Judge Moses found there was merit to Broadcasters' position. (*See e.g.* Dowd Decl Ex. 9 at 23)("Actava's role in 'referring' [a] customer to Matvil does not appear to violate ¶ 2(a) of the Stipulated Injunction []" and Broadcasters' argument that Actava's set-top box violated the injunction by transmitting programming "has some force".)

A review of the Matvil license agreement shows that Actava misled Judge Moses to avoid contempt. Moreover, Broadcasters have an absolute right to distribute their content. Despite Actava's assertion to the contrary (Compl. ¶ 52). Matvil does not have and never did have a right to sublicense Broadcasters' content. Section 1.5 of the Licensing Agreement clearly states that aside from the rights granted in the preceding four sections relating to redistribution of Broadcasters' content, technology and the right to promote and market the same, "No other rights, including the ability to enter into a sublicense agreements…are granted to [Matvil]." (Dowd Decl. Ex. 8 at 2). Therefore, Broadcasters have the absolute right to distribute their content and neither Matvil, Actava, nor any other entity can sublicense without the consent of Broadcasters. *See* 17

U.S.C. § 106(5)("the owner of copyright under this title has the exclusive rights to do and to authorize… to display the copyrighted work publicly).

## II. The Complaint Should Be Dismissed As Against Broadcasters For Lack Of Personal Jurisdiction Because The Court's Jurisdiction Over Broadcasters Is Strictly Limited To The Injunctions And Underlying Settlement

Plaintiffs bear the burden of proving that the Court has jurisdiction over Broadcasters. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). In order to establish personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks on Sept. 11, 2001,* 714 F.3d 659, 673 (2d Cir. 2013) *quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Plaintiffs "may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" *Minnie Rose LLC quoting Art Assure Ltd., LLC v. Artmentum GmbH*, 14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014), quoting *Jazini v. Nissan Motor Co., Ltd.,* 148 F. 3d 181, 185 (2d Cir.1998). In assessing a Fed. R. Civ. P. 12(b)(2) motion to dismiss, the Court may rely on evidentiary materials outside the pleading. *Minnie Rose LLC v. Yu*, 169 F. Supp. at 510.

The Complaint alleges that Broadcasters are all based in the Russian Federation. (Complaint ¶¶ 12–19). Joint Stock Company "Channel One Russia Worldwide," has not registered to do business in New York. "Channel One Russia" mentioned at Paragraph 12 of the Complaint is not directly affiliated with "Channel One Russia Worldwide" and is not involved in distribution of Channel One Russia Worldwide's content. Instead, Channel One Russia is a subsidiary of Channel One Russia Worldwide's parent company that provides news coverage in the United States. Dunnington has no relationship with and has never represented Channel One Russia (New York). Broadcasters have no operations in the United States. The plain language of the Injunctions

13

provide that the Court has jurisdiction over Broadcasters solely for the purposes of enforcing the Injunctions. Therefore, any claim not related to the enforcement of the Injunctions—including a breach of the underlying Settlement Agreement to which Joint Stock Company "Channel One Russia Worldwide" is a party—is subject to dismissal. *Patton Boggs LLP v. Chevron Corp.*, No. 12-CV-9176 (LAK), 2016 WL 7156593, at *10 (S.D.N.Y. Dec. 7, 2016) ("Movants may not expand the limited scope of the retention of jurisdiction to embrace their claim.").

III.   **The Complaint Should Be Dismissed For Failure To State A Claim Because Purported Termination Of The Referral Agreement Post-Dates The Filing Of The Complaint and All Four Causes of Action Fail to State a Claim**

a.   **Because Actava's Complaint Incorporates the Injunctions and the Settlement Agreement Relinquishing any Right to Distribute Broadcasters' Content, It Cannot Plausibly State Any Cause of Action Based on Broadcasters' Enforcement of Its Distribution Methods**

A claim must be dismissed pursuant to Rule 12(b)(6) "when allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  Although the Court must assume the truth of well-pleaded facts in the complaint, the Court should not accept the truth of legal conclusions or assertions that are unsupported by factual allegations. *Ashcroft*, 556 U.S. at 678–79.  Moreover, where "a plaintiff alleges a claim based on a written instrument, if the documents contradict the allegations of a plaintiff's complaint, the documents control and the court need not accept as true the allegations in the complaint." *2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 199 (S.D.N.Y. 2015) (internal quotation marks omitted); *see also Koulkina v. City of New York*, 559 F. Supp. 2d 300, 329 (S.D.N.Y. 2008) (dismissing claim for which plaintiff made conclusory allegation that was contradicted by the attachments to the complaint).

