**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Actava TV, Inc., Master Call Communications, Inc., Master Call Corporation, and Rouslan Tsoutiev, | Index No.: 1:18-cv-06626 |
| Plaintiffs, | |
| -against- | |
| Joint Stock Company "Channel One Russia Worldwide," Closed Joint Stock Company "CTC Network," Closed Joint Stock Company "New Channel", Limited Liability Company "Rain TV-Channel," Open Joint Stock Company "ACCEPT", and Limited Liability Company "Comedy TV," and Kartina Digital GmbH, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO THE DEFENDANTS' MOTION TO DISMISS**

MOSES & SINGER LLP
Toby Butterfield
Michael Rosenberg
405 Lexington Avenue
New York, NY  10174
Telephone: (212) 554-7800
Facsimile: (212) 554-7700
tbutterfield@mosessinger.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ................................................................................................ 2

ARGUMENT .................................................................................................................... 4

I.     The Channels Explicitly Consented to This Court's Jurisdiction ........................ 4

II.    Kartina's Conduct Exposed it to This Court's Jurisdiction ................................ 10

III.   The Actava Parties Have Adequately Pled Each and Every Claim ..................... 12

IV.    Kartina Was Properly Served ............................................................................... 17

CONCLUSION ............................................................................................................... 21

CERTIFICATE OF SERVICE ....................................................................................... 22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................12

*Bell Atl. Corp., v. Twombly*,
   550 U.S. ........................................................................................................12

*Borison v. Cornacchia*,
   No. 96-CIV-4783, 1997 WL 232294 (S.D.N.Y. 1997) ..............................14

*Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*,
   137 S. Ct. 1773 (2017).................................................................................7

*Brown v. Lockhee Martin Corp.*,
   814 F.3d 619 (2d Cir. 2016).........................................................................5

*DeFlora Lake Dev. Assocs., Inc. v. Park*,
   654 F. App'x 9 (2d Cir. 2016) ....................................................................14

*DiFolco v. MSNBC Cable LLC*,
   622 F.3d 104 (2d Cir. 2010)...................................................................11, 15

*Gen. Contracting & Trading Co., LLC v. Interpole, Inc.*,
   940 F.2d 20 (1st Cir. 1991)...............................................................6, 7, 10, 11

*Glob. Packaging Servs., LLC v. Glob. Printing & Packaging*,
   248 F. Supp. 3d 487, 493 (S.D.N.Y. 2017)...............................................12

*Guzman v. Mel S. Harris & Assocs., LLC*,
   No. 16-CV-3499, 2017 WL 2271523 (S.D.N.Y. May 4, 2017) ...............14

*In re Initial Pub. Offering Sec. Litig.*,
   383 F. Supp. 2d 566 (S.D.N.Y. 2005)........................................................12

*Joint Stock Company "Channel One" Russia Worldwide et al. v. Infomir LLC*,
   Civ. No. 16-cv-01318-GBD-BCM ...........................................................2, 4

*Korn v. Princz*,
   226 A.D.2d 278 (1st Dep't 1996) ...............................................................13

*Low v. Bayerische Motoren Werke, A. G.*,
   88 A.D.2d 504 (N.Y. App. Div. 1982) .......................................................18

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007)..................................................................................9

*Melkaz International v. Flavor Innovation*,
    167 F.R.D. 634 (E.D.N.Y. Oct. 17, 2006) ..........................................................20

*MWH Int'l, Inc. v. Inversora Murten S.A.*,
    No. 11 CIV 2444 HB, 2012 WL 3155063 (S.D.N.Y. Aug. 3, 2012)......................6

*In re Nicholas*,
    457 B.R. 202 (Bankr. E.D.N.Y. 2011)................................................................13

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
    85 N.Y.2d 20 (1995) ...........................................................................................15

*Romag Fasteners, Inc. v. Bauer*,
    No. 11 CIV 3181 PAC, 2011 WL 5513380 (S.D.N.Y. Nov. 9, 2011) ...................8

*Rubycz-Boyar v. Mondragon*,
    15 A.D.3d 811, 790 N.Y.S.2d 266 (3d Dep't 2005) ............................................9

*In re S. African Apartheid Litig.*,
    643 F. Supp. 2d 423 (S.D.N.Y. 2009)................................................................17

*Shou Fong Tam v. Metro. Life Ins. Co.*,
    79 A.D.3d 484 (1st Dept. 2010).........................................................................16

*Singapore Techs. Marine, Ltd. v. Pac. Princess P'ship Ltd.*,
    No. 14-CV-1734-H (KSC), 2014 WL 12577599 (S.D. Cal. Dec. 8, 2014)...........11

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43 (1999) ...........................................................................................16

*Straubing v. Hebrew Home and Hospital for Chronic Sick*,
    154 N.Y.S.2d 411 (N.Y. 1956) .............................................................................9

*Volkswagen AG v. Beech Aircraft Corp.*,
    751 F.2d 117 (2d Cir. 1984)...........................................................................19, 20

**Statutes**

New York's General Business Law..................................................................... 2, 16-17

Plaintiffs Actava TV, Inc., Master Call Communications, Inc., Master Call Corporation, and Rouslan Tsoutiev (together, the "Plaintiffs" or the "Actava Parties") submit this Opposition to the Motion to Dismiss filed on January 29, 2019 (the "Motion") by the Defendants Joint Stock Company "Channel One Russia Worldwide" or "Channel One," Closed Joint Stock Company "CTC Network," Closed Joint Stock Company "New Channel," Limited Liability Company "Rain TV-Channel" or "Rain TV," Open Joint Stock Company "ACCEPT," Limited Liability Company "Comedy TV" (together, the "Channels") and Kartina Digital GmbH ("Kartina") (together with the Channels, the "Defendants").

