UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
ACTAVA TV, INC., ET AL,

                        Plaintiffs,

      -against-

JOINT STOCK COMPANY "CHANNEL ONE
RUSSIA WORLDWIDE," ET AL.,

                        Defendants.
------------------------------------------------------------- x

18-CV-6626 (ALC)

**OPINION & ORDER**

ANDREW L. CARTER, JR., District Judge:

## SYLLABUS

In 2014, Kartina Digital GmbH ("Kartina"), an Internet Protocol Television distributor, hired lawyers to investigate the potential infringement of Russian-language television broadcasts individually owned and operated by multiple Russian-language television channels (the "Channels"). Kartina quickly identified Actava TV Inc. ("Actava") – a company allegedly intercepting and re-transmitting the Channels' content – as a target of their investigation. Kartina and the Channels, the Defendants in this case,[1] sought swift justice by way of two lawsuits alleging violations of copyright and trademark law. After extensive litigation, a foreshadowing of sorts, the Parties reached a Settlement Agreement enforced via two court-ordered Stipulated Injunctions. In exchange for a litigation ceasefire, Actava, a Plaintiff in this action,[2] agreed to

---

[1] Plaintiffs name Joint Stock Company "Channel One Russia Worldwide" ("Channel One"), Closed Joint Stock Company "CTC Network" ("CTC"), Close Joint Stock Company "New Channel" ("New Channel"), Limited Liability Company "Rain TV-Channel" ("Rain TV"), Limited Liability Company "Comedy TV" ("Comedy TV"), Open Joint Stock Company "ACCEPT" ("ACCEPT") (collectively, the "Channels"), and Kartina Digital GmbH ("Kartina") (collectively, "Defendants") as Defendants in this action.
[2] Actava sues in conjunction with Master Call Communications, Inc. Master Call Corporation, and Rouslan Tsoutiev (collectively, "Plaintiffs").

pay for the perceived infractions as well as refrain from broadcasting, copying, or otherwise distributing Channels' content.

Three months after the Settlement Agreement, Matvil emerged as a competitor of Kartina – one licensed to distribute and provide Internet Protocol Television, including the Channels' content. Unbeknownst to Kartina and the Channels, by September 8, 2016, Matvil and Actava had entered into a partnership by which Actava would contribute the hardware and Matvil the software. More specifically, Actava provided box-top technology and attracted customers, and Matvil provided the Russian-language content, which it was authorized to distribute.

It was smooth sailing for one month. Then, on October 19, 2016, Kartina and the Channels caught wind of the agreement between Matvil and Actava. The Channels claimed that Actava was in violation of the Settlement Agreement and was determined to pursue all relief available under the law. They began their quest by filing a contempt motion in the Southern District of New York, with Kartina's backing. That motion proved to be unfruitful, but also just one small battle in a larger war. Kartina and the Channels proceeded to pressure and induce Matvil to end the relationship with Actava – a pursuit that proved to be successful.

It is now Actava who sues both Kartina and the Channels for malicious prosecution, tortious interference with a business relationship, breach of contract, and violations of New York General Business Law § 349. Kartina and the Channels claim that Actava's Complaint is without merit, but this Court disagrees. For the following reasons, Defendants' Motion to Dismiss is denied.

## PROCEDURAL HISTORY

Plaintiffs initiated this action on July 23, 2018. ECF No. 1. On October 2, 2018, after considering numerous letter motions and addressing service issues, Judge Richard J. Sullivan scheduled an initial conference. ECF No. 35. On October 3, 2018, Judge Sullivan vacated a Clerk's Certificate of Default previously entered as to the Channels Defendants. ECF Nos. 25, 37. On October 5, 2018, Plaintiffs filed an Amended Complaint ("FAC"). ECF No. 40. On October 17, 2018, the previously scheduled conference was adjourned *sine die*. ECF No. 47.

On October 29, 2018, this case was reassigned to the undersigned. After receiving a plethora of letters from the Parties, the Court scheduled a Status Conference. ECF Nos. 53-54, 56-60. Pursuant to the Status Conference, held on December 19, 2018, the Court granted Defendants leave to file a motion to dismiss and set a briefing schedule for the Parties. ECF No. 62. On January 7, 2019, the Court granted Plaintiffs' outstanding Motion to Compel, and denied Defendants' request to stay discovery pending adjudication of the scheduled Motion to Dismiss. ECF Nos. 57-58, 64. Shortly thereafter, the Court referred this case to Magistrate Judge Kevin N. Fox for general pre-trial purposes. ECF No. 65.

