**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
Actava TV, Inc., Master Call Communications, Inc.,
Master Call Corporation, and Rouslan Tsoutiev,                           18-CV-06626 (ALC)

            Plaintiffs,

            -against-

Joint Stock Company "Channel One Russia Worldwide,"        **DEFENDANTS' ANSWER**
Closed Joint Stock Company "CTC Network," Closed           **TO COMPLAINT AND**
Joint Stock Company "New Channel", Limited Liability       **COUNTER-CLAIMS**
Company "Rain TV-Channel," Closed Joint Stock
Company "TV DARIAL," Limited Liability
Company "Comedy TV," and Kartina Digital GmbH

            Defendants.
-------------------------------------------------------------------X
Joint Stock Company "Channel One Russia Worldwide,"        **JURY TRIAL**
Closed Joint Stock Company "CTC Network," Closed           **DEMANDED**
Joint Stock Company "New Channel," Limited Liability
Company "Rain TV-Channel," Closed Joint Stock
Company "TV DARIAL, "Limited Liability Company
"Comedy TV," and Kartina Digital GmbH

            Counterclaim Plaintiffs,

            -against-

Actava TV, Inc., Master Call Communications Inc.,
Master Call Corporation, and Rouslan Tsoutiev,

            Counterclaim Defendants.
-------------------------------------------------------------------X

      Defendants Joint Stock Company "Channel One Russia Worldwide," Closed Joint Stock

Company "CTC Network," Closed Joint Stock Company "New Channel", Limited Liability

Company "Rain TV-Channel," Closed Joint Stock Company "TV DARIAL," Limited Liability

Company "Comedy TV," (collectively, "Broadcasters" or "Channels")[1] and Kartina Digital GmbH ("Kartina" and together with Broadcasters or Channels, "Defendants"), by and through the undersigned counsel, hereby submit the following answer and counterclaims to Plaintiffs Actava TV, Inc., Master Call Communications, Inc., Master Call Corporation, and Rouslan Tsoutiev (collectively, "Plaintiffs" or "Actava")'s Amended Complaint and Demand for Jury Trial (ECF 40) (the "Complaint") as follows:

## DEFENDANTS' RESPONSES

## PRELIMINARY STATEMENT[2]

1.      The allegations of Paragraph 1 are denied.

2.      The allegations of Paragraph 2 are admitted.

3.      Defendants lack information sufficient to admit or deny the allegations of Paragraph 3, except to admit that Actava offered Broadcasters' content to U.S. consumers.

4.      The allegations of Paragraph 4 are admitted , except to deny that Kartina is Matvil's primary competitor.

5.      The allegations of Paragraph 5 are denied, except to admit that the Channels have litigated against pirates in the United States with Kartina's assistance.

6.      The allegations of Paragraph 6 are denied, except to admit that the Channels sued Actava and obtained an injunction and settlement.  .

7.      The allegations of Paragraph 7 are denied.

---

[1] Any reference herein to "Broadcasters" or "Channels" includes the programming of Broadcasters/Channels.
[2] Defendants have included some of the headings and subheadings in the Complaint simply to assist in reading the pleadings and do not admit the accuracy of those headings and subheadings to the extent that they can be construed as allegations of fact.  To the extent a heading or subheading in the Complaint is not explicitly included in the answer, Defendants either deny or lack information sufficient to admit or deny the allegations contained therein.

8.      The allegations of Paragraph 8 are denied except to admit that the Channels made

an unsuccessful contempt motion against Actava before Judge Barbara Moses.

9.      The allegations of Paragraph 9 are denied.

### PARTIES

*Plaintiffs*

10.     The allegations of Paragraph 10 are admitted.

11.     The allegations of Paragraph 11 are admitted.

12.     The allegations of Paragraph 12 are admitted.

13.     The allegations of Paragraph 13 are admitted.

*Defendants*

14.     The allegations of Paragraph 14 are admitted.

15.     The allegations of Paragraph 15 are admitted.

16.     The allegations of Paragraph 16 are admitted.

17.     The allegations of Paragraph 17 are admitted.

18.     The allegations of Paragraph 18 are denied to the extent that "Darial" is not named

in the Complaint's caption.

19.     The allegations of Paragraph 19 are admitted.

20.     The allegations of Paragraph 20 are admitted.

21.     The allegations of Paragraph 21 are admitted.

22.     The allegations of Paragraph 22 are denied, except to admit that Kartina Digital

GmbH is a limited liability corporation incorporated and organized under the laws of Germany

and Kartina's principal place of business is in Germany.

