```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ACTAVA TV, INC. ,et al.,

              Plaintiffs,

         v.                            18 CV 6626 (ALC)(KNF)

JOINT STOCK COMPANY "CHANNEL
ONE RUSSIA WORLDWIDE", et al.,

              Defendants.
------------------------------x
                                       New York, N.Y.
                                       May 5, 2020
                                       2:00 p.m.
Before:

                     HON. KEVIN N. FOX,

                                       Magistrate Judge

                         APPEARANCES

MOSES & SINGER LP
BY:  TOBY MICHAEL JOHN BUTTERFIELD
     MICHAEL MORTON ROSENBERG
     VALERIA MARIE CASTANARO
         -AND-
FOLEY HOAG
BY:  DIANA TSUTIEVA
     Attorneys for Plaintiffs

DUNNINGTON, BARTHOLOW & MILLER, LLP
     Attorneys for Defendants
BY:  RAYMOND JAMES DOWD
     HARDIN PARISHER ROWLEY
     AKBAR AZAM KHAN
```

1           THE COURT:  Before we begin the conference, I wanted
2   to say to the participants before you speak during the
3   conference, please identify yourselves so that the court
4   reporter will know precisely who is speaking.
5           During the conference, if you mention things by name,
6   please spell the proper names so the court reporter can capture
7   that accurately.  And also be mindful during the conference
8   that only one person can speak at a time so that the reporter
9   can capture everything that you want to say clearly.
10          So let's begin.  This is Actava TV, Inc., et al. v.
11  Joint Stock Company "Channel One Russia Worldwide", et al., 18
12  CR 6626.
13          Will plaintiff's counsel please make your appearance.
14          MR. BUTTERFIELD:  This is Toby Butterfield.
15  Your Honor.  I'm appearing for plaintiffs herein, and I believe
16  my colleagues, also representing plaintiffs, are on the line as
17  well.  Toby Butterfield, T-o-b-y B-u-t-t-e-r-f-i-e-l-d, of
18  Moses & Singer.
19          MS. CASTANARO:  Good afternoon, Judge Fox.  This is
20  Valeria Castanaro, C-a-s-t-a-n-a-r-o.
21          MR. ROSENBERG:  Your Honor, this is Michael Rosenberg,
22  also for the plaintiffs.
23          MS. TSUTIEVA:  This is Diana Tsutieva, also for the
24  plaintiffs, of Foley Hoag, last name spelled T-s-u-t-i-e-v-a.
25          THE COURT:  Will defendants' counsel make an

1    appearance, please.

2             MR. DOWD:  Good afternoon, your Honor.  Raymond Dowd
3    of the Dunnington law firm.  And with me on the line is --

4             MR. ROWLEY:  This is Hardin Rowley for defendants from
5    Dunnington.

6             MR. KHAN:  And Akbar Khan with the Dunnington law firm
7    on behalf of the defendants.

8             THE COURT:  This conference is to address matters
9    raised by a correspondence beginning with the correspondence
10   appearing at docket entry number 137.

11            Among the things that were raised in the
12   correspondence was the ability or, rather, authority of
13   defendants' counsel to represent one of the entities, the
14   Channel One entity.

15            So let's address that matter first, and I'll turn to
16   defense counsel because the plaintiff is challenging whether an
17   authorization that existed, a power of attorney, had expired
18   and therefore Channel One is not any longer represented by
19   counsel.  Of course a corporate entity cannot appear pro se.
20   And if it isn't represented by counsel, it defaults in the
21   action.

22            So what information can be shared to arrest the
23   concern of the plaintiffs that there is no representation
24   presently of Channel One by defense counsel.

