UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Actava TV, Inc., Master Call Communications, Inc., Master Call Corporation, and Rouslan Tsoutiev, <br><br> Plaintiffs, <br><br> -against- <br><br> Joint Stock Company "Channel One Russia Worldwide," Closed Joint Stock Company "CTC Network," Closed Joint Stock Company "New Channel", Limited Liability Company "Rain TV-Channel," Open Joint Stock Company "ACCEPT", and Limited Liability Company "Comedy TV," and Kartina Digital GmbH, <br><br> Defendants. | Index No.: 1:18-cv-06626 |

**PLAINTIFFS' OBJECTIONS TO BENCH RULING
BY MAGISTRATE JUDGE KEVIN N. FOX ON MAY 28, 2020**

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, Plaintiffs Actava TV, Inc. ("Actava"), Master Call Communications, Inc., Master Call Corporation, and Rouslan Tsoutiev (collectively, the "Actava Parties" or "Plaintiffs") hereby object to a discovery ruling issued by Magistrate Judge Kevin Nathaniel Fox during a telephonic conference on May 28, 2020 denying Plaintiffs' motion to compel the disclosure of certain communications between Defendant Joint Stock Company "Channel One Russia Worldwide" ("Channel One") and Defendant Kartina Digital GmbH ("Kartina").

**BACKGROUND**

On July 23, 2018, the Actava Parties filed a Complaint against multiple Channel Defendants (the "Channels") headquartered in the Russian Federation, including Channel One, for tortious interference with prospective business advantage, malicious prosecution, and breach of

1

contract, to recover the damage to the Actava Parties caused by the Channels' initiation of meritless contempt proceedings following a prior settlement agreement.  *See* ECF No. 1.

The Channels' malicious conduct against the Actava Parties stems from a sprawling litigation the Channels filed against various entities alleged to have "pirated" the Channels' content.  *See Joint Stock Company "Channel One" Worldwide, et al. v. Infomir,* No. 16-cv-01318-GBD-BCM (the "Original Proceedings").  When the Actava Parties filed the instant lawsuit, they did not know that Kartina – a non-exclusive licensee of the Channels' content which is headquartered in Germany – was funding this litigation behind the scenes.  Indeed, during the many years the Channels have been litigating in the Southern District, Kartina has not once been a named plaintiff in the Channels' underlying lawsuit, the settlement agreement, the contempt proceedings, or anywhere else.

After filing suit, the Actava Parties learned that Kartina retained Plaintiffs' counsel of record, Dunnington, Bartholow & Miller LLP ("Dunnington") in 2014 in a quest to eliminate its competitors from the marketplace.  Significantly, Kartina's Retainer Agreement acknowledged that it lacked standing to bring the claims on its own.  *See* Declaration of Toby Butterfield (the "Butterfield Decl."), ¶ 4, Ex. B.  The Retainer Agreement instead contemplated that Kartina would use the Channels as litigation proxies, while deducting Dunnington's legal fees from the annual licensing royalties that Kartina owed the Channels.  *Id.*  Thereafter, in early 2016, Channel One signed powers of attorney authorizing Dunnington to bring actions against "third parties who are carrying out [the] illegal use of objects of intellectual property."  *See* Butterfield Decl., ¶ 5, Ex. C.  But Kartina was not a party to and had no legal interest in these actions brought by Dunnington, to which it was a stranger.

Significantly, both before Kartina funded the Channels' litigation and while that litigation was pending, Kartina and Channel One were involved in licensing disputes with **each other**. *See* Butterfield Decl., ¶ 6-7, Exs. D-E.  In 2015, even after signing the Retainer Agreement with Dunnington, Kartina was not licensed by Channel One, yet was distributing its content without authorization.  *See* ECF No. 165, n.2 (Defense counsel acknowledging that "Channel One began licensing Kartina on December 14, 2015").  More recently, on June 24, 2019, Kartina filed suit against Channel One in German court alleging that Channel One impermissibly increased Kartina's licensing fees.  *See* Butterfield Decl., Ex. E.[1]  That suit is still pending.  The parties' recurrent conflict and wildly diverging legal positions demonstrate their utter lack of a common legal enterprise.

