**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

Actava TV, Inc., Master Call Communications, Inc.,  )
Master Call Corporation, and Rouslan Tsoutiev,    )
                                      )  Index No.: 1:18-cv-06626
                        Plaintiffs,    )
                                        )
         -against-         )
                                        )
Joint Stock Company "Channel One Russia Worldwide,"  )
Closed Joint Stock Company "CTC Network," Closed   )
Joint Stock Company "New Channel", Limited Liability  )
Company "Rain TV-Channel," Open Joint Stock     )
Company "ACCEPT", and Limited Liability Company   )
"Comedy TV," and Kartina Digital GmbH,        )
                                        )
                    Defendants.   )
                                        )

---

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

Plaintiffs Actava TV, Inc. ("Actava"), Master Call Communications, Inc., Master Call

Corporation, and Rouslan Tsoutiev (collectively, the "Actava Parties" or "Plaintiffs") hereby move

for a protective order under Federal Rule of Civil Procedure 26(c).  Specifically, the scope of

discovery should be limited to the claims and defenses raised in this action, and Defendants should

be forbidden from inquiring into matters preceding, and covered by, a prior Settlement Agreement

and Release negotiated between and executed by the parties.[1]

## BACKGROUND

In this action, the Actava Parties seek damages caused by the Defendants' initiation of

meritless contempt proceedings following a prior settlement agreement.  *See* ECF No. 40 (the

"Amended Complaint").  Defendants' malicious conduct stems from a sprawling litigation filed

by the Channels against various entities alleged to have "pirated" the Channels' content, asserting

---

[1] Plaintiffs met and conferred with Defendants prior to filing this Motion.

claims for copyright and trademark infringement, among others.  *See Joint Stock Company "Channel One" Worldwide, et. al. v. Infomir*, No. 16-cv-01318-GBD-BCM.[2]  The Channels originally alleged that through the operation of Actava's website ([www.actava.tv](www.actava.tv)), the Actava Parties *inter alia* (i) "knowingly and purposely hack into or otherwise circumvent and intercept Broadcasters' encrypted satellite signals", ¶ 12; and (ii) "download, copy or otherwise utilize the Plaintiffs encrypted signals and rebroadcast and/or store them via equipment, including computer servers," ¶ 13.  *See* 16-cv-01318, ECF No. 1.

On April 23, 2016, the parties[3] executed a Settlement Agreement and Release (the "Agreement"), pursuant to which the Actava Parties paid a substantial sum "in consideration of the Orders, mutual release, and other agreements stated in this Agreement."  *See* Ex. A, ECF No. 246-1.  The Agreement contains a mutual general release stating as follows:

> **7. <u>Mutual General Release:</u>** As of the Effective Date, Plaintiffs release and discharge Defendants, and their parents, subsidiaries, divisions, affiliates, directors, officers, employees, licensees, successors, assigns, agents, representatives, insurers, and attorneys, from any and all claims that relate in any manner to the First Action and/or the Second Action and **Defendants likewise release and discharge Plaintiffs** and their parents, subsidiaries, divisions, affiliates, directors, officers, employees, licensees, successors, assigns, agents, representatives, insurers, and attorneys, **from any and all claims that relate in any manner to the First Action and/or the Second Action**. For the avoidance of doubt, this mutual general release does not foreclose claims against any Party, collectively or individually, arising from a breach of Paragraph 6 of this Agreement entitled "Representations and Warranties."

> *Id.,* ¶ 7 (emphasis added).

---

[2] Defendants filed two actions (the "First Action" and the superseding "Second Action") against the Actava Parties alleging substantially similar claims (together, the "Original Proceedings").

[3] Defendant Kartina was not a named plaintiff in the underlying litigation against the Actava Parties or the contempt proceedings brought the Actava Parties that form the basis of the instant action.  However, the Actava Parties allege and the evidence demonstrates that Kartina bankrolled and directed these efforts behind the scenes, and that Kartina received proceeds from the Settlement Agreement and Release to fund further litigation efforts, including the contempt proceedings.

