**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Actava TV, Inc., Master Call Communications, Inc., Master Call Corporation, and Rouslan Tsoutiev, ) ) | |
| Plaintiffs, ) | Index No.: 1:18-cv-06626 |
| ) | |
| -against- ) | |
| ) | |
| Joint Stock Company "Channel One Russia Worldwide," ) Closed Joint Stock Company "CTC Network," Closed ) Joint Stock Company "New Channel", Limited Liability ) Company "Rain TV-Channel," Open Joint Stock ) Company "ACCEPT", and Limited Liability Company ) "Comedy TV," and Kartina Digital GmbH, ) ) | |
| Defendants. ) | |

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 2

Relevant Procedural History……………………………………………………………6

Defendants' Specific Requests……………………………………………………………8

ARGUMENT .......................................................................................................... 15

   I.    Defendants' Motion Does Not Comply With Local Civil Rule 37.1 or FRCP 37(a)(1). .. 15

   II.   Defendants Seek Documents That Do Not Exist, Which Were Already Produced, or Which Plaintiffs Agreed to Continue to Produce ..................................................................... 16

   III.   Defendants' First Request 36 and Remaining Requests 1-3 Seek Irrelevant Documents Covered by a Prior Settlement Agreement and Mutual Release ................................. 17

      A.    The Pre-Settlement Discovery is Irrelevant and Disproportionate ........................... 17

      B.    The Mutual General Release Bars the Pre-Settlement Discovery ............................. 18

   IV.   Sanctions Should be Awarded to Plaintiffs ................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

A.A. Truck Renting Corp. v. Navistar, Inc.,
   81 A.D.3d 674 (2d Dep't 2011).................................................................20

Collens v. City of New York,
   222 F.R.D. 249 (S.D.N.Y. 2004) ...............................................................19

Collins v. Harrison–Bode,
   303 F.3d 429 (2d Cir. 2002)......................................................................20

Daval Steel Prods. V. M/V Fakredine,
   951 F.2d 1257 (2d Cir. 1991).....................................................................18

DLC Mgmt. Corp. v. Town of Hyde Park,
   163 F.3d 124 (2d Cir. 1998)................................................................21, 22

Gambino v. Payne,
   No. 12-824, 2016 WL 5844299 (W.D.N.Y. Oct. 6, 2016) ...................................18

Members Services, Inc. v. Security Mut. Life Ins.,
   2007 WL 2907520 (N.D.N.Y. 2007) ...........................................................18

Neogenix Oncology, Inc. v. Gordon,
   2017 WL 1207558 (E.D.N.Y. 2017).............................................................18

Residential Funding Corp. v. DeGeorge Fin. Corp.,
   306 F.3d 99 (2d Cir. 2002)........................................................................21

Topps Co., Inc. v. Koko's Confectionary & Novelty,
   No. 16-cv-5954, 2018 WL 4440502 (S.D.N.Y. Sept. 17, 2018) ............................17

Tottenham v. Trans World Gaming Corp.,
   2002 WL 1967023 (S.D.N.Y. June 21, 2002) .........................................19

Zanowic v. Reno,
   2000 WL 1376251 (S.D.N.Y. 2000)............................................................18

**Statutes**

28 U.S.C. § 1927.......................................................................................21

**Other Authorities**

Fed. R. Civ. P. 37......................................................................................17

i

FRCP Rule 26(b)(1)....................................................................................................................19

FRCP 37(A)(1)..........................................................................................................................17

Local Rule 37.1............................................................................................................................5

Plaintiffs Actava TV, Inc. ("Actava"), Master Call Communications, Inc., Master Call Corporation, and Rouslan Tsoutiev (collectively, the "Actava Parties" or "Plaintiffs") hereby oppose Defendants' Motion to Compel (the "Motion") filed on February 5, 2021 (ECF No. 263).

## <u>INTRODUCTION</u>

By this Motion, Defendants purportedly seek to compel responses to 19 document Requests, most of which Plaintiffs already responded to and produced documents two years ago, and have no further documents to produce, as they already told Defendants.  Painting with too broad a brush, Defendants' Motion fails to individually address any of the requests about which they complain, and did not even meet and confer to determine what additional documents they mistakenly thought might exist, in violation of Local Rules.  Instead, in another naked attempt to delay the conclusion of discovery herein, Defendants piled multiple Requests into this Motion, and trotted out false blanket accusations that Plaintiffs are refusing to produce documents, when Plaintiffs already produced the documents in their possession long ago.  Defendants mischaracterize testimony from Plaintiffs witnesses, who merely answered Defendants' questions about Plaintiffs' business activities prior to their settlement of the two lawsuits that Defendants brought previously and were settled in spring 2016.   Plaintiffs cannot produce documents which they no longer have.  The only documents which exist but were not already produced herein years ago – about which Defendants never articulated a specific complaint until they did so in the body of this motion – are being produced.  Plaintiffs previously represented to Defendants two years ago and continue to tell them that additional responsive documents do not exist.

