UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Actava TV, Inc., Master Call Communications, Inc., Master Call Corporation, and Rouslan Tsoutiev<br><br>                Plaintiffs,<br><br>    v.<br><br>Joint Stock Company "Channel One Russia Worldwide," Closed Joint Stock Company "CTC Network," Closed Joint Stock Company "New Channel," Limited Liability Company "Rain TV-Channel," Open Joint Stock Company "ACCEPT," and Limited Liability Company "Comedy TV," and Kartina Digital GmbH,<br>                Defendants. | Case No.  18-cv-06626 |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL**

Raymond J. Dowd
Hardin P. Rowley
Dunnington, Bartholow & Miller, LLP
230 Park Avenue, 21st Floor
New York, NY 10018
(212) 682-8811
rdowd@dunnington.com
hrowley@dunnington.com
*Attorneys for Defendant Joint Stock Company "Channel One Russia Worldwide"*

Andrew David Bochner
Michael G. Gabriel
Serge Krimnus
Bochner IP
295 Madison Avenue, 12th Floor
New York, NY 10018
(646) 971-0685
Andrew@bochnerip.com
Michael@bochnerip.com
Serge@bochnerip.com
*Attorneys for Closed Joint Stock Company "CTC Network," Closed Joint Stock Company "New Channel," Limited Liability Company "Rain TV-Channel," Closed Joint Stock Company "TV Darial," and Limited Liability Company "Comedy TV."*

Defendants/Counterclaim-Plaintiffs ("Broadcasters" as defined in the Motion) hereby submit this reply to Actava's Opposition to Broadcasters' Motion ("Opposition") (ECF 273, 275) and in support of Broadcasters' motion to compel ("Motion" or "Mot.") (ECF 261-65).

## INTRODUCTION

Actava TV, Inc. and the other plaintiffs (collectively "Actava")[1] have pursued a head-in-the-sand approach to document discovery in this case particularly with respect to Broadcasters' counterclaims.  Actava's responses that no documents exist at all or that it has already produced the handful of documents that make up the universe of responsive documents simply do not square with reality.  Broadcasters have propounded numerous document requests relating to a multi-year and allegedly multi-million dollar relationship between Actava and Matvil Corporation ("Matvil"), yet, according to Actava, virtually no documentation regarding any aspects of that relationship exists.  Actava's contention is belied by common sense and, not surprisingly, the deposition testimony of Actava's own witnesses.  Indeed, Actava does not appear to have conducted any additional searches in connection with that testimony for documents responsive to the counterclaims.  Actava also claims it is excused from producing documents relating to "pre-settlement discovery" by a release contained in the very settlement agreement Broadcasters claim was fraudulently induced in the first instance and subsequently breached.  Actava's claim that it need not participate in discovery regarding Broadcasters' claims is baseless and the Court has entered no Order that allows it to ignore its obligations under the Federal Rules.  Regardless of the defenses Actava claims it may have to Broadcasters' claims, it cannot simply refuse to provide discovery on topics that are clearly relevant to those claims.

---

[1] In addition to Actava TV, Inc., the plaintiffs are related entities and individuals: Master Call Communications, Inc., Master Call Corporation and Rouslan Tsoutiev.

# ARGUMENT

## I. BROADCASTERS' MOTION COMPLIED WITH THIS COURT'S ORDER.

Actava claims that Broadcasters' Motion should be dismissed because they did not meet and confer with Plaintiffs. This argument completely ignores the record in this case. Recognizing that it had documents responsive to the Requests at issue here that it had no intention of producing, Actava filed a protective order minutes before the deposition of its accountant. In fact, it characterized that motion for a protective order to the Court as the "mirror image" of this motion to compel.[2] That motion for a protective order was denied by the Court. In response to the joint letter submitted to the Court with respect to this Motion on January 20, 2021 Actava reiterated its position that it would not produce the requested documents and this Court entered the following Order:

> ORDER with respect to [249] Motion to Compel. To aid the Court in resolving the dispute outlined in Docket Entry No. 249, the defendants are directed to file a formal motion (see Local Civil Rule 7.1 of this court); the response to the motion and any reply shall be made in accordance with Local Civil Rule 6.1. (HEREBY ORDERED by Magistrate Judge Kevin Nathaniel Fox)(Text Only Order) (Fox, Kevin Nathaniel) (Entered: 01/22/2021)

ECF 251.

