UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
Actava TV, Inc., Master Call Communications, Inc.,
Master Call Corporation, and Rouslan Tsoutiev,    18-CV-06626 (ALC)(KNF)

                 Plaintiffs,

     -against-

Joint Stock Company "Channel One Russia Worldwide,"    **DECLARATION OF**
Closed Joint Stock Company "CTC Network," Closed        **ALEXANDER**
Joint Stock Company "New Channel", Limited Liability    **SHPREKHER**
Company "Rain TV-Channel," Closed Joint Stock
Company "TV DARIAL," Limited Liability
Company "Comedy TV," and Kartina Digital GmbH

                 Defendants.
-----------------------------------------------------------------X

    ALEXANDER SHPREKHER being physically located outside the geographic boundaries of the United States, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States, hereby affirms under penalty of perjury:

**A. Background**

1.     I am a citizen of the Russian Federation and resident of Moscow.

2.     I am able to speak and write in English.

3.     Channel One is a joint stock company located in and organized under the laws of the Russian Federation with its headquarters located at 19 Akademika Koroleva St. Moscow, 127427 Russian Federation.

4.     I am Deputy CEO and Head of Strategy and Business Development for Plaintiff Joint Stock Company "Channel One Russia Worldwide" ("Channel One") and make this

affidavit based on personal knowledge and knowledge gained from Channel One company records, and documents produced in this action.

5. I am in charge of business development for Channel One Russia Worldwide. I personally negotiated our major contracts in the United States and oversee our staff that engages in renewals and client servicing.

6. I was deposed in this action on December 16, 2020. A true and correct copy of my deposition transcript is attached hereto as **Exhibit 1**.

7. I write in support of Broadcasters' joint motion for summary judgment as to Plaintiffs' claims for malicious prosecution, tortious interference with prospective economic advantage, and breach of contract.

**B. Channel One Programming**

8. The predecessor of Channel One began broadcasting on April 1, 1995.

9. Channel One produces its main channel known as "Perviy Kanal" in the Russian Federation.

10. Perviy Kanal is first broadcast in the Russian Federation via satellite.

11. Channel One produces a modified version of its programming for international audiences, including the United States.

12. As explained below, a modified version of the international version of Channel One is broadcast by licensees in the United States, including New York.

13. Channel One also produces thematic TV channels Dom Kino, Muzika Pervogo, Vremya:dalekoe i blizkoe, and Telekafe and others, which are distributed globally, as well as an international version of Carousel – Carousel International.

14. In total viewership for its various channels and versions of channels, Channel One broadcasts to over 250 million viewers worldwide.

15. The collapse of the Soviet Union led many Russian-speaking people to immigrate to the United States, particularly New York.

16. Channel One and other Russian-language programming remains popular with the Russian community living in North America.

### C. Channel One's Licensing to Distribute its Programming in the United States

17. I am personally familiar with Channel One's digital licensing regime for satellite, cable, and IPTV in the United States.

18. In the United States, Channel One has licensed its modified programming to, among others, DIRECTV, Altice (Optimum), Charter Communications (Spectrum), and Comcast Cable (Xfinity) or through authorized agents.

19. Attached hereto as **Exhibit 2** is a true and correct copy of Channel One's License Agreement with Kartina World LLP dated December 14. 2015.

20. When Broadcasters sued Actava TV, Inc., Master Call Communications, Inc., Master Call Corporation, Rouslan Tsoutiev ("Actava Parties"), Matvil Corp.("Matvil"), Mikhail Gayster and other suspected pirates in February 2016, Kartina World LLP was an IPTV licensee of Channel One. *Channel One et al. v. Infomir et al.* No. 16-cv-1318 (*Infomir* Action).

21. Channel One began settlement negotiations with Matvil in the summer of 2016. A settlement payment from Matvil, termination of the *Infomir* Action as to Matvil and Gayster, and a license agreement from Channel One were the key components of those negotiations.

22. Attached hereto as **Exhibit 3** is a true and correct copy of Channel One's License Agreement with Matvil dated September 7, 2016.

23. Channel One renewed its license agreement with Matvil in 2018. Attached hereto as **Exhibit 4** is a true and correct copy of Channel One's License Agreement with Matvil Corporation dated July 1, 2018.

24. Matvil remains an IPTV licensee of Channel One.

25. Channel One authorized Kartina World LLP to stream Channel One Programming until September 10, 2018. Kartina World LLP is no longer a licensee of Channel One.

26. The Actava Parties, MHCOM GmbH, Russian Telekom, Inc., North Atlantic Broadcasting Corp., and Mark Pomirtchi were never authorized to distribute Channel One Programming.

**D. Piracy of Channel One Programming in North America**

27. I oversee a team that handles all international contracts, with the exception of the CIS states and Baltics. I also work with Channel One's commercial department that sells advertising for our U.S. programming.

28. As such I am fully familiar with our customer complaints about piracy, the damages caused to our legitimate licensees and advertisers by pirates, and the growing problem of piracy in the U.S. and elsewhere.

