UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Actava TV, Inc., Master Call Communications, Inc., Master Call Corporation, and Rouslan Tsoutiev,<br><br>          Plaintiffs,<br><br>     v.<br><br>Joint Stock Company "Channel One Russia Worldwide," Closed Joint Stock Company "CTC Network," Closed Joint Stock Company "New Channel," Limited Liability Company "Rain TV-Channel," Closed Joint Stock Company "TV DARIAL," Open Joint Stock Company "ACCEPT", Limited Liability Company "Comedy TV," and Kartina Digital GmbH,<br><br>          Defendants. | Civ. No.: 1:18-cv-06626-ALC-KNF |

**DEFENDANTS' JOINT LOCAL CIVIL RULE 56.1
STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

Defendants Joint Stock Company "Channel One Russia Worldwide" ("Channel One"), Closed

Joint Stock Company "New Channel," Closed Joint Stock Company "CTC Network" ("CTC"),

Limited Liability Company "Rain TV-Channel" ("Rain"), Closed Joint Stock Company "TV

DARIAL" ("Darial"), Limited Liability, Company "Comedy TV" ("Comedy TV") (collectively,

"Broadcasters") along with Kartina Digital GmbH ("Kartina" and collectively, "Defendants")

submit this Local Civil Rule 56.1 Statement of Undisputed Material Facts in support of their

Motion for Summary Judgment against Plaintiffs Actava TV, Inc., Master Call Communications,

Inc., Master Call Corporation, and Rouslan Tsoutiev (collectively, "Plaintiffs" or "Actava" ).

## UNDISPUTED FACTS RELATING TO THE PARTIES

**Channel One Russia Worldwide**

1.      Defendant Channel One is a joint stock company organized under the laws of the Russian Federation.  (Second Amended Complaint ("SAC"), ECF 147 ¶ 14; Defendants' Answer to Second Amended Complaint and Counterclaims ("Answer"), ECF 150 ¶ 14).

1.      Channel One is located and headquartered in 19 Akademika Koroleva St. Moscow, 127427 Russian Federation.  (Shprekher Decl. ¶ 3).

2.      Channel One produces a version of its programming for Russia called Perviy Kanal that is first broadcast via satellite (Shprekher Decl. ¶¶ 9-10).

3.      Channel One creates a modified version of its programming for international audiences.  (Shprekher Decl. ¶ 11).

4.      A modified version of Channel One is broadcast by Channel One licensees in the United States.  (Shprekher Decl. ¶ 12).

5.      Channel One also produces thematic channels Dom Kino, Muzika Pervogo, Vremya:dalekoe i blizkoe, Telekafe, and Carousel International ("Thematic Channels"). (Shprekher Decl. ¶ 13).

6.      Channel One broadcasts a wide range of news, documentary and feature film productions as well as entertainment programs that attract over 250 million viewers worldwide. (Shprekher Decl. ¶14).

**CTC Network**

7.      CTC is a joint stock company incorporated and organized under the laws of the Russian Federation.  It owns and operates the CTC Network channel (the "CTC Network"), and it

has entered into license agreements with third parties to distribute its programming via internet protocol television ("IPTV") in the United States and around the world.  (SAC ¶ 17; Answer ¶ 17).

**New Channel**

8.      Defendant New Channel is a joint stock company incorporated and organized under the laws of the Russian Federation.  It owns and operates the Domashny channel and has entered into license agreements with third parties to distribute its programming via IPTV in the United States and round the world.  (SAC ¶ 19; Answer ¶ 19).

**Rain**

9.      Defendant Rain is a joint stock company incorporated and organized under the laws of the Russian Federation.  It owns and operates the Rain TV channel and has entered into license agreements with third parties to distribute its programming via IPTV in the United States and around the world.  (SAC ¶ 20; Answer ¶ 20).

**Darial**

10.      Defendant Darial is a joint stock company incorporated and organized under the laws of the Russian Federation.  It owns and operates the Che TV channel (previously named Peretz) and has entered into license agreements with third parties to distribute its programming via IPTV in the United States and round the world.  (SAC ¶ 18; Answer ¶ 18).

