UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| Actava TV, Inc., Master Call Communications, Inc., Master Call Corporation, and Rouslan Tsoutiev, <br><br> Plaintiffs, <br><br> v. <br><br> Joint Stock Company "Channel One Russia Worldwide," Closed Joint Stock Company "CTC Network," Closed Joint Stock Company "New Channel," Limited Liability Company "Rain TV-Channel," Closed Joint Stock Company "TV DARIAL, , Limited Liability Company "Comedy TV," and Kartina Digital GmbH, <br><br> Defendants. | Civ. No.: 1:18-cv-06626-ALC-KNF <br><br> **DECLARATION OF ALEXANDER KOSHKIN, REPRESENTATIVE OF CLOSED JOINT STOCK COMPANY "CTC NETWORK", CLOSED JOINT STOCK COMPANY "NEW CHANNEL", AND CLOSED JOINT STOCK COMPANY "TV DARIAL" IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

Я, Александр Кошкин, будучи совершеннолетним, под страхом наказания за лжесвидетельство заявляю следующее:

1.     Я являюсь заместителем директора по  правовому сопровождению новостного вещания и судебной практике компании Media Business Solutions LLC («MBS»), компании, аффилированной с компаниями-Ответчиками, акционерным обществом «CTC Network» («CTC»), акционерным обществом «New Channel» («New Channel») и закрытым акционерным обществом «TV DARIAL» («Darial») (совместно именуемые Вещательная компания «CTC»). Юридический адрес компании Media Business Solutions LLC: ул. Правды, стр. 2, д. 15, каб. 116, Москва, 125040, Россия. Компания «MBS» предоставляет юридические услуги компаниям CTC, New Channel и Darial.

2.     Мне больше 18 лет.

3.      Я лично знаю все факты, изложенные в настоящем Заявлении, и знаю, что все они соответствуют действительности. Я компетентен давать показания по этому вопросу, и, если бы меня попросили сделать это, я бы дал показания в соответствии с заявлениями, сделанными в этом Заявлении.

4.      Я делаю это заявление в поддержку возражения Ответчиков[1] против ходатайства Истцов о вынесении решения в порядке упрощенного судопроизводства.

5.      3 февраля 2021 года я был засвидетельствован под присягой по этому делу.

6.      Я свободно говорю по-русски. Хотя я понимаю по-английски, я не говорю на нем свободно.

7.      Вещательная компания «СТС» владеет и управляет телеканалами и заключила лицензионные соглашения с третьими сторонами на трансляцию своих программ через телевидение в сетях передачи данных по протоколу IP («IPTV») в Соединенных Штатах и других странах мира. Вещательная компания «СТС» получает значительные доходы от таких лицензионных соглашений.

8.      До 19 февраля 2016 г. у Вещательной компании «СТС» были серьезные проблемы с пиратством её контента. Что касается Соединенных Штатов, было несколько организаций, незаконно распространявших контент Вещательной компании «СТС», включая Actava TV, Inc. («Actava»).

9.      Прекращение пиратства отвечает экономическим интересам Вещательной компании «СТС». Остановив или ограничив пиратство, наши лицензиаты могут получить

---

[1] Термин «Ответчики» относится к акционерному обществу «Channel One Russia Worldwide», закрытому акционерному обществу «СТС Network», закрытому акционерному обществу «New Channel», закрытому акционерному обществу «Rain TV-Channel», закрытому акционерному обществу «TV DARIAL», обществу с ограниченной ответственностью «Comedy TV» и Kartina Digital GmbH («Kartina»). Термин «Вещательные компании» относится ко всем Ответчикам, кроме Kartina.

больше пользователей и, как следствие, больший доход. В свою очередь, чем больше доходов собирают наши лицензиаты, тем выше лицензионные сборы, которые Вещательная компания «СТС» может взимать с наших лицензиатов.

10.    Чтобы бороться с пиратством контента Вещательной компании «СТС» со стороны компаний Matvil, Actava и других пиратов, 19 февраля 2016 года Вещательные компании подали иск, озаглавленный «Акционерное общество *Channel One Russia Worldwide против ООО Infomir*», № 1: 16-cv-01318-GBD-BCM (SDNY, 19 февраля 2016 г.), за нарушение прав интеллектуальной собственности Вещательных компаний («Судебные разбирательство по делу Infomir»). Судебное разбирательство по делу Infomir было возбуждено против нескольких ответчиков, включая компанию Matvil. Судебное разбирательство по делу Infomir было также возбуждено против компании Actava, её генерального директора Руслана Цутиева, компании Master Call Communications, Inc. и компании Master Call Corporation (совместно именуемые «Истцы»).

