UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Actava TV, Inc., Master Call Communications, Inc., Master Call Corporation, and Rouslan Tsoutiev,<br><br>    Plaintiffs,<br>v.<br><br>Joint Stock Company "Channel One Russia Worldwide," Closed Joint Stock Company "CTC Network," Closed Joint Stock Company "New Channel," Limited Liability Company "Rain TV-Channel," Closed Joint Stock Company "TV DARIAL," Open Joint Stock Company "ACCEPT", Limited Liability Company "Comedy TV," and Kartina Digital GmbH,<br><br>    Defendants. | Civ. No.: 1:18-cv-06626-ALC-KNF<br><br>**DECLARATION OF VITALY KAN, REPRESENTATIVE OF LIMITED LIABILITY COMPANY "COMEDY TV" IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

    Я, Виталий Кан, будучи совершеннолетним, под страхом наказания за лжесвидетельство заявляю следующее:

    1.    Я главный юрисконсульт компании ООО «Международное развлекательное ТВ» (Global entertainment TV, LLC - «GETV») и работаю в ней с 2020 года. Примерно 31 октября 2016 года свидетельство о регистрации СМИ было передано от Общества с ограниченной ответственностью «Комеди ТВ» (Comedy TV, LLC - «Comedy TV»), управляющего телеканалом TNT-Comedy, компании GETV в соответствии с процедурой, предусмотренной *Федеральной службой по надзору в сфере связи, информационных технологий и массовых коммуникаций* в соответствии с нормативными актами и постановлением Правительства Российской Федерации от 6 октября 20211 г. № 1752-р. После передачи свидетельства о регистрации СМИ в соответствии с Гражданским кодексом Российской Федерации, часть IV, статьи 1329 и 1330, компании GETV фактически были

переданы авторские права и соответствующие права интеллектуальной собственности на телеканал TNT-Comedy, который ранее управлялся компанией Comedy TV. GETV — это компания, в настоящая время управляющая международными аффилированными продажами российского телеканала TNT-Comedy.

2. Мне больше 18 лет.

3. Я лично знаю все факты, изложенные в настоящем Заявлении, и знаю, что все они соответствуют действительности. Я компетентен давать показания по этому вопросу, и, если бы меня попросили сделать это, я бы дал показания в соответствии с заявлениями, сделанными в этом Заявлении.

4. Я делаю это заявление в поддержку возражения Ответчиков[1] против ходатайства Истцов о вынесении решения в порядке упрощенного судопроизводства.

5. Я свободно говорю по-русски. Хотя я немного понимаю по-английски, я не говорю на нем свободно.

6. Компания GETV владеет и управляет телеканалом TNT-Comedy и заключила лицензионные соглашения с третьими лицами на распространение своих программ по Интернет-протоколу («IPTV») в Соединенных Штатах и во всем мире. Компания GETV получает значительные доходы от таких лицензионных соглашений. Компания Comedy TV ранее управляла телеканалом TNT-Comedy.

7. До 19 февраля 2016 г. у компании Comedy TV и других Вещательных компаний были серьезные проблемы с пиратством их контента. Что касается Соединенных

---

[1] Термин «Ответчики» относится к акционерному обществу «Channel One Russia Worldwide», закрытому акционерному обществу «CTC Network», закрытому акционерному обществу «New Channel», закрытому акционерному обществу «Rain TV-Channel», закрытому акционерному обществу «TV DARIAL», обществу с ограниченной ответственностью «Comedy TV» и Kartina Digital GmbH («Kartina»). Термин «Вещательные компании» относится ко всем Ответчикам, кроме Kartina.

Штатов, было несколько организаций, незаконно распространявших контент компании Comedy TV, включая Matvil Corporation («Matvil») и Actava TV, Inc. («Actava»).

8. Прекращение пиратства отвечает экономическим интересам компании Comedy TV. Остановив или ограничив пиратство, лицензиаты компании Comedy TV могут получить больше пользователей и, как следствие, больший доход. В свою очередь, чем больше доходов собирают лицензиаты компании Comedy TV, тем выше лицензионные сборы, которые компания Comedy TV может взимать с лицензиатов (таких как компании Kartina и Matvil).

