UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Actava TV, Inc., Master Call Communications, Inc., Master Call Corporation, and Rouslan Tsoutiev,<br><br>    Plaintiffs,<br>v.<br><br>Joint Stock Company "Channel One Russia Worldwide," Closed Joint Stock Company "CTC Network," Closed Joint Stock Company "New Channel," Closed Joint Stock Company "TV DARIAL," Open Joint Stock Company "ACCEPT", Limited Liability Company "Comedy TV," and Kartina Digital GmbH,<br><br>    Defendants. | Civ. No.: 1:18-cv-06626-ALC-KNF<br><br>**DECLARATION OF OLGA PANFILOVA, REPRESENTATIVE OF KARTINA DIGITAL GmbH IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

I, Olga Panfilova, being of lawful age, declare as follows under penalty of perjury:

1. I am the Deputy Director of Business Strategy & Development at Defendant Kartina Digital GmbH ("Kartina") and have been at all relevant times.

2. I am over the age of 18 years old.

3. I am personally familiar with the facts set forth in this Declaration and know all of them to be true. I am competent to testify in this matter, and if called upon to do so, I would testify consistent with the statements made in this Declaration.

4. I submit this declaration in support of Defendants'[1] opposition to Plaintiffs' motion for summary judgment.

---

[1] "Defendants" refers to Joint Stock Company "Channel One Russia Worldwide," Closed Joint Stock Company "CTC Network," Closed Joint Stock Company "New Channel," Closed Joint Stock Company "TV DARIAL," Limited Liability Company "Comedy TV," and Kartina Digital GmbH ("Kartina"). "Broadcasters" refers to Defendants other than Kartina.

5. I am fluent in Russian. I also speak and read English, though not as well as I do Russian. I fully understand the contents of this declaration.

6. Kartina is a licensed distributor of Russian Language Television Channels via Internet Protocol Television ("IPTV") in the United States and around the world.

7. Prior to February 19, 2016, Kartina, as well as the Broadcasters distributed by Kartina, had significant problems with piracy of the Broadcasters' content. With respect to the United States, there were multiple entities illegally distributing the Broadcasters' content without a license including Matvil Corporation ("Matvil") and Actava TV, Inc. ("Actava").

8. Stopping or limiting piracy is in Kartina's economic self-interest. By fighting piracy, Kartina was attempting to obtain more users since some users who are unable to use illegal Russian IPTV services are likely to switch to Kartina or other legal distributors of Russian IPTV. As a result, by stopping or limiting piracy, Kartina is likely to increase its revenues and profit.

9. To address piracy of the Broadcasters' content by Matvil, Actava, and other pirates, on February 19, 2016, the Broadcasters filed a lawsuit captioned Joint Stock Company *Channel One Russia Worldwide v. Infomir LLC*, No. 1:16-cv-01318-GBD-BCM (S.D.N.Y. Feb. 19, 2016), for violations of the Broadcasters' intellectual property rights (the "Infomir Litigation"). The Infomir Litigation was filed against multiple defendants, including Matvil. The Infomir Litigation was also filed against Actava, its CEO Rouslan Tsoutiev, Master Call Communications, Inc., and Master Call Corporation (collectively, "Plaintiffs").

10. During the pendency of the Infomir Litigation, Kartina was not a party to the litigation at least because Kartina is a *non-exclusive* licensee of the Broadcasters' content, and thus could not bring suit over the Broadcasters' rights in its own name. Further, Kartina was previously subjected to denial-of-service attacks (a form of hacking) by Russian TV pirates. Kartina was

concerned that additional hacking attempts would result were it to be named as a plaintiff in litigation with TV pirates. However, Kartina did assist its Broadcaster business partners in retaining counsel and coordinating the anti-piracy efforts between the law firms engaged to do this work and the Broadcasters.

11. In or around 2016, after the Infomir Litigation was filed, Matvil entered into licensing agreements with the Broadcasters to lawfully distribute the Broadcasters' content (the "Licenses"). Matvil was dismissed from the Infomir Litigation in 2016.

12. Actava has never entered into a licensing agreement with the Broadcasters.

13. None of the Plaintiffs ever entered into a licensing agreement with the Broadcasters.

14. None of MHCOM GmbH, Russian Telekom, Inc., or North Atlantic Broadcasting Corp. ever entered into a licensing agreement with the Broadcasters.