The Court may dismiss a claim with prejudice "when there is an absence of any indication that a plaintiff could—or would—provide additional allegations to support a plausible claim,"

*Document Techs., Inc. v. LDiscovery, LLC*, 731 F. App'x 31, 33 (2d Cir. 2018), such as "[w]hen a plaintiff was aware of the deficiencies in his complaint when he first amended," *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257 (2d Cir. 2018); *accord Document Techs., Inc.*, 731 F. App'x at 34 (affirming dismissal of claim with prejudice where claimant had failed to amend the deficiencies in its pleading after being given adequate notice and opportunity to do so).

### b.  The First Cause of Action Fails to State A Claim For Tortious Interference with Contract Against All Defendants

To state a claim for tortious interference with prospective economic advantage under New York law, a plaintiff must allege that: "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006) (citing *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir.2003)).

As stated above, Actava relinquished all rights to distribute Broadcasters' content and Matvil had no rights to distribute Broadcasters' content.  Thus, there was no legitimate relationship with Matvil with which Broadcasters could have interfered so the first and second elements fail. With respect to the third element, if Broadcasters' acts were authorized by the Injunctions and Settlement Agreement and advance its own competing interests, then an action for interference with prospective business relations cannot be maintained.  Broadcasters could not have acted with the *sole* purpose of harming Actava particularly where, as here, Actava was already enjoined from distributing Broadcasters' content.  *PPX Enterprises Inc. v. Audiofidelity Enterprises, Inc.*, 818 F.2d 266, 269 (2d Cir.1987) (citing *Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.*, 614 F.2d 832, 838 (2d Cir. 1980); *Strapex Corp. v. Metaverta N.V.*, 607 F. Supp. 1047, 1050 (S.D.N.Y.

1985) (emphasis added).  Where the defendant acts at least in part out of self-economic interest, a plaintiff alleging tortious interference with business relations must allege that the defendant engaged in "wrongful means" in so interfering. *71 Pierrepont Associates v. 71 Pierrepont Corp.*, 243 A.D.2d 625, 663 N.Y.S.2d 263, 263–64 (N.Y.A.D. 2nd Dept.1997). A complaint that does not allege facts and instead only recites the elements is subject to dismissal. *Fifth St. Fin. Corp. v. Toll*, No. 12 Civ. 5896(ER), 2013 WL 3757037, at *4 (S.D.N.Y. July 17, 2013).

Here, the Complaint fails to adequately allege any of the requisite four factors supporting a claim for tortious interference with prospective economic advantage, but particularly, fails to allege facts demonstrating that Actava had any legitimate business relationship with which to interfere or that Defendants' "sole" motivation was to harm Actava.  Assuming, *arguendo*, for the purpose of this motion that Broadcasters "pressured and induced Matvil to end its relationship with Actava," (Compl. ¶ 81), the Complaint fails to allege facts demonstrating that Defendants acted solely out of malice towards Actava and not in vindication of Broadcasters' rights under the Licensing Agreement and/or Settlement Agreement.  As stated above, Broadcasters expressly prohibited any sublicense of the limited rights granted to Matvil under the Licensing Agreement, and Matvil warranted that it would not distribute Broadcasters' Channels in any way other than those specified in the Licensing Agreement.  The prohibition on Matvil entering into the Referral Agreement could not be more clear.