## PRELIMINARY STATEMENT

This is an action about overreach.  It is a response to Defendants' illegal conduct against the Actava Parties, which ran a legitimate business that diligently complied with a settlement agreement (the "Settlement Agreement") arising from a prior action, only to be buried by Defendants' judicial misconduct.  There is not, and never was, a violation of the Settlement Agreement by the Actava Parties.  But on December 13, 2017, Defendant Channels, under Kartina's direction, baselessly moved for contempt against Actava, all while violating the Settlement Agreement *themselves* by failing to provide notice of – and an opportunity to cure – the alleged breach of which the Contempt Proceeding complained.  Such over-litigation is precisely the basis for this lawsuit.

Confirming that old habits die hard, Defendants now bring a scattershot motion to dismiss to delay this proceeding and to avoid the consequences for their misconduct.  Defendants distort the Actava Parties' position: the Actava Parties do not claim entitlement "to a mandatory license to sell, distribute and otherwise use Broadcasters' programming."  Mot. at 2.  Rather, they have been prevented from their right to lawfully *refer customers* to Matvil Corporation ("Matvil"), a

licensed provider of IPTV services whose relationship with the Actava Parties ceased due to Defendants' ongoing tortious interference.  The Actava Parties' claims for tortious interference, malicious prosecution, and breach of contract have not been litigated previously, and so cannot be barred by *res judicata* or judicial estoppel.  None of the Defendants' other arguments can sustain their flawed Motion, which the Court should deny it in its entirety.

## STATEMENT OF FACTS

On July 23, 2018, the Actava Parties filed their original complaint against the Channels for malicious prosecution, tortious interference, breach of contract, and a violation of New York's General Business Law.  Doc. No. 1.[1]  On September 5, 2018, the Actava Parties served the Defendants pursuant to an Order by this Court authorizing service on them through alternative means under Federal Rule of Procedure 4(f) – namely, service by e-mail on the Channels' counsel.  Doc. Nos. 15-16.  After filing of the complaint, ongoing activity in the Original Proceeding revealed to the Actava Parties that Kartina – a German limited liability corporation that, like Actava, provides Russian-language IPTV in the USA – had directed and funded the Channels' pursuit of the Original Proceeding.[2]  As a result, on October 5, 2018, the Actava Parties filed the amended Complaint reflecting new claims against Kartina.  Doc. No.

---

[1] The Channels and Kartina are located in and organized under the laws of the Russian Federation and Germany, respectively.  *See, e.g., See Joint Stock Company "Channel One" Russia Worldwide et al. v. Infomir LLC,* Civ. No. 16-cv-01318-GBD-BCM (the "Original Proceeding"), Dkt. No. 1, ¶¶ 26-54.  The Channels and Kartina engage in extensive business activities throughout the Northeastern United States, and as the Actava Parties argue herein, have purposefully availed themselves of the benefits of New York courts by filing, or directing the filing, of suit against the Actava Parties, whose instant suit arises out of the same nucleus of operative fact.  *See* accompanying Declaration of Toby Butterfield (the "Butterfield Decl."), ¶¶ 8, 12.

[2] By Kartina's own admission in court documents, Kartina knew that it lacked standing to bring the Original Proceeding on its own as a non-exclusive licensee of the Broadcasters' channels.  Rather than pursue claims in Kartina's name, Kartina and the Channels agreed that the Channels would file the lawsuit against allegedly infringing entities, instead of Kartina, their business partner doing so.  *See* Butterfield Decl. ¶ 12, Exh. F (Kartina declaration stating that "Kartina requested 'for commercial reasons that Kartina not be named as a plaintiff and to the extent legally and ethically possible, Kartina remain confidential in the proceedings.").  Each Channel thereafter granted Dunnington a Power of Attorney ("POA") to prosecute the lawsuit.  *See* Butterfield Decl. ¶ 14; Exh. H.

40 (hereinafter "Compl."), ¶¶ 5-8, 26-30.  In addition, the Actava Parties allege that in an attempt to force the Actava Parties to withdraw the complaint against the Channels, Kartina pressured and induced Matvil Corporation ("Matvil"), Actava's business partner, to terminate its referral agreement with Actava.  Compl. ¶¶ 81, 103.  Kartina and the Channels' wrongful interference thus caused Matvil to terminate that agreement with Actava.  *Id.*

On October 12, 2018, the Actava Parties served Kartina at one of its New York locations, namely 1202 Kings Highway, Brooklyn, NY 11229.  *See* Affidavit of Di Cong Jiang ("Jiang Aff.") at ¶ 2.  The affidavit of service initially filed mistakenly stated that Kartina Digital GmbH is a "domestic corporation," but as the corrected replacement by the professional process server explains, and as alleged in the Complaint, Kartina is a foreign limited liability company, and Kartina was the entity whose manager accepted service of process.  *See* Butterfield Decl., Ex. F; Jiang Aff. ¶ 3; Pls. Mot. at 10 ("Kartina is a German 'Gessellschaft mit beschrankter Haftung' or limited liability company located, doing business in, and organized under the laws of Germany.").

As explained below, Kartina's website refers specifically to its Brooklyn location as its "New York Office"; Kartina's Brooklyn location is branded with Kartina's logo and website address ("kartina.tv"); and the Brooklyn location's manager who accepted service of process provided a business card containing the same website and her "kartina.tv" e-mail address.  *See* Butterfield Decl. ¶ 17(c); Jiang Aff. ¶ 5, Exh. C.  In a half-hearted attempt to rebut this proof that Kartina accepted service and knows of the summons and complaint herein, the Motion attaches an affidavit from Olga Panifilova, a deputy director of Kartina, but does not deny that Kartina received the summons and complaint; does not deny that Svetlana Derevianko works for Kartina

at 1202 King's Highway, Brooklyn; does not deny that she accepted service of process on

Kartina's behalf at that office; and does not even deny that Kartina was served.[3]

## ARGUMENT

### I.   The Channels Explicitly Consented to This Court's Jurisdiction

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the

motion by pleading in good faith. . .legally sufficient allegations of jurisdiction. At that

preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations."

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318, 2017 WL

825482, at *5 (S.D.N.Y. Mar. 2, 2017) (Moses, J.) (internal citations omitted).  The Actava

Parties plainly meet this burden.