On January 29, 2019, pursuant to the briefing schedule set by the Court, Defendants filed their Motion to Dismiss. ECF No. 68. On February 19, 2019, Plaintiffs filed their Opposition. ECF No. 80. On February 27, 2019, Defendants replied to Plaintiffs' Opposition. ECF No. 84. Defendants' Motion is considered fully briefed. After careful consideration, Defendants' Motion to Dismiss is hereby **DENIED**.

3

## BACKGROUND[3]

Although the disputes amongst these Parties have been well-documented via a multitude of cases both within and outside of this district, the instant case arises out of a distinct and unique set of facts.

The Parties in this case exist and operate within the television and broadcast industry. *See* FAC. Plaintiff Actava is a technology company that provides box-tops and other infrastructure to consumers of broadcast entertainment, Russian-language channels in particular, in the United States. *Id.* ¶ 3. The Channel Defendants (hereinafter, the "Channels") own, operate, and produce various Russian-language television channels that are broadcast in the Russian Federation. *Id.* ¶ 2. Defendant Kartina is a licensed distributor authorized to provide Internet Protocol Television ("IPTV") containing the various Channels' broadcasts to customers around the world. *Id.* ¶ 4.

The Complaint alleges that, on or around July 7, 2014, Defendant Kartina, with the consent of the Channels, retained a law firm to "investigate and litigate against entities that Kartina believed were infringing on the Channels Defendants' copyrights." FAC ¶ 26. The suspected infringement consisted of the interception and re-transmission of the Channels' content. *Id.* Plaintiffs allege that, per a business agreement between Kartina and the Channels, the Channels would initiate the filing of any lawsuits due to Kartina's lack of standing. *Id.* ¶ 27.

On November 4, 2015, the melodrama increased when three of the instant Channels filed suit against Actava in this district alleging trademark and copyright infringement. FAC ¶ 28. Actava insists that they were unaware of the suit due to service issues and their lack of knowledge led to a premature entry of default judgment. *Id.* ¶¶ 28-29. Over two months after the

---

[3] When determining whether to dismiss a case, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Pursuant to that standard, this recitation of facts is based on Plaintiffs' Amended Complaint and accompanying submissions. *See* ECF No. 40.

filing of the first lawsuit, and upon learning of its existence, Actava promptly hired counsel and moved to vacate the default judgment. *Id.* ¶ 29.

On February 19, 2016, subsequent Channels filed a second lawsuit against Actava similarly alleging violations of trademark and copyright laws.[4] FAC ¶ 30. As with the first suit, the Complaint alleges that Kartina was the driving force behind the litigation. *Id.* The uncertainty accompanying the two pending suits led Actava to cease their streaming activities on February 23, 2016 – conduct which they have not resumed to this date. *Id.*

As is common in complex commercial disputes, the Parties reached a settlement (the "Settlement Agreement") disposing of both cases. FAC ¶ 34. Per the terms of the Settlement Agreement, Actava agreed to pay the Channels a "substantial sum" as well as agreed not to "broadcast, copy, distribute, or otherwise use the Broadcasts in any manner, including on the Website, without the express written consent" of the Channels. *Id.* Two stipulated injunctions, one signed on June 3, 2016 by Magistrate Judge Barbara Moses and one signed on June 6, 2016 by Judge George B. Daniels (the "Stipulated Injunctions"), permanently enjoined and restrained Actava, and others, from:

> a. Broadcasting, re-broadcasting or otherwise transmitting [the Channels'] Broadcasts as identified in Annex 1 or any other channel that [the Channels'] may in the future broadcast via any medium, including but not limited to internet protocol television ("IPTV") and social media, without authorization;
> b. directly or indirectly infringing or making use, in any manner whatsoever, of [the Channels'] Broadcasts including any associated programs without authorization;
> c. directly or indirectly infringing or making use, in any manner whatsoever, of [the Channels'] Marks ... without authorization;
> d. publishing or distributing any promotional materials referring to [the Channels'] Broadcasts or Marks; in any medium, including, but not limited to the internet (including IPTV and social media), television,

---

[4] The second lawsuit also named the instant Plaintiffs, Rouslan Tsoutiev, Master Call Communications, Inc., and Master Call Corporation, as defendants. FAC. ¶ 30.