## JURISDICTION AND VENUE

23.     The allegations of Paragraph 23 state a legal conclusion to which no response is required.  To the extent a response is required, Defendants lack information sufficient to admit or deny the allegations of Paragraph 23, particularly because the Complaint fails to allege Rouslan Tsoutiev's citizenship.

24.     The allegations of Paragraph 24 state a legal conclusion to which no response is required.  To the extent a response is required, the allegations of Paragraph 24 are denied.

25.     The allegations of Paragraph 25 state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 25 and aver that this action does not arise under the Copyright Act and no Defendant resides in this judicial district.

## STATEMENT OF FACTS

26.     The allegations of Paragraph 26 are denied, except to admit that Kartina and the Channels retained Dunnington to investigate and litigate against pirates on or around July 7, 2014.

27.     The allegations of Paragraph 27 are denied, except to admit that the Channels agreed with Kartina to sue Actava jointly and authorized Dunnington Bartholow & Miller LLP to bring suit.

28.     The allegations of Paragraph 28 are denied, except to admit that CTC, Darial and New Channel sued Actava for multiple causes of action for interception and retransmission of Russian-language television channels.  Defendants aver that the New York Secretary of State was properly served in compliance with law, that Actava defaulted, and that a default judgment was entered.

29.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 29.

30.     The allegations of Paragraph 30 are denied, except to admit that on or around February 19, 2016, the Channels sued Actava.  The Channels respectfully refer to the complaint therein for the substance of the allegations.

31.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 31

32.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 32.

33.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 33.

34.     The allegations of Paragraph 34 are denied, except to admit that the parties settled the matter and that Paragraph 34 accurately quotes from the Settlement.

35.     The allegations of Paragraph 35 are admitted.

36.     The allegations of Paragraph 36 are admitted.

37.     The allegations of Paragraph 37 are admitted.

38.     The allegations of Paragraph 38 are denied, except to admit there is a notice provision as accurately quoted.

39.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 39, except to admit that the Channels dismissed claims against Matvil.

40.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 40, except to admit that Matvil obtained licenses from the Channels (not including Darial) and that such licenses included the right to make use of programming and logos.

41.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 41.

42.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 42.

43.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 43.

44.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 44.

45.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 45, except to aver that Actava's distribution of the Channels breached the Settlement Agreement.

46.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 46.

47.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 47, except to aver that Actava's actions breached the Settlement Agreement and Actava never sought permission from the Channels as the Settlement Agreement required.

48.     The allegations of Paragraph 48 are denied.

49.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 49, except to aver that Actava's distribution of the Channels breached the Settlement Agreement.

50.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 50, except to aver that Actava's distribution of the Channels breached the Settlement Agreement.

51.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 51, except to aver that Actava's distribution of the Channels breached the Settlement Agreement.

52.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 52, except to aver that Actava's distribution of the Channels breached the Settlement Agreement.

53.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 53, except to aver that Actava's distribution of the Channels breached the Settlement Agreement.

54.     The allegations of Paragraph 54 are admitted

55.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 55, except to admit that Matvil's customers access Matvil streaming services.

56.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 56, except to aver that Actava's distribution of the Channels violates the Settlement Agreement.

57.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 57.

58.     Defendants deny the allegations of Paragraph 58 and aver that Actava's collecting monies for distributing the Channels' content violates the Settlement Agreement.

59.     The allegations of Paragraph 59 are denied.

60.     The allegations of Paragraph 60 are denied except to admit that Actava advertised the Channels using trademarks forbidden by the Injunction and by the Settlement Agreement.

61.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 61, except to aver that Actava's distribution of the Channels violated the Settlement Agreement.

62.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 62, except to aver that Actava's distribution of the Channels violated the Settlement Agreement.

63.     The allegations of Paragraph 63 are admitted.

64.     The allegations of Paragraph 64 are denied.

65.     The allegations of Paragraph 65 are denied, except to admit the contents of the letter.

66.     The allegations of Paragraph 66 are denied, except to admit the contents of the letter.

67.     The allegations of Paragraph 67 are denied, except to admit the contents of the letter.

68.     The allegations of Paragraph 68 are denied, no redacted Referral Agreement was ever provided to Dunnington.

69.     The allegations of Paragraph 69 are denied, no redacted Referral Agreement was ever provided to Dunnington.

70.     The allegation of Paragraph 70 that the contempt motion was filed on December 13, 2016, and the contents thereof is admitted.  The other allegations of Paragraph 70 are denied.