25            MR. DOWD:  Your Honor, this is Raymond Dowd.  We are

1  in the process of obtaining an updated power of attorney from
2  Channel One Russia.
3              THE COURT:  When will that be affected?
4              MR. DOWD:  We expect in the next couple of weeks.
5  Right now we've had the COVID crisis which has set everybody
6  back in communications, but we expect to have that forthwith.
7              THE COURT:  That gives me some concern because the
8  plaintiffs wrote about this some time ago, not just yesterday,
9  and flagged this as an issue.  So it appears, based upon what
10 you're saying, that your power has run out and that Channel One
11 is not now represented.
12             MR. DOWD:  I don't think a formal power of attorney is
13 necessary in New York to represent a party.  Under the doctrine
14 of apparent authority, an attorney coming in saying that they
15 have authority is generally enough.
16             We have taken the plaintiffs' concerns under
17 advisement and are in the process of getting updated powers of
18 attorney which we've done in the past and had them renewed
19 without any problems.
20             It just seems it's a rush in procedure to give
21 time-limited powers and then renew them from time to time.  So
22 I don't think it's a New York requirement that every counsel
23 have a power of attorney.
24             We do have an underlying retainer agreement that
25 authorizes us to represent, and we were covered by the power of

1  attorney for all the actions we took up until that time.  So I
2  think under the doctrine of apparent authority that the Court
3  should be reassured.
4           THE COURT:  Of course apparent authority can be
5  challenged.  But let me hear from plaintiffs' counsel on this
6  score.
7           MR. BUTTERFIELD:  Thank you, your Honor.  This is Toby
8  Butterfield.  We remain very concerned because of the news we
9  discovered last year and brought to the Court's attention that
10 Channel One is in not one but two different litigations with
11 Kartina Digital GmbH, which is also a defendant.
12          We just about a week ago finally received for the
13 first time information from defendants' counsel about those
14 litigations which concern that they are existing in Russia and
15 in Germany.
16          We're doing our best to try and understand what the
17 nature of those litigations between the defendants are.  But it
18 seems plain to us that the delay in confirming that Channel One
19 is still authorizing Mr. Dowd's firm to defend it in this case
20 must be connected to this under these disputes.
21          The other piece that seems troubling to us is that the
22 power of attorney that Mr. Dowd's firm provided was, on its
23 face, not for the defense of this case.  It was for the pursuit
24 of the underlying case, which is an issue in this litigation
25 against all the defendants.

That is not the only problem because the prior power of attorney was in place for several years but expired at the end of 2019. Actually, the one that the Dunnington firm sent to the Court said it was expiring on December 31, 2016.

They've shown us in discovery another one that expired at the end of 2019, but then the extension that Mr. Dowd referred to only lasted for a couple of months. So since the end of February, I believe, there has been a lack of apparent authority. And I'm not hearing from Mr. Dowd that he is in regular communication with the people who are empowered to issue this power of attorney.

And as Your Honor noticed, this issue has been before us since long before the appearance of the COVID-19 pandemic which shut down the regular business operations.

So we continue to be very concerned about this and concerned that we are in the unfortunate position of pursuing our case without it being clearly demonstrated that Channel One is represented herein and that Mr. Dowd is authorized to speak and take action in this case on its behalf which would of course compromise the integrity of the proceeding.

THE COURT: Well, as I indicated earlier in the conference, if a corporate entity is not represented, it may find itself in a default situation. So of course I'm not here to give Channel One any legal advice or any other party to the action.

1      The power of attorney has lapsed. It hasn't been
2 renewed. What language a new power will have I guess remains
3 to be seen, but it puts Channel One in a somewhat precarious
4 position it seems to me.
5      MR. DOWD: We will communicate that, your Honor.
6      THE COURT: Let me turn to another matter that was
7 raised, and that is the ability of in-house counsel,
8 Mr. Lezhnev, and outside counsel, Ms. Tsutieva, to have access
9 to documents that are exchanged during the pretrial discovery
10 phase of the action.
11      The protective order that the parties negotiated and
12 presented to the Court provides for in-house counsel and
13 outside counsel to review documents. That's clear. And of
14 course anyone getting access to the confidential documents
15 exchanged must safeguard them and ensure that they're used for
16 this litigation.
17      So if that is the case, as it appears from a plain
18 reading of the protective order, that both in-house and outside
19 counsel can look at documents, I was somewhat curious about why
20 the defendants, having negotiated such language for a
21 protective order, seem now to balk at having these two
22 attorneys be privy to materials exchanged.
23      Mr. Dowd?
24      MR. DOWD: Your Honor, if I may defer to Mr. Rowley on
25 this point.

1           THE COURT:  Very well.

2           MR. ROWLEY:  This is Hardin Rowley.  Judge Fox, you
3   made a good point about the negotiations of the protective
4   order.  I negotiated those terms with Mr. Butterfield, and he
5   did not disclose Ms. Tsutieva's involvement.