After commencing this action against the Channels for their improper abuse of the litigation process, Plaintiffs discovered from Court-ordered disclosures in another action pursued in the Channels' name that the Channels had not instigated these litigations, including the litigation against Plaintiffs that is at issue here.  In fact, Kartina had done so, by funding the investigation, lawsuit, and contempt proceedings in the Channels' name, even going so far as to get the Channels to issue Powers of Attorney to Kartina's counsel permitting the attorneys free rein to act as they wished on the Channels' behalf.  Upon discovering these facts about Kartina's bringing litigation in others' names to interfere with and harm the Actava Parties' business, the Actava Parties added Kartina as a Defendant (ECF No. 40).  Plaintiffs then requested in discovery all relevant

---

[1] To be clear, the Retainer Agreement itself anticipated that disputes might arise between Channel One and Kartina which could affect the ability of Dunnington to ethically continue to represent both parties.  *See* Butterfield Decl., Ex. B, p. 3 ("Conflicts may arise if you have a dispute with a licensor of any nature arising out of the subject matter of this representation.  Such disputes might include, but are not limited to:  a lack of cooperation in the course of this litigation, alleged misrepresentations by you or the licensor, contract disputes arising from the license of any nature, disputes regarding allocations of legal fees incurred [in] the litigation that is the subject matter of this agreement and disputes regarding any proceeds or royalties flowing from this litigation.").

communications between Kartina and the Channels concerning their decision to pursue litigation, including the failed baseless contempt motion, and the Channels' and Kartina's reaction to the Referral Agreement between Actava and Matvil Corporation. *See* Butterfield Decl., ¶ 8. After the Defendants refused to produce documents in response to these and various other discovery requests, the Actava Parties filed a motion to compel on April 10, 2019. *See* ECF No. 90.

On November 6, 2019, Magistrate Judge Fox granted the majority of Plaintiffs' motion and ordered the Defendants to provide a privilege log. *See* ECF No. 128. The Channels ultimately provided a privilege log containing numerous entries that included representatives of Channel One, attorneys from Dunnington, and a participant from Kartina – namely, Ms. Olga Panfilova – between March 24, 2016 and November 15, 2018. *See* ECF No. 137-3, Ex. C (the "Disputed Communications"). As such, the Channels claimed privilege over years of communications predating this litigation, when Kartina was listed as a party for the first time. *See* ECF No. 138.[2] The Actava Parties objected to the Defendants' assertion of privilege over the Disputed Communications, arguing that the Kartina's inclusion defeated the privilege. Thereafter, the Plaintiffs requested a pre-motion conference before Magistrate Judge Fox to compel their production. ECF No. 137.

During a May 5, 2020 telephonic conference, Magistrate Judge Fox stated that his in-camera review of the Disputed Communications "persuades me that they are covered by attorney-client privilege and need not be disclosed." *See* 5/5/20 Hearing Tr. at 11:24 – 25:1. Magistrate Judge Fox withheld ruling and permitted an additional submission by the parties concerning the applicability of the common interest privilege over these communications. *Id.* at 18:12-14. After receiving the parties' submission on May 20, 2020 (ECF No. 165), Magistrate Judge Fox

---

[2] Only two communications on the Channels' privilege log appear to involve Kartina after the Actava Parties filed suit. *See* ECF No. 137-3 (lines 18-19, e-mails dated November 15, 2018).

4

scheduled and held another telephonic conference on May 28, 2020. During that conference, the Court denied Plaintiffs' motion.

The Actava Parties now object to Magistrate Judge Fox's May 28, 2020 ruling, and respectfully request that Your Honor determine that the common interest privilege does not apply to the Disputed Communications, and direct that those communications be disclosed.