In turn, the Agreement's "Representation and Warranties" section provides in pertinent part:

> Defendants represent and warrant collectively and individually that:
>
> i.       Other than as identified in the Plaintiffs' pleadings in the First Action and Second Action, Defendants have not previously broadcast, copied, distributed or otherwise used the Broadcasts other than through Actava and the Website;
> ii.      Defendants have not and do not own or have any interest in any other website, application or other property engaged in the business of providing internet protocol television ("IPTV");
> iii.     Defendants maintain no ownership or management interest in any other IPTV service;
> iv.      Defendants are not presently and will not in the future broadcast, copy, distribute or otherwise use the Broadcasts in any manner, including on the Website, without the express written consent of the relevant Plaintiffs or an authorized representative thereof, as set forth in subparagraph (e) below.
>
> *Id.*, ¶ 6(d).

After executing the Agreement, the Actava Parties re-tooled their business and began referring former customers to Matvil Corporation ("Matvil"), a licensee of the Channels' programming.  On December 12, 2016, Defendants launched contempt proceedings against the Actava Parties, which are the subject of this action.  On September 27, 2017, Judge Moses denied the contempt motion in full, holding that the Channels' claims were unsupported by the evidence. The instant suit followed on July 23, 2018.

On April 6, 2020, Defendants filed an Answer and Counterclaims alleging (i) tortious interference; (ii) breach of contract; and (iii) constructive fraud in contract.  *See* ECF No. 150, ¶¶ 186-194; ¶¶ 195-204; ¶¶ 205-217.  The First Counterclaim alleges that the Actava Parties' lawsuit "unlawfully and maliciously interfered with Broadcasters' business relationship and their Licensing Agreements with Matvil". *Id.* ¶ 191.

The Second Counterclaim alleges that the Actava Parties' Referral Agreement with Matvil violated the Settlement Agreement.  *Id.* ¶ 200.  Specifically, Defendants allege that "in **October of 2016**, the Broadcasters discovered that the Actava Defendants were distributing the Broadcasts

without authorization in violation of the Settlement Agreement and in contempt of the Injunctions." *Id.* (emphasis added).  Defendants further claim that "[o]n November 16, 2018, the Broadcasters sent a notice of suspected breach of the Settlement Agreement." *Id.*, ¶ 201.  The notice of suspected breach (the "Notice"), in turn, confirms that the Defendants' claim pertains solely to Actava's post-settlement business arrangement with Matvil:  "Actava's representations and warranties. . .forbid the relationship Actava has formed with Matvil . . .  Whatever its relationship with Matvil, Actava has not received the consent of Broadcasters to use the Broadcasts in this manner."  *See* Ex. B, ECF No. 246-2.

The Third Counterclaim differs from the previous two, however, in that it alleges a violation of the Settlement Agreement based on pre-settlement conduct.  Specifically, Defendants claim that "in the fall of 2018, Broadcasters uncovered evidence that on or about June 2014, Actava obtained ownership of the website of Russian Telekom Inc . . . which had allegedly distributed pirated programming of the Broadcasters", and which "Actava directed . . . to redirect to the Actava Website." *Id.,* ¶¶ 171-175.  Therefore, according to Defendants, Actava breached the Settlement Agreement's Representations and Warranties clause because it "neither disclosed its relationship with RT nor its control or use of the RT [Domain] that provided and/or promoted IPTV content." *Id.,* ¶ 177-78.

In discovery and depositions taken thus far in this action, however, Defendants are attempting to unravel the Settlement Agreement entirely.  Defendants' counsel has inquired, *inter alia*, into (i) whether Actava had licenses to stream Defendants' programming prior to 2016; (ii) which content "aggregators" Actava used prior to 2016; (iii) how content was streamed prior to 2016.  For example, at the Defendants' December 18, 2020 deposition of Mr. Tsoutiev, Defendants' counsel asked Mr. Tsoutiev as follows:

Q:  You're testifying under oath here today.  It's true, isn't it that you knew
and you know today that Actava had no licenses to broadcast any of those
channels on or around January 2016; isn't that correct?
A:  Okay. . .I think we may not have any licenses as of that day, January 21.
. . .
Q:    Who provided the software that enable you to deliver the video on
demand and the OTT service to customers?
A:    Again, what period of time, assuming we have different models?
Q:  **Start from the beginning.**
A:  Start from the beginning.  Our partner in Ukraine, they provided.  We
used their equipment.
Q:   Which partner in Ukraine?
A:  Which partner?  I will recall the name and I will tell you.  It's [my] third
time talking about it.
. . .
Q:    So how did the data get to Actava from the aggregator?  Can you
describe that for us?
MR. BUTTERFIELD:  Objection.  You're still talking about 2016; is that
right?
MR. DOWD:  From the beginning.
. . .