There is, however, one category of document requests by Defendants in issue which grossly exceeds the proper scope of discovery.  Those document requests – First Request No. 36 (seeking all documents concerning Actava's promotional materials regardless of time frame) and

Remaining Request Nos. 1-3 (seeking information on Actava's prior partners, investments, and data aggregators) reach back in time a decade and do not even address facts in issue in any claims or counterclaims in this action, and pre-date the Settlement Agreement and Mutual Release executed by all parties (except Kartina Digital GmbH) on April 26, 2016, which explicitly extinguished all then existing claims. Defendants' attempt to relitigate and conduct yet more burdensome discovery about facts and claims they released five years ago should be seen for what it is: an attempt to harass, confuse and delay the conclusion of discovery in this action, now scheduled to close on April 5, just six weeks from now.

## **BACKGROUND**

Discovery herein lasted nearly two years and has been extensive. As the Court will recall, Defendants initially sought to delay discovery by serving what this Court ruled were "boilerplate objections" to Plaintiffs' document requests and interrogatories for relevant documents and information. This Court awarded sanctions in favor of Plaintiffs for Defendants' obstructive discovery tactics in refusing to withdraw those objections. ECF No. 129.[1] For their part, Plaintiffs have produced tens of thousands of pages of documents to Defendants, including over 1,400 documents in compliance with the Court's September 21, 2020 Order directing the Actava Parties to produce all Matvil-related business information. On January 20, 2021, Plaintiffs also produced the "evidence of refunds" which Defendants first claimed in their January 20, 2021 pre-motion letter (ECF No. 249) should have been produced. *See* Butterfield Decl., ¶ 7. As Plaintiffs indicated in their portion of the parties' January 20 pre-motion letter that preceded this motion, Plaintiffs also already produced the "five to six licenses for IPTV Channels" sought by Defendants via this

---

[1] Defendants filed objections with Judge Carter to that sanctions award. While those objections are baseless, Plaintiffs still await Judge Carter's ruling dismissing them. Meanwhile, Defendants have failed to satisfy this Court's sanctions award or to make the payment to Plaintiffs ordered by this Court, which remains outstanding.

motion.  *See* Butterfield Decl., Ex. A at p. 4 (the "Signal Media Agreements").  Plaintiffs have produced all this responsive material (including a small batch of documents which Defendants first complained **via this motion** should have been produced, but did not specifically seek despite having received Plaintiff's document responses nearly two years ago).  Because Defendants' motion mischaracterizes what Plaintiffs witnesses said at deposition; what activities Plaintiffs conducted years ago; cobbles together no fewer than **twenty two (22)** document requests (First Requests Nos. 7-9, 35-37, 39-40, 44, 47-50, 58-59, 60-63 and Second Requests Nos. 35, 56, 59) without differentiating them, and failed to  meet and confer with Plaintiffs' counsel before coming to the Court with accusations that documents are being withheld, Plaintiffs are at a loss to know what additional documents Defendants think exist, were previously requested, but have not been produced.  Each new filing by Defendants raises new objections and accusations.  Nevertheless, Plaintiffs have continued to supplement their document productions in response to new accusations, to the extent they have any responsive documents, and will continue to do so.  But Defendants motion, with its wide-ranging accusations, distortions of Plaintiffs' witness' testimony, and undifferentiated lists of document requests supposedly not fully responded to, violates both this Court's requirement to meet and confer; its rule to address each document request specifically, and ignores both Plaintiffs' extensive document productions to date and clear statements as to which categories of documents for which they have produced everything they have.

Unlike Defendants, whose briefing of this Motion thus violates Local Rule 37.1, Plaintiffs will address each request specifically.  This motion seeks to compel further responses to "Requests for Production Nos. 7-9, 35-37, 39-40, 44, 47-50, 57, 60, 62, and 63 of Broadcasters' first RFPs and Request Nos. 35, 56, 59 of Broadcasters' Second Requests," but only actually identifies six

items – only four of which were outlined in the body of Defendants' January 11, 2021 letter (ECF No. 249) which Defendants postulate exist and should be ordered to be produced.  Defendants also demanded that Plaintiffs insert their "portion by 9:30 A.M. on January 19, 2021, so we can timely submit the letter to Judge Fox."  *See* Butterfield Decl., Ex. A, at p. 3.   But it arrived just 18 hours before the depositions of three of Plaintiffs' witnesses:  Rule 30(b)(6) witnesses Irina Pliss (on Tuesday, February 19); Tatyana Zhevnerova (on Wednesday, February 21), and Plaintiff Actava's CEO Rouslan Tsoutiev (on Friday, February 22).  *See* id, p. 6.  Nevertheless, Plaintiffs' counsel drafted their section of that letter explaining how Plaintiffs had already complied with most of the demands by producing the supposedly missing documents.  (ECF No. 249, at pp. 1-2).