The Motion seeks an Order compelling production of documents in response to the requests cited in the January 20, 2021 letter (ECF 249) ("Joint Letter").

## II. ACTAVA'S OPPOSITION DEMONSTRATES THAT ACTAVA HAS NOT COMPLIED WITH ITS DISCOVERY OBLIGATIONS.

First, for a number of the requests at issue here, Actava purports to shift the burden of discovery to Broadcasters to identify "particular" documents Broadcasters seek. Actava then states it will search for responsive documents once Broadcasters make those specific identifications. *See*

---

[2] ECF 249.

*e,g,* First Request Nos. 9, 36, 39, 44, 49, 50, 60 (Opp. at 9-13).  This is not how document discovery works.  Under Rule 34(a), the responding party has a duty to conduct a reasonable and diligent search for responsive documents.  Fed. R. Civ. Pro. 34(a); *see also Richard Green v. McClendon*, 262 F.R.D. 284, 290 (S.D.N.Y.2009) (the obligation to conduct a diligent search requires that the responding party and its attorneys work together "to ensure that both understand how and where electronic documents, records and emails are maintained and to determine how best to locate, review and produce responsive documents.") (internal quotation marks and citation omitted).

Actava has plainly failed to meet its obligations under Rule 34.  For example, Request 44 seeks communications between Actava and Matvil regarding their capabilities and performance under the multi-year Referral Agreement at issue in this case.  Such communications go directly to the Broadcasters' counterclaims.  Besides the Referral Agreement itself, Actava points to transcripts of a handful of phone calls as the entirety of the production of communications between these two companies over several years.[3]  Actava has produced no notes, no internal analysis, no drafts of the Referral Agreement, no MOUs or proposals, and no emails pertaining to Actava's performance under the Referral Agreement.  The few emails it has produced pertain only to the time period after Matvil and Actava's relationship ended.  Actava's response that: *"Defendants have not identified a particular document responsive to this request that they seek and which Plaintiffs failed to produce.  If Defendants adequately identify any, Plaintiffs will search for and produce any responsive material, if they have it"* is wholly insufficient.[4]  Actava must conduct a diligent search for such documents and produce those that are responsive.

Actava has provided a similar response for Request 50, which seeks documents relating to Actava's services under the Referral Agreement.  Again, despite participating in what Actava itself

---

[3] Opp. at 10-11.
[4] Opp. at 11, 13-14.

3

claims was a multi-million dollar relationship, it has identified *a single, two-page document* regarding the services it provided to Matvil and its subscribers and puts it to Broadcasters to identify the particular missing documents they seek.[5] Similarly, with respect to Request 60 which seeks documents relating to the billing support services Actava provided to Matvil, Actava has produced two documents.[6] It again shifts the burden to Broadcasters to identify any "particular document responsive" to the request.

Curiously, for certain categories of documents for which Actava does not even suggest that the Broadcasters should identify additional documents, it simply and implausibly states that none exist. For example, in response to Request 39 Actava asserts it has produced all responsive documents regarding set-top box(es) it provided to individuals or entities since April 2016.[7] That production, however, consists of a single spreadsheet and set of invoices with subscriber information that cuts off at January 2017, despite the fact that Actava's services continued through September 2018. No documents about the capabilities, configuration or communications with subscribers about those set-top-boxes have been produced. By way of further example, Remaining Request 4 sought documents relating to Russian Telek. The parties dispute the nature of the relationship that existed between Actava and Russian Telek. Broadcasters claim Actava streamed pirated content through Russian Telek while Actava claims Russian Telek customers were instead redirected to Actava. Regarding this material dispute between the parties, Actava has not produced any documents. The single page (ACT001605) it claims is responsive in fact has nothing to do with Russian Telek.[8]

In some instances, Actava appears to suggest that it does not need to search for or produce

---

[5] Opp. at 12.
[6] Opp. at 12-13.
[7] Opp. at 10.
[8] *See* Opp at 14 in response to Remaining Request 4.