29. Piracy of Channel One programming by unlicensed broadcasters has diminished the value of Channel One Programming.

30. Channel One has lost revenue due to viewers using cheaper alternatives, instead of licensed broadcasters.

31. Piracy has diminished Channel One's goodwill with its licensees, who have seen their subscribers decline due to piracy.

32. I was Channel One's contact person when Broadcasters filed the *Infomir* Action in February 2016.

33. Channel's One non-exclusive internet protocol television ("IPTV") licensee at the time, Kartina World, LLP, lead the litigation on behalf of Channel One.

34. This arrangement was not unusual for Channel One because Channel One authorizes its licenses to police piracy within the territory of their license.

35. Kartina worked with the law firm Dunnington, Bartholow, and Miller, LLP ("Dunnington") to prosecute the *Infomir* Action.

36. Channel One authorized Dunnington through authority granted by a power of attorney to bring claims on its behalf. Attached hereto as **Exhibit 5** is a true and correct copy of the power of attorney.

37. I understand that Kartina World, LLP also lead the *Infomir* Action on behalf of CTC, Comedy TV, and Rain TV.

### E. Channel One Settles the *Infomir* Action with the Actava Parties, Matvil, and Gayster

38. On the advice of Kartina and Dunnington, Channel One agreed to settle with the Actava Parties in April 2016.

39. Under the Settlement Agreement, Actava paid a settlement amount in exchange for Broadcasters withdrawing the lawsuit. The Settlement Agreement also provided a mechanism that allowed the Actava Parties to seek a license from Channel One to distribute or otherwise use Channel One Programming.

40. On September 7, 2016, Channel One settled its claims against Matvil and Gayster and entered into a licensing agreement with Matvil.

41. Matvil did not disclose its parallel negotiations with Actava TV to Channel One during those negotiations.

### F. Channel One Learns About the Actava-Matvil Referral Agreement

42. The Actava Parties did not seek permission from Channel One to enter into the September 8, 2016 Referral Agreement.

43. Neither the Actava Parties, Matvil nor Matvil's representatives, including Gayster disclosed their negotiations to enter into the Referral Agreement or the Referral Agreement itself to Channel One.

44. Channel One learned about Actava's partnership with Matvil from Kartina. Attached hereto as **Exhibit 6** is a true and correct copy of an email chain between Olga Panfilova and me dated September 28, 2016.

45. The Actava-Matvil relationship was confusing and concerning to Channel One because we learned about it three weeks after Channel One settled its claims against Matvil in the *Infomir* Action.

46. I reviewed materials collected by Kartina that appeared to show Actava was distributing Channel One programming without a license in breach of the Settlement Agreement and injunctions. Attached hereto as **Exhibit 7** is a true and correct copy of an email chain between Denis Panschinski, Olga Panfilova and myself dated November 9, 2016.

47. Based on the information provided by Kartina, I authorized Dunnington, to consider legal options against Actava for its apparent violations of the Settlement Agreement and injunctions.

### G. Communications With Matvil Prior to the Contempt Proceeding

48. On behalf of Channel One, I expressed its concerns to Matvil in the fall of 2016 about the relationship and asked for clarity about the relationship from Matvil. Channel One was concerned that Actava was a sub-licensee of Matvil, which was forbidden by Channel One's license agreement with Matvil and the Settlement Agreement and Injunctions with Actava.

49. Attached hereto as **Exhibit 8** is a true and correct copy of an email chain between Mikhail Gayster and me dated October 3, 2016.

50. Attached hereto as **Exhibit 9** is a true and correct copy of an email chain between Mikhail Gayster and me dated October 5, 2016.

51. Attached hereto as **Exhibit 10** is a true and correct copy of an email chain between Mikhail Gayster and me dated October 7, 2016.

52. Attached hereto as **Exhibit 11** is a true and correct copy of an email chain between Mikhail Gayster, Mikhail Lisus, Anna Gayster and myself dated October 25, 2016.

53. Attached hereto as **Exhibit 12** is a true and correct copy of an email chain between Aziza Ulugova and me dated November 8, 2016.

54. Channel One ultimately made a business decision not to pursue legal action against its licensee, Matvil.

55. Channel One authorized Dunnington to bring the contempt motion against Actava based on the advice of Dunnington.

### H. The Period Between the Contempt Proceeding and Plaintiffs' Lawsuit against Defendants, Including Channel One

56. Channel One accepted the decision of Judge Moses in September 2017 to deny the contempt motion against Actava and Channel One maintained its relationship with Matvil.

57. Channel One did not contact Matvil about its relationship with Actava.

### I. Channel One's Communications With Matvil After Actava Sued Channel One and the Other Broadcasters

58. Channel One learned of the Actava Parties lawsuit against Channel One and the other Broadcasters when Matvil called Channel One in July 2018.

59. Channel One asked Matvil to resolve the dispute, but Matvil was unable to do so.

60. With the exception of Matvil, no one at Channel One had any contact with any known customers or business associates of Actava TV, Inc., Master Call Communications, Inc., Master Call Corporation, or Tsoutiev.

Dated: Moscow, Russian Federation
august 2nd, 2021

_____
ALEXANDER SHPREKHER