**Comedy TV**

11.      Defendant Comedy TV is a joint stock company incorporated and organized under the laws of the Russian Federation.  It owns and operates the TNT TV Channel and has entered into license agreements with third parties to distribute its programming via IPTV in the United States and round the world.  (SAC ¶ 21; Answer ¶ 21).

**Kartina**

12.     Defendant Kartina Digital GmbH is a limited liability corporation incorporated and organized under the laws of Germany.  Its principal place of business is in Germany.  Kartina distributes programming via IPTV in the United States and around the world.  (SAC ¶ 22; Answer ¶ 22).

**Actava TV, Inc.**

13.     Actava TV, Inc. ("Actava TV") is a Delaware corporation with a principal place of business at 39 Broadway, Suite 1850, New York, NY 10006.  (SAC ¶ 10; Answer ¶ 10).



**Mastercall Communications, Inc.**

16.     Master Call Communications, Inc. is a New Jersey corporation with a principal place of business at 39 Broadway, Suite 1850, New York, NY 10006.  (SAC ¶ 11; Answer ¶ 11 ).



**Mastercall Corporation**

18.     Master Call Corporation is a Delaware corporation with a principal place of business at 39 Broadway, Suite 1850, New York, NY 10006.  SAC ¶ 12.



## UNDISPUTED FACTS RELATED TO NON-PARTIES

**Matvil Corp.**

20.     Matvil Corporation d/b/a/ eTVnet ("Matvil") is a Canadian corporation with a principal place of business is located at 312 Dolomite Drive Suite 215, Toronto Ontario M3J2N2, Canada.  (Dowd Decl. Ex. 8 Referral Agreement),

21.     Matvil's current Chief Executive Officer is Mykola Skrynnyk. (Dowd Decl.; Ex. 18 April 27, 2021, Deposition Transcript of Mykola Skrynnyk in the Southern District of New York ("Skrynnyk 4/21 Tr.) at 10:4-7).

22.     Matvil is an IPTV company that sells and streams Russian language television programming to customers primarily in Canada and the United States. (SAC ¶¶ 16-17, 19-21).

████   ████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████

████   ████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████   ████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████

28.    Matvil competes with Kartina in the North American Russian language IPTV market. *See* Panfilova Decl. ¶ 21; *see also* (SAC ¶ 4; Answer ¶ 4).

**Gardenia HB, Inc.**

████   ████████████████████████████████████████████████████

██████████████████████████████

████   ████████████████████████████████████████████████

**Andrey Makhotin**

████   ████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████

**Irina Pliss**

████ ████████████████████████████████████████████████

**Tatyana Zhevnerova**

████ █████████████████████████████████████████████████████

### ACTAVA'S BUSINESS PRIOR TO FEBRUARY 2016

████ █████████████████████████████████████████████████████

████

████ █████████████████████████████████████████████████████

████████████████████████████████████████████████

████ █████████████████████████████████████████████████████

█████████████████

████ █████████████████████████████████████████████████████

██████████████████████████████

████ █████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████

████ █████████████████████████████████████████████████████

██████████████████████████████████████████

████ █████████████████████████████████████████████████████

███████████████████████████████████████



**UNDISPUTED FACTS RELATING TO THE UNDERLYING ACTIONS**

47.     On November 4, 2015, Closed Joint Stock Company "New Channel," Closed Joint Stock Company "CTC" Network," and Closed Joint Stock Company "TV Darial," sued Actava Inc. in the Southern District of New York No. 15 Civ. 8681 (GBD) (BCM) ("*Actava* Action") alleging, among nine counts, violations of the Federal Communications Act ("FCA"), copyright infringement, and trademark infringement. (Answer ¶ 123).

48.    Actava was broadcasting these three channels' "programming via internet and set-top box" and possessed the "technology infrastructure that it had purchased and configured at considerable expense for receiving, storing, and transmitting video over the internet." (Answer ¶ 124; Answer to Counterclaims ¶ 124).