11.    Во время судебного разбирательства по делу Infomir компания Kartina никогда не являлась эксклюзивным лицензиатом Вещательной компании «СТС» в Соединенных Штатах Америки. Компания Kartina являлась только неисключительным лицензиатом Вещательной компании «СТС» в Соединенных Штатах Америки.

12.    До судебного разбирательства по делу Infomir компании Matvil и Actava распространяли контент Вещательной компании «СТС» среди своих пользователей без лицензии от Вещательной компании «СТС». Это распространение нарушало права интеллектуальной собственности Вещательной компании «СТС», в том числе авторские права на трансляции и торговые марки.

13.     Примерно 15 марта 2016 года компания Matvil заключила лицензионные соглашения с компаниями СТС и New Channel, чтобы на законных основаниях распространять контент компаний СТС и New Channel, а примерно 1 июня 2017 года компания Matvil заключила лицензионное соглашение с компанией Darial, чтобы на законных основаниях распространять контент Darial («Лицензионные соглашения»). Компания Matvil была исключена из судебного разбирательства по делу Infomir.

14.     Компания Actava никогда не заключала лицензионных соглашений с Вещательной компанией «СТС».

15.     Ни один из Истцов никогда не заключал лицензионного соглашения с Вещательной компанией «СТС».

16.     Ни одна из компаний MHCOM GmbH, Russian Telekom, Inc., North Atlantic Broadcasting Corp. никогда не заключала лицензионных соглашений с Вещательной компанией «СТС».

17.     После того, как компании «СТС» и New Channel заключили Лицензионное соглашение, компании Matvil и Actava заключили так называемое Реферальное соглашение от 8 сентября 2016 г. («Реферальное соглашение»). В соответствии с Реферальным соглашением компания Actava использовала товарные знаки Вещательной компании «СТС» для рекламы контента Вещательной компании «СТС» без разрешения Вещательной компании «СТС».

18.     Истцы не просили разрешения у Вещательной компании «СТС» вступать в переговоры с компанией Matvil. Компания Matvil не запрашивала у Вещательной компании «СТС» разрешение на заключение Реферального соглашения.

19.     Вещательные компании подали ходатайство о неуважении к суду в рамках Судебного разбирательства по делу Infomir 13 декабря 2016 г. против Истцов за нарушение судебного запрета путем заключения Реферального соглашения, включая использование товарных знаков Вещательной компании «СТС» («Ходатайство о неуважении к суду»).

20.     Целью подачи ходатайства о неуважении к суду и в целом Судебного разбирательства по делу Infomir было пресечение несанкционированного использования интеллектуальной собственности Вещательной компании «СТС». Защита интеллектуальной собственности Вещательной компании «СТС» важна для сохранения и увеличения доходов и прибыли Вещательной компании «СТС».

21.     В сентябре 2017 года ходатайство о неуважении к суду было отклонено.

22.     23 июля 2018 г. Истцы подали немедленный иск против Ответчиков.

23.     Примерно 30 июля 2018 г. представитель компании Matvil связался с Вещательной компании «СТС», чтобы сообщить нам, что был подан немедленный иск.

24.     Вещательная компания «СТС» никогда не оказывала давления на компанию Matvil с целью прекращения отношений с компанией Actava или расторжения Реферального соглашения с Actava.

25.     Вещательная компания «СТС» никогда не просила компанию Matvil расторгнуть или отменить Реферальное соглашение между компаниями Matvil и Actava.

26.     Я узнал, что в соответствии со своим Реферальным соглашением с компанией Matvil, компания Actava направляет клиентов компании Actava для получения контента Вещательной компании «СТС». Усилия компании Actava включают рекламу, нацеленную на старых клиентов, которые у нее были до вступления в силу судебных запретов в рамках Судебного разбирательства по делу Infomir.

27.     Действия компании Actava наносят вред Вещательной компании «СТС», поскольку они позволяют компании Actava продолжать получать прибыль от распространения контента Вещательной компании «СТС» без лицензии.