9. Чтобы бороться с пиратством контента компании Comedy TV со стороны компании Actava и других пиратов, 19 февраля 2016 года Вещательные компании подали иск, озаглавленный «Акционерное общество *Channel One Russia Worldwide против ООО Infomir*», № 1: 16-cv-01318-GBD-BCM (SDNY, 19 февраля 2016 г.), за нарушение прав интеллектуальной собственности Вещательных компаний («Судебное разбирательство по делу Infomir»). Судебное разбирательство по делу Infomir было возбуждено против нескольких ответчиков, включая компанию Matvil. Судебное разбирательство по делу Infomir было также возбуждено против компании Actava, её генерального директора Руслана Цутиева, компании Master Call Communications, Inc. и компании Master Call Corporation (совместно именуемые «Истцы»).

10. Во время судебного разбирательства по делу Infomir компания Kartina никогда не являлась эксклюзивным лицензиатом компании Comedy TV в Соединенных Штатах Америки. Компания Kartina являлась только неисключительным лицензиатом компании Comedy TV в Соединенных Штатах Америки. Компания Kartina является

неисключительным лицензиатом компании Comedy TV/GETV в Соединенных Штатах Америки примерно с 2013 года.

11. До судебного разбирательства по делу Infomir компании Matvil и Actava распространяли контент компании Comedy TV среди своих пользователей без лицензии от компании Comedy TV. Это распространение нарушало права интеллектуальной собственности компании Comedy TV, в том числе авторские права на трансляции и торговые марки.

12. Примерно в 2016 году компания Matvil заключила лицензионное соглашение с компанией Comedy TV, чтобы на законных основаниях распространять контент Comedy TV («Лицензионные соглашения»). Компания Matvil была исключена из судебного разбирательства по делу Infomir.

13. Компания Actava никогда не заключала лицензионных соглашений с компаниями Comedy TV и GETV.

14. Ни один из Истцов никогда не заключал лицензионного соглашения с компанией Comedy TV или GETV.

15. Ни одна из компаний MHCOM GmbH, Russian Telekom, Inc., North Atlantic Broadcasting Corp. никогда не заключала лицензионных соглашений с компанией Comedy TV или GETV.

16. После того, как компании Comedy TV и Matvil заключили Лицензионное соглашение, компании Matvil и Actava заключили так называемое Реферальное соглашение от 8 сентября 2016 г. или около того («Реферальное соглашение»). В соответствии с Реферальным соглашением компания Actava использовала товарные знаки Comedy TV для рекламы контента Comedy TV без разрешения Comedy TV.

17. Истцы не просили разрешения у Comedy TV вступать в переговоры с компанией Matvil. Компания Matvil не запрашивала у Вещательных компаний разрешение на заключение Реферального соглашения.

18. Вещательные компании подали ходатайство о неуважении к суду в рамках Судебного разбирательства по делу Infomir 13 декабря 2016 г. против Истцов за нарушение судебного запрета путем заключения Реферального соглашения («Ходатайство о неуважении к суду»).

19. Целью подачи ходатайства о неуважении к суду и в целом Судебного разбирательства по делу Infomir было пресечение несанкционированного использования интеллектуальной собственности Comedy TV. Защита интеллектуальной собственности Comedy TV важна для сохранения и увеличения доходов и прибыли Comedy TV.

20. В сентябре 2017 года ходатайство о неуважении к суду было отклонено.

21. 23 июля 2018 г. Истцы подали немедленный иск против Ответчиков.

22. Ни компания Comedy TV, ни компания GETV никогда не оказывали давления на компанию Matvil с целью прекращения отношений с компанией Actava или расторжения Реферального соглашения с Actava.

23. Ни компания Comedy TV, ни компания GETV никогда не просили компанию Matvil расторгнуть или отменить Реферальное соглашение между компаниями Matvil и Actava.

24. Я узнал, что в соответствии со своим Реферальным соглашением с компанией Matvil компания Actava направляет клиентов компании Matvil для получения контента компании Comedy TV. Усилия компании Actava включают рекламу, нацеленную на старых

клиентов, которые у нее были до вступления в силу судебных запретов в рамках Судебного разбирательства по делу Infomir.

25. Действия компании Actava наносили вред Comedy TV, поскольку они позволяли компании Actava продолжать получать прибыль от распространения контента компании Comedy TV без лицензии.