15. After the Broadcasters and Matvil entered into the Licenses, Matvil and Actava entered into a so-called referral agreement dated on or about September 8, 2016 (the "Referral Agreement"). Under the Referral Agreement, Actava was using the Broadcasters' trademarks to advertise the Broadcasters' content without the Broadcasters' permission.

16. Plaintiffs did not seek permission from the Broadcasters to enter into negotiations with Matvil. Matvil did not seek permission from the Broadcasters to enter into the Referral Agreement.

17. The Broadcasters filed a contempt motion in the Infomir Litigation on December 13, 2016 against Plaintiffs for violating the injunction by engaging in the Referral Agreement (the "Contempt Motion").

18. The purpose of filing of the Contempt Motion, like the purpose of the Infomir Litigation generally, was to stop the unauthorized use of the Broadcasters' intellectual property

(piracy). Protecting the Broadcasters' intellectual property is important to preserving and increasing the Broadcasters' revenues and profits. Protecting the Broadcasters' intellectual property also reduces unfair competition to Kartina from pirates who do not pay license fees to the Broadcasters, allowing them to offer services with lower costs than Kartina. Therefore, the purpose of combating piracy is to increase Kartina's revenues and profits.

19. In September of 2017, the Contempt Motion was denied.

20. On July 23, 2018, Plaintiffs filed the instant lawsuit against Defendants.

21. Kartina never discussed Actava's lawsuit with Matvil before Matvil terminated its Referral Agreement with Actava, or applied any pressure on Matvil to terminate its relationship with Actava or terminate the Referral Agreement with Actava.

22. Kartina never asked that Matvil terminate or cancel the Referral Agreement between Matvil and Actava.

23. Matvil competes with Kartina in the Russian Language North American IPTV Market.

24. I have learned that under its Referral Agreement with Matvil, Actava referred customers to Actava to receive Broadcasters' content. Actava's efforts included advertising that targets its legacy customers that it had prior to the entry of the injunction in the Infomir Litigation.

25. Actava's actions allowed it to continue its unfair competition with Kartina, as I discussed above.

26. Actava's actions harm Kartina because it allowed Actava to continue to profit from the distribution of Broadcasters' content without a license. This allowed Actava to offer content that Kartina carries at an artificially lower price because Actava did not pay a license fee for the content.

27. In addition, Kartina and Broadcasters are harmed by Actava's actions because when Broadcasters negotiated their licenses with Matvil, they agreed to a license fee that was based on the number of customers expected to use Matvil's service. The expected number of customers was based on Matvil's marketing and past activity. Broadcasters were not informed that Actava would be referring its legacy customers to Matvil.

28. Had Broadcasters been informed of the arrangement between Actava and Matvil, they would have been able to take these additional customers into consideration and would been able to negotiate a higher license fee. This would have placed Kartina and Actava on equal footing with relation to underlying license fees and would have ended Actava's unfair competition with Kartina.

29. Also, since the signing of the Settlement Agreement with Actava, I have learned that Actava did not fully disclose its sources of pirated programming. At the time, Actava only disclosed one of its sources of pirated programming. I have since learned that Actava had at least three other sources of pirated programming.

30. Actava's failure to disclose these additional sources of pirated content harms Kartina in part because it prevented Broadcasters' from trying to enforce their intellectual property rights against those other companies.

31. This harms Kartina by allowing those other pirates to continue to serve as a source of competition for Kartina's legal broadcasts. This harms Kartina directly by lowering its customer base. It also harms Kartina indirectly by luring Kartina's legitimate customers away from Kartina's legal content to lower cost, illegal services. In other words, Actava's failure to disclose the sources allowed other pirates to continue their regime of unfair competition with Kartina.

32. Furthermore, Actava's agreement with Matvil and its failure to disclose its sources of content caused Kartina to have to engage in additional enforcement actions. This has cost Kartina hundreds of thousands of dollars in additional legal fees. Kartina would not have had to incur the costs of the additional enforcement actions if Actava had complied with its obligations to Broadcasters under the Settlement Agreement.

**(SIGNATURE PAGE FOLLOWS)**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: September 16, 2021

Olga Panfilova