Actava's Complaint is bereft of any factual detail and merely recites the elements of a tortious interference claim without support. (Compl. ¶¶ 77-83). That is, other than references to Matvil, the Complaint alleges unparticularized damages to "reputation," but fails to allege what, if any, business relationships have been harmed and instead offers that unspecified "income potential" has been lost. (Compl. ¶¶ 82–83).  *See Korn v. Princz*, 226 A.D.2d 278, 278–79 (1st

Dep't 1996) (dismissing claim for tortious interference with prospective business relations where there was "no allegation that plaintiff was actually and wrongfully prevented from entering into or continuing in a specific business relationship"). According to Actava, Matvil terminated the Referral Agreement nearly a year and a half after the contempt motion, so the suggestion that the contempt motion caused the damage is implausible. Matvil also only vaguely refers to the loss of "prospective customers" (Compl. ¶ 86) after admitting it maintained customers it had referred to Actava *after* the initiation of the contempt proceeding. (*Id*. ¶ 77).

Further, Judge Moses' Order did not find that Broadcasters' contempt motion was without merit—Judge Moses only found that certain terms of the Injunctions were ambiguous, that the Court did not have jurisdiction over the underlying Settlement Agreement and declined to certify facts to Judge Daniels. A complaint that does not allege facts and instead only recites the elements is subject to dismissal. *Fifth St. Fin. Corp. v. Toll*, No. 12 CIV. 5896 ER, 2013 WL 3757037, at *4 (S.D.N.Y. July 17, 2013). Actava's Complaint is bereft of any factual detail and merely recites the elements without support. (Complaint ¶¶ 77-83). The Complaint alleges unparticularized damages to "reputation" and fails to allege what, if any, business relationships have been harmed and instead offers that unspecified "income potential" has been lost. (Complaint ¶¶ 82-83). Further, Judge Moses' Order did not find that Broadcasters' contempt motion was without merit - Judge Moses only found that certain terms of the Injunctions were ambiguous, that the Court did not have jurisdiction over the underlying Settlement Agreement and declined to certify facts to Judge Daniels. Accordingly, Actava's Complaint fails to adequately allege any of the requisite four factors.

17

### c.  The Second Cause of Action Fails to State A Claim For Malicious Prosecution Against All Defendants

Because Broadcasters prevailed in obtaining Injunctions and the Settlement Agreement, Actava's claim for malicious prosecution must fail.

To state a claim under New York law for the malicious prosecution of a civil action, a plaintiff must show "1) the initiation of an action by the defendant against [him], 2) begun with malice, 3) without probable cause to believe it can succeed, 4) that ends in failure or, in other words, terminates in favor of the plaintiff." *Engel v. CBS,* 145 F.3d 499, 502 (2d Cir. 1998) *certified question accepted*, 92 N.Y.2d 867, 700 N.E.2d 310 (1998). "In addition, if the proceeding of which plaintiff complains was a civil action, the plaintiff must prove special injury—'some interference with [the] plaintiff's person or property . . . beyond the ordinary burden of defending a lawsuit.'" *Id.*  Defendant Broadcasters did not, as Actava alleges, prosecute a wrongful action terminating in Actava's favor as would be necessary for Actava to prevail on its claims for tortious interference and malicious prosecution.   Actava's submissions show that Broadcasters substantially prevailed as set forth in the Injunctions and Settlement Agreement.  *See Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d 267, 287 (E.D.N.Y. 2014)("It is well-settled that an action terminated by settlement cannot sustain a malicious prosecution claim.")(collecting cases).  Further, Judge Moses found only that the Injunctions were ambiguous in certain respects, did not consider whether the Settlement Agreement had been reached and made no finding that Broadcasters acted improperly in filing the sanctions motion. Accordingly, the claim for malicious prosecution must be dismissed.

### d.  The Third Cause of Action Fails to State A Claim For Breach of Contract Against Broadcasters

The Complaint alleges that Broadcasters failed to provide a notice and opportunity to cure a suspected breach of the Settlement Agreement. This allegation is contradicted directly by Judge Moses' Order which provides, in relevant part, "plaintiffs sent the Actava Defendants a letter notifying them of a 'suspected breach of the Settlement Agreement.'" (ECF 1-3 at 4).

Actava belatedly suggests that Broadcasters never specifically alleged that its radio broadcasts promoting Matvil and its services were the source of the suspected breach. (Compl. ¶ 65).  This suggestion is barred by *res judicata* and collateral estoppel because this matter was fully litigated before Judge Moses.  The plain language of  the Settlement Agreement does not require this level of specificity in the suspected notice of breach notification. (Settlement Agreement 4). All that was required for Broadcasters to satisfy its obligations under this provision was to provide notice of suspected breach which Broadcasters did. (ECF 1-3 at 4).  As there is no other basis for the breach of contract claim, it must be dismissed.