#### a.   The Channels Consented in Writing

This action is a direct response to, and outgrowth of, Defendants' brazen misconduct

against the Actava Parties following a Settlement Agreement signed by the parties on April 26,

2016.[4]  In connection with that Settlement Agreement, the Court entered injunctions (the

"Injunctions") enjoining the Actava Parties from illegally broadcasting the Channels' content.

Compl. ¶ 35.  The Actava Parties abided by those terms, but the Channels did not – and brought

a meritless contempt proceeding which Magistrate Judge Moses denied.  Compl. ¶ 79;

Butterfield Decl.  In bringing the instant Motion, however, Defendants ignore the critical

---

[3] Plaintiffs' service of the summons and complaint herein was not the first time Kartina was served at this address. A defendant in the Original Proceeding served a subpoena on Kartina at that address on May 14, 2018.  *See Joint Stock Company "Channel One" Russia Worldwide et al. v. Infomir LLC*, No. 16-cv-01318-GBD-BCM, Doc. No. 645 at 6.  While Kartina subsequently attempted to dispute the validity of that service of process, the court hearing the Original Proceeding did not rule on Kartina's motion for other reasons.

[4] The parties to the Settlement Agreement include the Actava Parties and all of the Channels captioned in the present action: Joint Stock Company "Channel One Russia Worldwide," Closed Joint Stock Company "CTC Network," Closed Joint Stock Company "New Channel", Limited Liability Company "Rain TV-Channel," Open Joint Company "ACCEPT," and Limited Liability Company "Comedy TV," plus two other channels that are not Defendants in this lawsuit (Limited Liability Company "Veriselintel" and Closed Joint Stock Company "TV DARIAL") who did not join in the Channels' ill-fated contempt motion.  *See* Butterfield Decl. ¶ 12.

provision of the Settlement Agreement – a provision the Court immediately pointed out to Defendants' counsels' attention at the December 19, 2018 pre-motion conference, Butterfield Decl. ¶ 6, in which the Channels *explicitly consented* to the jurisdiction of this Court with respect to "any dispute … relating in any way to this [Settlement] Agreement."

Obviously, parties may "consent to a court's exercise of personal jurisdiction: for example, an entity may contract or stipulate with another to permit proceedings in a state's courts, notwithstanding the remoteness from the state of its operations and organization." *Brown v. Lockhee Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016) ((citing, *e.g., Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316  (1964) (noting that "parties to a contract may agree in advance to submit to the jurisdiction of a given court"); *Petrowski v. Hawkeye-Sec. Ins. Co*., 350 U.S. 495 (1956) (per curiam) (relying on parties' stipulation to sustain exercise of personal jurisdiction)).  Here, the Settlement Agreement explicitly provides:

> 10.  **Choice of Law and Forum:** This Agreement shall be interpreted and enforced in accordance with the laws of the State of New York, without regard to its conflict-of-law principles. **The Parties agree that in the event a dispute, claim or controversy relating in any way to this Agreement arises, a Party may** make an application to the United States District Court for the Southern District of New York to reopen the Action without prejudice or **commence a plenary proceeding in that District as appropriate.**

*See* Butterfield Decl. at ¶¶ 4-5, Exh. A (emphasis added).

The present action is based on alleged breaches of the Settlement Agreement and the Channels' prior contempt proceeding claiming a violation of the Injunctions.  There is no question that this action is a "dispute … relating in any way" to the Settlement Agreement.  The Channels consented in the Settlement Agreement to the jurisdiction of the Southern District for such a dispute.

Defendants nonetheless posit that one phrase within the Injunctions – stating that "[t]his

Court shall retain jurisdiction for the limited purpose of enforcing this Injunction" – somehow (a) overrides the parties' broad consent to jurisdiction in the Settlement Agreement, and (b) precludes the Actava Parties from bringing this independent, plenary action for related claims. *See* Pls.' Mot. at 13-14; Dowd Decl., Exhs. 2-3.

Once again, Defendants misread the Injunctions.[5]   The Injunctions' language merely permits disputes arising under the Injunctions to be heard before Judge Daniels or Magistrate Judge Moses, before whom the Original Proceeding was pending.  That language does not curtail this Court's jurisdiction, to which the Channels explicitly consented with respect to related plenary actions.  As was their right, Plaintiffs chose to commence a plenary action rather than seeking to reopen Plaintiffs' dismissal from the Ongoing Proceeding.[6]

**b.      The Channels Consented by Conduct**

Even completely apart from the clear provisions of the Settlement Agreement, the law unequivocally provides that the Channels subjected themselves to the jurisdiction of the Court by directly availing themselves of this Court's jurisdiction.  Where a defendant "elect[s] to avail itself of the benefits of the courts as a plaintiff," it thereby "surrender[s] any jurisdictional objections to claims that the [plaintiff] wish[es] to assert against it in consequence of the same transaction or arising out of the same nucleus of operative facts."  *Gen. Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20, 22 (1st Cir. 1991); *MWH Int'l, Inc. v. Inversora Murten S.A.*, No. 11 CIV. 2444 HB, 2012 WL 3155063, at *5 (S.D.N.Y. Aug. 3, 2012).

---

[5] Similarly, there is no basis whatsoever for Defendants' recovery of attorneys' fees "in connection with [an] enforcement proceeding," pursuant to the language of the Injunctions vesting jurisdiction in the Court.  Defendants have not brought any claims against the Actava Parties, presumably because there are none.  *See* Pls.' Mot. at 25.

[6] Breathtakingly, Defendants' Motion falsely insinuates that Actava "judge-shopped" instead of filing "before Judge Moses as it should have if aggrieved."  *See* Pls. Mot. at 11-12.  In fact, the Actava Parties *twice* requested that Magistrate Judge Moses, who has a great deal of experience with Defendants, their claims and the facts in issue in this case, be assigned to this case too.  They first designated this case as a "related action" to the underlying proceedings, Butterfield Decl., Ex. D, Doc. No. 6; and then on upon the elevation of Judge Sullivan to the Second Circuit, they renewed that request to the Clerk of Court for the Southern District.  Butterfield Decl., Exh. E.