5

> radio, newspapers, magazines, direct mail or oral communication without authorization ...

*Id.* ¶ 35; *see* FAC Ex A-B.

The Complaint suggests that the language utilized in the Stipulated Injunctions and the Settlement Agreement left much to be desired by way of the definitions assigned to terms. FAC ¶¶ 36-37. Due to the vague nature of the various agreements, Actava states that paragraph eight (8) of the Settlement Agreement was incorporated. *Id.* ¶ 38. Paragraph eight states:

> "In the event that any Plaintiff suspects that any Defendant is in breach of this Agreement, such Plaintiff shall provide written notice of the suspected breach to the appropriate Defendant(s) as set forth in paragraph 17 of this Agreement. If any Defendant fails to remedy such suspected breach within ten (10) business days of receiving written notice, the Plaintiffs shall be entitled to seek all judicial relief against Defendants for such suspected breach."[5]

*Id.*; *see* Butterfield Decl. Ex 1, ECF No. 81 ("Settlement Agreement"). Actava further claims that it relied on this clause in executing the Settlement Agreement. FAC ¶ 38.

Following the enactment of the Settlement Agreement and the closure of the two initial cases, Actava and Matvil Corporation ("Matvil") began discussing a potential business opportunity. FAC ¶¶ 39-45. Like Kartina, Matvil is an IPTV provider that supplies television content to users around the world.[6] *Id.* ¶ 39. The Channels authorized Matvil to "transmit, broadcast, distribute, display, and otherwise make use of those Channels' programs, content, and other materials ..." *Id.* ¶ 40. Aside from providing access to Channels' content, Matvil also supplies users with access to over 140 additional channels. *Id.* ¶ 41.

---

[5] Due to Plaintiff's reliance on the Settlement Agreement in the Complaint, the Settlement Agreement is incorporated by reference. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).
[6] Matvil is not currently named as a defendant in any litigation featuring the instant Parties, nor was it a defendant in the two cases covered by the Settlement Agreement. FAC ¶ 39.

6

Matvil identified Actava as a company with the particular expertise and knowledge to allow Matvil to expand throughout the Northeast market. FAC ¶ 42. Matvil's CEO contacted Actava with a proposition that Actava become a dealer for Matvil. *Id.* ¶ 43. A dealer is a "sales agent[] who sell[s] subscriptions to new customers on behalf of licensed content providers." *Id.* Negotiations ensued, and the Parties entered into a referral agreement ("Referral Agreement") with two main objectives: "(a) increase Matvil's audience for its licensed streams of the Channels' programming; and (b) restart and revitalize Actava's business in a manner that adhered to the Settlement Agreement [and] Stipulated Injunctions ..." *Id.* ¶¶ 45-47.

In constructing the Referral Agreement, the Complaint alleges that both Actava and Matvil carefully considered its appropriateness in light of the Settlement Agreement and Stipulated Injunctions. FAC ¶¶ 46-48. Matvil represented that its agreements with the Channels both authorized Matvil's promotion of the Russian broadcasting services and Matvil's engagement with third-party dealers. *Id.* ¶ 47. In return, Actava assured Matvil that acting as a third-party dealer would not violate the Settlement Agreement or Stipulated Injunctions – an assurance fully within Actava's interpretation of the Settlement Agreement and Stipulated Injunctions. *Id.* ¶¶ 47-48. The Referral Agreement outlined Actava's responsibilities as follows: to serve as a source of referrals; to promote Matvil's services; to sign up and register customers; to provide customer and technical support; and to manage customer payments. *Id.* ¶ 50. Actava was not permitted to broadcast any of the Channels' content. *Id.* ¶ 52. Matvil and Actava signed the Referral Agreement on or around September 8, 2016. *Id.* ¶ 49.

Actava alleges that it acted in accordance with the Settlement Agreement and Stipulated Injunctions by refraining from accessing, broadcasting, or otherwise using the Channels' content and data. FAC ¶¶ 53-56. Actava maintains that the extent of their involvement with Matvil

consisted of loading Matvil software on to Actava hardware so Matvil users could access the offered content. *Id.* ¶¶ 57-58. The Complaint alleges that the narrowed business venture was successful shortly after its inception. *Id.* ¶¶ 60-62.