71.     The allegation of Paragraph 71 are denied.

72.     The allegations of Paragraph 72 are denied.

73.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 73, The allegations of Paragraph 73 are denied. except to deny that Actava was deprived of notice and an opportunity to cure and that the contempt motion caused Actava's alleged woes.

74.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 74.

75.     The allegations of Paragraph 35 are denied.

76.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 76, except to deny that the contempt motion caused Actava's alleged woes.

77.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 77, except to deny that the contempt motion caused Actava's alleged woes.

78.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 78, except to deny that the contempt motion caused Actava's alleged woes.

79.     Defendants deny the allegations in Paragraph 79, except to admit the contents of Judge Moses's opinion.

80.     Defendants lack information sufficient to admit or deny the allegations of Paragraph 80, except to deny that the contempt motion caused Actava's alleged woes.

81.     The allegations of Paragraph 81 are denied.

82.     The allegations of Paragraph 82 are denied.

## **FIRST CAUSE OF ACTION**

### *(Tortious Interference with Prospective Economic Advantage against all Defendants)*

83.     Defendants incorporate by reference their answers to the preceding paragraphs as if fully set forth herein.

9

84.     The allegations of Paragraph 84 state a legal conclusion to which no response is required.  To the extent a response is required, the allegations of Paragraph 84 are denied.

85.     The allegations of Paragraph 85 state a legal conclusion to which no response is required.  To the extent a response is required, the allegations of Paragraph 85 are denied.

86.     The allegations of Paragraph 86 state a legal conclusion to which no response is required.  To the extent a response is required, the allegations of Paragraph 86 are denied.

87.     The allegations of Paragraph 87 state a legal conclusion to which no response is required.  To the extent a response is required, the allegations of Paragraph 87 are denied.

88.     The allegations of Paragraph 88 are denied.

89.     The allegations of Paragraph 89 state a legal conclusion to which no response is required.  To the extent a response is required, the allegations of Paragraph 89 are denied.

## SECOND CAUSE OF ACTION

### *(Malicious Prosecution against all Defendants)*

90.     Defendants incorporate by reference their answers to the preceding paragraphs as if fully set forth herein.

91.     Defendants deny the allegations of Paragraph 91, except to admit that a contempt motion was filed.

92.     The allegations of Paragraph 92 state a legal conclusion to which no response is required.  To the extent a response is required, the allegations of Paragraph 92 are denied.

93.     The allegations of Paragraph 93 state a legal conclusion to which no response is required.  To the extent a response is required, the allegations of Paragraph 93 are denied.

94.     The allegations of Paragraph 94 state a legal conclusion to which no response is required.  To the extent a response is required, the allegations of Paragraph 94 are denied.

## THIRD  CAUSE OF ACTION

### *(Breach of Contract against the Channel Defendants)*

95.     Defendants incorporate by reference their answers to the preceding paragraphs as if fully set forth herein.

96.     The allegations of Paragraph 96 are admitted.

97.     The allegations of Paragraph 97 are denied.

98.     The allegations of Paragraph 98 state a legal conclusion to which no response is required.  To the extent a response is required, the allegations of Paragraph 98 are denied.

99.     The allegations of Paragraph 99 state a legal conclusion to which no response is required.  To the extent a response is required, the allegations of Paragraph 99 are denied.

## FOURTH  CAUSE OF ACTION

### *(Violation of N.Y. General Business Law § 349 against Kartina)*

100.     Defendants incorporate by reference their answers to the preceding paragraphs as if fully set forth herein.

101.     The allegations of Paragraph 101 are denied.

102.     The allegations of Paragraph 102 are denied, except to admit that Kartina coordinated and financed antipiracy litigation for the Channels.

103.     The allegations of Paragraph 103 are denied, except to admit that a contempt motion was filed.

104.     The allegations of Paragraph 104 state a legal conclusion to which no response is required.  To the extent a response is required, the allegations of Paragraph 104 are denied.

105.     The allegations of Paragraph 105 state a legal conclusion to which no response is required.  To the extent a response is required, the allegations of Paragraph 105 are denied.