6           If we had known that, we would have asked for a
7   carve-out for her in particular.  That's the main issue.  We
8   only learned about her in their privilege log that was produced
9   in December 2019.

10          I negotiated the protective order in May 2019.  And
11  her proximity to Mr. Tsoutiev, the principal of these entities
12  and one of the plaintiffs, is a concern of ours.  And we
13  actually proposed amending the protective order to plaintiffs'
14  to create sort of tiers of access, and we haven't received a
15  response.

16          THE COURT:  During your negotiation, did you ask
17  plaintiffs' counsel to identify every attorney who would be
18  covered by the agreement?

19          MR. ROWLEY:  No.  I relied on his representations.

20          THE COURT:  Did he represent or present to you a list
21  of every attorney who would be representing the plaintiffs in
22  this action?

23          MR. ROWLEY:  No.  I relied on who had filed a notice
24  of appearance and his firm generally.

25          THE COURT:  All right.  Mr. Butterfield, do you want

1  to be heard?

2  MR. BUTTERFIELD: Yes, your Honor. This is a baseless
3  accusation against Ms. Tsutieva, to suggest that she would
4  compromise the confidentiality of information that she gets
5  subject to the protective order.

6  She had not entered a notice of appearance at the time
7  of the negotiation of the protective order, and that doesn't
8  make any difference really as to whether -- the plaintiffs are
9  entitled to select counsel of their choosing.

10  She's counsel at a very well-known firm in Washington
11  D.C. There is no support for the suggestion that she would
12  somehow violate the protective order. There is no accusation
13  that she has violated the protective order. So I strongly
14  object to the other side, the defendants' counsel, trying to
15  prevent us from acting in accordance with the protective order.

16  Finally, this idea that these materials are somehow
17  competitively sensitive doesn't make any sense for reasons
18  we've exchanged in written correspondence with the defendants'
19  counsel, and we're going to challenge the attorneys' eyes only
20  designation.

21  It doesn't make sense either that there is any
22  competitive threat because Actava TV is, as we all know, no
23  longer in this business. So that's my position, your Honor.

24  The other accusations or veiled suggestions, most of
25  which I'm not going to address because I think they're a little

1   more wild-eyed, an exception to privilege, things like that,
2   ridiculous things.  So I'm going to rest on that, your Honor,
3   and not spend more time on it.
4              THE COURT:  Do you want to be heard further?
5              MR. ROWLEY:  Just one point.  We produced to
6   plaintiffs a trademark registration filed by Mr. Lezhnez in
7   2019 that said they were still in business doing this.  So I
8   don't know what is Mr. Butterfield's basis for that statement.
9              MR. BUTTERFIELD:  The whole premise of this lawsuit is
10  that the company is no longer streaming and its business has
11  been destroyed.
12             THE COURT:  Nothing in the correspondence suggested to
13  me that there has been any attempt by plaintiffs' counsel,
14  including Ms. Tsutieva, to breach the confidentiality of
15  anything that's been exchanged.
16             The parties negotiated the terms of the protective
17  order that was presented to me.  There is no indication in any
18  of the correspondence or anything that has been said during
19  this conference that suggests that she is not providing legal
20  services; that she's doing work other than that in some
21  capacity other than as counsel.
22             So the privilege log stands as it is.  It allows both
23  the in-house and outside counsel to review materials, and I see
24  no reason to deviate from that at this juncture.
25             Let me turn now to the matter of the privilege log or

1  logs.  There are two for the Kartina entity and one for the

2  Channel entity.  Exemplars of materials that are the subject of

3  the controversy over the privilege log provided by the

4  defendants were sent to me for in-camera review.  They have

5  been reviewed.

6       The types of documents were placed into three

7  categories:  Category A, the Kartina log covering a period

8  March 2016 to 2017.  Those are communications involving defense

9  counsel; category B, also a Kartina log covering a period

10  January 2018 through September 2018; and the last category,

11  category C, a Channel log of various communications.

12       With respect to the category A documents, based on the

13  review, the in-camera review, I see no reason to require those

14  documents to be disclosed.  The privilege that was asserted,

15  attorney-client privilege, appears to cover those materials.