## ARGUMENT

Generally, a "party that shares otherwise privileged communications with an outsider is deemed to waive the privilege by disabling itself from claiming that the communications were intended to be confidential." *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015). The common legal interest doctrine is an exception to the rule that communication with an outsider destroys the privilege, however it is the burden of the party asserting the privilege to demonstrate its proper application. *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 72 n.12 (S.D.N.Y. 2009). Here, Defendants have plainly failed to meet that burden.

Specifically, for the common interest doctrine to apply, Channel One and Kartina must establish that (1) they shared a common **legal** interest; (2) they made statements designed to further that interest; and (3) the privilege has not been waived. *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 525 (S.D.N.Y. 2001). The doctrine only applies, however, where "the nature of the interest is **identical**, not similar," and where that interest is "**legal**, not solely commercial." *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC.*, No. 01-cv-9291, 2002 WL 1334821, at *3 (S.D.N.Y. June 19, 2002) (emphasis added).

### A. Kartina and Channel One Do Not Share a Legal Interest

Kartina and Channel One may share a common commercial interest; however, at all relevant times, they have not shared a common legal interest.

The applicable law is clear that "[a] business strategy which happens to include a concern about litigation is not a ground for invoking the common interest rule." *In re FTC*, No. M18-304, 2001 WL 396522, at *5 (S.D.N.Y. Apr. 19, 2001). Further, a "shared desire to succeed in an action does not. . .rise to the level of a common legal interest." *Johnson Mattey Inc. v. Research Corp.*, No. 01-cv-8115, 2002 WL 1728566, at *6 (S.D.N.Y. 2002). Defendants claim to share a common legal interest because they are both named Defendants in this action; however the communications at issue far predate any named involvement in this action by Kartina, and the timeline of relevant events shows that Kartina's commercial interest in unfairly and illegally eliminating competition in Russian language program streaming services is the only interest underpinning Kartina's participation in and involvement with the Channel Defendants and their litigations against third parties, including the Actava Parties.

The Actava Parties originally entered into a global settlement agreement on April 26, 2016 disposing of the Channels' prior litigation against Actava. ECF No. 81, Ex. A. Thereafter, the Channels embarked on an illegal campaign to inflict damage on the Actava Parties' growing competitive business, which involved a partnership with non-party Matvil Coporation ("Matvil"), by bringing meritless contempt proceedings on December 13, 2016, and, after Actava's original Complaint was filed against six Channel Defendants on July 23, 2018, by wrongfully inducing Actava's business partner Matvil to terminate the Referral Agreement. *Id.*, Ex. C. On October 5, 2018, the Actava Parties added Kartina as a Defendant. ECF No. 40. At **no time** before that, however, was Kartina legally aligned with the Channel Defendants. Simply because the Channels used the same legal counsel as Kartina does not provide a basis for privilege over communications that do not further a common legal interest and are not for legal advice.[3]

---

[3] Magistrate Judge Fox's *in camera* review was limited to three e-mails (*see* ECF No. 160), which the Actava Parties do not believe were representative of all communications on the privilege log to which the common interest

Tellingly, Kartina itself has specifically acknowledged its purely commercial motivation for bankrolling litigation in the name of the Channels – and the parties' lack of a shared legal interest. In the Original Proceedings, Kartina's corporate representative admitted as follows:

- Kartina "underst[ood] and [was] informed that Kartina **might lack standing** to bring claims in its own name in the U.S. Courts."[4]

- "Prior to entering the Retainer Agreement in 2014, Kartina concluded that it **could not continue to pay substantial license fees** for Broadcasters' content delivered in the United States unless IPTV piracy was severely curbed," as Kartina believed that "unauthorized providers of Broadcasters' content were able to undercut Kartina's prices by 50% to 70%". *Id.* at ¶ 14 (emphasis added).