*See* Ex. C, ECF No. 245 (Tsoutiev Tr. at 58:15-25; 62:15 – 63:24).

Moreover, Defendants have requested documents preceding the 2016 Settlement

Agreement including, but not limited to, the "[l]ocation and number of servers used by Plaintiffs,"

the "number of Infomir [Set Top Boxes] purchased by Plaintiffs," the "names of [Mr. Tsoutiev's]

three former Ukranian partners," the "identity of Plaintiff's 1-3 'Aggregators of content'", and

"Plaintiffs' 5-6 licenses for IPTV Channels".

At most, Defendants are entitled to inquire about pre-settlement conduct pertaining to

Actava's acquisition of the RT Domain.[4]  Defendants' other lines of inquiry and discovery requests

---

[4] Mr. Tsoutiev testified at deposition that that "around 2013," when Actava acquired the RT Domain,
Actava also "acquired the assets of Russian [Telek]," consisting of a platform which "allowed us to build
infrastructure around it," so that "we streamed content from our equipment directly to the customers'
receivers."  *See* Ex. C, ECF No. 246 (Tsoutiev Tr. at 71:21 – 72:13).   The RT Assets, including the RT
Domain, were therefore subsumed into Actava's own streaming platform and services, and their
acquisition by Actava would not constitute a separate breach of the "Representations and Warranties"
section of the Agreement (at Section 6(d)(i-iii, *supra* at 3), even if Defendants alleged a claim as to
Actava's acquisition of the RT Assets as a whole – and they did not.

(collectively, the "Pre-Settlement Discovery")[5] are plainly outside the scope of the claims and defenses raised in this action and are plainly barred by the mutual general release in the Settlement Agreement. For these reasons, and as set forth more fully below, the Actava Parties respectfully request that the Court grant this Motion for a Protective Order in its entirety.

## ARGUMENT

Rule 26(c) of the Federal Rules of Civil Procedure provides, in relevant part, that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery . . . [and/or] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters."   Fed. R. Civ. P. 26(c)(1)(A). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984). Further, "[w]here the discovery is relevant, the burden is upon the party seeking non-disclosure or a protective order to show good cause." *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992).

**A.     The Pre-Settlement Discovery is Irrelevant and Overly Burdensome**

It is well-established that discovery requests which seek documents beyond the "subject matter of the action" are irrelevant and should be precluded. *Daval Steel Prods. V. M/V Fakredine*, 951 F.2d 1257, 1367 (2d Cir. 1991).  Discovery "is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support". *Tottenham v. Trans World Gaming Corp.*, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002) (quoting *Cleveland-Goins v. City of New York*, 1999 WL 673343, at *2 (S.D.N.Y. Aug. 30, 1999)).  The 2015 Amendments to FRCP Rule 26(b)(1) also clarify that the

---

[5] The Actava Parties define impermissible "Pre-Settlement Discovery" to exclude discovery pertaining to the RT Domain, which is the subject of Defendants' Third Counterclaim.

scope of discovery extends only to non-privileged matters that are **both** relevant to a claim or defense and "proportional to the needs of the case".   The Pre-Settlement Discovery is neither relevant to the Counterclaims nor proportional to the needs of the case.

The **only** pre-settlement conduct alleged is that in the Third Counterclaim, which alleges that the Actava Parties concealed their prior ownership of the RT Domain during settlement negotiations, violating ¶ 6(d)(i)-(iii) of the Representations and Warranties section of the Settlement Agreement.   But Defendants' inquiries go far beyond the RT Domain. Rather, Defendants want a wholesale reopening of pre-settlement records, and seek discovery into precisely the conduct covered by the Settlement Agreement and Release.   These inquiries and requests are "based on pure speculation," and concern supposed "past wrongdoing not related to the alleged claims or defenses." *Collens v. City of New York,* 222 F.R.D. 249, 253 (S.D.N.Y. 2004) (internal citations omitted).   Therefore, the Pre-Settlement Discovery is not relevant.