To address Defendants' attempt to seek discovery about normal and decades-old business activities, Plaintiffs' counsel e-mailed Defendants' counsel on the evening of Monday January 24, explaining that "[w]e intend to move for a protective order to forbid discovery into pre-settlement matters that (i) were covered by the mutual general release negotiated by the parties; and (ii) which were not alleged in the Defendants counterclaims.  Please let us know if you are available to confer on this issue and your letter at 9:15 A.M. tomorrow morning."  *See* Butterfield Decl., Ex. A at p. 2.  Counsel for Channel One then asked remaining Defendants' counsel if they were available for a "short call," which the parties held at 9:15 A.M. on Tuesday morning prior to the Pliss Deposition at 10:00 a.m.  *Id.*, Ex. B.  In that brief call, Defendants did not discuss any of the specific discovery requests Defendants now seek by this Motion to Compel.[2]  Instead of resolving those issues,

---

[2] Defendants' motion frankly admits, but attempts to minimize, their failure to meet and confer on this motion, writing that "[w]hile Plaintiffs had a perfunctory ten-minute conversation with Defendants before a scheduled deposition on January 19, 2021, which conversation raised for the first time Plaintiffs' claim for a sweeping protective order, **no meaningful meet and confer occurred**."  ECF No. 250, n.1 (emphasis added).

Defendants simply insisted that the Court must hear this motion, which the Court then allowed Defendants to fully brief.

Despite the absence of any meaningful meet and confer, Defendants let another two weeks to pass without conducting a meet-and-confer to narrow the scope of this dispute or address Plaintiffs' objections or explanations that it already produced nearly all the documents sought. Defendants then filed this Motion on February 5, 2021.[3]

On January 26, 2021, Plaintiffs served their expert report.   On January 27, 2021, Defendants demanded "all documents considered by [Plaintiffs'] experts. . .by the close of business tomorrow, January 28, 2021."  *See* Butterfield Decl., Ex. C.  Plaintiffs said they would respond on January 29, 2021.  *See* Butterfield Decl., ¶ 9.  Without waiting for Plaintiffs to respond, or conferring with Plaintiffs about any requested documents, Defendants requested a discovery extension stating "Plaintiffs have not. . .agreed to produce the documents at issue," including "the number of customers utilizing Plaintiffs' undisclosed IPTV service, RussianTelek, or the revenue Plaintiffs or others received therefrom."   ECF No. 253.    Plaintiffs have already produced everything in their possession, custody, or control relating to RussianTelek.   Defendants also misrepresent that "approximately 70 categories of documents reviewed or relied upon by Plaintiffs' experts in preparing their report that have not been produced to Defendants.  *See* ECF No. 253.  As Plaintiffs responded on January 31, 2019, "most of the documents [considered by the expert] have already been produced. . .There is absolutely no basis for an extension, as we have

---

[3] In contrast, when Plaintiffs filed their prior Motion to Compel in 2019, the parties conferred telephonically as to each individual request Plaintiffs sought to compel.  As a result, Plaintiffs could ascertain whether Defendants would agree to withdraw their respective objections, prior to filing the motion.  And because they refused to withdraw those objections, the Court was able to rule that their objections were discovery abuses.  Here, Plaintiffs have faced a changing and confusing mélange of document requests and accusations, yet in good faith have continued to produce additional allegedly responsive documents promptly when Defendants identified them.  Butterfield Decl., ¶ 3.

provided these documents already, and are doing so again now." *See* Butterfield Decl., Ex. D.  In that same e-mail, they re-produced **all material relied upon by their experts**.  *See* Butterfield Decl., ¶ 10.[4]

***Relevant Procedural History***

In the underlying or "Original Proceedings," on April 23, 2016, the parties[5] executed a Settlement Agreement and Release (the "Agreement"), pursuant to which the Actava Parties paid a substantial sum "in consideration of the Orders, mutual release, and other agreements stated in this Agreement."  *See* ECF No. 262-2.  The Agreement contains a mutual general release stating as follows:

> **7. <u>Mutual General Release:</u>** As of the Effective Date, Plaintiffs release and discharge Defendants, and their parents, subsidiaries, divisions, affiliates, directors, officers, employees, licensees, successors, assigns, agents, representatives, insurers, and attorneys, from any and all claims that relate in any manner to the First Action and/or the Second Action[6] and **Defendants likewise release and discharge Plaintiffs** and their parents, subsidiaries, divisions, affiliates, directors, officers, employees, licensees, successors, assigns, agents, representatives, insurers, and attorneys, **from any and all claims that relate in any manner to the First Action and/or the Second Action**. For the avoidance of doubt, this mutual

---

[4] Defendants falsely stated that Plaintiffs' experts reviewed documents showing wire transfers Matvil made to Actava, (ECF No. 253, p. 2), but in fact, Plaintiffs' experts never reviewed such documents so could not rely on them.  Defendants also did not tell Plaintiffs that any 2016 bank wires were supposedly missing from Plaintiffs' prior document productions, let alone request to meet and confer about production of them.  Instead, they just filed this Motion.  Plaintiffs already produced Matvil-related financial information months ago; are producing additional documents; and will supplement that production if necessary in the event Defendants come up with new claims that previously unspecified documents are being withheld.

[5] Defendant Kartina was not a named plaintiff in the underlying litigation against the Actava Parties or the contempt proceedings brought the Actava Parties that form the basis of the instant action.  However, the Actava Parties allege, and the evidence gleaned in discovery demonstrates, that Kartina bankrolled and directed these efforts behind the scenes, and that Kartina received proceeds from the Settlement Agreement and Release to fund further litigation efforts, including the contempt proceedings.