4

documents based on its interpretation of one of its witnesses' statements in a deposition. Request 7 seeks documents demonstrating that Actava ceased streaming certain of the Broadcasters' content via internet set-top box on or about January 21, 2016. In justifying its failure to produce a single responsive document, Actava relies on testimony of its lead engineer, Mr. Makhotin, that Actava "just turned off the service," and that he knows of no "electronic record indicating that Actava disconnected certain Channels."[9] That may very well be Mr. Makhotin's recollection, but it does not serve as a substitute for a reasonable and diligent search for responsive documents. Actava was required to search for and produce responsive documents that Mr. Makhotin may not know about or that otherwise document Actava's actions in non-electronic form. It has not done so.

In other instances, Actava's claim that no documents exist is at odds with its own witnesses' deposition testimony. For example Mr. Tsoutiev, Actava's CEO, stated that Actava ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Tsoutiev Tr. at 108:3-110:4 (attached hereto as Exhibit A).[10] The recordings of these calls would be expected to be responsive to several of Broadcasters' document requests regarding the services provided by Actava and its interactions with subscribers, and the time frame in which it was servicing such subscribers. *See e.g.* First Request Nos. 7, 47-50, 60. Yet Actava has not produced these calls.

Actava also claims that it has no documents concerning its role in furnishing the Broadcasters' content to Matvil subscribers from April 26, 2016 to present. *See* Opp. at 9-10 (First

---

[9] Opp. at 8.
[10] All references to "Ex. ___" are references to the exhibits to the Declaration of Raymond J. Dowd, Esq., dated February 24, 2021 filed contemporaneously herewith.

Request Nos. 35, 37). However, Mr. Makhotin testified in detail about [REDACTED]  [REDACTED][11] It is simply not plausible that no record of the utilization of such middleware exists. He also specifically testified that [REDACTED].[12] At a minimum, Actava needs to explain this discrepancy.

Requests 47 and 48 seek documents regarding Actava's providing goods and services to Matvil. Actava's witness, Mr. Makhotin, testified that [REDACTED]"[13] [REDACTED] is obviously the providing of goods or services to Matvil as called for in the Requests. Actava, however, has produced no documents relating to its role in the [REDACTED] and has specifically refused to produce a copy of the actual software or middleware Actava developed and used to facilitate its business with Matvil, including that which Actava utilized in the CDN connection or [REDACTED][14] This is a critical piece of evidence in the case, as Broadcasters believe this software will demonstrate that Actava was intrinsically intertwined in the actual delivery of Broadcasters' content, in violation of the Settlement Agreement, by managing the payment authentication required for subscribers to actually access the content. Actava cannot arbitrarily limit discovery into this software and has provided no basis for not producing a copy in native format for the Broadcasters to review and examine. *Aguilar v. Immigration & Customs Enf't Div. of U.S. Dep't*

---

[11] Makhotin testified that [REDACTED] *ee* Ex. B (Makhotin Tr. at 66:4-67:9).
[12] Ex. B (Makhotin Tr. at 28:14-15; 74:5-14).
[13] Makhotin *Id*. at 67:2-69:11.
[14] Actava has stated it would make a copy of the software available for visual inspection for a 2 hour period on a secure website which the Broadcasters could not copy. This is not what is required by Rule 34 and Actava has not provided any authority to the Broadcasters suggesting it can unilaterally impose such restrictions on discoverable information.