49.    On February 29, 2016, CTC and the remaining Broadcasters in this action sued Actava TV, Inc, Master Call Communications, Inc., Master Call Corporation, Rouslan Tsoutiev ("Actava"), Matvil Corp., and others asserting claims for violations of the FCA and copyright and trademark infringement.  (*Channel One et al. v. Infomir et al.*) ("*Infomir* Action").

50.    On April 26, 2016, Actava and Broadcasters entered into a Settlement Agreement to resolve the *Actava* and *Infomir* actions. (Dowd Decl. Ex. 1)("Settlement Agreement").







55.     On June 3, 2016, Judge Moses entered a "Stipulation, Order & Permanent Injunction" in the *Infomir* Action. (Dowd Decl. ¶ 9, Ex. 3 (*Infomir* Injunction).

56.     On June 6, 2016, Judge Daniels entered a "Stipulation, Order & Permanent Injunction" in the *Actava* Action. (Dowd Decl. ¶ 8, Ex. 2 (*Actava* Injunction).

57.     The *Infomir Injunction* and *Actava Injunction* are substantially similar. (Dowd Decl. Exs. 2-3.

58.     The Injunctions share identical language and provide as follows:

a)     Broadcasting, re-broadcasting or otherwise transmitting Plaintiffs' Broadcasts as identified in Annex 1 or any other channel that Plaintiffs may in the future broadcast via any medium, including but not limited to internet protocol television ("IPTV") and social media, without authorization;

b) directly or indirectly infringing or making any use, in any manner whatsoever, of Plaintiffs' Broadcasts including any associated programs without authorization;

c) directly or indirectly infringing or making any use, in any manner whatsoever, of Plaintiffs' Marks as identified in Annex 1 without authorization; [or]

d) publishing or distributing any promotional materials referring to Plaintiffs' Broadcasts or Marks; in any medium, including but not limited to the internet (including IPTV and social media), television, radio, newspapers, magazines, direct mail or oral communications without authorization.

Ex. 3, ¶ 3(a)-(b), Ex. 4, ¶ 2(a)-(b); *see also* Dowd Decl. Exs. 2-3).

59.     The Injunctions further provide:

> Defendants shall not register, purchase, manage or have any
> ownership interest in any website or device engaged in the
> unauthorized copying, caching, retransmission or distribution of
> Plaintiffs' Broadcasts.

> Failure to comply with this Stipulation and Order shall be deemed
> contempt of Court.  SOF ¶ 57.

> This Court shall retain jurisdiction for the limited purpose of
> enforcement of this Order, including determinations of damages and
> attorneys' fees which shall be recoverable in connection with any
> enforcement proceeding. SOF

Ex. 3, ¶ 4, Ex. 4, ¶ 3.

60.     The Injunctions each further provide that failure to comply with the terms of the

Injunctions constitutes contempt of Court.  (Ex. 3 ¶¶ 6-7, Ex. 4 ¶¶ 5-6).

## CHANNEL ONE'S LICENSE AGREEMENT WITH MATVIL



██    ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

██    ████████████████████████████████████

██████████████████████

██    ████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

██    ████████████████████████████████████

██████████████████████████████████████████

██    ████████████████████████████████████

██████

**ACTAVA AND MATVIL SECRETLY NEGOTIATE THE REFERRAL AGREEMENT**

69.    In June 2016, soon after Judges Daniels and Moses entered the stipulated injunctions, Actava began negotiating a confidential agreement with Matvil.  (SAC ¶ 49 ("negotiations beg[an] in late June 2016 ("Skrynnyk 11/19 Aff.") ¶ 14 (stating Actava initiated negotiations in May or June 2016).