28.     Если бы компания Actava следовала положениям Мирового соглашения и попыталась бы получить лицензию от Вещательной компании «СТС», Вещательная компания «СТС» смогла бы добросовестно договориться о предоставлении такой лицензии. Все лицензионные соглашения Вещательной компании «СТС» включают лицензионный сбор, и лицензионное соглашение с компанией Actava также должно его включать. Решение компании Actava обойти Мировое соглашение вместо получения лицензии лишило Вещательную компанию «СТС» этого лицензионного сбора.

29.     Кроме того, действия компании Actava наносят ущерб Вещательной компании «СТС», поскольку, когда Вещательная компания «СТС» согласовывала свою лицензию с компанией Matvil, Вещательная компания «СТС» согласилась на лицензионную плату, которая зависела от количества клиентов, которые, как ожидается, будут использовать услуги компании Matvil. Ожидаемое количество клиентов было основано на маркетинговом исследовании и исследовании прошлой деятельности компании Matvil. Вещательная компания «СТС» не была проинформирована о том, что компания Actava будет направлять своих старых клиентов компании Matvil.

30.     Если бы Вещательная компания «СТС» была проинформирована о договоренности между компанией Actava и компанией Matvil, Вещательная компания «СТС» могла бы принять во внимание этих дополнительных клиентов и договориться о более высоком лицензионном сборе.

31.     Кроме того, после подписания Мирового соглашения с компанией Actava я узнал, что компания Actava не раскрывает полностью свои источники пиратского программирования. В то время компания Actava раскрыла только один из своих источников пиратского программирования. С тех пор я узнал, что у компании Actava было как минимум три других источника пиратского программирования.

32.     Неспособность компании Actava раскрыть эти дополнительные источники пиратского контента вредит Вещательной компании «СТС» отчасти потому, что это помешало Вещательной компании «СТС» отстаивать свои права интеллектуальной собственности в отношении других компаний.

33.     Это не только вредит Вещательной компании «СТС», уменьшая её доход, но также позволяет другим пиратам продолжать конкурировать с легальными трансляциями Вещательной компании «СТС». Это наносит прямой вред Вещательной компании «СТС», сокращая её клиентскую базу. Это также косвенно вредит Вещательной компании «СТС», переманивая законных клиентов Вещательной компании «СТС» от легального контента Вещательной компании «СТС» к более дешевым незаконным сервисам.

34.     Кроме того, соглашение компании Actava с компанией Matvil и отказ компании раскрыть свои источники контента вынудили Вещательную компанию «СТС» принять дополнительные меры принудительного исполнения. Вещательной компании «СТС» не пришлось бы нести расходы на дополнительные меры принудительного исполнения, если бы компания Actava выполнила свои обязательства перед Вещательной компанией «СТС» в соответствии с Мировым соглашением.


**(ДАЛЕЕ СЛЕДУЕТ СТРАНИЦА ПОДПИСИ)**

В соответствии с разделом 28 U.S.C. § 1746, я заявляю под страхом наказания за лжесвидетельство в соответствии с законодательством Соединенных Штатов Америки, что вышесказанное является правдивым и правильным.

Подписано: _____16. 09_____, 2021 г.

_____

Александр Кошкин

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr>
<td>

Actava TV, Inc., Master Call
Communications, Inc., Master Call
Corporation, and Rouslan Tsoutiev,

                 Plaintiffs,

      v.


Joint Stock Company "Channel One Russia
Worldwide," Closed Joint Stock Company
"CTC Network," Closed Joint Stock
Company "New Channel," Limited Liability
Company "Rain TV-Channel," Closed Joint
Stock Company "TV DARIAL, Limited
Liability Company "Comedy TV," and
Kartina Digital GmbH,

                Defendants.

</td>
<td>

Civ. No.: 1:18-cv-06626-ALC-KNF


**DECLARATION OF ALEXANDER
KOSHKIN, REPRESENTATIVE OF
CLOSED JOINT STOCK COMPANY
"CTC NETWORK", CLOSED JOINT
STOCK COMPANY "NEW CHANNEL",
AND CLOSED JOINT STOCK
COMPANY "TV DARIAL" IN SUPPORT
OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT**

</td>
</tr>
</table>

I, Alexander Koshkin, being of lawful age, declare as follows under penalty of perjury:

1.      I am Deputy Director for Legal Support of News Broadcasting and Judicial Practice of the company Media Business Solutions LLC ("MBS"), an affiliate of Defendants Joint Stock Company "CTC Network" ("CTC"), Joint Stock Company "New Channel" ("New Channel"), and Closed Joint Stock Company "TV DARIAL" ("Darial") (collectively, the "CTC Broadcasters"). The business address of Media Business Solutions LLC is room 116, build. 2, 15, Pravda street, Moscow 125040, Russian Federation. MBS provides legal services for CTC, New Channel, and Darial.