26. Если бы компания Actava следовала положениям Мирового соглашения и попыталась бы получить лицензию от компании Comedy TV, компания Comedy TV смогла бы добросовестно договориться о предоставлении такой лицензии. Все лицензионные соглашения компании Comedy TV включают лицензионный сбор, и лицензионное соглашение с компанией Actava также должно его включать. Решение компании Actava обойти Мировое соглашение вместо получения лицензии лишило компанию Comedy TV этого лицензионного сбора.

27. Кроме того, действия компании Actava наносят ущерб компании Comedy TV, поскольку, когда компания Comedy TV согласовывала свою лицензию с компанией Matvil, компания Comedy TV согласилась на лицензионную плату, которая зависела от количества клиентов, которые, как ожидается, будут использовать услуги компании Matvil. Ожидаемое количество клиентов было основано на маркетинговом исследовании и исследовании прошлой деятельности компании Matvil. Компания Comedy TV не была проинформирована о том, что компания Actava будет направлять своих старых клиентов компании Matvil.

28. Если бы компания Comedy TV была проинформирована о договоренности между компанией Actava и компанией Matvil, компания Comedy TV могла бы принять во внимание этих дополнительных клиентов и договориться о более высоком лицензионном сборе.

29. Кроме того, после подписания Мирового соглашения с компанией Actava я узнал, что компания Actava не раскрывает полностью свои источники пиратского программирования. В свое время компания Actava раскрыла только один из своих источников пиратского программирования. С тех пор я узнал, что у компании Actava было как минимум три других источника пиратского программирования.

30. Неспособность компании Actava раскрыть эти дополнительные источники пиратского контента вредит компании Comedy TV отчасти потому, что это помешало компании Comedy TV отстаивать свои права интеллектуальной собственности в отношении других компаний.

31. Это не только вредит компании Comedy TV, уменьшая её доход, но также позволяет другим пиратам продолжать конкурировать с легальными трансляциями компании Comedy TV. Это наносит прямой вред компании Comedy TV, сокращая её клиентскую базу. Это также косвенно вредит компании Comedy TV, переманивая законных клиентов компании Comedy TV от легального контента компании Comedy TV к более дешевым незаконным услугам.

32. Кроме того, соглашение компании Actava с компанией Matvil и отказ компании раскрыть свои источники контента вынудили компанию Comedy TV принять дополнительные меры принудительного исполнения. Компании Comedy TV не пришлось бы нести расходы на дополнительные меры принудительного исполнения, если бы компания Actava выполнила свои обязательства перед компанией Comedy TV в соответствии с Мировым соглашением.

(ДАЛЕЕ СЛЕДУЕТ СТРАНИЦА ПОДПИСИ)

В соответствии с разделом 28 U.S.C. § 1746, я заявляю под страхом наказания за лжесвидетельство в соответствии с законодательством Соединенных Штатов Америки, что вышесказанное является правдивым и правильным.

Подписано: _17 сентября_, 2021 г.

_____
Виталий Кан

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Actava TV, Inc., Master Call Communications, Inc., Master Call Corporation, and Rouslan Tsoutiev,<br><br>　　　　Plaintiffs,<br>　　v.<br><br>Joint Stock Company "Channel One Russia Worldwide," Closed Joint Stock Company "CTC Network," Closed Joint Stock Company "New Channel," Limited Liability Company "Rain TV-Channel," Closed Joint Stock Company "TV DARIAL," Open Joint Stock Company "ACCEPT", Limited Liability Company "Comedy TV," and Kartina Digital GmbH,<br><br>　　　　Defendants. | Civ. No.: 1:18-cv-06626-ALC-KNF<br><br>**DECLARATION OF VITALY KAN, REPRESENTATIVE OF LIMITED LIABILITY COMPANY "COMEDY TV" IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

　　I, Vitaly Kan, being of lawful age, declare as follows under penalty of perjury:

　　1.　　I am the General Counsel of Global Entertainment TV LLC ("GETV") and have been since 2020. On or about October 31, 2016, the mass media registration certificate was transferred from Limited Liability Company "Comedy TV" ("Comedy TV"), which operates the TV Channel TNT-Comedy, to GETV under the procedure provided in *The Federal Service for Supervision of Communications, Information Technology, and Mass Media* in accordance with regulations, and in accordance with the Directive of the Government of the Russian Federation as of October 6, 20211, No. 1752-r. After the transfer of the mass media registration certificate—in accordance with the Civil Code of the Russian Federation, Part IV, Sections 1329 and 1330—GETV was in effect assigned the copyrights and related intellectual property rights for the TNT-Comedy TV Channel previously operated by Comedy TV. GETV is the company now managing international affiliate sales of the Russian TV Channel TNT-Comedy.