### e.  The Fourth Cause of Action Fails to State A Claim For Violation of N.Y. General Business Law § 349 by Kartina

The Amended Complaint is defective on its face as against Kartina because there is no allegation that Kartina's actions were directed toward consumers.  N.Y. Gen. Bus. Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business." Private disputes between businesses are not actionable under Section 349. *See Dollar Phone Corp. v. Dun & Bradstreet Corp.*, No. 09-CV-3645(ILG)(SMG), 2010 WL 5313737, at *3 (E.D.N.Y. Sept. 2, 2010) (finding that scope of section 349 is generally limited to claims by consumers).  To state a claim under Section 349, Actava must allege (1) that Kartina's deceptive acts were directed at consumers, (2) that Kartina's alleged deceptive acts were misleading in a material way, and (3) that Actava has

been injured as a result. *Int'l Design Concepts, LLC v. Saks Inc.*, 486 F. Supp. 2d 229, 238–39 (S.D.N.Y. 2007). To satisfy the first prong, Actava must show that Kartina's alleged misconduct has a "broad impact on consumers at large; 'private contract disputes unique to the parties . . . would not fall within the ambit of the statute.'" *New York University v. Continental Ins. Co.,* 87 N.Y.2d 308, 639 N.Y.S.2d 283, 290, 662 N.E.2d 763 (1995) *quoting Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 532, 647 N.E.2d 741 (1995).* "Deceptive acts" are those "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F.Supp.2d 439, 450 (E.D.N.Y.2007) (citations omitted).

The sum and substance of the Amended Complaint is that Kartina funded Broadcasters' contempt motion against Actava, after Actava settled with the Broadcasters because it was infringing upon their channels. (Compl. ¶¶ 5–8). As set forth in Broadcasters' September 26, 2018 letter, Judge Moses declined to certify facts constituting contempt due to ambiguities in the publicly filed injunctions despite finding that Broadcasters' arguments had "some force," and expressed "no opinion as to whether Defendants violated" the underlying Settlement Agreement. (Dowd Decl. Ex. 9 at 2). Therefore, Actava's representations that the contempt motion was brought in "bad faith" and "baseless" are not supported in the record. (Compl. ¶ 8).

The Amended Complaint shows that the contempt motion was not directed at consumers; it was directed at a federal judge and named Actava. (Compl.¶ 8). The Amended Complaint is equally clear that nothing done by Kartina was misleading to consumers, as all of Kartina's actions are claimed to relate to the contempt motion. (Compl. ¶ 104). Actava's attempt stretches to show consumer harm by contending that consumers are harmed by Broadcasters because their actions reduced the competitive landscape for consumers to choose between products and find the cheapest

20

alternatives for content is not plausible and does not demonstrate that Broadcasters' actions were directed at consumers. Finally, any harm caused to Actava is a result of non-party Matvil's alleged termination of the Referral Agreement. (Compl. ¶ 103).

Taking the facts alleged in the Complaint as true, on October 19, 2016 Broadcasters' counsel wrote to Actava concerning a suspected breach of the Stipulated Injunctions. (Compl. ¶ 63). After additional correspondence was exchanged, Broadcasters moved for contempt on December 13, 2016. (Compl. ¶¶ 64–70). On September 27, 2017 Judge Moses declined to certify facts evidencing contempt. (Compl. ¶ 79). According to Actava, the Referral Agreement remained active during the pendency of the contempt motion and thereafter. (Compl. ¶ 80). It was only for unspecified reasons occurring after the filing of the Complaint that Matvil terminated the Referral Agreement. (Compl. ¶ 81).