In *Interpole*, like the facts at bar, a foreign defendant attempted to deny that it was subject to the Court's jurisdiction despite having already brought a separate complaint against the same counterparty arising out of the same nucleus of operative fact. *Interpole*, 940 F.2d at 22. The Court summarily rejected the defendant's arguments, noting that "[h]aving sown the wind, it cannot avoid reaping the whirlwind." *Id.* The same is true here: the Channels already availed themselves of this Court's jurisdiction by bringing their ill-fated contempt proceeding. They cannot reasonably claim they should not now be subject to a lawsuit arising from their prior failed effort to maliciously prosecute the Actava Parties.

Indeed, under *Interpole*, the Channels have waived any objection to specific personal jurisdiction with respect to all of the Actava Parties' claims, which arise from the same purposeful "activity or an occurrence that takes place in the forum state"—here, the Channels' abuse of judicial process against the Actava Parties. *See Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 137 S. Ct. 1773 (2017). Plaintiffs also claim for breach of contract, as the Settlement Agreement required the Channels not to move for contempt unless they first provided notice to Plaintiffs of any suspected breach, so they could consider the claim and decide whether to respond, explain or cure the alleged breach. Compl. ¶ 98. Any normal litigant would have complied with that provision, and then mounted a contract claim for any suspected breach that remained unexplained and not cured. Here, the Channels ignored their obligation under the Settlement Agreement to notify Plaintiffs that they objected to Plaintiffs' radio advertising; ignored Plaintiffs' right to cure; and instead of claiming for breach of contract, immediately filed the Contempt Proceeding with the Court seeking a wide range of draconian remedies including forfeiture and wid-ranging monetary penalties. Such repeated over-litigation by the Channels (which is the essence of the Actava Parties' claims) is an independent basis for the

7

Court's personal jurisdiction over the Channels concerning Plaintiffs' claims.  Having "sown the wind," they "cannot avoid reaping the whirlwind."  *See Interpole*, 940 F.2d at 22.

      c.      **Defendants' Collateral Estoppel, Res Judicata, and Release Arguments are Inapposite**

Amazingly, Defendants try to claim the Court has somehow previously ruled in its favor on the claims in Plaintiffs' Complaint, when the Court did no such thing.  The Channels previously filed and then settled an infringement action against Defendants; and then following the Settlement Agreement, precipitously commenced a failed contempt proceeding.  They cannot avoid legal scrutiny for their acts following the Settlement Agreement.

Defendants claim collateral estoppel and *res judicata* bar this action, but neither the same issues nor the claims in this case were litigated in the contempt proceeding.  The only issue or claim litigated was whether the Actava Parties' advertising and promotion of Matvil, a licensed third parties' IPTV service, constituted contempt.  The Channels lost that claim.[7]  The same holds true for Plaintiff' other claims, such as for Defendants' tortious interference months after the contempt proceeding, encompassing their inducement of Matvil to sever ties with the Plaintiffs.

Lurking in Defendants' arguments are substantial falsehoods and innuendo that are easily disproven and simply do not belong in a motion to dismiss.  They claim at various times – always without citation - that the Plaintiffs "distributed," "sublicensed," "used" "promoted" "sold access" and "sold subscriptions" to the Channels' content.  Motion at pp. 1-2.  In fact, Actava merely promoted a validly licensed IPTV service offered by Matvil.  Magistrate Judge Moses ruled that

---

[7] Defendants bizarrely argue that "Actava did not cross-move or otherwise seek to recover against Broadcasters before Judge Moses as it should have," and that Actava "belatedly fil[ed] this frivolous action."  *See* Pls.' Mem. at 11-12.  A claim for malicious prosecution or tortious interference is not a compulsory counterclaim that must be asserted contemporaneously in opposition to any motion that ultimately fails.  To the contrary, it is black-letter law that Plaintiffs claim for malicious prosecution only accrued on September 27, 2017, when Actava prevailed in the contempt proceeding.  *See Romag Fasteners, Inc. v. Bauer*, No. 11 CIV 3181 PAC, 2011 WL 5513380, at *9 (S.D.N.Y. Nov. 9, 2011).  Plaintiffs' claims, filed nine months later, are neither belated nor frivolous.

Actava was not transmitting, distributing, licensing or otherwise using Channels' broadcasts or trademarks in violation of the Injunctions, as the Channels had claimed.  If *res judicata* and collateral estoppel apply at all, they bar the Channels from continuing to falsely claim that Actava's prior promotion of Matvil's licensed IPTV service was somehow illegal.

Defendants also claim that "A review of the Matvil license agreement shows that Actava misled Judge Moses to avoid contempt.  Moreover, Broadcasters have an absolute right to distribute their content."  Pls.' Mot. at 12; *cf. McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) ("[W]e accept as true all factual statements alleged in the complaint[,] draw all reasonable inferences in favor of the non-moving party. . .[and i]n general, our review is limited to the facts as asserted within the four corners of the complaint….").  Defendants' assertions are plainly contradicted by Judge Moses' ruling, which explicitly stated that Actava was neither distributing nor transmitting the Channels' content:

> Paragraph 2(a) of the Stipulated Injunction prohibits the Actava Defendants from " [b]roadcasting, re-broadcasting or otherwise transmitting" plaintiffs' Broadcasts (that is, their Channels) "without authorization." <u>Advertising and promoting Matvil's service, whether on the Website or on the radio, does not violate this provision</u>. . .[the Channels' motion for civil contempt sanctions is DENIED.]

*See* Compl. ¶ 79; Butterfield Decl. ¶ 9, Exh. C.  Defendants' arguments are an attempt to relitigate issues on which they already lost.

In a further effort to evade this lawsuit, Defendants claim that the general release in the Settlement Agreement bars the Actava Parties' claims.  The only claims discharged by a release, however, are those in existence prior to its effective date, unless an agreement explicitly states otherwise.  *See e.g., Rubycz-Boyar v. Mondragon*, 15 A.D.3d 811, 790 N.Y.S.2d 266 (3d Dep't 2005) (agreement was only for damages "up to and including the date of this release"); *Straubing v. Hebrew Home and Hospital for Chronic Sick*, 154 N.Y.S.2d 411 (N.Y. 1956) (general release

was not intended to encompass subsequent action accruing after original claim).