On October 19, 2016, the Channels "falsely" accused Actava of violating the Settlement Agreement via a letter sent to Mr. Tsouliev. FAC ¶ 63. The letter warned that the Channels would pursue all judicial relief" if Actava failed to cease its distribution of their content within ten (10) days of receipt of the letter. *Id.* Seven days after receiving the letter from the Channels Defendants, Actava replied in an effort to "clarify the nature of Actava's relationship with Matvil and to reassure [the Channels] that Actava's conduct is consistent with its obligations" under the previous agreements between the Parties. *Id.* ¶ 66. On November 14, 2016, the Channels responded, once again indicating that Actava was in breach of the Agreements. *Id.* ¶ 67. The Channels also offered to "consider" the Referral Agreement if Actava provided them with a copy, which Actava promptly agreed to do. *Id.* ¶¶ 67-68. Despite Actava's willingness to provide the Referral Agreement, the Channels Defendants refused to look at it. *Id.* ¶¶ 68-69.

Following a December 12, 2016 meeting between the Parties, at which Actava once again attempted to show the Channels the Referral Agreement, the Channels immediately filed a motion for civil contempt and sanctions ("Contempt Motion") with Magistrate Judge Moses. FAC ¶¶ 69-70. Actava contends that the Contempt Motion, like all other litigation between the Parties, was filed at Kartina's behest. *Id.* ¶ 70. Among other things, the Contempt Motion referred to Actava's Russian-language radio advertisements as a basis for the relief sought. *Id.* ¶ 72. At no point prior to the filing of the Contempt Motion had the Channels provided notice to Actava that the radio broadcasts were in violation of the Settlement Agreement and Stipulated Injunctions. *Id.*

The filing of the Contempt Motion caused Actava to voluntarily cease performance under the Referral Agreement. FAC ¶ 73. "The effects of the contempt proceeding were catastrophic on Actava's business," as Actava suffered a "toppling blow." *Id.* ¶¶ 76-77. Actava was forced to fire employees and lost sales, subscriptions, and the good-will they had acquired in the Russian-language broadcast industry – losses making a sustained existence in the industry virtually impossible. *Id.* ¶¶ 76-78.

On September 27, 2017, Judge Moses found that the Channels did not make out a prima facie case of contempt. FAC ¶ 79; FAC Ex C at 30 ("Moses Op."). Judge Moses determined that the Channels claims were unsupported by evidence, and she denied their motion in full. *Id.*

Despite a positive ruling on the Contempt Motion, Actava struggled to resume activity, as anticipated, following the contempt proceedings. FAC ¶ 80. Feeling "baselessly target[ed]," Actava initiated this action on July 23, 2018. *Id.* ¶ 80; ECF No. 1. On July 30, 2018, Actava claims that the Defendants "pressured and induced Matvil to end its relationship with Actava." FAC ¶ 81. As a result of the "wrongful interference," Matvil terminated the Referral Agreement. *Id.* Actava alleges that Defendants' interference and misconduct caused a loss in revenue in excess of $30 million. *Id.* ¶ 82.

Plaintiffs seek vindication for the alleged tortious interference with a prospective economic advantage and malicious prosecution at the hands of all Defendants. FAC ¶¶ 85-88, 93-94. Plaintiffs also claim that the Channels are in breach of contract by violating the notice provision of the Settlement Agreement. *Id.* ¶ 98. Finally, Plaintiffs allege that Kartina violated N.Y. General Business Law § 349 by engaging in deceptive practices that damaged consumers. *Id.* ¶¶ 103-05.

## STANDARD OF REVIEW

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

## DISCUSSION

Defendants move to dismiss Plaintiffs' Complaint on a wide range of theories. Defendants claim that the Complaint is barred by the doctrine of collateral estoppel, the Court lacks personal jurisdiction over Defendants, and the Complaint fails to state a claim for a plethora of reasons. The Court addresses each in turn.

## I. Jurisdiction[7]

Defendants allege that this Court does not have personal jurisdiction over the Channels. Mem. Supp. Def's' Mot. 13 ("Defs' Mem.").

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (quoting *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006)).