106.    The allegations of Paragraph 106 state a legal conclusion to which no response is required.  To the extent a response is required, the allegations of Paragraph 106 are denied.

## ANSWER TO PRAYER FOR RELIEF

Plaintiffs are  not entitled to any relief from this court.

## DEFENSES

Without assuming any burden of proof that would otherwise rest with Plaintiffs, Defendants assert the following defenses:

### FIRST DEFENSE

### Failure to State a Claim on Which Relief Can Be Granted

107.    Plaintiffs fail, in whole or in part, to state a claim on which relief can be granted.

### SECOND DEFENSE

### Lack of Standing

108.    Plaintiffs' claims are barred, in whole or in part, for lack of standing.

### THIRD DEFENSE

### Lack of Subject Matter Jurisdiction

109.    Plaintiffs' claims are barred in whole or in part, for lack of subject matter jurisdiction.

### FOURTH DEFENSE

### Statute of Limitations

110.    Plaintiffs' claims are barred in whole or in part, by the relevant statutes of limitations.

## FIFTH DEFENSE

### Equitable Estoppel

111.    Plaintiffs' claims are barred in whole or in part by the doctrine of equitable estoppel. The defendants relied on the plaintiffs' conduct and the plaintiffs' change of position was to the defendants' detriment.

## SIXTH DEFENSE

### Unclean Hands

112.    Plaintiffs' claims are barred in whole or in part by the doctrine of unclean hands, as Actava committed tortious interference, malicious prosecution, and breach of contract with regard to the settlement agreement,

## SEVENTH DEFENSE

### No Damages

113.    Plaintiffs' claims are barred, in whole or in part, because Plaintiffs suffered no damages.

## EIGHTH DEFENSE

### Failure to Mitigate Damages

114.    Plaintiffs' claims should be barred by their failure to mitigate damages.

## NINTH DEFENSE

### Failure to Comply With the Settlement Agreement

115.    Plaintiffs' claims are barred, in whole or in part, because Plaintiff failed to comply with the Settlement Agreement which prohibited Actava from distributing the Channels. Plaintiffs' failure to comply with the Settlement Agreement caused damages to the Defendants.

## TENTH DEFENSE

### Failure to Join Necessary Party

116.    Plaintiffs' claims are barred, in whole or in part, because one or more parties not named in the Complaint may be indispensable parties to this action, and Defendants reserve the right to seek the joinder of those parties whose absence from the action renders it such that complete relief cannot be granted without the missing party.

## ELEVENTH DEFENSE

### Collateral Estoppel

117.    Plaintiffs' claims are barred, in full or in part, by the doctrine of collateral estoppel.

## TWELFTH DEFENSE

### Res Judicata

118.    Plaintiffs' claims are barred, in full or in part, by the doctrine of res judicata.

## THIRTEENTH DEFENSE

### Compulsory Counterclaim

119.    The tortious interference claim is barred because, as a compulsory counterclaim, Actava should have raised it in *Channel One Russia Worldwide v. Infomir LLC No. 16-cv-01318.*

## ADDITIONAL DEFENSES

120.    Defendants reserve the right to supplement or amend this answer, including through the addition of further defenses, based upon the course of discovery, pleadings, or other investigation in this action.

## DEFENDANTS' COUNTERCLAIMS

Defendants ("Counterclaim Plaintiffs"), by and through its attorneys, bring the following Counterclaims against Actava ("Counterclaim Defendants"), and state as follows:

**FACTS**

**Actava Is Not a Licensed Broadcaster of Broadcasters' Programming**

121.    Kartina and Matvil are two non-exclusive licensees of certain Broadcasters in the United States.

122.    Broadcasters have not entered into licensing agreements with Actava.

**Broadcasters Sue Actava in November 2015 Due to Its Industrial Level Piracy of Broadcasters' Programming**

123.    On November 4, 2015, Closed Joint Stock Company "New Channel," Closed Joint Stock Company "CTC Network," and  Closed Joint Stock Company "TV Darial," sued Actava Inc. in the Southern District of New York alleging, among nine counts, violations of the Federal Communications Act ("FCA"), copyright infringement, and trademark infringement.

124.    Actava was broadcasting these three channels' "programming via internet and set-top box" and possessed the "technology infrastructure that it had purchased and configured at considerable expense for receiving, storing, and transmitting video over the internet."