16  So that is why I conclude there is no reason to disclose them.

17       With respect to the category B documents, those

18  communications appear to address bills or invoices for legal

19  services.  And such invoices and bills are not covered by the

20  attorney-client privilege.  The Second Circuit has made that

21  clear in several different cases.  So those materials can be

22  disclosed.  They're not protected by privilege.

23       The category C materials, these are Channel log

24  communications.  The in-camera review persuades me that they

25  are covered by attorney-client privilege and need not be

1  disclosed.

2  MR. DOWD:  Your Honor, may I be heard on category B?
3  This is Raymond Dowd.

4  THE COURT:  Yes.

5  MR. DOWD:  I would point out to your Honor
6  respectfully that these emails cover settlement negotiations.
7  It is not just a discussion of legal bills or just some sort
8  of -- this has to do with strategy and communications involving
9  negotiating a settlement.  And I would ask your Honor
10 respectfully if you could please reconsider.

11 THE COURT:  Unless I'm mistaken, I thought that those
12 were captured in another category and that the exemplars that I
13 reviewed did not deal with any strategy and potential
14 litigation at all.

15 It sounds like it's only on things you might be paid
16 for.  I recognize that there were materials that did speak to
17 settlement and strategy, and those I did not direct to be
18 disclosed.

19 MR. DOWD:  Your Honor, I withdraw my comment.  I had
20 misspoken.  I agree with your assessment.  I apologize.

21 THE COURT:  No problem.

22 MR. DOWD:  I confused two different things.

23 THE COURT:  Not a problem at all.  I think those are
24 all the matters that were presented to me in the correspondence
25 that I wanted to address with you today.  If I overlooked

1  something, let me know now.  Otherwise, that will conclude our
2  business today.
3        MR. DOWD:  Thank you, your Honor.
4        MR. BUTTERFIELD:  Your Honor, the issue of the
5  categories A and C, I'm a little unclear whether your Honor's
6  conclusion is based in part on the claims by the defendants
7  that there is a common interest privilege that allows them to
8  continue to maintain the privilege, although Kartina and
9  Channel One are party to the communications.  And if that's the
10 case, I would like to be heard.
11       THE COURT:  That is the case, in part.
12       MR. BUTTERFIELD:  The problem that we have, your
13 Honor, is that we've been learning piecemeal, because of the
14 defendants' refusal to provide any discovery about the dispute
15 between these different defendants, as to what that dispute
16 concerns.
17       But what we have discovered is that Channel One has
18 been claiming for more than a year that Kartina itself is a
19 pirate who is sending out unauthorized streaming video of
20 Channel One's to its subscribers.
21       The dispute appears to be based in part on a financial
22 dispute, an argument by Channel One that Kartina isn't paying
23 its bills for streaming that content.  And therefore, that's
24 the reason why these cases exist.
25       And in that situation, we don't believe that the

common interest privilege is applicable. And certainly from the time that that dispute arose, the common interest privilege can't survive when the parties are in litigation with each other.

The very recent disclosure of any of the details of these cases mean that we weren't in a position to provide more information to you, your Honor. But we have got some publicly available reports, as well as the defendants' interrogatory responses.

And for that reason, although it may have appeared, based on the selection of particular exemplars provided to you by defendants' counsel, that there is a common interest privilege, we believe, if it existed, to the extent it existed, it's been destroyed as demonstrated even by the terms of the engagement letter that the Dunnington firm provided to your Honor which warned Kartina at the outset that if there were additional proceedings under which Dunnington appeared for and represented Kartina, an additional engagement letter, a joint defense, or prosecution agreement with any counterparties might be required -- as far as we're aware, there are no such documents -- and that if there was a conflict of interest between the parties, then Dunnington would no longer be able to continue to act for everybody.

And despite the fact that these disputes do exist, Dunnington has continued to represent them. So we would like

1  an opportunity to put that evidence before your Honor.

2          We don't want to burden your Honor with a lot more
3  discovery disputes.  There have been enough already.  But these
4  compilations we believe go to the heart of the issue that we
5  are seeking redress for.

6          The communications must not be just between the
7  represented parties, but they must be in furtherance of the
8  joint defense.  And we've got nothing to suggest that any of
9  these parties explicitly retained Dunnington to defend this
10 case.  And now we've got the doubt as to whether Channel One,
11 if it even authorized it to act, continues to do so.