- "As set forth in the Retainer Agreement, Kartina requested **for commercial reasons** that Kartina not be named as a plaintiff and to the extent legally and ethically possible, Kartina remain confidential in the proceedings." *Id.* at ¶ 15 (emphasis added).

Accordingly, Kartina is not a litigant, but a litigation funder – and is not entitled to common interest protection on that basis. *See Cohen v. Cohen*, No. 09-cv-10230 LAP, 2015 WL 745712, at *4 (S.D.N.Y. Jan. 30, 2015) (denying common interest privilege over communications between funder and litigant notwithstanding consulting and "joint interest" agreements); *Leader Techs. Inc. v. Facebook*, 719 F. Supp. 2d 373 (D. Del 2010) (same).

*Cohen* is instructive. There, the plaintiff's counsel engaged a non-practicing attorney and litigation funder to "provide litigation support" to the legal team. *Cohen*, 2015 WL 745712, at *1. The litigation funder entered into written agreements with the plaintiff stating that her work was covered by the attorney-client privilege, and that there was a common legal interest regarding the claims. *Id.* The Court nonetheless rejected the notion that the parties shared a common legal

---

privilege does not apply. *See* ECF No. 137-3. Many of the Disputed Communications are e-mails between Raymond J. Dowd of Dunnington and Alexander Shprekher of Channel One, cc'ing Olga Panfilova of Kartina. To the extent these communications relate to the Channels' legal strategy, the inclusion of Ms. Panfilova – then a third-party – destroys any claim to attorney-client privilege, and the common interest exception does not apply for the reasons stated herein.

[4] *See* No. 16-cv-01318, ECF No. 629 (Declaration of Olga Panfilova) (attached to Butterfield Declaration as Exhibit A) (emphasis added).

interest for several reasons. First, the Court determined that the plaintiff could not rely on the *Kovel* line of cases, given that there was no showing that the litigation funder's communications were "indispensable or served some specialized purpose." *Id.* at *3 (internal citations omitted). "Rather, her primary purpose appear[ed] to be. . .reviewing and commenting on legal strategy presumably to maximize the chances of a return on her investment." *Id.*  Second, the Court rejected the notion that the written agreements sufficed to create a privilege where there was none. *Id.* (*citing World Trade Ctr. Props. LLC.*, 2002 WL 1455346, at *5 ("The fact that private parties agree that something is privileged does not make it so.")). Third, turning to the substance of the funder's role, the Court emphasized that she was "not a party to this litigation, and there [was] no suggestion that she [had] any legal claim against Defendants whatsoever." *Id.* at *4. Accordingly, she could not "possibly share any legal interest with Plaintiff sufficient to invoke the common interest doctrine." *Id.*

The same is abundantly true here. As a non-exclusive licensee of the Channels' content, Kartina had a commercial interest in funding the Channels' litigation, because if successful, it would quash Kartina's competitors. The affirmative legal claims at issue were and are the Channels', however, and not those of Kartina, which knew that it could not be a litigant. *See Bank of America, N.A. v. Terra Nova Ins. Co. Ltd.*, 211 F. Supp. 2d 493, 497 (S.D.N.Y. 2002) ("If anything, the fact that [the Channels] could require [Kartina] to pay [the Channels'] fees provides further evidence of the divergence of interests between the parties.").

That Kartina and Channel One are both represented by Dunnington, moreover, does not immunize communications involving Kartina from disclosure where the parties' interests are fundamentally dissimilar.[5] A claim by the litigation funder in *Cohen* to have had an independent

---

[5] Some cases hold that the common interest privilege applies when multiple parties are represented by the same attorney. *See, e.g., North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 797 F. Supp. 363 (D. N.J. 1992).

attorney-client relationship with the plaintiff's attorney would have been an impermissible end-run around the Court's ultimate determination that communications between a litigation funder and non-litigant are not, in fact, protected (even if an attorney is present). *See also, e.g., Walsh v. Northrop Grumman Corp.*, 165 F.R.D. 16, 18 (E.D.N.Y. 1996) ("Saloman wants to protect confidences it shared with its own attorneys and then shared, not with Northrop's attorneys, but with Northrop. To extend the common interest doctrine that far would mean that a party could shield from disclosure any discussions it had with another person about a matter of common interest simply by discussing that matter first with its attorneys."). The Court should reject similar efforts by Defendants here to game the application of the common interest privilege.