The Pre-Settlement Discovery is also not proportional to the needs of the case because the associated burden or expense with producing this material outweighs its benefit.   Defendants are asking Plaintiffs to testify about, and produce documents pertaining to, events from ten years ago that have no bearing on this action.   *See, e.g.,* Ex. C, ECF No. 245 (Tsoutiev Tr. at 34:20-22) ("Again, we're talking about [the] period of time [of] 2011 and maybe—okay.   Everything is not as simple as [that]."),   Defendants have already issued a litany of irrelevant and disproportionate discovery requests and demanded that Plaintiffs' representatives testify as to the same.   For these

reasons, there is good cause to forbid further such discovery, and Plaintiffs' Motion should be granted.[6]

**B.**   **The Mutual General Release Bars the Pre-Settlement Discovery**

Even if claims pertaining to the Pre-Settlement Discovery were in fact alleged, those claims would be barred by the terms of the Settlement Agreement.   "It is well established that settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Collins v. Harrison–Bode,* 303 F.3d 429, 433 (2d Cir. 2002) (internal quotation marks and alteration omitted).   Under New York law, "words of general release are clearly operative not only as to all controversies and causes of action between the releasor and releasees which had, by that time, actually ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-existent controversies." *A.A. Truck Renting Corp. v. Navistar, Inc.,* 81 A.D.3d 674, (2d Dep't 2011).

Defendants' lines of inquiry and discovery requests are covered by the mutual general release, and do not implicate the Representations and Warranties section of the Settlement Agreement.   Specifically, the Pre-Settlement Discovery pertains to Actava's own operations prior to 2016, and could not be used to establish that "[o]ther than as identified in the Plaintiffs' pleadings in the First Action and Second Action, Defendants have [] previously broadcast, copied, distributed or otherwise used the Broadcasts **other than through Actava and the Website**"; nor that at the time of the Settlement Agreement, Actava had any interest in any "**other** website, application or other property engaged in the business of providing internet protocol television";

---

[6] To be clear, because the Pre-Settlement Discovery is irrelevant, the Actava Parties do not bear the burden to show "good cause," even though it is abundantly demonstrated here.   *See Kleeberg v. Eber*, No. 16-cv-9517 (S.D.N.Y. 2019) (internal citation omitted) ("In order to justify withholding relevant information, the party resisting discovery must show good cause, the standard for issuance of a protective order under Rule 26(c)".

nor that Defendants "maintain [any] ownership or management interest in any **other** IPTV service." *See* Ex. A, ECF No. 246-1, ¶¶ 6(d) (emphasis added).

The Actava Parties' acquisition and repurposing of the RT Assets to improve Actava's streaming platform did not mean that Actava was using the Broadcasts "other than" through Actava and www.actava.tv.   *See* Ex. C, ECF No. 246 (Tsoutiev Tr. at 73:2-7) ("Q: So your understanding is that Actava custom designed its own improved middle[ware] [software] based on RussianTele[k] Solution?  A:  That's correct.  Yes, that's correct.").  It simply meant that Actava was undertaking to "improve [its] quality."  *Id.* at 72:9-10.  Similarly, any purported prior connection between Actava and Ukranian "partners" and "content aggregators" merely enabled Actava to enhance its streaming services.

By 2016, Actava's streaming business was in full, plain view of Defendant Channels.  The parties settled the 2016 Action.  This is a new action – based on Defendants' baseless litigation conduct that, unfortunately, continues to manifest.  The release of Actava "from any and all claims that relate in any manner to the First Action and/or the Second Action," Ex. A ¶ 7, means what it says.  But Defendants' absurdly aggressive reading of the Representations and Warranties section would render the general release toothless.  Ultimately, Defendants should not be permitted to fish for claims they did not make in this action and which would be barred regardless.

<u>**CONCLUSION**</u>

For the above reasons, the Motion should be granted and a Protective Order entered.

Dated: New York, New York
      January 19, 2021

                        Respectfully submitted,

                        MOSES & SINGER LLP

                        By: <u>/s/ Michael Rosenberg</u>
                              Toby Butterfield
                              Valeria Castanaro
                              Michael Rosenberg
                              405 Lexington Avenue
                              New York, NY  10174
                              Telephone: (212) 554-7800
                              Facsimile: (212) 554-7700

                              *Attorneys for Plaintiffs*