[6] In the Original Proceedings, The Channels had alleged that through the operation of Actava's website (www.actava.tv), the Actava Parties *inter alia* (i) "knowingly and purposely hack into or otherwise circumvent and intercept Broadcasters' encrypted satellite signals", ¶ 12; and (ii) "download, copy or otherwise utilize the Plaintiffs encrypted signals and rebroadcast and/or store them via equipment, including computer servers," ¶ 13.  *See Joint Stock Company "Channel One" Worldwide, et al. v. Infomir,* No. 16-cv-01318-GBD-BCM, 16-cv-01318, ECF No. 1.

6

general release does not foreclose claims against any Party, collectively or individually, arising from a breach of Paragraph 6 of this Agreement entitled "Representations and Warranties."

In turn, the Agreement's "Representation and Warranties" section provides in pertinent part:

Defendants represent and warrant collectively and individually that:

i.      Other than as identified in the Plaintiffs' pleadings in the First Action and Second Action, Defendants have not previously broadcast, copied, distributed or otherwise used the Broadcasts other than through Actava and the Website;
ii.     Defendants have not and do not own or have any interest in any other website, application or other property engaged in the business of providing internet protocol television ("IPTV");
iii.    Defendants maintain no ownership or management interest in any other IPTV service;
iv.     Defendants are not presently and will not in the future broadcast, copy, distribute or otherwise use the Broadcasts in any manner, including on the Website, without the express written consent of the relevant Plaintiffs or an authorized representative thereof, as set forth in subparagraph (e) below.

*Id.*, ¶ 6(d).

After executing the Agreement, the Actava Parties re-tooled their business and began referring former customers to Matvil Corporation ("Matvil"), a licensee of the Channels' programming.  Defendants' contempt proceedings, which are the subject of this action, followed on December 12, 2016.  On September 27, 2017, Judge Moses denied the contempt motion in full, holding that the Channels' claims were unsupported by the evidence.   The instant suit followed on July 23, 2018.

On April 6, 2020, Defendants filed an Answer and Counterclaims alleging (i) tortious interference; (ii) breach of contract; and (iii) constructive fraud in contract.  *See* ECF No. 150, ¶¶ 186-194; ¶¶ 195-204; ¶¶ 205-217.  The First Counterclaim alleges that the Actava Parties' lawsuit "unlawfully and maliciously interfered with Broadcasters' business relationship and their Licensing Agreements with Matvil".  *Id.* ¶ 191.  The Second Counterclaim alleges that the Actava Parties' Referral Agreement with Matvil violated the Settlement Agreement.  *Id.* ¶ 200.

7

The Third Counterclaim differs from the previous two, however, in that it alleges a violation of the Settlement Agreement based on pre-settlement conduct. Specifically, Defendants claim that "in the fall of 2018, Broadcasters uncovered evidence that on or about June 2014, Actava obtained ownership of the website of Russian Telekom Inc . . . which had allegedly distributed pirated programming of the Broadcasters", and which "Actava directed . . . to redirect to the Actava Website." *Id.,* ¶¶ 171-175. Therefore, according to Defendants, Actava breached the Settlement Agreement's Representations and Warranties clause because it "neither disclosed its relationship with RT nor its control or use of the RT [Domain] that provided and/or promoted IPTV content." *Id.,* ¶ 177-78. Accordingly, discovery pertaining to Actava's relationship with RT is the only pre-settlement discovery Defendants are entitled to.

### *Defendants' Specific Requests*

__Request No. 7__: This Request seeks "all Documents demonstrating that Actava 'ceased streaming said three Channels' programming via internet set-top box' on or about January 21, 2016." Plaintiffs state that no responsive documents exist demonstrating that Actava ceased streaming three Channels on or about January 21, 2016. Mr. Makhotin, Actava's systems engineer, testified at his December 19, 2020 deposition that after entering each service remotely, "[w]e just turned off the service," and that there is no known electronic record indicating that Actava disconnected certain Channels. *See* Dowd Decl., ECF No. 262-5 (Makhotin Tr. at 56-57).

__Request No. 8:__ This Request seeks "all Documents demonstrating that 'Actava has never resumed streaming' Broadcasters' Programming." As Plaintiffs already stated, they have already produced all available material responsive to this Request, including the expert report of Brad Gilmer which the Plaintiffs filed in the Contempt Proceeding. In response to the Court's September 21, 2020 Order directing Plaintiffs to produce all Matvil-related documents, Plaintiffs

produced over 1,700 documents reflecting the business relationship between Actava and Matvil, pursuant to which Actava referred its customers to Matvil and directed them to Matvil's broadcasts, which is the only business that Actava entered after settling with the Defendant Channels in 2016. *See, e.g.,* ACT000172-180; ACT000289-299.

**Request No. 9**:  This Request seeks "all Documents demonstrating that Actava 'dismantled the technology infrastructure that it had purchased and configured' and 'offered refunds to those who had already paid in advance for content."  Plaintiffs state that they already told Defendants, before Defendants filed the letter, that Plaintiffs would produce evidence that week of Actava's refunds to its customers.  *See* Butterfield Decl. at ¶ 7. Plaintiffs produced that evidence on January 20.  *Id.*  As to documents demonstrating that Actava "dismantled the technology infrastructure it had purchased and configured," Mr. Makhotin testified that there is no electronic record that reflects Actava's discontinued use of approximately 30 servers.  *See* Dowd Decl., ECF No. 262-5 (Makhotin Decl. at 56:13-18).  Nonetheless, Plaintiffs will search for and produce any additional responsive documents, if Defendants can identify any.