*of Homeland Sec.*, 255 F.R.D. 350, 355 (S.D.N.Y. 2008) ("Although a party may produce its ESI in another 'reasonably usable form,' this does not mean 'that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party . . . .'") (quoting Fed. R. Civ. P. 34(b), advisory committee's note, 2006 amendment.)  With respect to other services provided by Actava, in addition to authentication, Actava claims it has satisfied its obligation by producing a handful of documents, most of which consist of promotional materials.[15]

Actava also claims to have produced all documents concerning its "billing support services to subscribers and/or other customers of Matvil under the Referral Agreement." *See* First Request No. 60; Opp. at 12-13.  Actava once again cites to *two* "master spreadsheets" that merely summarize subscriber billing and were produced without any supporting documents.  Based on Actava's apparent billing support services reflected in these summaries, Broadcasters would reasonably expect supporting documents relating to, at a minimum, the billing process and/or documents reflecting receipts or other communications between Actava and its customers.  Actava's accountant also failed to bring these documents to her January 19 deposition, as requested in Defendants' subpoena.[16]  Actava has provided no explanation as to why such documents have not been produced.

### III. DOCUMENTS CONCERNING ACTAVA'S MISREPRESENTATIONS AND CONCEALMENT ARE RELEVANT TO BROADCASTERS' COUNTERCLAIMS.

Actava has taken the position that it is excused from complying with discovery relating to its conduct before April 2016 based on a settlement agreement it entered into with the Broadcasters.  Actava takes this position despite the fact that Broadcasters' claims relate directly

---

[15] Opp. at 11.
[16] *See* Opp. at 7.

7

to the alleged misrepresentations and concealment of material information in connection with that settlement agreement. Indeed, deposition testimony in the case has shown that while Actava represented to the Broadcasters that Actava.tv was the only outlet through which it had ever streamed pirated content, that representation was false when made. Unbeknownst to the Broadcasters, Actava also maintained a relationship with and purchased IPTV technological infrastructure from Russian Telek - another provider of pirated content including the Broadcasters' content. The failure to make that disclosure and other breaches of the representations and warranties made in connection with the Settlement Agreement form the basis for Broadcasters' counterclaims.[17] The Broadcasters contend that the Settlement Agreement was fraudulently induced - including the very release Actava seeks to use to shield itself from discovery into its alleged misconduct. This is, at best, circular reasoning, and the Court has not ruled that Actava can ignore its obligations under Rule 34 in this manner. *See* Mot. at 8-9.

Further, Actava's release argument should be rejected by the Court. As a threshold matter, Actava has never pled release as an affirmative defense to Broadcasters' counterclaims. Even if Actava had properly pled that defense, though, Actava cannot avoid discovery on the counterclaims all together because it claims it has a defense to them. Moreover, the general release language that Actava relies on is not applicable to claims based on fraudulent inducement or to breaches of the Representations and Warranties section of the Settlement Agreement. *See* Mot. at 8. Indeed, claims relating to the breach of the representations and warranties are specifically carved out of any release. *See id.* at 8-9. Courts give such specific language greater weight than

---

[17] Discovery in this case has also revealed that Actava ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. A (Tsoutiev Tr. at 23:6-24:9). Actava's Owner/CEO testified that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See id.* at 66:16-68:3. These relationships should have been disclosed in connection with the Settlement Agreement and the Broadcasters are entitled to discovery.

the general language on which the Opposition relies. *See Global Reinsur. Corp. v. Century Indem. Co.*, 442 F. Supp. 3d 576, 586 (S.D.N.Y. 2020) (It is "axiomatic that courts construing contracts must give specific and exact terms . . . greater weight than general language." (citations and internal quotation marks omitted, ellipses in original)); *SEC v. Gruss*, 245 F. Supp. 3d 527, 593-94 (S.D.N.Y. 2017) ("[A] basic principle of construction is that particular language prevails over general language in determining the meaning of a provision" (citation omitted)).

To date, Actava has not produced any documents relating to the business activities and relationships that were allegedly concealed from Broadcasters at the time of the Settlement Agreement. Broadcasters' document requests directly address these issues and Actava should be compelled to produce documents relevant to these activities and relationships.