██    ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██    ████████████████████████████████████

████████████████████████████████████████████



**ACTAVA'S BUSINESS ACTIVITIES AFTER ENTERING INTO THE REFERRAL AGREEMENT**

**Authorization of Subscribers**

██ ████████████████████████████████
████████████████████████████████████████
████████████████

██ ████████████████████████████████
██████████████████████████ ████████████████

██ ████████████████████████████████
██████████████████████████████████

**Customer Transfer**

██ ████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

██████████

**Advertising**

██ ██████████████████████████████

██ ██████████████████████████████

██████████████████████████████

██ ██████████████████████████████

██████████████████████████████

██ ██████████████████████████████

██████████████████████████████

██ ██████████████████████████████

██████████████████████████████

88.     On October 14, 2016, Actava filed an application for the ACTAVA mark with the United States Patent and Trademark Office ("USPTO") for "promoting the television broadcasting services of third parties."  (Dowd. Decl. Ex. 22 (ACTAVA trademark file wrapper)).

89.     After an office action, the USPTO registered the ACTAVA Mark on November 19, 2019 (*Id.*)

90.     On November 28, 2016, Broadcasters translated a Russian-language Davidzon radio advertisement into English that included the following:

> Actava TV offers an annual subscription to the best television service in America. The package includes all the leading TV channels, such as the Perviy, TNT, TVC, Dozhd, CTC, Domashniy, .... and many others. We are together again! As they say: with clear conscience and confidence in today and tomorrow. The TV service is licensed, so we have no need to hide behind other names, as some other companies are regularly forced to do. We have nothing to hide! Actava TV offers an honest and reliable service with ambitious plans for the future. We have been with you already for 7 years and have no plans to stop.

(Dowd. Decl. Ex. 29)

91.     The radio ad also states: "**Broadcasting** is carried out by Matvil, which has permission to broadcast."  (*Id.*)(emphasis added).

92.     Actava paid for the Davidzon Radio ad translated by Broadcasters. (Pliss Tr. at 151:12-152:2).

93.     The advertisement aired from September 2016 to December 2016.  (Tsoutiev Tr. at 123:6-11).

### DEFENDANTS DISCOVER THE MATVIL-ACTAVA RELATIONSHIP

94.     On September 28, 2016, Channel One's former licensee, Kartina World LLP, informed Channel One via email that Actava's website was selling subscriptions to the broadcasts via the Matvil service.  (Shprekher Decl. Ex. 6).

95.     Kartina and Channel One were concerned that Actava was distributing programming with an unauthorized sublicense from Matvil.  (*Id*. ¶¶ 44-47).

96.     On September 30, 2016, Matvil contacted Channel One about Matvil's relationship with Actava.  (Shprekher Decl. Ex. 8).

97.     On October 3, 2016, after reviewing Matvil's explanation, Channel One wrote: "In our opinion, this cooperation is not just unapproved by us, it is clearly goes beyond the scope of our contract and it looks like some kind of a sublicense, which is not permitted under the contract." (*Id*.)

98.     Channel One then exchanged emails with Matvil in October and November 2016 about the Actava- Matvil relationship.  (*Id*. Exs 9-12).

99.     Channel One made a business decision not to pursue legal action against its licensee, Matvil.  (*Id*. ¶ 54).

**BROADCASTERS SERVE NOTICE OF SUSPECTED BREACH ON ACTAVA**

100.    Upon learning of a business relationship between Actava and Matvil, Broadcasters reviewed the Actava website, Settlement Agreement, Injunctions, and Matvil settlement agreement.  (Dowd. Decl. Ex. 4).



102.    Broadcasters served a notice of suspected breach on Actava on October 19, 2016. (Dowd. Decl. Ex. 4).





**BROADCASTERS FILE A CONTEMPT MOTION AGAINST ACTAVA**

117.    Channel One authorized Dunnington to bring the contempt motion.  (Shprekher ¶ 55).

118.    Broadcasters filed a contempt motion on December 13, 2016, alleging that Actava was transmitting and advertising the Broadcasters' content.  (*Infomir* Action ECF 149).

119.    Broadcasters included the certified translation of an Actava radio advertisement as part of the motion.  (Dowd Decl. Ex. 26; *see also Infomir* Action ECF 150-9).