2.      I am over the age of 18 years old.

3.      I am personally familiar with the facts set forth in this Declaration and know all of them to be true. I am competent to testify in this matter, and if called upon to do so, I would testify consistent with the statements made in this Declaration.

4.      I submit this declaration in support of Defendants'[1] opposition to Plaintiffs' motion for summary judgment.

5.      On February 3, 2021, I was deposed in this litigation.

6.      I am fluent in Russian. Although I understand English, I am not fluent.

7.      CTC Broadcasters own and operate TV channels and have entered into licensing agreements with third parties to distribute their programming via Internet Protocol Television ("IPTV") in the United States and other countries around the world. CTC Broadcasters obtain substantial revenues from such licensing agreements.

8.      Prior to February 19, 2016, CTC Broadcasters had significant problems with piracy of their content. With respect to the United States, there were multiple entities illegally distributing CTC Broadcasters' content including Actava TV, Inc. ("Actava").

9.      Stopping piracy is in CTC Broadcasters' economic self-interest. By stopping or limiting piracy, our licensees are able to obtain more users and, as a result, more revenue. In turn, the more revenues our licensees collect, the higher licensing fees CTC Broadcasters are able to charge our licensees.

10.     To address piracy of CTC Broadcasters' content by Matvil, Actava, and other pirates, on February 19, 2016, the Broadcasters filed a lawsuit captioned Joint Stock Company *Channel One Russia Worldwide v. Infomir LLC*, No. 1:16-cv-01318-GBD-BCM (S.D.N.Y. Feb. 19, 2016), for violations of the Broadcasters' intellectual property rights (the "Infomir Litigation"). The Infomir Litigation was filed against multiple defendants, including Matvil. The Infomir

---

[1] "Defendants" refers to Joint Stock Company "Channel One Russia Worldwide," Closed Joint Stock Company "CTC Network," Closed Joint Stock Company "New Channel," Limited Liability Company "Rain TV-Channel," Closed Joint Stock Company "TV DARIAL," Limited Liability Company "Comedy TV," and Kartina Digital GmbH ("Kartina"). "Broadcasters" refers to Defendants other than Kartina.

Litigation was also filed against Actava, its CEO Rouslan Tsoutiev, Master Call Communications, Inc., and Master Call Corporation (collectively, "Plaintiffs").

11.    During the pendency of the Infomir Litigation, Kartina was never an exclusive licensee of CTC Broadcasters in the United States of America. Kartina has only been a non-exclusive licensee of CTC Broadcasters in the United States of America.

12.    Prior to the Infomir Litigation, Matvil and Actava were distributing CTC Broadcasters' content to their users without a license from CTC Broadcasters. This distribution violated CTC Broadcasters' intellectual property rights, including their copyrights to their broadcasts, and their trademarks.

13.    On or about March 15, 2016, Matvil entered into licensing agreements with CTC and New Channel to lawfully distribute CTC and New Channel's content, and on or about June 1, 2017, Matvil entered into a licensing agreement with Darial to lawfully distribute Darial's content (the "Licenses"). Matvil was dismissed from the Infomir Litigation.

14.    Actava has never entered into a licensing agreement with CTC Broadcasters.

15.    None of the Plaintiffs ever entered into a licensing agreement with CTC Broadcasters.

16.    Neither MHCOM GmbH, Russian Telekom, Inc., nor North Atlantic Broadcasting Corp. ever entered into a licensing agreement with CTC Broadcasters.

17.    After CTC and New Channel entered into the Licenses, Matvil and Actava entered into a so-called Referral Agreement dated on or about September 8, 2016 (the "Referral Agreement"). Under the Referral Agreement, Actava was using CTC Broadcasters' trademarks to advertise CTC Broadcasters' content without CTC Broadcasters' permission.