2. I am over the age of 18 years old.

3. I am personally familiar with the facts set forth in this Declaration and know all of them to be true. I am competent to testify in this matter, and if called upon to do so, I would testify consistent with the statements made in this Declaration.

4. I submit this declaration in support of Defendants'[1] opposition to Plaintiffs' motion for summary judgment.

5. I am fluent in Russian. Although I understand some English, I am not fluent.

6. GETV owns and operates the TV Channel TNT-Comedy and has entered into licensing agreements with third parties to distribute its programming via Internet Protocol Television ("IPTV") in the United States and around the world. GETV obtains substantial revenues from such licensing agreements. Comedy TV previously operated the TV Channel TNT-Comedy.

7. Prior to February 19, 2016, Comedy TV and other Broadcasters had significant problems with piracy of its content. With respect to the United States, there were multiple entities illegally distributing Comedy TV's content including Matvil Corporation ("Matvil") and Actava TV, Inc. ("Actava").

8. Stopping piracy was in Comedy TV's economic self-interest. By stopping or limiting piracy, Comedy TV's licensees were able to obtain more users and, as a result, more revenue. In turn, the more revenues Comedy TV's licensees collected, the higher licensing fees Comedy TV was able to charge the licensees (such as Kartina and Matvil).

9. To address piracy of Comedy TV's content by Matvil, Actava, and other pirates, on February 19, 2016, the Broadcasters filed a lawsuit captioned Joint Stock Company *Channel*

---

[1] "Defendants" refers to Joint Stock Company "Channel One Russia Worldwide," Closed Joint Stock Company "CTC Network," Closed Joint Stock Company "New Channel," Closed Joint Stock Company "Rain TV-Channel," Closed Joint Stock Company "TV DARIAL," Limited Liability Company "Comedy TV," and Kartina Digital GmbH ("Kartina"). "Broadcasters" refers to Defendants other than Kartina.

*One Russia Worldwide v. Infomir LLC*, No. 1:16-cv-01318-GBD-BCM (S.D.N.Y. Feb. 19, 2016), for violations of the Broadcasters' intellectual property rights (the "Infomir Litigation"). The Infomir Litigation was filed against multiple defendants, including Matvil. The Infomir Litigation was also filed against Actava, its CEO Rouslan Tsoutiev, Master Call Communications, Inc., and Master Call Corporation (collectively, "Plaintiffs").

10. During the pendency of the Infomir Litigation, Kartina was never an exclusive licensee of Comedy TV in the United States of America. Kartina has only been a non-exclusive licensee of Comedy TV in the United States of America. Kartina has been a non-exclusive licensee of Comedy TV/GETV in the United States of America since about 2014.

11. Prior to the Infomir Litigation, Matvil and Actava were distributing Comedy TV's content to their users without a license from Comedy TV. This distribution violated Comedy TV's intellectual property rights, including its copyrights to its broadcasts, and its trademarks.

12. In 2016, Matvil entered into a licensing agreement with Comedy TV to lawfully distribute Comedy TV's content (the "License"). Matvil was subsequently dismissed from the Infomir Litigation.

13. Actava has never entered into a licensing agreement with Comedy TV or GETV.

14. None of the Plaintiffs ever entered into a licensing agreement with Comedy TV or GETV.

15. Neither MHCOM GmbH, Russian Telekom, Inc., nor North Atlantic Broadcasting Corp. ever entered into a licensing agreement with Comedy TV or GETV.

16. After Comedy TV and Matvil entered into the License, Matvil and Actava entered into a so-called Referral Agreement dated on or about September 8, 2016 (the "Referral

Agreement"). Under the Referral Agreement, Actava was using Comedy TV's trademarks to advertise Comedy TV's content without Comedy TV's permission.