The foregoing facts make clear that Actava has not and cannot establish a General Business Law § 349 claim. All of the conduct complained of concerns a business-to-business dispute that resulted in an unsuccessful contempt motion, which does not foreclose Broadcasters from asserting a plenary action for breach of the Settlement Agreement. Private disputes are simply not actionable under General Business Law § 349. *Shou Fong Tam v. Metro. Life Ins. Co.*, 79 A.D.3d 484, 486, 913 N.Y.S.2d 183, 185 (1st Dept. 2010). Moreover, anything said or done by Kartina or its alleged proxies, the Broadcasters, before Magistrate Judge Moses is unequivocally and absolutely protected by the litigation privilege. *O'Brien v. Alexander*, 898 F. Supp. 162, 171 (S.D.N.Y. 1995), aff'd, 101 F.3d 1479 (2d Cir. 1996) (dismissing defamation action). Actava, therefore, has not and cannot plead a plausible General Business Law § 349 claim against Kartina.

21

**f.   The Complaint's Ambiguity About the Termination Date of the Referral Agreement Fails To Provide Fair Notice to Broadcasters**

Actava argues that it was the filing of the contempt motion that caused its demise.  Actava alleges that the Referral Agreement was not terminated by Matvil until July 30, 2018—after this action was filed—and conclusively states that Defendants must have been behind it.  (Compl. ¶ 81).  These speculations and guesswork are allegations that clearly fall short of the *Iqbal/Twombly* standard.  A pleading must provide "fair notice" of the acts allegedly constituting "the grounds upon which" the claims rest. *Twombly*, 550 U.S. at 555. Further, the Notice Provision in the Referral Agreement strongly suggests that Matvil notified Actava of its intent to terminate the Referral Agreement *before* Actava filed its meritless lawsuit against Broadcasters on July 23, 2018. It further suggests that Actava's termination was *not* the result of undue influence by Broadcasters but likely by Actava's own breach of Section 2.b of the Referral Agreement.

Regardless, a complaint is inadequately pleaded when it fails to provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).  Actava admits that it did not lose customers due to the contempt motion, only that growth declined "leaving only those whom Actava made efforts to subscribe prior to" the contempt motion.  (Compl. ¶ 77).

**IV.   The Settlement Agreement Contains a Broad General Release That Plainly Forbids Actava's Complaint Against Defendants**

Paragraph 7 of the Settlement Agreement forbids Actava from bringing a lawsuit.  If a plaintiff's allegations are contradicted by exhibits, or incorporated by reference, as well as any documents that are integral to, or explicitly referenced in the pleading "those allegations are insufficient to defeat a motion to dismiss." *See Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002)(*citing 2 Broadway L.L.C. v. Credit Suisse First Bos. Mortg. Capital L.L.C.*,

22

No. 00 CIV. 5773 GEL, 2001 WL 410074, at *9 (S.D.N.Y. Apr. 23, 2001). The Settlement Agreement and General Release are integral and explicitly referenced in the Complaint. (*See e.g.* Compl. ¶ 34)("Actava agreed to pay a substantial sum to the Channels in return for a broad release.") In *Matusovsky*, the Court considered a general release because the plaintiff explicitly referred to the General Release in his complaint. *Id.* The Court, should consider the clear terms of the release because Actava has made no claim "that the General Release is invalid, or fails for want of consideration, under Federal law." *Id.* at 401.

Here, the gravamen of Actava's Complaint is a right to distribute Broadcasters programming without their authorization. The plain wording of the Settlement Agreement undermines this claim. Actava represented and warranted in Section 6.d.iv. of the Settlement Agreement that it "will not in the future broadcast, copy, distribute or otherwise use the Broadcasts in any manner… without the express written consent of the relevant [Broadcasters]…."

The Contempt motion was filed before Judge Barbara Moses in response to Actava's breach of the Stipulated Injunction in the *Infomir* case and, therefore, "relates" to that case inasmuch as it falls within the scope of the general release. Indeed, the Contempt motion specifically sought an order that Actava was in contempt of the Stipulated Injunction, which effectively settled and dismissed the *Infomir* action. Because the broad release language also extends to Broadcasters' "agents," the Complaint should also be dismissed as against Kartina, who, assuming the facts of the Complaint to be true, took any purported action on behalf of Broadcasters. Therefore, the Court should find that Actava is precluded from asserting the claims in this action. Thus, Actava has released any right to assert any claims premised on a right to distribute. As such, The Court, should dismiss all claims against Broadcasters.