The general release in Settlement Agreement was executed on April 26, 2016.  Compl. ¶ 34.  It does nothing to release the Channels' *subsequent* misconduct.  The allegations giving rise to Actava's claims occurred (a) on December 13, 2016, when the Channels filed the Contempt Motion; and (b) on July 30, 2018, when Defendants induced Matvil to terminate the Referral Agreement.  Compl. ¶¶ 70, 81.  Therefore, the Settlement Agreement's general release does not bar this action.

## II.    <u>Kartina's Conduct Exposed it to This Court's Jurisdiction</u>

"A defendant may manifest consent to a court's *in personam* jurisdiction in any number of ways, from failure seasonably to interpose a jurisdictional defense, **to express acquiescence in the prosecution of a cause in a given forum, to submission implied from conduct**." *Interpole*, 940 F.2d at 22 (emphasis added); *see also* N.Y. C.P.L.R. § 302(a) (providing for specific jurisdiction over a non-domiciliary that "commits a tortious act within the state").  Here, the Actava Parties allege conduct that rises above mere acquiescence.  Rather, they allege Kartina's coordination of the Channels' efforts to litigate in New York against the Actava Parties.  Compl. ¶¶ 26-30.  The rarity and brazenness of Defendants' camouflaged arrangement – in which Kartina was not a named plaintiff, but still directed the malicious prosecution and tortious interference – should not, and does not, immunize Kartina from its submission to this Court's jurisdiction under *Interpole* and its progeny.

Publicly-available court documents from the Original Proceeding corroborate the Actava Parties' allegations with respect to Kartina's intimate involvement in the conduct giving rise to this action.  Kartina's retainer agreement with Dunnington, Bartholow & Miller – the firm which was, and is still, Defendant Channels' counsel also – authorizes the firm to "investigate and pursue legal efforts to combat unauthorized IPTV broadcasts, **including commencing**

**litigation**," and authorizes the firm "to represent multiple licensors if, in the exercise of professional judgment, an action on behalf of multiple licensors is desirable." *See* 1:16-cv-01318-GBD-BCM, Doc. No. 629-2 at 4 (emphasis added). Tellingly, the agreement also features the following disclaimer:

> You understand that during the course of litigation Kartina's existence and role will likely be required by law to be revealed and that Kartina may be determined to be a necessary party under the applicable rules of civil procedure.
>
> *Id.*

Separately, a Kartina executive declared that "Kartina has worked very closely with Dunnington since it entered the Retainer in investigating piracy of the Broadcasters' content in the United States, crafting pleadings **and coordinating a joint legal strategy to be pursued on behalf of the Broadcasters**." *Id.*, Doc. No. 629 at 4 (emphasis added).

Accordingly, the Actava Parties' allegations concerning Kartina's pursuit of the Original Proceeding are not only plausible, but are already substantiated. That Kartina 's ploy of avoiding naming itself as a plaintiff against the Actava Parties does not immunize it from this Court's jurisdiction, especially as that arrangement was by design. Kartina is no stranger to this controversy, having initiated it and invoked this Court's jurisdiction just like the Channels. *Cf. Singapore Techs. Marine, Ltd. v. Pac. Princess P'ship Ltd.*, No. 14-CV-1734-H (KSC), 2014 WL 12577599, at *5 (S.D. Cal. Dec. 8, 2014) ("Here, like the plaintiff in *Interpole* . . . S.T. Marine came to California to seek relief and was not 'haled into the district court' to defend an action.).[8]

---

[8] To be clear, the Actava Parties do not believe that jurisdictional discovery is necessary, as personal jurisdiction over Kartina is appropriate under *Interpole*, and CPLR § 302(a)(2) provides for specific jurisdiction over a non-domiciliary that "in person or through an agent. . .commits a tortious act within the state." Separately, however, upon information and belief, jurisdictional discovery would establish that (a) Kartina maintains hundreds of contractual arrangements with New York-based dealers; and (b) years before the parties' relationship deteriorated, Kartina and the Actava Parties once contracted for the joint provision of IPTV services in the Northeastern U.S. market. See Butterfield Decl. ¶ 19. Accordingly, if the Court deems that *Interpole* is inapposite, and that Kartina's interference was "*without* the state," the Actava Parties would make a prima facie showing through jurisdictional discovery with respect to the third prong of New York's long-arm statute: that Kartina "regularly does or solicits

**III.**    **The Actava Parties Have Adequately Pled Each and Every Claim**

In deciding a Rule 12(b)(6) motion, a court must "accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 110-11 (2d Cir. 2010) (internal quotations omitted).  A claim will survive a motion to dismiss so long as it is facially plausible and gives fair notice to a defendant of the basis for the claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp., v. Twombly*, 550 U.S. 544, 570 (2007).  Where factual allegations permit a court to draw a reasonable inference of plausible liability, a claim should not be dismissed.  *Iqbal*, 556 U.S. at 678.  Actava meets this standard for each claim it alleges.

**a.**    **The Actava Parties Have Pled a Plausible Tortious Interference Claim**

The Actava Parties properly allege each element of a tortious interference claim: (1) they had business relations with a third party—here, Matvil; (2) the defendant interfered with those business relations and injured the relationship; and (3) the defendant acted "for a wrongful purpose or used dishonest, unfair, or improper means".  *See Glob. Packaging Servs., LLC v. Glob. Printing & Packaging*, 248 F. Supp. 3d 487, 493 (S.D.N.Y. 2017).  Defendants ignore the Court's role on a motion to dismiss, however, which is to "assess the legal feasibility of the complaint, **not to assay the weight of the evidence** which might be offered in support thereof." *In re Initial Pub. Offering Sec. Litig.*, 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (emphasis added).