### a. The Channels Consented to this Court's Jurisdiction

Aside from the traditional bases of personal jurisdiction – namely specific and general – which require an analysis of the forum state's long-arm statute and due process concerns, a "defendant may consent to personal jurisdiction." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016); *see Nypl v. JPMorgan Chase & Co.*, 2018 WL 1472506, at *2 (S.D.N.Y. March 22, 2018) ("A court's exercise of personal jurisdiction comports with due process if a defendant has consented to appear in that forum."). For example, "an entity may contract or stipulate with another to permit proceedings in a state's courts, notwithstanding the remoteness from the state of its operations and organization." *Brown*, 814 F.3d at 625 (citing *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311 (1964)). However, any exercise of personal jurisdiction must comport with the United States Constitution's due process guarantee requiring "that any jurisdictional exercise be consistent with traditional notions of fair play and substantial justice." *Id.* (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

---

[7] Under 28 U.S.C. § 1332(a), the federal district courts have original jurisdiction over all civil actions where there is diversity of citizenship between the parties and "the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a)(1). Here, it is undisputed that diversity is complete, and the statutory requirements have been met. *See Sloan v. Truong*, 573 F.Supp.2d 823, 828 (S.D.N.Y. 2008).

Here, the Channels Defendants consented to jurisdiction in the Settlement Agreement executed by the Parties.[8] *See* Settlement Agreement ¶ 10; *Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*, 366 F.Supp.3d 516, 560 (S.D.N.Y. 2018) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements.")). The Settlement Agreement explicitly provides:

> "10. Choice of Law and Forum: This Agreement shall be interpreted and enforced in accordance with the laws of the State of New York, without regard to its conflict-of-law principles. The Parties agree that in the event a dispute, claim or controversy relating any way to this Agreement arises, a Party may make an application to the United States District Court for the Southern District of New York to reopen the Action without prejudice or commence a plenary proceeding in that District as appropriate."

Settlement Agreement ¶ 10. Based on the facts alleged in the FAC, the instant action relates to the Settlement Agreement. *See* FAC. Plaintiffs allege, among other things, that the Channels Defendants breached the Settlement Agreement by failing to adhere to its notice provision. *Id.* ¶ 98. Because the Settlement Agreement expressly indicates consent to the jurisdiction of this Court, Defendants arguments to the contrary are without merit.

### b. This Court has Personal Jurisdiction over Defendant Kartina

Plaintiffs need only make a "prima facie showing of jurisdiction through the complaint's allegations and affidavits" in order to survive Defendants' Motion to Dismiss on jurisdictional grounds. *Krepps v. Reiner*, 414 F.Supp.2d 403, 406 (S.D.N.Y. 2006) (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)). And, at this stage, the Court is to construe the facts in the light most favorable to Plaintiffs. *See Faber*, 648 F.3d at 104. In doing so, this Court determines that Plaintiffs have alleged facts sufficient to demonstrate that Kartina's business in

---

[8] Each Channels Defendant was party to the Settlement Agreement. *See* Settlement Agreement.

this district is of a "continuous and systematic" nature. *See Duravest, Inc. v. Viscardi, A.G.*, 581 F.Supp.2d 628, 633 (S.D.N.Y. 2008). Plaintiffs have alleged that Kartina has "purposely availed" itself of the privileges associated with conducting activities within this state, and that Kartina has actively sought the "benefits and protections of its laws." *Id.* (quoting *Ehrenfeld v. Mahfouz*, 489 F.3d 542, 548 (2d Cir. 2007)).

Specifically, Plaintiffs thoroughly allege in the FAC that Kartina is, and has been, the brains of the entire operation as well as the source of funding for the constant stream of litigation. FAC ¶¶ 6, 26, 30. Plaintiffs allege that Kartina's attempts to shield itself by refraining from naming itself as a Plaintiff in any preceding litigation are simply part of Defendants' grand scheme. *Id.* The Complaint indicates that Kartina seeks to benefit from Matvil's demise and continues to use the court systems in this district to accomplish their goals. *Id.* ¶¶ 7, 27. At this stage, Plaintiffs have alleged facts sufficient to make a prima facie showing of personal jurisdiction.

## II. Collateral Estoppel does not Bar Plaintiff's Complaint

Defendants alleged that Plaintiff's FAC is "barred by the doctrine of collateral estoppel because Actava has no right to distribute [the Channels'] content." Defs' Mem. 11. This argument is nugatory.

"Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Burton v. Undercover Officer*, 671 Fed.Appx. 4 (2d Cir. 2016) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002)). Collateral estoppel carries with it four requirements:

> "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the

13

> part[ies] had a full and fair opportunity to litigate the issue; and (4) the
> resolution of the issue was necessary to support a valid and final judgment
> on the merits."

*Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2012) (quoting *Marvel Characters, Inc.*, 310 F.3d at 288-89). Here, Defendants have struck out swinging on all four requirements.

Defendants claim that their failed Contempt Motion is the basis for collateral estoppel. Defs' Mem. 11. At no point did Judge Moses rule on the issues presented by Plaintiffs today. Judge Moses' decision was strictly limited to whether Actava "violated the terms of the Stipulated Injunction by entering into a referral agreement with a former co-defendant, Matvil …". Moses Op. 1. Judge Moses considered whether Actava violated the terms of the agreements between Actava and the Channels. *See id.* Plaintiff's claims of tortious interference, malicious prosecution, breach of contract, and violations of N.Y. General Business Law § 349 were not considered by Judge Moses, nor have they ever been litigated or decided in any manner.

Thus, collateral estoppel does not preclude Plaintiff's FAC.

### III. General Release

Defendants also claim that the general release contained within the Settlement Agreement "forbids" Actava from bringing the instant suit. Defs' Mem. 22. However, the plain language of the Settlement Agreement indicates that Actava released and discharged the Channels from any and all related claims "as of the [e]ffective [d]ate." Settlement Agreement ¶ 7. As stated by Plaintiffs, the Settlement Agreement was executed on April 26, 2016. FAC ¶ 34. The Contempt Motion – the earliest basis for the instant suit – was filed by Defendants on December 13, 2016. *Id.* ¶ 70. Thus, the general release does not preclude the instant suit.

## IV. Insufficient Service of Process

Next, Defendants claim, in a conclusory fashion, that Kartina was not properly served. Defs' Mem. 24. Defendants are misguided in their attack of Plaintiffs' method of service.

"When a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010). Rule 4 of the Federal Rules of Civil Procedure governs service of a summons and complaint. *See Zhang v. Baidu.com Inc.*, 932 F.Supp.2d 561, 564 (S.D.N.Y. 2013). "In New York, a process server's affidavit of service establishes a prima facie case of the account of the method of service." *Fallman v. Hotel Insider, Ltd.*, 2016 WL 5875031, at *3 (S.D.N.Y. Oct. 7, 2016) (quoting *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002)).

Plaintiffs filed the Affidavit of Di Cong Jiang, a process server, in support of their Opposition to Defendants' Motion to Dismiss. ECF No. 82, ("Jiang Aff."). According to the Affidavit, Mr. Jiang served the Summons and Complaint at a business office located at 1202 Kings Highway, Brooklyn, NY 11229 on October 12, 2018. Jiang Aff. ¶ 2-4.[9] The location of service had a large awning with the name "Kartina.TV." *Id.* ¶ 4. Mr. Jiang served the documents on Svitlana Derevianko, who presented a business card stating that she was a Marketing Manager for Kartina.TV. *Id.* ¶ 5. After explaining the nature of the service, Ms. Derevianko indicated "that she was authorized to accept service on behalf of" Kartina. *Id.* ¶ 6.

Defendants have not refuted Mr. Jiang's affidavit. As such, at this time, Plaintiffs have made a prima facie showing of adequate domestic service in accordance with the Federal Rules of Civil Procedure.

---

[9] Plaintiff filed an Affidavit of Service on October 15, 2018 indicating the same. ECF No. 45.

## V. Plaintiff's Complaint Alleges Facts Sufficient to Demonstrate a Plausible Entitlement to Relief on All Claims

### a. Tortious Interference

To successfully plead a claim for tortious interference with a prospective business relationship, a Plaintiff must allege the following: (1) a business relationship with a third party; (2) the defendant's knowledge of that relationship and the intentional interference with it; (3) that the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship. *RSM Production Corp. v. Fridman*, 643 F.Supp.2d 382, 405 (S.D.N.Y. 2009) (citing *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006)). Additionally, a "plaintiff must assert, with respect to each defendant, that the defendant's actions were the "but for" cause of the alleged breach." *Id.* To demonstrate "but for" causation, a plaintiff must show that any breach would not have occurred but for the activities of the defendant. *Id.* (citing *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990)).