125.    After Actava ignored service of the motion for default, Judge Daniels entered a default judgment.

126.    The injunction, among other things, enjoined Actava TV Inc. from "broadcasting, re-broadcasting or otherwise transmitting Plaintiffs' broadcasts via any medium, including, but not limited to,  IPTV, . . . directly or indirectly infringing or making any use of, in any manner whatsoever, Plaintiffs' broadcasts . . . [and] publishing or distributing any promotional materials or other communications referring to Plaintiffs' broadcasts in any medium…."

127.    On February 29, 2016, the remaining Broadcasters in this action sued Actava and the other plaintiffs in this action asserting claims for violations of the FCA and copyright and trademark infringement.

128.    After Actava's piracy was exposed, its revenues purportedly dropped considerably.

**Actava Enters Into A Settlement Agreement with Broadcasters Related to the *Actava* and *Infomir* Actions**

129.    On April 26, 2016, Actava and Broadcasters entered into the Settlement Agreement to resolve the Actava and Infomir cases. Attached hereto as **Exhibit A** is a copy of the Settlement Agreement.

130.    Actava represented and warranted in Paragraph Six of the Settlement that it presently did not "broadcast, copy, distribute or otherwise use the Broadcasts in any manner, including on the Website, without the express written consent of the relevant Plaintiffs…" (*See* Paragraph 6.d.ii–iv of the redacted Settlement Agreement).

131.    The Settlement Agreement contained a Mutual General Release.  Actava agreed to "release and discharge [Broadcasters] from any and all claims that relate in any manner to the [Actava] Action and/or the [Infomir] Action.

132.    Actava breached the Settlement Agreement by distributing the Channels without the Channels' consent.

**Broadcasters Agree to Settle Their Claims Against Actava Provided It Enters Into Stipulated Injunctions While Actava Schemes to Evade Them**

133.    On June 3 and 6, 2016 Judge Moses and Daniels entered stipulated injunctions.

134.    The Injunctions bar Actava from broadcasting, re-broadcasting or transmitting Broadcasters' content, directly or indirectly making any use of Broadcasters' content and trademarks, or publishing promotional materials referring to Broadcasters' content and trademarks.

135.    The Injunctions apply to Broadcasters' parents, subsidiaries, affiliates, predecessors, successors, divisions, operating units, principals, officers, directors, shareholders, employees, attorneys, members, agents, heirs, representatives, spin-offs, and future assigns, if any.

136.    Failure to comply with the injunctions is deemed contempt of Court.

**Actava Begins Negotiating a Referral Agreement with Matvil**

137.    Between the Spring and Summer of 2016, Actava and Matvil began discussing a business relationship.

138.    Upon information and belief, Actava began negotiating a business arrangement with Matvil while it was negotiating a settlement with Broadcasters.

139.    Actava concealed the parallel negotiations with Matvil, then a co-defendant, because it knew the Matvil negotiations would derail Actava's settlement talks with Broadcasters.

**Broadcasters' 2016 License With Matvil Forbids Sublicensing**

140.    On September 7, 2016, Channel One entered into a Licensing Agreement with Matvil ("Licensing Agreement") illustrative of the agreements Matvil signed with the other Broadcasters.

141.    Article 1.1 of the Licensing Agreement grants Matvil a "non-exclusive license to distribute via [IPTV] Service.

142.    The Licensing Agreement defines "Service" broadly as a "system of ways and methods to provide Subscribers with the ability to view the Channels under the brands of . . . Matvil via IPTV in accordance with the description of series published on the website [of Matvil] . . ."

143.    Article 1.5 states: "No other rights, including the ability to enter into sublicense agreements in respect to provided rights hereunder as specified directly in this Agreement, are granted to [Matvil]."

144.    Article 3.4 states Matvil "declares and warrants not to distribute the Channels in any other way, with exemption of ways specified directly in this agreement."

145.    As Judge Moses noted in the Order addressing Actava's contempt, the Broadcasters did not submit any license agreements with the contempt motions, so Matvil CEO "Gayster's assertion that Matvil had whatever authority it needed from plaintiffs to engage Actava pursuant to the Referral Agreement must therefore be deemed undisputed."

146.    Matvil's purported authorization based on Actava's hearsay led Judge Moses to find in Part III.A of the Order that Actava's sale of set-top boxes preloaded with Matvil software that accessed Broadcasters' programming meant that Broadcasters were unable to show at the time of the hearing based on available evidence "clear and convincing" evidence that Actava violated the Injunction in light of the very high standard necessary to prove contempt.