12         So we'd like to put a targeted motion before
13 your Honor explaining and showing the details that we think are
14 very troubling as to the dispute between Channel One and
15 Kartina and explain why that shows that whatever common
16 interest defense privilege might have existed for
17 communications with counsel in furtherance of the defense of
18 this case previously, that is no longer the case.

19         THE COURT:  In the correspondence that came to me, you
20 did raise this matter, not necessarily in the detail that you
21 just did and that you suggest you might, if given an
22 opportunity to submit more on this particular point.

23         So it was a consideration of mine when I reviewed the
24 exemplars, the plaintiffs' position that there is now some
25 tension between Kartina and Channel One and other defendants

1  that may have to be considered in determining whether the
2  attorney-client privilege protected any of the attorneys that
3  were referenced in the log.
4            But let me hear from defense counsel.
5            MR. DOWD:  Yes, your Honor.  This is Raymond Dowd.
6  Basically there has been a dispute that arose after the
7  termination of the license agreement which postdated all of the
8  events that we're discussing here.
9            So we think that if this were teed up in a joint
10 discovery letter where Mr. Butterfield put his side together
11 and we put our side together, it would tee it up for your Honor
12 to rule on and we could respond in detail to these allegations.
13           THE COURT:  All right.
14           MR. BUTTERFIELD:  I thought we'd gone through that
15 process.  But if that's what your Honor wants to do, we can do
16 that.  We thought that that was the point of our initial
17 letter.
18           We'd hoped that we might be able to are resolve these
19 issues or that the dispute between the parties, between Channel
20 One and Kartina, might somehow get resolved or that Channel One
21 might reaffirm its authorization to the Dunnington firm to act
22 herein.
23           But those things haven't happened, and now we're
24 coming up on depositions.  So we'd really like to get a proper
25 ruling, your Honor.  I think another premotion letter is not

1   necessarily going to provide your Honor with a record that you
2   would want to have in order to see the evidence, the enclosures
3   and the discovery actions that we have now finally obtained
4   from Mr. Dowd that describe how broadly this dispute between
5   the defendants goes.
6        THE COURT:  As I indicated, I was aware of the
7   plaintiffs' position from the correspondence that came, and I
8   considered that in determining whether the privilege existed or
9   did not exist.  And I came out as I did and explained to you
10  moments ago my position on what should be disclosed and what
11  should not be based on the privilege asserted by the
12  defendants.
13       I'm not interested -- as Mr. Butterfield suggested, I
14  might not be, I'm not interested in having the parties churn
15  out a lot of paper covering turf that has already been covered.
16       So I'm not inclined to receive another writing because
17  I've considered the position of the plaintiff as set forth
18  already in the correspondence in analyzing the dispute over
19  whether privilege existed and materials should be properly
20  withheld by the defendants.
21       So I have given you my view on that, having considered
22  the plaintiffs' argument that an existing controversy or a new
23  controversy involving Kartina means that there isn't the
24  alignment of interest and so forth.
25       MR. BUTTERFIELD:  Your Honor, if I may.  This is

1  Mr. Butterfield again.  The information that we've received
2  since we wrote that letter suggests that the conflict is
3  sufficiently serious so that it does destroy the common
4  interest privilege.
5           I am just seeking an opportunity to put a very
6  targeted set of papers before your Honor to explain that and to
7  provide more than we were able to in a very short premotion
8  letter on the law that says that once you're representing
9  parties who are in litigation with each other, that conflict of
10 interest is not waivable and the common interest provision
11 cannot apply after that dispute has arisen.
12          THE COURT:  All right.  I'll allow you to submit a
13 writing to me.  Be mindful of my individual rules of practice
14 with respect to discovery dispute writings.
15          When shall I expect to receive the writing from the
16 parties?
17          MR. BUTTERFIELD:  Next week, your Honor, if that's
18 okay.
19          THE COURT:  That's fine by me.  All right.
20          Anything else from either party before I release you
21 today?
22          MR. DOWD:  No, your Honor.
23          MR. BUTTERFIELD:  No, your Honor.
24          THE COURT:  All right.  Thank you very much.  Good
25 day.