### B. Kartina and Channel One Do Not Share an Identical Interest

Even if Kartina and Channel One were engaged in a joint "legal" enterprise – and they were not – their interests were and are not identical, as is required for the application of the common interest doctrine. *See World Trade Ctr. Props. LLC.*, 2002 WL 1334821, at *3. Tellingly, Channel One has publicly accused Kartina of illegally distributing its services, and more recently, Kartina has sued Channel One in Germany in connection with the license fees it owes Channel One. *See* Butterfield Decl., Ex. E.

"[T]he common interest privilege falls away when there is a dispute between the two parties with common interests that is within the scope of the attorney's representation." *Fed. Dep. Ins. Corp. v. Coleman Law Firm*, 2014 WL 3734119, at *2 (N.D. Ill. July 29, 2014). Here, the ongoing disputes between Channel One and Kartina are plainly within the scope of the Retainer

---

However, those cases typically arise in the criminal context where an attorney is representing multiple defendants in the same case. *See id.* ("In that situation, communications made to the shared attorney to establish a defense strategy remain privileged as against the rest of the world."). The common interest privilege should not, and does not, automatically apply simply because an attorney purports to represent both a litigation funder and a litigant, as is the case here.

9

Agreement. *See supra*, n.1. Ultimately, that Kartina itself was alleged to have "pirated" the Channels' content raises substantial doubts about whether the parties had an identical goal of stopping IPTV piracy, as the Channels claim.

### C. Kartina and Channel One Did Not Enter Into Any Joint Agreement

Although, as demonstrated in *Cohen*, the existence of a written agreement would not suffice to establish a common interest between Kartina and Channel One, the conspicuous **lack** of any joint prosecution or defense agreement highlights the absence of a common interest. *See Bank of America, NA v. Terra Nova Ins. Co. Ltd.*, 211 F. Supp. 2d 493 (S.D.N.Y. 2002). In *Terra Nova*, the Court noted that parties ultimately executed such a common interest agreement – but not until after the disputed documents were created. *See id.* ("Thus, there was no 'joint defense effort or strategy' in 1999"); *see also, e.g., United States v. United Techs.,* 979 F. Supp. 108 (D. Conn. 1997). Here, there was never any written agreement between Kartina and the Channels at all. *See* Butterfield Decl., Ex. B (Retainer Agreement between Channel One and Kartina); Ex. C (Channel One's power of attorney authorizing Dunnington to litigate on its behalf).

Ultimately, Kartina's abuse and manipulation of the legal process to extract a business advantage for itself is the core of the Plaintiffs' case – and the Disputed Communications play an important part. The Defendants should have been at pains to avoid any appearance of conflicts, had separate counsel, and entered into joint defense agreements – had they actually seen eye to eye and shared a common legal position. Instead, defense counsel is trying to avoid the scrutiny of their actions that the law requires. Any privilege is defeated when outsiders are allowed to participate in and control the litigation process, and that is precisely what happened here.

## CONCLUSION

For the reasons stated above, the Plaintiffs respectfully request that Defendants be compelled to disclose the Disputed Communications.

Dated: New York, New York
June 11, 2020

Respectfully submitted,

MOSES & SINGER LLP

By: _____
Toby Butterfield
Valeria Castanaro
Michael Rosenberg
405 Lexington Avenue
New York, NY 10174
Telephone: (212) 554-7800
Facsimile: (212) 554-7700

*Attorneys for Plaintiffs*