**Request No. 35:**  This Request seeks "all Documents and information concerning Your use of the Channels' Broadcasts from April 26, 2016 to the present."  No responsive documents exist.  As Judge Moses found, Plaintiffs did not "use the Channels' Broadcasts" from April 26, 2016 to the present.

**Request No. 36:**  This Request seeks "All Documents and information concerning Your publication or distribution of promotional materials referring to the Channel's Broadcasts, trademarks, trade names, or logos in any medium, including, without limitation, on Your Website, via IPTV, or on social media."  Plaintiffs continue to object that as to the period prior to the **April 26, 2016 Settlement**, such material is neither relevant to a claim, counterclaim, or defense of any

9

party.  Nor is this request proportional to the needs of this case.  As to the period after the Settlement, Plaintiffs produced responsive information concerning their promotions and advertisements of the Matvil service.  *See* ACT000882-1021.  Defendants have not identified a particular document responsive to this request that they seek and which Plaintiffs failed to produce.  If Defendants adequately identify any, Plaintiffs will search for and produce any responsive material, if they have it.

**Request No. 37:**  This Request seeks all "Documents and information concerning Your provision of set-top boxes to Matvil from April 26, 2016 to the present."  Plaintiffs responded "None" to this Request.  Wastefully and needlessly, Defendants moved to compel a response to this Request, but Plaintiffs have plainly stated that responsive documents do not exist.

**Request No. 39:**  This Request seeks "All Documents and information concerning Your provision of set-top boxes to any individual or business entity from April 26, 2016."  Plaintiffs already produced responsive material to this Request at ACT002785-86 (subscriber information and collection of set-top box invoices, as most of Actava's 2016 subscribers were provided set-top boxes.  Here, too, Defendants have not identified a particular additional documents responsive to this request that they seek and which Plaintiffs failed to produce.  If Defendants can adequately identify any, Plaintiffs will search for and produce any responsive material, if they have it.

**Request No. 40:**  This Request seeks "All Documents and information concerning the model of set-top boxes configured by Actava."  Plaintiffs already produced documents responsive to this request at ACT000326-392 (showing specifications, models, and guides for these precise set-top boxes).  There is nothing further they can produce.

**Request No. 44:**  This Request seeks "All Documents and Communications between Matvil and Actava pertaining or related to Actava's capabilities and expertise in the areas of

marketing, advertising, customer support, technical support and sales in the field of IPTV. Plaintiffs state that they have produced documents responsive to this Request (*see, e.g.,* Referral Agreement, ACT000819-000827; certified translations of 2018 phone calls between Matvil representatives and Actava, ACT0002801-2952). Plaintiffs already indicated to Defendants via deposition testimony that the 2016 negotiations between Matvil and Actava occurred over unrecorded telephone calls. Defendants have not identified a particular document responsive to this request that they seek and which Plaintiffs failed to produce. If Defendants adequately identify any, Plaintiffs will search for and produce any responsive material, if they have it.

**Request No. 47:** This Request seeks "All Documents and information pertaining to Your provision of goods to Matvil under the Referral Agreement, including without limitation, equipment, programs, domains, and other technology." As Plaintiffs already responded, they have no responsive documents.

**Request No. 48:** This Request seeks "All Documents and information regarding Your provision of services to Matvil under the Referral Agreement." Plaintiffs state that Actava's services consisted of referring customers to Matvil and directing to them to their services. Plaintiffs produced subscriber information (e.g., ACT4049), payment information (e.g., MATVIL000782), master spreadsheets demonstrating the initiation and termination of Matvil service provided by Actava (e.g., MATVIL001593), and promotional material (ACT000955-1003; ACT0001016-1021). Plaintiffs are preparing to produce additional material, including evidence of wire payments to Actava from Matvil that Defendants are identifying as lacking for the first time in this Motion, instead of the pre-motion letter. See Butterfield Decl., ¶ 14. Plaintiffs will continue to search for and produce any responsive material, if they have it.

**Request No. 49:** This Request seeks "All Documents and information pertaining to Your provision of goods to subscribers or potential subscribers to Matvil's services under the Referral

Agreement, including without limitation, equipment, programs, domains, and other technology."
Actava already stated that most of its 2016 subscribers were provided with set-top boxes, and
Actava already produced documents concerning them.  Defendants have not identified a particular
document responsive to this request that they seek and which Plaintiffs failed to produce.  If
Defendants adequately identify any, Plaintiffs will search for and produce any responsive material,
if they have it.

**Request No. 50:**  This Request seeks "All Documents and information regarding Your
provision of services to subscribers or potential subscribers to Matvil's services under the Referral
Agreement."  Plaintiffs have provided responsive material to this Request at ACT002785-86
(subscriber information and collection of set-top box invoices).  Actava states that most of its 2016
subscribers were provided set-top boxes.  Here, too, Defendants have not identified any particular
documents responsive to this request that they seek and which Plaintiffs failed to produce.  If
Defendants adequately identify any, Plaintiffs will search for and produce any responsive material,
if they have it.