## IV.   SANCTIONS AGAINST BROADCASTERS UNDER THIS COURT'S INHERENT POWERS OR 28 U.S.C. § 1927 ARE NOT WARRANTED.

Actava claims that the Broadcasters should be sanctioned for bringing their Motion even though their own response to the Motion makes it clear such a motion was necessary. The Broadcasters served their discovery requests on January 18, 2019 and February 14, 2020. Actava's responses make clear that for numerous requests, they have not even searched for responsive documents. For several requests, Actava contends they will only now undertake the search that should have been conducted months ago. *See e,g,* Opp. at 11, 13 (First Request No. 48; Second Request No. 56).

The unexplained holes and unjustified delays in providing the Broadcasters discovery they are entitled to make it clear that the Broadcasters have engaged in no conduct that warrants sanctions. For this Court to award fees under its inherent powers, there must be "a clear demonstration of bad faith" which includes "clear evidence" of harassment, delay, or other improper purpose. *See Lation v. Fetner Props., Inc.*, No. 17-CV-3276, 2019 WL 1614691, at *2

9

(S.D.N.Y. Apr. 16, 2019) (citing *United States v. Intern'l Bd. of Teamsters*, 948 F.2d 1338, 1345, 1347 (2d Cir. 1991)).  There is no evidence of any such bad faith on the part of Broadcasters.  To the contrary, it is clear from their response to the Motion that Actava will continue to refuse to fully comply with their discovery obligations absent an Order from the Court.  Notably absent from Actava's opposition is any explanation as to the delay to the very end of discovery its production of (or even its search for) responsive documents.  Remarkably, a significant portion of the few responsive documents Actava has produced (and referenced in its Opposition) were only provided in connection with the Joint Letter and Motion.  Actava produced documents on January 20 and January 29, 2021 after the filing of the Joint Letter.  Actava then produced documents on February 17 and February 19, 2021 after the Motion was filed.  Paragraph 3.e of the parties' so-ordered deposition protocol required Actava to "produce responsive, non-privileged documents and tangible things at least seven (7) days prior to the date of the deposition."[18]  Actava clearly violated that order.  Actava's actions underscore the good faith need for the Motion.  There is simply no basis for any contention whatsoever for any contention that Broadcasters' conduct here demonstrates "clear evidence" of bad faith required for imposition of sanctions under this Court's powers, let alone the unreasonable and vexatious conduct required to impose sanctions pursuant to 28 U.S.C. § 1927.

## CONCLUSION

WHEREFORE, Broadcasters respectfully request that this Court grant the relief requested in their motion to compel (Mot. at 11-12) and provide such further and additional relief this Court deems just and proper.

---

[18] ECF 220

Dated: New York, New York
February 24, 2021

Respectfully submitted,

DUNNINGTON BARTHOLOW & MILLER LLP

By: /s Raymond J. Dowd_____
    Raymond J. Dowd
    Hardin P. Rowley
    230 Park Avenue, 21st Floor
    New York, NY 10169
    Tel: (212) 682-8811
    RDowd@dunnington.com
    HRowley@dunnington.com

    *Attorneys for Defendant Joint Stock Company "Channel One Russia Worldwide"*

    Andrew David Bochner
    Michael G. Gabriel
    Serge Krimnus
    Bochner IP
    295 Madison Avenue, 12th Floor
    New York, NY 10017
    (646) 971-0685
    Andrew@bochnerip.com
    Michael@bochnerip.com
    Serge@bochnerip.com

    *Attorneys for Closed Joint Stock Company "CTC Network," Closed Joint Stock Company "New Channel," Limited Liability Company "Rain TV-Channel," Closed Joint Stock Company "TV Darial," and Limited Liability Company "Comedy TV."*

11

## CERTIFICATE OF SERVICE

I certify that on February 24, 2021 I electronically filed the foregoing document and any accompanying exhibits with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Raymond J. Dowd