120.    Actava filed its opposition to the motion on January 13, 2017.  Actava failed to cross-move or otherwise seek relief against Broadcasters from Judge Moses in response to the Contempt Motion(*Infomir* Action ECF 162).

121.    Actava supported its opposition with five declarations and one expert report in opposition to the contempt motion: (1) Toby Butterfield, Esq. Declaration, (2) Brad Gilmer Expert Report, (3) Tsoutiev Declaration, (4) Mikhail Gayster Declaration, (5) Alexandr Crivoi (Matvil System Admin) Declaration, and (6) Jonathan Malki, Esq. Declaration. (*Infomir* Action ECFs 157-61) ("Actava Contempt Declarations"). In opposing the Contempt Motion, Actava represented to Judge Moses that it did not use its own software to deliver the Programming and did not authenticate customers.

122.    Actava filed a redacted copy of the Referral Agreement and addendum as Exhibit A to the January 10, 2017, Declaration of Mikhail Gayster.  (*Infomir* Action ECF 159; 159-1).

123.    The number "9" is the last page of the Referral Agreement provided to Judge Moses.  (*Infomir* Action ECF 159-1).  The Second Addendum does not have a page number. (Dowd Decl. Ex. 9).

124.    Actava provided an incomplete copy of the Referral Agreement for Judge Moses's consideration during the contempt proceeding.  (*Compare. Infomir* Action ECF 159-1 *with* Second Addendum).

**ACTAVA'S CONDUCT DURING THE PENDENCY OF THE CONTEMPT MOTION**



**JUDGE MOSES' DECISION ON THE CONTEMPT MOTION**

127.    Judge Moses found in Part III.A of the September 27, 2017, Order that Actava's sale of set-top boxes preloaded with Matvil software that accessed Broadcasters' programming meant that Broadcasters were unable to show at the time of the hearing based on available "clear and convincing" evidence that Actava violated the Injunction in light of the very high standard necessary to prove contempt.  (ECF 1-3; Answer ¶ 146).

128.    Judge Moses' further found that "the recurring question of 'authorization'" raised by Actava's characterizations of the Matvil license prevented her from determining if Actava's radio advertisement violated the Injunctions.  (ECF 1-3; Answer ¶ 148).

129.    Judge Moses' analysis of a potential violation of Paragraph 2(a) of the Injunctions focused on the role of authentication:

> Paragraph 2(a) of the Stipulated Injunction prohibits the Actava Defendants from "[b]roadcasting, re-broadcasting or otherwise transmitting" plaintiffs' Broadcasts (that is, their Channels) "without authorization." Advertising and promoting Matvil's service, whether on the Website or on the radio, does not violate this provision. Nor is Actava in contempt merely by redirecting customers from its Website to the Matvil website, where they can sign up for Matvil's service or download the Matvil app, **so long as it is Matvil, not Actava, that delivers plaintiffs' content through its own servers, using its own software, and authenticates the customers through its own website**. Thus, in the scenario where the customer accesses Matvil's CDN directly, via computer or "smart TV," see Vidulich Decl. ¶¶ 2-5, Actava's role in "referring" the customer to Matvil does not appear to violate ¶ 2(a) of the Stipulated Injunction.

(ECF 1-3 at 22)(emphasis added).

130.    As Judge Moses noted in the Order addressing Actava's contempt, the Broadcasters did not submit any license agreements with the contempt motions, so Matvil CEO "Gayster's

assertion that Matvil had whatever authority it needed from plaintiffs to engage Actava pursuant to the Referral Agreement must therefore be deemed undisputed." (ECF 1-3 at 15 n. 13).

131.    Judge Moses explicitly stated that she expressed "no opinion as to whether Actava Defendants violated" the underlying Settlement Agreement.  (ECF 1-3 at 30 n. 18).

132.    Rather, Judge Moses made clear that Broadcasters' arguments in favor of contempt against Actava had "some force."  (ECF 1-3 at 23).

### ACTAVA RESUMES MARKETING



136.    Channel One did not contact Matvil about its relationship with Actava after the decision on the contempt motion.  (Shprekher Decl. ¶ 57).