18.     Plaintiffs did not seek permission from CTC Broadcasters to enter into negotiations with Matvil. Matvil did not seek permission from CTC Broadcasters to enter into the Referral Agreement.

19.     The Broadcasters filed a contempt motion in the Infomir Litigation on December 13, 2016 against Plaintiffs for violating the injunction by engaging in the Referral Agreement, including using CTC Broadcasters' trademarks (the "Contempt Motion").

20.     The purpose of filing of the Contempt Motion, like the purpose of the Infomir Litigation generally, was to stop the unauthorized use of CTC Broadcasters' intellectual property. Protecting CTC Broadcasters' intellectual property is important to preserving and increasing CTC Broadcasters' revenues and profits.

21.     In September of 2017, the Contempt Motion was denied.

22.     On July 23, 2018, Plaintiffs filed the instant lawsuit against Defendants.

23.     On or about July 30, 2018, a representative of Matvil contacted CTC Broadcasters to tell us the instant lawsuit was filed.

24.     CTC Broadcasters never applied any pressure on Matvil to terminate its relationship with Actava or terminate the Referral Agreement with Actava.

25.     CTC Broadcasters never asked that Matvil terminate or cancel the Referral Agreement between Matvil and Actava.

26.     I have learned that under its Referral Agreement with Matvil, Actava referred customers to Matvil to receive CTC Broadcasters' content. Actava's efforts include advertising that targets its legacy customers that it had prior to the entry of the injunction in the Infomir Litigation.

27.     Actava's actions harmed CTC Broadcasters because it allowed Actava to continue to profit from the distribution of CTC Broadcasters' content without a license.

28.     Had Actava followed the provisions of the Settlement Agreement and tried to get a license from CTC Broadcasters, CTC Broadcasters would have been able to negotiate such a license in good faith. All of CTC Broadcasters license agreements include a licensing fee, and Actava's license would have also included such a fee. Actava's decision to go around the Settlement Agreement instead of getting a license deprived CTC Broadcasters of that license fee.

29.     In addition, CTC Broadcasters were harmed by Actava's actions because when CTC Broadcasters negotiated its license with Matvil, CTC Broadcasters agreed to a license fee that was based on the number of customers expected to use Matvil's service. The expected number of customers was based on Matvil's past activity. CTC Broadcasters were not informed that Actava would be referring its legacy customers to Matvil.

30.     Had CTC Broadcasters been informed of the arrangement between Actava and Matvil, CTC Broadcasters would have been able to take these additional customers into consideration and would have been able to negotiate a higher licensing fee.

31.      Also, since the signing of the Settlement Agreement with Actava, I have learned that Actava did not fully disclose its sources of pirated programming. At the time, Actava only disclosed one of its sources of pirated programming. I have since learned that Actava had at least three other sources of pirated programming.

32.     Actava's failure to disclose these additional sources of pirated content harms CTC Broadcasters in part because it prevented CTC Broadcasters from trying to enforce its intellectual property rights against those other companies.

33.    Not only does that harm CTC Broadcasters by reducing CTC Broadcasters' income, but it also allows those other pirates to continue to serve as a source of competition for CTC Broadcasters' legal broadcasts. This harmed CTC Broadcasters directly by lowering its customer base. It also harmed CTC Broadcasters indirectly by luring CTC Broadcasters' legitimate customers away from CTC Broadcasters' legal content to lower cost, illegal services.

34.    Furthermore, Actava's agreement with Matvil and its failure to disclose its sources of content caused CTC Broadcasters to have to engage in additional enforcement actions. CTC Broadcasters would not have had to engage in the additional enforcement actions if Actava had complied with its obligations to CTC Broadcasters under the Settlement Agreement.

**(SIGNATURE PAGE FOLLOWS)**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on:  __[handwritten:] *September 16,* 2021

_____[signature]___
Alexander Koshkin



City of New York, State of New York, County of New York

I, Caroline Snider, hereby certify that the document **"CTC Declaration - Opposition"** is to the best of my knowledge and belief, a true and accurate translation from Russian into English.

Caroline Snider

Sworn to before me this
September 17, 2021

Signature, Notary Public

ANDERS MIKAEL EKHOLM
NOTARY PUBLIC-STATE OF NEW YORK
No. 01EK6378373
Qualified in New York County
My Commission Expires 07-23-2022

Stamp, Notary Public