17. Plaintiffs did not seek permission from Comedy TV to enter into negotiations with Matvil. Matvil did not seek permission from the Broadcasters to enter into the Referral Agreement.

18. The Broadcasters filed a contempt motion in the Infomir Litigation on December 13, 2016 against Plaintiffs for violating the injunction by engaging in the Referral Agreement (the "Contempt Motion").

19. The purpose of filing the Contempt Motion, like the purpose of the Infomir Litigation generally, was to stop the unauthorized use of Comedy TV's intellectual property. Protecting Comedy TV's intellectual property is important to preserving and increasing Comedy TV's revenues and profits.

20. In September of 2017, the Contempt Motion was denied.

21. On July 23, 2018, Plaintiffs filed the instant lawsuit against Defendants.

22. Neither Comedy TV nor GETV ever applied any pressure on Matvil to terminate its relationship with Actava or terminate the Referral Agreement with Actava.

23. Neither Comedy TV nor GETV ever asked that Matvil terminate or cancel the Referral Agreement between Matvil and Actava.

24. I have learned that under its Referral Agreement with Matvil, Actava referred customers to Matvil to receive Comedy TV's content. Actava's efforts include advertising that targets its legacy customers that it had prior to the entry of the injunction in the Infomir Litigation.

25. Actava's actions harmed Comedy TV because it allowed Actava to continue to profit from the distribution of Comedy TV's content without a license.

26. Had Actava followed the provisions of the Settlement Agreement and tried to get a license from Comedy TV, Comedy TV would have been able to negotiate such a license in good faith. All of Comedy TV's license agreements include a licensing fee, and Actava's license would have also included such a fee. Actava's decision to go around the Settlement Agreement instead of getting a license deprived Comedy TV of that license fee.

27. In addition, Comedy TV was harmed by Actava's actions because when Comedy TV negotiated its license with Matvil, Comedy TV agreed to a license fee that was based on the number of customers expected to use Matvil's service. The expected number of customers was based on Matvil's marketing and past activity. Comedy TV was not informed that Actava would be referring its legacy customers to Matvil.

28. Had Comedy TV been informed of the arrangement between Actava and Matvil, Comedy TV would have been able to take these additional customers into consideration and would have been able to negotiate a higher license fee.

29. Also, since the signing of the Settlement Agreement with Actava, I have learned that Actava did not fully disclose its sources of pirated programming. At the time, Actava only disclosed one of its sources of pirated programming. I have since learned that Actava had at least three other sources of pirated programming.

30. Actava's failure to disclose these additional sources of pirated content harms Comedy TV in part because it prevented Comedy TV from trying to enforce its intellectual property rights against those other companies.

31. Not only does that harm Comedy TV by reducing Comedy TV's income, but it also allows those other pirates to continue to serve as a source of competition for Comedy TV's legal broadcasts. This harms Comedy TV directly by lowering its customer base. It also harms Comedy

TV indirectly by luring Comedy TV's legitimate customers away from Comedy TV's legal content to lower cost, illegal services.

32.     Furthermore, Actava's agreement with Matvil and its failure to disclose its sources of content caused Comedy TV to have to engage in additional enforcement actions. Comedy TV would not have had to engage in the additional enforcement actions if Actava had complied with its obligations to Comedy TV under the Settlement Agreement.

**(SIGNATURE PAGE FOLLOWS)**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: [handwritten:] *September 17*, 2021

[signature]
Vitaly Kan



City of New York, State of New York, County of New York

I, Caroline Snider, hereby certify that the document **"Comedy Declaration"** is to the best of my knowledge and belief, a true and accurate translation from Russian into English.

Caroline Snider

Sworn to before me this
September 17, 2021

Signature, Notary Public

ANDERS MIKAEL EKHOLM
NOTARY PUBLIC-STATE OF NEW YORK
No. 01EK6378373
Qualified in New York County
My Commission Expires 07-23-2022

_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS
1250 BROADWAY, 7TH FLOOR, NEW YORK, NY 10001  |  T 212.689.5555  |  F 212.689.1059  |  WWW.TRANSPERFECT.COM
OFFICES IN 92 CITIES WORLDWIDE