## V. The Complaint Should Be Dismissed As Against Kartina For Insufficient Service Of Process and Lack of Personal Jurisdiction

"Once a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service." *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016). "In deciding a Rule 12(b)(5) motion, a Court must look to Rule 4, which governs the content, issuance, and service of a summons." *DeLuca v. AccessIT Grp., Inc.*, 695 F.Supp.2d 54, 64 (S.D.N.Y. 2010). Federal Rule of Civil Procedure "4(f) permits service outside the United States 'by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention.'" *In re S. African Apartheid Litig.*, 643 F. Supp. 2d 423, 432 (S.D.N.Y. 2009)(quoting Fed. R. Civ. P. 4(f)). Therefore, in the absence of any other authority, Actava must utilize the Hague Convention in order to serve Kartina. *See Id.* ("As Germany has objected to service by judicial agent, by mail, or by diplomat, service via the Central Authority is the *only* means by which an American plaintiff may serve a German defendant.")(emphasis in original).

The Complaint alleges that Kartina is a German GmbH (the equivalent of a limited liability company). (Compl. ¶ 22). The Complaint contends that Kartina has a New York office that is authorized to accept service on its behalf as its domestic agent. (Compl. ¶ 22). However, on October 15, 2018, Actava filed an affidavit of service claiming that Kartina was a "domestic corporation" and served at an 1202 Kings Highway in Brooklyn on October 12, 2018. (Panfilova Decl. Ex. A, ECF 45). Actava, therefore, has not complied with Rule 4(f) or German law based on its own Complaint and Affidavit of Service.

Regardless, Actava has not met its burden based on the evidence presented in the Dowd and Panfilova declarations. *See George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 442 (S.D.N.Y. 2016)("In considering a motion to dismiss pursuant to Rule 12(b)(5), a court must look

24

at 'matters outside the complaint' to determine whether service was adequate."). Contrary to Actava's contentions, the only entity using the name "Kartina" registered in New York is "Kartina Inc." a distinct entity from Kartina. (Dowd Decl. Ex. 10). Kartina is not located at that address nor is anyone or any entity at that address permitted to accept service of process on Kartina's behalf. (*Id.* 7–8). Instead, Kartina's product—internet protocol television—may be purchased through third-parties here in the United States. Kartina was not served in Germany as required by German law and Hague convention. (Panfilova Decl. ¶ 5). Actava cannot carry its burden to show that it has served Kartina, and the Court should dismiss the Complaint for that reason alone. *See Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005) ("[W]hen a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service."). For these same reasons, the Court should dismiss all claims against Kartina for lack of personal jurisdiction because Actava has failed to meet its burden of making non-conclusory allegations alleging jurisdiction.

## VI.  This Court Should Award Attorneys' Fees Recoverable for Breach of the Injunctions and Settlement Agreement

Broadcasters are entitled to attorneys' fees in connection with this proceeding under the Injunctions and Settlement which read:

> This Court shall retain jurisdiction for the limited purpose of enforcement of this Injunction including determinations of damages and attorneys' fees which shall be recoverable in connection with any enforcement proceeding.

(*Actava* Injunction Para. 7 (Dowd Decl. Ex. 2 ); *Infomir* Injunction Para 6 (*Id.* Ex. 3); Settlement Ex. B, C). (*Id.* Ex. 1)). The Court should award Broadcasters attorneys' fees for the defense of this action.

25

## CONCLUSION

Based upon the foregoing, the Complaint should be dismissed with prejudice along with any such other and further relief that the Court deems just, proper and equitable including an award of reasonable attorneys' fees as required by both the Injunction and the Settlement Agreement.

Dated: New York, New York
      January 29, 2019

                                        Respectfully submitted,

                                        DUNNINGTON BARTHOLOW & MILLER LLP
                                        *Attorneys for Defendants*

                                        By: /s Raymond J. Dowd_____
                                            Raymond J. Dowd
                                            Samuel A. Blaustein
                                            Hardin P. Rowley
                                            Kamanta C. Kettle
                                            250 Park Avenue
                                            New York, NY 10177
                                            Tel: (212) 682-8811
                                            RDowd@dunnington.com
                                            SBlaustein@dunnington.com
                                            HRowley@dunnington.com
                                            KKettle@dunnington.com