For instance, Defendants argue the first two elements fail on the basis of *their* extraneous allegations that the Actava Parties "relinquished all rights to distribute Broadcasters' content and Matvil had no rights to distribute Broadcasters' content," and thus, supposedly, "there was no

---

business, or engages in any persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state."  CPLR § 302(a)(3).

legitimate relationship with Matvil." Pls.' Mot. at 15. The Court is merely required to review the sufficiency of the allegations in the complaint; the Channels attempt to bring in new arguments about new alleged facts and new provisions in agreements that are not the subject of the allegations in the complaint is inaccurate, and a complete red herring not worth the Court's time to attempt to analyze. The Court should reject this transparent effort at moving the goalposts on a motion to dismiss.

As to the third element, likewise, Defendants argue that they could not have acted with the sole purpose of harming Actava "where, as here, Actava was already enjoined from distributing Broadcasters' content." *Id.* But the Complaint alleges that Actava *lawfully* promoted Matvil's services as a third-party dealer. Judge Moses' opinion concluded that Actava's promotion of Matvil did not violate the Injunctions.[9] Despite *losing* that argument, and offering no evidence, let alone allegations in the Complaint, to the contrary, the Channels now argue that this Court should somehow reach the opposite conclusion. We trust the Court will not succumb to such gaslighting.

Indeed, the Actava Parties allege that the Defendants acted "for a wrongful purpose" in multiple ways. *See* Compl. ¶ 5 ("by litigating baseless claims against [it]"); *id.* ¶ 3 (by "wrongfully induc[ing] Matvil Corporation, Actava's new business partner, to sever its contract with Actava."). Importantly, under New York law, this element can be established by litigation or the threat of litigation "if the actor has no belief in the merit of the litigation or if, though having some belief in its merit, he nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive

_____

[9] The opinion concluded that Actava was not the source of the programming, and so had not "distributed" (or even "used") the Channels' content in violation of the Channels' rights. *See* Butterfield Decl., Ex. C, at 26-27; *see also* Compl. ¶ 47 ("Actava had every reason to believe that [its] *own* promotion of Matvil's streaming service would not violate any contractual term in any agreement between Matvil and any Broadcaster or be otherwise unlawful.").

adjudication." *In re Nicholas*, 457 B.R. 202, 217 (Bankr. E.D.N.Y. 2011) (citing *Universal City Studios, Inc. v. Nintendo Co*., Ltd, 797 F.2d 70, 75 (2d Cir. 1986)).

Finally, contrary to Defendants' claims, the Actava Parties are clear in alleging "what, if any, business relationships have been harmed". *See* Mot. at 16. First, as to the harm flowing from the contempt proceedings, the Complaint alleges that "growth in monthly and yearly sales plummeted, and Actava's monthly active referrals plateaued, leaving only those whom Actava made efforts to subscribe prior to the Channels' malicious interference with Actava's business." Compl. ¶ 77. Second, Matvil's termination of the Referral Agreement marked the complete loss of all prospective future customer relationships maintained through it. Compl. ¶ 81. Accordingly, the Complaint sufficiently alleges that the Actava Parties were "actually and wrongfully prevented from entering into or continuing in a specific business relationship." *See Korn v. Princz,* 226 A.D.2d 278, 278-79 (1st Dep't 1996).

### b.  The Actava Parties Have Pled a Plausible Malicious Prosecution Claim

Here, too, Defendants properly recite the elements of the claim, yet mangle their application to the facts in order to avoid the inevitable conclusion that the claim is properly pled. A malicious prosecution requires: (1) a prior proceeding; (2) termination of that proceeding in favor of the malicious prosecution plaintiff; (3) a lack of probable cause; (4) initiation of the action out of malice; and (5) a showing of special damages. *See Borison v. Cornacchia*, No. 96-CIV-4783, 1997 WL 232294 (S.D.N.Y. 1997). That is precisely what the Complaint alleges.

Audaciously, Defendants argue that they "substantially prevailed as set forth in the Injunctions and Settlement Agreement." *See* Pls.' Mot. at 18. Not only does the fact of settlement of claims against Plaintiffs fail to establish that the Defendants "prevailed" as a

matter of law,[10] but this action concerns the Channels' baseless initiation of the prior *contempt proceeding*, which terminated in the Actava Parties' favor.  *See* Butterfield Decl. ¶ 9, Exh. C; Compl. ¶ 79 ("Magistrate Judge Moses found unequivocally that there was no basis for any finding of contempt.").

As the Actava Parties have plainly alleged all elements of a malicious prosecution claim, Defendants' Motion fails.  *See* Compl. ¶ 8 ("[W]ith substantial bad faith and without any quantum of merit, the Channels initiated contempt proceedings. . .at Kartina's behest."); *id.* ¶ 93 (Defendants "lacked probable cause, acted in actual malice, and acted with a wrong and improper motive"); *id.* ¶ 94 ("As a direct and proximate result of the Defendants' Contempt Motion and/or malicious prosecution, the Actava Parties have suffered and continue to suffer significant economic damages").

### c.    The Actava Parties Have Pled a Plausible Breach of Contract Claim

The elements of a claim under New York contract law are: (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages.  *DeFlora Lake Dev. Assocs., Inc. v. Park*, 654 F. App'x 9, 10 (2d Cir. 2016).  The Complaint alleges a provision in the executed Settlement Agreement requiring "written notice of [a] suspected breach" and allowing a cure period of ten days. Compl. ¶ 93.  It further alleges that the Actava Parties abided by the agreement's terms, while Defendants did not.  Compl. ¶¶ 46, 65, 73 (the contempt motion was "the first avenue by which the Defendants lodged their objections to Actava's radio advertisements. . .depriv[ing] Actava] of any notice or opportunity to cure.").  These allegations suffice to survive a motion to dismiss.

---

[10] On the contrary, the execution of settlement agreement is not even an admission of wrongdoing – and is certainly not proof that the other party "prevailed".  *See, e.g., Guzman v. Mel S. Harris & Assocs., LLC*, No. 16-CV-3499, 2017 WL 2271523, at *1 (S.D.N.Y. May 4, 2017).