Here, Plaintiffs have satisfactorily alleged each element. First, Plaintiffs allege a business relationship with a third party, Matvil. FAC ¶¶ 43-54. Plaintiffs extensively discuss the Referral Agreement, rendered effective no later than September 8, 2016, and the scope of their respective obligations. *Id.* ¶¶ 49-52. Second, Plaintiffs alleged that Defendants knew of the business relationship, as indicated by the letter sent from Defendants to Plaintiffs, and intentionally interfered in two ways: first, by initiating "baseless contempt proceedings"; and second, by pressuring and inducing Matvil into terminating the Referral Agreement with Actava.[10] *Id.* ¶¶ 63-64, 81-86. Third, Plaintiffs allege that this interference was malicious, dishonest, unfair, and

---

[10] While counsel for the Channels sent the letter and corresponded with Plaintiffs, as alleged in the FAC, Plaintiffs claim that Kartina was the spark behind the Contempt Motion and tortious interference, as well as the bank rolling entity funding the Channels' litigious tactics. (FAC ¶¶ 6, 26, 30.

improper due to their compliance with the Settlement Agreement and Stipulated Injunctions. *Id.* ¶¶ 70-80. Fourth, and finally, Plaintiffs allege that their once lucrative relationship with Matvil ended due to Defendants' interference, and they have subsequently lost sales, subscriptions, their reputation, and business prospects. *Id.* ¶¶ 80-82; 89.

The allegations in Plaintiffs' FAC are sufficient to state a claim for tortious interference with a prospective business relationship.

### b. Malicious Prosecution

A plaintiff must allege facts sufficient to demonstrate four elements in order to adequately plead a claim of malicious prosecution: "(1) the initiation of an action by the defendant against the plaintiff; (2) begun with malice; (3) without probable cause to believe it can succeed; (4) that ends in failure or, in other words, terminates in favor of the plaintiff." *Sankin v. Abeshouse*, 545 F.Supp.2d 324, 327 (S.D.N.Y. 2008) (citing *O'Brien v. Alexander*, 101 F.3d 1479 (2d Cir. 1996)). "Such a cause of action may be based upon a civil action instituted against plaintiff provided there is a showing of some interference with plaintiff's person or property ..." *O'Brien*, 101 F.3d at 1485. In the event that the action on which a malicious prosecution claim is based is a civil in nature, a plaintiff "must also show [that] special damages resulted from the action." *Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC*, 2013 WL 417406, at *14 (S.D.N.Y. Feb. 2013) (citing *Engel v. CBS, Inc.*, 93 N.Y.2d 195 (N.Y. 1999)). Once again, Plaintiffs have adequately alleged all necessary elements.

Despite Defendants' attempts to muddy the facts on which Plaintiffs' claims are based, Plaintiffs allege that Defendants' initiation of contempt proceedings gives rise to the malicious prosecution claims. FAC ¶ 91. Further, in satisfaction of the second element, Plaintiffs allege that Defendants initiated said proceedings with malice and in bad faith. *Id.* ¶¶ 71-77. Third, Plaintiffs

allege that Defendants knew their Contempt Motion would not succeed, yet filed it anyways. *Id.* ¶ 79. Fourth, it is undisputed that Judge Moses held that the Channels did not make out a prima facie case of contempt – a ruling that demonstrates termination in favor of Plaintiffs. *Id.*; *see* Moses Op. To round out their claim, Plaintiffs also thoroughly state the damages suffered as a result of the alleges malicious prosecution. FAC ¶ 94.

Thus, the allegations in Plaintiffs' FAC are sufficient to sustain a claim for malicious prosecution at this stage in these proceedings.

### c. Breach of Contract

Under New York Law, for a breach of contract claim to survive a motion to dismiss a plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Jill Stuart (Asia) LLC v. Sanei Intern. Co.*, 548 Fed.Appx 20, 21 (2d Cir. 2013) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).