147.    In other words, the missing Matvil license was the only thing stopping Judge Moses from holding Actava in contempt.

148.    Judge Moses further found that the "recurring question of 'authorization'" raised by Actava's characterizations of the Matvil license prevented her from determining if Actava's radio advertisement violated the Injunctions.

**Actava Enters Into A Confidential So-Called Referral Agreement With Matvil**

149.    On September 8, 2016, Matvil and Actava, according to Actava, after "months of negotiations" and a mere day after Channel One agreed to the Licensing Agreement with Matvil,

purportedly agreed to the Referral Agreement.  Attached hereto as **Exhibit B** is a copy of the Referral Agreement".

150.    The Referral Agreement with Matvil purportedly enabled Actava to market Broadcasters' content and operationalize set-top box distribution and implementation for consumers in New York and the Northeastern corridor.

**Upon Discovery of Actava's Confidential Relationship with Matvil, Broadcasters Issue a Notice of Suspected Breach to Actava on October 19, 2016**

151.    The Settlement Agreement specifically provides that if Broadcasters suspect Actava of a breach of the Settlement, Broadcasters must provide written notice to Actava of the suspected breach.

152.    The Settlement Agreement further provides that if Actava fails to remedy the suspected breach within ten (10) business days of receiving such written notice, Broadcasters can seek relief against Actava for the breach.

153.    Upon learning of this suspected breach of the Injunctions and Settlement by distributing Broadcasters' content without permission, Broadcasters wrote to Actava on October 19, 2016 demanding that it cure the infringements of Broadcasters' rights under the Injunctions and Settlement.

154.    Specifically, on October 4, 2016, Actava's website revealed that Actava was selling subscriptions to the broadcasts.

155.    Consistent with Broadcasters' obligations under the Settlement Agreement, Broadcasters sent Actava the Notice of Breach and warned that the Broadcasters would "pursue all judicial relief."

156.    On October 26, 2016 Actava denied it was breaching the Settlement Agreement.

157.    On November 14, 2016, Broadcasters sent a final warning to Actava.

158.     Actava refused to alter its conduct.

**Broadcasters File a Contempt Motion Due To Actava's Unrelenting Efforts to Illegally Utilize and Promote Broadcasters' Content**

159.     Despite being provided with a notice of suspected breach by Broadcasters, Actava admits that it continued to distribute Broadcasters' content.

160.     Broadcasters filed a motion for contempt against Actava for breach of the Injunctions and Settlement on December 13, 2016.

161.     Judge Moses made clear that Broadcasters' arguments in favor of contempt against Actava had "some force"

162.     Contempt failed because the ambiguities in the Injunctions could not be cured by referencing the underlying Settlement Agreement—over which the Court did not have jurisdiction—under the "four corners" rule or interpreting contempt of an injunction.

163.     Judge Moses explicitly stated that she expressed "no opinion as to whether Actava Defendants violated" the underlying Settlement Agreement.

164.     Significantly, Judge Moses did not find that Broadcasters acted inappropriately in moving for contempt, nor did Actava cross-move or otherwise seek relief against Broadcasters from Judge Moses.

165.     Actava simply resumed distributing Broadcasters' content and collecting related payments after the Broadcasters had given Actava notice that such activity was prohibited.

**Matvil Expresses its Concerns Regarding the Complaint filed by Actava Against the Broadcasters**

166.     In a letter dated August 2, 2018, counsel to Matvil, warned Actava's counsel that the filing of the lawsuit against Broadcasters could cause Broadcasters to terminate their agreements with Matvil.

167.    The letter further warned that the lawsuit breached the Referral Agreement.

168.    Actava's counsel replied by letter, dated August 10, 2018, and denied that Actava breached the Referral Agreement by filing the lawsuit.

**Matvil Noticed Its Intent to Terminate the Referral Agreement Prior to Actava Suing Broadcasters**

169.    Section 2.b.ii-v. of the Referral Agreement requires Matvil to provide Actava with ten days written notice before terminating the agreement.

170.    Upon information and belief, Matvil terminated the Referral Agreement *before* the filing of the Complaint and not as a result of the Complaint.