**Request No. 57:**  This Request seeks "Documents identifying all repeat subscribers to the
Channels' IPTV Programming that were solicited by Actava under the Referral Agreement and
Actava's IPTV business prior to April 26, 2016, respectively."  Plaintiffs have already produced
the subscriber information in their possession, custody, or control (see ACT001736 and items
referenced above).  There are no additional documents responsive to this Request.

**Request No. 60:**  This Request seeks "All Documents and information concerning or
relating to Your provision of billing support services to subscribers and/or other customers of
Matvil under the Referral Agreement."  Plaintiffs have already produced material responsive to
this Request and in response to the Court's September 1, 2020 Order, ECF No. 196 (see

MATVIL000879;  MATVIL003184).   Defendants have not identified a particular document responsive to this request that they seek and which Plaintiffs failed to produce.  If Defendants adequately identify any, Plaintiffs will search for and produce any responsive material, if they have it.

**Request No. 62:**  This Request seeks "All Documents concerning any licenses or other agreements authorizing You to stream or otherwise provide access to Defendants' Programming." Plaintiffs produced this material to Defendants prior to the filing of this Motion, at ACT2701- 2733, as indicated in Defendants' portion of Plaintiffs' January 21, 2021 letter motion to compel (ECF No. 249, at p. 2).  Again, Defendants needlessly filed this Motion anyway.

**Request No. 63:**   This Request seeks "All Documents concerning any Broadcast or other operating licenses issued to You by any city, state, federal or other agency."  Here, too, Plaintiffs responded that they have no responsive documents, and that remains the case.

**Request No. 35 (Second Requests):**   This Request seeks "All Documents, including Communications, concerning Tsoutiev's negotiation of a license agreement with any Channel identified in the Settlement Agreement."  Plaintiffs state that no responsive documents exist.

**Request No. 56 (Second Requests):**   This Request seeks "All Documents and Communications between Plaintiffs and any Russian-language radio station concerning Matvil's goods and/or services."   Plaintiffs have produced documents responsive to this request (see invoices to Radio Davidzon, ACT002057-2062.  Plaintiffs will continue to search for and produce other responsive documents.

**Request No. 59 (Second Requests):**  This Request seeks "All Documents and information (including, without limitation, all Correspondence) concerning Your bases for deriving revenues, payments and/or other compensation under the Referral Agreement."   Plaintiffs state that they

have produced the Referral Agreement itself, which provides the bases for deriving revenues, payments, and/or compensation thereunder (ACT00819) and Actava's demands for outstanding revenue shares owed under the agreement when the agreement was terminated in 2018 (e.g., ACT001151).  Defendants have not identified a particular document responsive to this request that they seek and which Plaintiffs failed to produce.  If Defendants adequately identify any, Plaintiffs will search for and produce any responsive material, if they have it.

**Remaining Requests:**  Defendants further refer to six categories of documents that they falsely claim Mr. Tsoutiev "testified to":  "(1) names of "three" former Ukrainian partners involved in illegally streaming Broadcasters' content (Ex. 3, Tsoutiev Tr. at 17:15-19:25); (2) his investment of $60,000 to $80,000 worth of equipment he placed in the Ukraine for the purpose of streaming (*Id.* at 65:19-73:7); (3) the identity of one to three "aggregators" that were the source of Actava's streamed content (*Id.* at 20:4-25:8); (4) illegally streaming content through RussianTelek (*Id.* at 20:4-25:8; 66:9-12); (5) Actava's "five or six" licenses for IPTV Channels (*Id.* at 56:18-57:2); (6) documents showing Matvil wire transfers to Actava (*Id.* At 204:12-16); and ([7]) evidence of refunds to Actava customers from 2016 (*Id.* at 73:8-74:11).

First, for the reasons discussed *infra*, Items (1) through (3) are irrelevant to the claims and defenses raised in this action and are covered by the settlement agreement. Plaintiffs should not be compelled to produce them.

As to Item (4), Plaintiffs did not stream content "through RussianTelek." Actava purchased certain assets of RussianTelek in 2013, such as a domain, some equipment, and some customer accounts, and started to use those assets as part of Actava's business.  RussianTelek customers were re-directed to Actava's service.  See ACT01605.  Plaintiffs have already produced all responsive material in their possession, custody, or control, with respect to the RussianTelek

Website and related asset acquisition, which is the subject of Defendants' third counterclaim. Defendants seemingly wish Actava had additional materials or conducted additional streaming businesses, but there were not, and they have no evidence to the contrary.  There is nothing to compel production of.

As to item (5), as stated, Actava produced these licenses on January 15, 2021.

As to item (6), as stated, Plaintiff did not believe production of individual wire transfer confirmations was required, but now that Defendants have raised that issue for the first time by this Motion, Actava is supplementing its production with evidence of those Matvil wire transfers.

As to item (7), as stated, Actava produced evidence of these refunds on January 20, 2021.

## ARGUMENT

### I.     DEFENDANTS' MOTION DOES NOT COMPLY WITH LOCAL CIVIL RULE 37.1 OR FRCP 37(A)(1).

Local Civil Rule 37.1, which is titled "Verbatim Quotation of Discovery Materials," provides as follows:

> Upon any motion or application involving discovery or disclosure requests or responses under Fed. R. Civ. P. 37, the moving party shall specify and quote or set forth verbatim in the motion papers each discovery request and response to which the motion or application is addressed.