137.    Channel One did not contact any known customers or business associates of Actava.  (Shprekher ¶ 59).

### ACTAVA SUES BROADCASTERS IN JULY 2018 TO THE SHOCK OF MATVIL

138.    On July 23, 2018, Plaintiffs sued Channel One, CTC, New Channel, TV Darial, Comedy TV, and Rain TV alleging tortious interference with the Referral Agreement, malicious prosecution, and breach of contract.  (ECF 1).

██ ████████████████████████████████████████

██████████████████████████

██ ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████

██ ████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

██ ████████████████████████████████████████

████████████████████████████████████████

██ ████████████████████████████████████████

████████████████████

██ ████████████████████████████████████████

████████████████████████████

**MATVIL SERVES NOTICE OF BREACH ON ACTAVA, MATVIL AND ACTAVA
ENTER INTO A NON-DISCLOSURE AGREEMENT, AND THE PARTIES CANNOT
NEGOTIATE A RESOLUTION**

██ ████████████████████████████████████████

████████████████████████████████████████████

██████████████████



███  ████████████████████████████████████████████

████████████████████████████████████████████████

██████████

███  ████████████████████████████████████████████

████████████████████████████████████

███  ████████████████████████████████████████████

██████████████████████████████████████████████

**MATVIL AND DEFENDANTS CONFIRM DEFENDANTS DID NOT PRESSURE
MATVIL TO TERMINATE THE REFERRAL AGREEMENT**

███  ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████

███  ████████████████████████████████████████████

████████████████████████████████████████████████

████████

███  ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████



## ACTAVA AMENDS COMPLAINT TO ADD CLAIMS AGAINST KARTINA

162.    On October 4, 2018, Actava added Kartina as a defendant and added a New York

Business Law § 349 claim against Kartina.  (ECF ¶ 38).

## ACTAVA WAS INVOLVED WITH DISTRIBUTING MATVIL'S STREAMING IN 2016



**ACTAVA SUES MATVIL**

170.    On April 28, 2021, Actava TV sued Matvil in the Southern District of New York alleging breach of contract and unjust enrichment. *See Actava TV, Inc. v. Matvil Corp.*, No. 1:21-cv-03027.

**ECONOMIC SELF INTEREST**

171.    Stopping piracy is in the Defendants' economic self-interest. By stopping or limiting piracy, licensees are able to obtain more users and, as a result, more revenue. In turn, the more revenues a licensee collect, the higher licensing fees a Broadcaster is able to charge a licensees. *See* Koshkin Decl. ¶¶ 7, 18; Kan Decl. ¶¶ 6, 17; Sindeeva Decl. ¶¶ 7, 18, Panfilova Decl. ¶¶ 6, 16), Shprekher Decl. ¶¶ 28-37; *see also*, (SAC ¶ 5).

Dated: New York, New York
       August 3, 2021

                                  Respectfully submitted,


                                       Respectfully Submitted,
                                       /s/  Erik Dykema_____
                                       Serge Krimnus, Esq.
                                       Andrew Bochner, Esq.
                                       Erik Dykema, Esq.
                                       Michael Gabriel, Esq.
                                       **Bochner IP, PLLC**
                                       295 Madison Avenue
                                       12th Floor
                                       New York, New York 10017
                                       (646) 971-0685

                                       *Attorneys for Defendants*
                                       *CTC Network, New Channel, Rain, TV Darial,*
                                       *Comedy TV, and Kartina*


                                       DUNNINGTON BARTHOLOW & MILLER LLP
                                       *Attorneys for Defendant Channel One*

                                       By:  /s/Raymond J. Dowd_____
                                            Raymond J. Dowd
                                            Hardin P. Rowley
                                            230 Park Avenue, 21st Floor
                                            New York, New York 10169
                                            Telephone: 212-682-8811
                                            Facsimile: 212-661-7769
                                            RDowd@dunnington.com
                                            HRowley@dunnington.com

28