Defendants acknowledge that the breach-of-contract claim relates specifically to the Channels' failure to specify Actava's radio broadcasts as the source of the suspected breach. *See* Pls' Mot. at 19 (citing Compl. ¶ 65). Nonetheless, without citation, they claim that "[t]his suggestion is barred by *res judicata* and collateral estoppel because this matter was fully litigated before Judge Moses." Pls.' Mot. at 19. Defendants' argument is again false – the extent of the Channels' notice obligation was not litigated before Judge Moses – and inapposite on a motion to dismiss. It is the Actava Parties' allegations – not Defendants' attempt to expunge their notice and cure obligation from the Settlement Agreement – which must, at this stage, be taken as true. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 110-11 (2d Cir. 2010).

### d.   The Actava Parties Have Pled a Plausible GBL § 349 Claim

GBL § 349 "governs consumer-oriented conduct and, on its face, applies to virtually all economic activity." *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55 (1999). "Consumer-oriented" conduct subject to section 349 includes all "acts or practices [that] have a broader impact on consumers at large," and includes conduct aimed at business organizations as well as individuals. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25-27 (1995). Despite this expansive applicability, Defendants appear to insist that conduct involving private businesses is not covered by the statute. *But see Shou Fong Tam v. Metro. Life Ins. Co.*, 79 A.D.3d 484, 486 (1st Dept. 2010) (making clear that "private contractual disputes *upon matters not affecting the consuming public* are not actionable under this section.").

Here, the Actava Parties allege that Kartina sought to force its sole, lower-priced, competitor out of business via baseless litigation and tortious interference, and that it did so in a manner that undoubtedly affected consumers by destroying market competition. *See* Compl. ¶ 104 (Kartina "harm[ed] consumers via the reduced competition in the market for IPTV service to

Russian-speaking audiences, [who] suffered decreased competition for low prices and quality service to consumers. . .[And] by portraying Kartina's actions as actions by the Channel Defendants, Kartina materially misled consumers of Russian-language television channels.").

Importantly, in retaining counsel in the Original Proceeding, even Kartina implied that it decided to ally with the Channels in secret – and pursue litigation without being a named plaintiff – precisely in order to preserve its market standing and reputation with customers. *See* 1:16-cv-01318-GBD-BCM, Doc. No. 629-2 at 4 ("[Kartina has] requested **for commercial reasons** that Kartina not be named as a plaintiff and to the extent legally and ethically possible, Kartina remain confidential in the proceedings") (emphasis added).  Accordingly, because the harm to Actava coincides with downstream impact on consumers, Kartina's wrongful conduct is proscribed by the statute – and the Actava Parties have adequately alleged as such.

## IV.  Kartina Was Properly Served

Defendants try to argue that Kartina was not properly served, relying on a typographical error in the Affidavit of Service – now corrected – which referred to Kartina as a "domestic" corporation, when in fact Kartina is alleged to be, and Kartina admits to being, a German corporation whose manager willingly accepted service of process at the Brooklyn location which Kartina itself holds out to the public as one of its locations.  Service was thus proper where it was effectuated.

Attempting to exploit the most trivial of technicalities in the original proof of service, Defendants misstate the requirements of the Federal Rules of Civil Procedure – which the Actava Parties have fully met.  The Hague Service Convention governs only "service *outside* the United States."  *See In re S. African Apartheid Litig.*, 643 F. Supp. 2d 423, 432 (S.D.N.Y. 2009) (citing Fed. R. Civ. P. 4(f) (emphasis added)).  The Actava Parties served Kartina *inside* the United States, complying with Rule 4(h), which permits service on a "domestic or foreign

corporation. . .in a judicial district of the United States. . .in the manner prescribed by Rule 4(e)(1) for serving an individual." *See* Fed. R. Civ. P. 4(h)(1)(A).[11]

Here, the Actava Parties have made a *prima facie* showing that Kartina's Brooklyn location is part of Kartina itself. Kartina holds this address out to its consumers as one of its locations. Butterfield Decl., ¶¶ 18(a)-(g), Exhs. I-L. The location's exterior is branded with Kartina's website address. *Id*., ¶ 18(b), Exh. B. The process server even obtained the manager's business card, Jiang. Aff., Exh. C, and swore that the manager accepted service of process on behalf of Kartina, ¶ 6. Most tellingly, even in the affidavit it offers in support of this Motion, Kartina ***does not state otherwise,*** tepidly arguing that Kartina "was not served in Germany." Panfilova Decl., ¶ 5. Plaintiffs were not obligated to serve Kartina there. The evidence is plain that Kartina was served and accepted such service of process at the Brooklyn location that it holds out to the public as one of its own locations.

Attempting to attack this plain record, Karina contradicts its own marketing information to consumers, and tries to maintain to this Court that it does *not* have an office in New York. Assuming that this Brooklyn location is somehow maintained by some other entity, Plaintiffs were still entitled to serve Kartina there, as there is prima facie evidence that location is Kartina's general agent in New York, or is "so dominated by Kartina as to be a 'mere department' of Kartina," thus satisfying the service requirements of New York law. *See Low v. Bayerische Motoren Werke, A. G*., 88 A.D.2d 504 (N.Y. App. Div. 1982) (citing *Delagi v. Volkswagenwerk A.G. of Wolfsburg, Germany*, 29 N.Y.2d 426 (Ct. App. 1972)). In determining whether an entity is a "mere department" of another, courts consider the following factors:

---

[11] Rule 4(e)(1), in turn, states that an individual may be "served in a judicial district of the United States by . . .following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made.").

common ownership, financial dependency of the subsidiary on the parent corporation, the degree

to which the parent corporation "interferes in the selection and assignment of the subsidiary's

executive personnel and fails to observe corporate formalities," and "the degree of control over

the marketing and operational policies of the subsidiary exercised by the parent." *Volkswagen*

*AG v. Beech Aircraft Corp.*, 751 F.2d 117 (2d Cir. 1984).