Here, Plaintiffs have done as much. Plaintiffs allege the existence of a Settlement Agreement between Actava and the Channels.[11] FAC ¶¶ 34-35. Further, Plaintiffs allege that they adequately performed under the contract. *Id.* ¶¶ 66, 79, 97. Additionally, Plaintiffs claim that the Channels breached the Settlement Agreement by failing to adhere to the notice provision mutually agreed upon, particularly in regard to the radio broadcasts. *Id.* ¶¶ 72-73, 98. As alluded to earlier, Plaintiffs also specifically claim damages resulting from the Channels' breach. *Id.* ¶ 99.

Once again, Plaintiffs have alleged facts sufficient to sustain their burden at this stage.

---

[11] The Stipulated Injunctions entered into correspond with the Settlement Agreement. FAC ¶¶ 34-36.

### d. Violation of New York General Business Law § 349

"New York General Business Law § 349 (hereinafter, "Section 349") is directed at wrongs against the consuming public." *Car-Freshner Corp. v. D & J Distributing and Mfg., Inc.*, 2014 WL 3900564, at *4 (S.D.N.Y. Aug, 8, 2014) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y. 2d 20, 24 (1995)). A plaintiff must satisfy three elements to state a claim under Section 349: "a plaintiff must allege (1) acts or practices that are consumer-oriented; (2) that such acts or practices are deceptive or misleading in a material way; and (3) that plaintiff has been injured by reason of those acts." *Lava Trading Inc. v. Hartford Fire Ins. Co.*, 326 F.Supp.2d 434, 439 (S.D.N.Y. 2004) (quoting *DePasquale v. Allstate Insurance Co.*, 179 F.Supp.2d 51, 58 (E.D.N.Y. 2002)). Deceptive acts or practices are "those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Harner v. Allstate Ins. Co.*, 2012 WL 12326459, at *7 (Sept. 7, 2012). Courts within this district have interpreted the second element as to include a materiality requirement as well. *See Bildstein v. MasterCard Intern. Inc.*, 329 F.Supp.2d 410, 415 (S.D.N.Y. 2004) ("[A] plaintiff must allege that the defendant has engaged in an act or practice that is deceptive or misleading in a *material* way and that plaintiff has been injured by reason thereof.") (internal quotations omitted) (emphasis added). Typically, a violation of Section 349 "involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising." *Gottlieb Development LLC v. Paramount Pictures Corp.*, 590 F.Supp.2d 625, 636 (S.D.N.Y. 2008) (internal quotations omitted). However, "[b]usiness competitors can bring a claim under this statute where the public interest is at issue." *Gross v. Bare Escentuals Beauty, Inc.*, 632 F.Supp.2d 293, 299 (S.D.N.Y. 2008) (citing *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)).

Here, Plaintiffs allege that "Kartina directed the Channel Defendants' pursuit of the contempt motion." FAC ¶ 102. The "coordinated attack" on Actava "caused damage to competition between Kartina and Actava, harming consumers via the reduced competition in the market for IPTV service to Russian-speaking audiences." *Id.* ¶¶ 102-03. Plaintiffs claim that the malicious litigation strategy employed by Kartina to eliminate the competition from the Russian-language market is both deceptive and misleading in a material way. *Id.* ¶¶ 102-04. Further, Plaintiffs allege a harm stemming from Kartina's conduct greater than mere consumer confusion. *Narrative Ark Entertainment LLC v. Archie Comic Publications, Inc.*, 2017 WL 3917040, at *6 (S.D.N.Y. Sept. 5, 2017) (internal quotations omitted). At this stage, the facts alleged in the FAC are sufficient to make it plausible that Kartina's conduct carries with it "significant ramifications for the public at large." *Gross*, 632 F.Supp.2d at 299 (quoting *Shred-It USA, Inc. v. Mobile Data Shred, Inc.*, 228 F.Supp.2d 455, 465 (S.D.N.Y. 2002)).

As such, Plaintiffs have satisfied the necessary elements of a New York General Business Law § 349 claim.

## CONCLUSION

For the aforementioned reasons, Defendants' Motion to Dismiss is hereby **DENIED**. Defendants also seek an award of attorneys' fees for their perceived breach of the Stipulated Injunctions and Settlement Agreement by Actava. Defs' Mem. 25. However, due to the denial of Defendants' Motion in its entirety, Defendants' requested relief is inappropriate and also **DENIED**.

**SO ORDERED.**

Dated: September 18, 2019
New York, New York

ANDREW L. CARTER, JR.
**United States District Judge**