**Broadcasters send a Notice of Breach of Settlement Agreement to Actava on November 16, 2018**

171.    In the fall of 2018 Broadcasters uncovered evidence through discovery in another action, *Joint Stock Company "Channel One Russia Worldwide" v. Russian TV Company, Inc., et al.*, Case No. 18-cv-2318-LGS ("RTV Case"), that Techstudio, a defendant in that action, signed a non-disclosure agreement with Russian Telekom Inc. on March 13, 2012 ("NDA").

172.    The NDA also identifies RT's website as www.russiantelek.com ("RT Website").

173.    On or about June 2014, Actava obtained ownership of the RT Website.

174.    The RT Website distributed pirated programming of Broadcasters.

175.    Sometime between June 2014 and January 2015 Actava directed the RT Website to redirect to the Actava Website.

176.    Therefore, Actava distributed content pirated from Broadcasters through the RT Website prior to the April 26, 2016 settlement through another website, the RT Website.

177.    In breach of the Settlement Agreement's Representations and Warranties clause, Actava did not disclose its ownership of the RT Website during settlement discussions.

178.    In the Settlement, Actava neither disclosed its relationship with RT nor its control or use of the RT Website that provided and/or promoted IPTV content, including Broadcasters' programming as described below.

179.    In a letter, dated November 16, 2018, Counsel to Broadcasters, sent a notice of suspected breach of the Settlement Agreement to Actava's counsel.

180.    In the letter, Broadcasters' explained that Actava breached Paragraph 6.d of the Settlement by failing to disclose its relationship with Russian Telekom and subsequent ownership of the RT Website that distributed IPTV programming with authority.

181.    Actava violated Section 6.d.i of the Settlement because Actava represented that it had not "previously broadcast, copied, distributed or otherwise used the Broadcasts other than through Actava and the [Actava] Website." Actava concealed its prior relationship with RT and control of the RT Website on the day the Settlement was executed.

182.    Actava violated Section 6.d.ii of the Settlement because it represented that it has " not and do[es] not own or have any interest in any other website, application or other property engaged in the business of providing internet protocol television ("IPTV") because it advertised and owned the RT Website before the Settlement was executed and currently owns the RT Website that redirected to the Actava Website.

183.    Actava violated 6.d.iii of the Settlement because it maintained an ownership or management interest in an IPTV website, the RT Website, before and after execution of the Settlement.

184.    Thus, Actava has been in material breach of the Settlement from the day the Settlement was executed.

185.    This conduct also violates Paragraph 3 of the Stipulated Injunctions.

## FOR A FIRST COUNTERCLAIM

### Tortious Interference with Contractual Relationships

186.    Defendants re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

187.    Counterclaim Defendants were aware of the actual and continuing business relationship between Matvil and Channel One pursuant to the Licensing Agreement signed by the parties by September 7, 2016.

188.    Counterclaim Defendants were aware of the actual and continuing business relationship between Matvil and CTC Media pursuant to the Licensing Agreement signed by the parties by March 15, 2016.

189.     Counterclaim Defendants were aware of the actual and continuing business relationship between Matvil and Comedy TV N/K/A GETV  pursuant to the Licensing Agreement signed by the parties by March 1, 2016.

190.    Counterclaim Defendants were aware of the actual and continuing business relationship between Matvil and Rain TV pursuant to the Licensing Agreement signed by the parties.

191.    Counterclaim Defendants unlawfully and maliciously interfered with Broadcasters' business relationship and their Licensing Agreements with Matvil by initiating, or causing to be initiated, baseless proceedings against the Broadcasters.

192.    Counterclaim Defendants engaged in such conduct for the sole purpose of inflicting intentional harm on the Broadcasters.

193.     Because Broadcasters' business prospects depend on the Licensing Agreement, the Counterclaim Defendants' tortious conduct has significantly diminished Broadcasters' income potential.

194.     Accordingly, Counterclaim Defendants tortiously interfered with Broadcasters' contract and with its prospective economic advantage, and the Broadcasters are entitled to reasonable attorneys' fees and damages in an amount to be determined at trial, in an amount the Broadcasters believe will exceed three million dollars, together with any such other relief as the Court deems just, proper, and equitable.

## FOR A SECOND COUNTERCLAIM

### Breach of Contract

195.     Defendants re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

196.     Under New York law, a settlement agreement is a contract, and any alleged breach of a settlement agreement must be analyzed according to the ordinary principles of contract law.

197.     To establish breach of the Settlement Agreement, plaintiff must prove: (1) that a contract existed; (2) that Defendants adequately performed under the contract; (3) that Actava Plaintiffs breached the contract; and (4) damages attributable to the breach.