Rather than complying with this Rule, Defendants simply attached their document requests to the Motion, leaving it to Plaintiffs and the Court to address "each discovery request and response to which the motion. . .is addressed."  *Id*.  This alone provides sufficient grounds to deny the Motion.

Moreover, Defendants have failed to satisfy the requirement under Rule 37 that the certify "that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Fed. R. Civ. P. 37(a)(1).  Defendants quote the language of Rule 37, but do not attempt to substantiate any of the

parties' efforts to confer about the relief they request. *See Topps Co., Inc. v. Koko's Confectionary & Novelty, a Div. of A & A Glob. Indus., Inc.,* No. 16-cv-5954, 2018 WL 4440502, at *6 (S.D.N.Y. Sept. 17, 2018) (Fox, J.) (finding that party did not meet and confer in "meaningful manner and in good faith, to attempt to resolve the issues subject to this motion without the Court's assistance," even where movant provided copies of supposed meet and confer correspondence).

Defendants admit that the only prior phone conversation was not "meaningful." The parties did not discuss the listed Requests. They did not discuss the status of document productions in response to each Request. Nor did they discuss if Plaintiffs were withholding documents as to any. Therefore, there was not a meaningful meet-and-confer, nor even an attempt to have one.

## II. DEFENDANTS SEEK DOCUMENTS THAT DO NOT EXIST, WHICH WERE ALREADY PRODUCED, OR WHICH PLAINTIFFS AGREED TO CONTINUE TO PRODUCE

For the majority of Defendants' requests listed above, there is nothing to compel. *See, e.g., Gambino v. Payne,* No. 12-824, 2016 WL 5844299, at * 4 (W.D.N.Y. Oct. 6, 2016) (denying part of motion to compel where non-moving party had already "produced everything in their possession" that the moving party sought to compel). Plaintiffs have plainly represented that documents do not exist, they have produced all documents, and/or they will continue to search for documents responsive to First Requests 7-9, 35-37, 39-40, 44, 47-50, 57, 60, 62, 63; Second Requests 35, 56, 59; and Remaining Requests 4-6. Therefore, the motion to compel those requests should be denied.

### III. DEFENDANTS' FIRST REQUEST 36 AND REMAINING REQUESTS 1-3 SEEK IRRELEVANT DOCUMENTS COVERED BY A PRIOR SETTLEMENT AGREEMENT AND MUTUAL RELEASE

#### A. THE PRE-SETTLEMENT DISCOVERY IS IRRELEVANT AND DISPROPORTIONATE

A party seeking to compel discovery has the initial burden of demonstrating relevance. *Zanowic v. Reno*, 2000 WL 1376251, *6 (S.D.N.Y. 2000). The movant must "demonstrate at least the possibility of a nexus between the information sought and the claims or defenses of a party." *Members Services, Inc. v. Security Mut. Life Ins.*, 2007 WL 2907520, *4 (N.D.N.Y. 2007). The movant must also establish that the documents sought are "both relevant and proportional in accordance with Rule 26's over-arching relevancy requirement." *Neogenix Oncology, Inc. v. Gordon*, 2017 WL 1207558, *10 (E.D.N.Y. 2017).

It is well-established that discovery requests which seek documents beyond the "subject matter of the action" are irrelevant and should be precluded. *Daval Steel Prods. V. M/V Fakredine*, 951 F.2d 1257, 1367 (2d Cir. 1991). Discovery "is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support". *Tottenham v. Trans World Gaming Corp.*, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002) (quoting *Cleveland-Goins v. City of New York*, 1999 WL 673343, at *2 (S.D.N.Y. Aug. 30, 1999)). The 2015 Amendments to FRCP Rule 26(b)(1) also clarify that the scope of discovery extends only to non-privileged matters that are **both** relevant to a claim or defense and "proportional to the needs of the case". The Pre-Settlement Discovery is neither relevant to the Counterclaims nor proportional to the needs of the case.

At most, Defendants are entitled to inquire about pre-settlement conduct pertaining to Defendants' third counterclaim – Actava's acquisition of the RT Domain.[7]  Defendants' other demands to compel production of First Request 36,[8] Items 1-3 of the Remaining Requests, and any similar requests (collectively, the "Pre-Settlement Discovery")[9] are plainly outside the scope of the claims and defenses raised in this action.  Defendants' inquiries go far beyond the RT Domain, and seek discovery into:  "all documents. . .concerning Your publication or distribution of promotional materials referring to the Channels' Broadcasts" (No. 36);  other "business relationships with aggregators and other companies involved in pirating Broadcasters' content."  See Mot. at 9.  These inquiries and requests are "based on pure speculation," and concern supposed "past wrongdoing not related to the alleged claims or defenses."  *Collens v. City of New York,* 222 F.R.D. 249, 253 (S.D.N.Y. 2004) (internal citations omitted).  Therefore, the Pre-Settlement Discovery is not relevant.