Although Kartina now conclusorily states that it "does not have a New York office"

(without even attempting to explain why its website and personnel all appear at the Brooklyn

address), Kartina's own website acknowledges its "New York Office" is located at the very

Brooklyn address where Plaintiffs' proof of service confirms they served Kartina. *See*

Butterfield Decl. ¶ 18(c), Exh. J.  Kartina has even placed multiple print advertisements in

Russian-language publications in New York which describe Kartina's New York office at 1202

Kings Highway, Brooklyn, New York as one of two "Official Kartina.TV NY stores." *Id.* ¶

18(d), Exh. K.  Kartina even maintains a separate English-language website,

www.kartinatvbrooklyn.com, which directs customers seeking technical assistance back to

Kartina Digital GmbH. *Id. ¶* 18(g); Exh. L.

There's no question but that the Brooklyn location is Kartina's.  Plaintiffs' process server

swore that he served the summons on Kartina's "Marketing Manager," Svitlana Derevianko, who

affirmatively "indicated that she was authorized to accept service on behalf of [Kartina]." *See*

Jiang Aff. ¶¶ 5-6.[12]  Ms. Derevianko handed him a business card containing her "kartina.tv" e-

mail address and linking to the website www.kartina.tv. *Id*. ¶¶ 5, Ex. C.  In the Original

Proceeding, Kartina's executive Olga Panfiolova declared that Kartina Digital GmbH's "website

---

[12] Mr. Jiang notes that the affidavit of service mistakenly states that Kartina Digital GmbH is a "domestic corporation," when Kartina is in fact a foreign limited liability corporation organized under German laws, as alleged in the Complaint and as acknowledged by Defendants. *See* Jiang Aff. ¶ 3.

is https://www.kartina.tv."  *See* Butterfield Decl. ¶ 18(a), Ex. F (No. 16-cv-01318-GBD-BCM,

No. 629, ¶ 10); *see also* Exh. K at p. 6 (Kartina's print advertisement noting that "[m]ore details

are available **on the company website** www.kartina.tv") (emphasis added).  Ms. Derevianko's

business card unequivocally ties her acceptance of process to Kartina.  Even if she were

associated with a separate entity, each factor of the four-part *Beech Aircraft* test is satisfied, as

the Brooklyn location is (a) owned by Kartina, which the Actava Parties (b) have reason to

believe employs and pays Ms. Derevianko, whose identifying information reveals (c) that there

are no corporate formalities distinguishing Kartina and some supposed Brooklyn entity, such that

(d) the Marketing Manager of the latter reports to the parent entity in Germany.  *See Beech*

*Aircraft Corp.*, 751 F.2d at 117.   Overall, it is nonsensical to contend that the Brooklyn location

where Kartina's Marketing Manager works – and accepted service of process – is merely a "third

party" where Kartina's product can be purchased rather than an instrumentality of Kartina itself.

Accordingly, even assuming *arguendo* that the Brooklyn location is not an office of Kartina, as

its marking information and marketing manager state, the record supports a prima facie showing

of either (a) an agency relationship between the operator of that Brooklyn location and Kartina

Digital GmbH, or (b) that the Brooklyn location is a "mere department" of Kartina.

      Service of process did not end there.  As an alternative basis for service on Kartina, the

summons and complaint were "re-delivered" to Kartina, which by then was obviously well aware

of this action against it.[13]  New York courts have "embraced a. . .flexible approach to service

upon corporations," such that service is upheld if "(a) the process server acts with due diligence

in attempting to fulfill the statutory requirements of personal delivery. . .(b) the process server

---

[13] Indeed, Plaintiffs' counsel sent Kartina's counsel (both in this action and in others) a courtesy copy of the complaint herein as soon as they filed it.  As a result, Kartina and its counsel were aware of the summons and complaint herein from the outset of the case last July 23, 2018.

nevertheless serves a person not authorized to accept service; and (c) the recipient redelivers the papers to one who is authorized to accept service." See *Melkaz International v. Flavor Innovation*, 167 F.R.D. 634, 646 (E.D.N.Y. Oct. 17, 2006) (holding that re-delivery was "evidenced by the fact that the Defendants were able to file responses to the Complaint and therefore must have had notice of the filing of the Complaint in a timely fashion.").  Even if the Brooklyn location was not an agent of Kartina – and the Actava Parties contend it is – the papers were re-delivered nonetheless to the German entity, which retained counsel and responded.  As with much of the rest of their Motion, Defendants are wasting the Court's and Plaintiffs' time with spurious and non-substantive arguments.[14]

## CONCLUSION

For the reasons stated above, the Motion should be denied.


Dated:  February 19, 2019
             New York, New York

Respectfully submitted,

MOSES & SINGER LLP


By: /s/  *Toby Butterfield*
          Toby Butterfield
          Michael Rosenberg
          405 Lexington Avenue
          New York, NY  10174
          Telephone: (212) 554-7800
          Facsimile: (212) 554-7700

          *Attorneys for Plaintiffs*

---

[14] Enough effort has been spilled on Kartina's trivial arguments on this point already, but if the Court finds any aspect of service problematic, the Court may and should order service of process *nunc pro tunc* via service on Kartina's counsel – the same as the Channels' counsel, as permitted by the Court under Fed. R. Civ. P. 4(f).  Such service by alternative means was already ordered by the Court with respect to the Channels.  Doc. Nos. 15-16.

## **CERTIFICATE OF SERVICE**

On February 19, 2019, a true and correct copy of the foregoing document was served

via ECF on the following counsel of record:

To:    DUNNINGTON, BARTHOLOW
       & MILLER LLP

       Raymond J. Dowd via RDowd@dunnington.com
       Samuel A. Blaustein via SBlaustein@dunnington.com
       Hardin P. Rowley via HRowley@dunnington.com
       250 Park Avenue, Suite 1103
       New York, NY 10177
       Telephone: (212) 682-8811
       Facsimile: 212-661-7769

       *Attorneys for Defendants*

                        /s/  *Michael M. Rosenberg*
                        Michael M. Rosenberg