198.     Actava Plaintiffs and Broadcasters agreed to the Settlement Agreement  on April 26, 2016.

199.     Broadcasters fully performed under the Settlement Agreement.

200.     In October of 2016, the Broadcasters discovered that the Actava Defendants were distributing the Broadcasts without authorization in violation of the Settlement Agreement and in contempt of the Injunctions.

201.   On November 16, 2018, the Broadcasters sent a notice of suspected breach of the Settlement Agreement.

202.   Actava has since confirmed that it distributed, advertised and collected money from the Broadcasts.

203.   Broadcasters have suffered damages due to Actava Plaintiffs' breach of contract.

204.   This breach of contract caused Broadcasters significant economic damages to which the Counter-claimants are entitled in an amount to be determined at trial, in an amount the Counter-claimants believe will exceed three million dollars, together with reasonable attorneys' fees and any other such relief as the Court deems just, proper, and equitable.

## FOR A THIRD COUNTERCLAIM

### Constructive Fraud In Contract

205.   Defendants re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

206.   Under New York law, a party can recover from on the grounds of constructive fraud in contract where the counterparty (1) was the party's contracting counterpart (2) made a representation of material fact; (2) this material fact was untrue or recklessly made; (3) that this material fact was not within reasonably diligent attention, observation, and judgment of the party; (4) that the counterparty suppressed or concealed this fact with the intention that the party be misled; (5) that the party was reasonably so misled; and (6) that the party suffered damage as a result.

207.   Actava entered into the Settlement Agreement with Broadcasters.

208.    Actava represented and warranted in the Settlement Agreement that it had not "previously broadcast, copied, distributed, or otherwise used the broadcasters other than through Actava and the Website"

209.    Actava represented and warranted in the Settlement Agreement that it did "not own or have any interest in any other website, application or other property engaged in the business of providing internet protocol television ("IPTV").

210.    These two representations were untrue or recklessly made by Actava because Actava owned the RT Website and related service before the execution of the Settlement Agreement.

211.    Broadcasters did not know of Actava's ownership of the RT Website that distributed its broadcasts without authority.

212.    Actava concealed its ownership of distribution of IPTV through the RT Website to mislead Broadcasters into executing the Settlement Agreement.

213.    Broadcasters entered into the Settlement Agreement without knowing that Actava distributed IPTV through the RT Website.

214.    Broadcasters were damaged by Actava's conduct by entering into a Settlement Agreement and agreeing to an Injunction based on incomplete information.

215.    Actava did not disclose its Spring 2016 negotiations with Matvil while Actava negotiated a Settlement with Broadcasters.

216.    Counterclaim Defendants concealed the existence of the Referral Agreement with the intention to mislead the plaintiff into believing that Counterclaim Defendants were in compliance with the Settlement Agreement.

217.    As a direct and proximate result of the Counterclaim Defendants' fraudulent concealment, the Broadcasters have suffered and continue to suffer significant economic damages to which the Broadcasters are entitled in an amount to be determined at trial, together with reasonable attorneys' fees and any other such relief as the Court deems just, proper, and equitable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Counterclaim Plaintiffs request that the Court:

A.  enter an order dismissing Plaintiffs' Complaint and each and every count therein relating to Defendants with prejudice;

B.  enter judgment in favor of Defendants on Plaintiffs' Complaint and each and every count therein relating to Defendants;

C.  award Defendants general and/or compensatory damages in an amount to be determined at trial for all injuries suffered as a result of Plaintiffs' wrongdoing

D.  award Defendants nominal damages;

E.  award Defendants punitive damages;

F.  award Defendants pre-judgment and post-judgment interest at the maximum rate allowable by law;

G.  award Defendants the costs of defending the suit as incurred in this action and attorney's fees; and

H.  all other just and proper relief.

Dated: New York, New York
       October 9, 2019

                      Respectfully submitted,
                      DUNNINGTON BARTHOLOW & MILLER LLP
                      *Attorneys for Defendants*

                  By: /s Raymond J. Dowd
                      Raymond J. Dowd
                      Samuel A. Blaustein
                      Hardin P. Rowley
                      230 Park Avenue 21st Floor
                      New York, NY 10177
                      Tel: (212) 682-8811
                      RDowd@dunnington.com
                      SBlaustein@dunnington.com
                      HRowley@dunnington.com