### B.  THE MUTUAL GENERAL RELEASE BARS THE PRE-SETTLEMENT DISCOVERY

Even if claims pertaining to the Pre-Settlement Discovery were in fact alleged, those claims would be barred by the terms of the Settlement Agreement.  "It is well established that settlement agreements are contracts and must therefore be construed according to general principles of

---

[7] Mr. Tsoutiev testified at deposition that that "around 2013," when Actava acquired the RT Domain, Actava also "acquired the assets of Russian [Telek]," consisting of a platform which "allowed us to build infrastructure around it," so that "we streamed content from our equipment directly to the customers' receivers."  *See* ECF No. 264-3 (Tsoutiev Tr. at 71:21 – 72:13).  The RT Assets, including the RT Domain, were therefore subsumed into Actava's own streaming platform and services, and their acquisition by Actava would not constitute a separate breach of the "Representations and Warranties" section of the Agreement (at Section 6(d)(i-iii, *supra* at 3), even if Defendants alleged a claim as to Actava's acquisition of the RT Assets as a whole – and they did not.

[8] Plaintiffs object to First Request 36 only to the extent it seeks pre-settlement material.

[9] The Actava Parties define impermissible "Pre-Settlement Discovery" to exclude discovery pertaining to the RT Domain, which is the subject of Defendants' Third Counterclaim.

contract law." *Collins v. Harrison–Bode,* 303 F.3d 429, 433 (2d Cir. 2002) (internal quotation marks and alteration omitted).   Under New York law, "words of general release are clearly operative not only as to all controversies and causes of action between the releasor and releasees which had, by that time, actually ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-existent controversies." *A.A. Truck Renting Corp. v. Navistar, Inc.,* 81 A.D.3d 674, (2d Dep't 2011).

Defendants' lines of inquiry and discovery requests are covered by the mutual general release, and do not implicate the Representations and Warranties section of the Settlement Agreement.   Specifically, the Pre-Settlement Discovery pertains to Actava's own operations prior to 2016, and could not be used to establish that "[o]ther than as identified in the Plaintiffs' pleadings in the First Action and Second Action, Defendants have [] previously broadcast, copied, distributed or otherwise used the Broadcasts **other than through Actava and the Website**"; nor that at the time of the Settlement Agreement, Actava had any interest in any "**other** website, application or other property engaged in the business of providing internet protocol television"; nor that Defendants "maintain [any] ownership or management interest in any **other** IPTV service."   *See* Ex. A, ECF No. 246-1, ¶¶ 6(d) (emphasis added).

The Actava Parties' acquisition and repurposing of the RT Assets to improve Actava's streaming platform did not mean that Actava was using the Broadcasts "other than" through Actava and www.actava.tv.   *See* ECF No. 264-3 (Tsoutiev Tr. at 73:2-7) ("Q: So your understanding is that Actava custom designed its own improved middle[ware] [software] based on RussianTele[k] Solution?  A:  That's correct.  Yes, that's correct.").   It simply meant that Actava was undertaking to "improve [its] quality."   *Id.* at 72:9-10.   Similarly, any purported prior

connection between Actava and Ukrainian "partners" and "content aggregators" merely enabled Actava to enhance its streaming services.

By 2016, Actava's streaming business was in full, plain view of Defendant Channels.  The parties settled the 2016 Action.  This is a new action – based on Defendants' baseless litigation conduct that, unfortunately, continues to manifest.  The release of Actava "from any and all claims that relate in any manner to the First Action and/or the Second Action," Ex. A ¶ 7, means what it says.  But Defendants' absurdly aggressive reading of the Representations and Warranties section would render the general release toothless.  Ultimately, Defendants should not be permitted to fish for claims they did not make in this action and which would be barred regardless.

## IV.   SANCTIONS SHOULD BE AWARDED TO PLAINTIFFS

Under 28 U.S.C. § 1927, courts may require an attorney to pay "the excess costs, expenses and attorneys' fees reasonably incurred" when that attorney has "unreasonably and vexatiously multiplied the proceedings in an action."  As demonstrated above, Defendants' counsel filed this motion without conferring with Plaintiffs about specific requests.  Defendants have also moved to compel documents which Plaintiffs have clearly stated do not exist.

Defendants' discovery abuses are also sanctionable under the Court's inherent powers to manage its affairs.  See *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-107 (2d Cir. 2002); *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) (federal courts have "well-acknowledged inherent power to levy sanctions in response to abusive litigation practices...") (citation omitted).  To impose sanctions under its inherent powers, the court must find that a party's actions were taken for improper purposes such as delaying litigation or thwarting plaintiff's discovery efforts.  *DLC Mgmt. Corp.*, 163 F.3d at 136.  Here, as demonstrated above, the record is replete with examples of Defendants' obstructionist behavior, which could only have been motivated by a desire to harass Plaintiffs, to force burdensome motion practice on them, and

delay the resolution of the case.  Accordingly, Plaintiffs should be awarded costs for responding to this baseless Motion.

## **CONCLUSION**

For the above reasons, the Motion should be denied.


Dated: New York, New York
       February 17, 2021

Respectfully submitted,

MOSES & SINGER LLP


By: /s/ Toby Butterfield
    Toby Butterfield
    Valeria Castanaro
    Michael Rosenberg
    405 Lexington Avenue
    New York, NY  10174
    Telephone: (212) 554-7800
    Facsimile: (212) 554-7700

    *Attorneys for Plaintiffs*