UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Actava TV, Inc., Master Call Communications, Inc., Master Call Corporation, and Rouslan Tsoutiev,<br><br>        Plaintiffs,<br><br>   v.<br><br>Joint Stock Company "Channel One Russia Worldwide," Closed Joint Stock Company "CTC Network," Closed Joint Stock Company "New Channel," Limited Liability Company "Rain TV-Channel," Closed Joint Stock Company "TV DARIAL," Open Joint Stock Company "ACCEPT", Limited Liability Company "Comedy TV," and Kartina Digital GmbH,<br><br>        Defendants. | Civ. No.: 1:18-cv-06626-ALC-KNF |

**PLAINTIFFS' LOCAL CIVIL RULE 56.1 COUNTERSTATEMENT AND STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Actava TV, Inc., Master Call Communications, Inc., Master Call Corporation, and Rouslan Tsoutiev (collectively, "Plaintiffs" or "Actava" ) by their undersigned attorneys, pursuant to Rule 56.1 of the Local Rules for the Southern and Eastern Districts of New York respectfully submits this counterstatement in response to the Rule 56.1 statement submitted by Defendants Joint Stock Company "Channel One Russia Worldwide" ("Channel One"), Closed Joint Stock Company "New Channel," Closed Joint Stock Company "CTC Network" ("CTC"), Limited Liability Company "Rain TV-Channel" ("Rain"), Closed Joint Stock Company "TV DARIAL" ("Darial"), Limited Liability, Company "Comedy TV" ("Comedy TV") (collectively, "Broadcasters") along with Kartina Digital GmbH ("Kartina" and collectively, "Defendants") (ECF No. 393) in support of their motion for summary judgment, together with a statement of additional facts material to Defendants' Motion.

1

## UNDISPUTED FACTS RELATING TO THE PARTIES[1]

**Channel One Russia Worldwide**

1.      Defendant Channel One is a joint stock company organized under the laws of the Russian Federation.  (Second Amended Complaint ("SAC"), ECF 147 ¶ 14; Defendants' Answer to Second Amended Complaint and Counterclaims ("Answer"), ECF 150 ¶ 14).

Plaintiffs' Response:  Admitted.

1.      Channel One is located and headquartered in 19 Akademika Koroleva St. Moscow, 127427 Russian Federation.  (Shprekher Dec. ¶ 3).[2]

Plaintiffs' Response:  Admitted.

2.      Channel One produces a version of its programming for Russia called Perviy Kanal that is first broadcast via satellite (Shprekher Dec. ¶¶ 9-10).

Plaintiffs' Response:  Admitted.

3.      Channel One creates a modified version of its programming for international audiences.  (Shprekher Dec. ¶ 11).

Plaintiffs' Response:  Admitted.

4.      A modified version of Channel One is broadcast by Channel One licensees in the United States.  (Shprekher Dec. ¶ 12).

Plaintiffs' Response:  Admitted.

---

[1] Defendants' headings are not considered fact assertions and the lack of specific response to any heading should not be construed as acceptance or admission of any assertions in that heading.

[2] Plaintiffs' Rule 56.1 Counterstatement adopts the numbering used in Defendants' Rule 56.1 Statement, which contains two consecutive Paragraphs No. 1.

5.    Channel One also produces thematic channels Dom Kino, Muzika Pervogo, Vremya:dalekoe i blizkoe, Telekafe, and Carousel International ("Thematic Channels"). (Shprekher Dec. ¶ 13).

Plaintiffs' Response:  Admitted.

6.    Channel One broadcasts a wide range of news, documentary and feature film productions as well as entertainment programs that attract over 250 million viewers worldwide. (Shprekher Dec. ¶14).

Plaintiffs' Response:  Admitted.

**CTC Network**

7.    CTC is a joint stock company incorporated and organized under the laws of the Russian Federation.  It owns and operates the CTC Network channel (the "CTC Network"), and it has entered into license agreements with third parties to distribute its programming via internet protocol television ("IPTV") in the United States and around the world.  (SAC ¶ 17; Answer ¶ 17).

Plaintiffs' Response:  Admitted.

**New Channel**

8.    Defendant New Channel is a joint stock company incorporated and organized under the laws of the Russian Federation.  It owns and operates the Domashny channel and has entered into license agreements with third parties to distribute its programming via IPTV in the United States and round the world.  (SAC ¶ 19; Answer ¶ 19).

Plaintiffs' Response:  Admitted.

**Rain**

9.    Defendant Rain is a joint stock company incorporated and organized under the laws of the Russian Federation.  It owns and operates the Rain TV channel and has entered into license

agreements with third parties to distribute its programming via IPTV in the United States and around the world.  (SAC ¶ 20; Answer ¶ 20).

Plaintiffs' Response:  Admitted.

**Darial**

10.    Defendant Darial is a joint stock company incorporated and organized under the laws of the Russian Federation.  It owns and operates the Che TV channel (previously named Peretz) and has entered into license agreements with third parties to distribute its programming via IPTV in the United States and round the world.  (SAC ¶ 18; Answer ¶ 18).

Plaintiffs' Response:  Admitted.

**Comedy TV**

11.    Defendant Comedy TV is a joint stock company incorporated and organized under the laws of the Russian Federation.  It owns and operates the TNT TV Channel and has entered into license agreements with third parties to distribute its programming via IPTV in the United States and round the world.  (SAC ¶ 21; Answer ¶ 21).

Plaintiffs' Response:  Admitted.

**Kartina**

12.    Defendant Kartina Digital GmbH is a limited liability corporation incorporated and organized under the laws of Germany.  Its principal place of business is in Germany.  Kartina distributes programming via IPTV in the United States and around the world.  (SAC ¶ 22; Answer ¶ 22).

Plaintiffs' Response:  Admitted.

**Actava TV, Inc.**

13.     Actava TV, Inc. ("Actava TV") is a Delaware corporation with a principal place of business at 39 Broadway, Suite 1850, New York, NY 10006.  (SAC ¶ 10; Answer ¶ 10).

Plaintiffs' Response: Admitted.

14.     ███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

██    ███████████████████████████████

████████████████████████████████

████████████████████

**Mastercall Communications, Inc.**

16.     Master Call Communications, Inc. is a New Jersey corporation with a principal place of business at 39 Broadway, Suite 1850, New York, NY 10006.  (SAC ¶ 11; Answer ¶ 11 ).

Plaintiffs' Response:  Admitted.

██    █████████████████████████████████

███████████████████████    ███████████

████████████

---

[3] Plaintiffs' Exhibits in opposition to Defendants' Motion are appended hereto.

<u>Plaintiffs' Response</u>:  Admitted that Master Call Communications, Inc. purchased server space.  Otherwise disputed, as Actava ceased distribution of "broadcasts" in February 2016 and never resumed.  Pls. Ex. 1 (Second Tsoutiev Dec., ¶¶3,4); Makhotin Dec., (ECF No. 369-14, ¶ 8).  Further disputed as the Defendants have not defined "programming," neither the Settlement Agreement nor Injunctions refer to the term "programming," and it is unclear what is being referenced.  *See* Dowd Dec. Exs. 1-3.

**Mastercall Corporation**

18.    Master Call Corporation is a Delaware corporation with a principal place of business at 39 Broadway, Suite 1850, New York, NY 10006.  SAC ¶ 12.

<u>Plaintiffs' Response</u>:  Admitted.

19.    Master Call Corporation and Master Call Communications employees also performed work for Actava TV or worked with other companies controlled by Tsoutiev.  (Dowd. Dec. Ex. 15, January 19, 2021, Deposition of Irina Pliss ("Pliss Tr.") at 11:2-12:11; Ex. 16 January 21, 2021, Deposition of Tatyana Zhevnerova ("Zhevnerova Tr.") at 110:3-111:17)); November 27, 2019, Mykola Skrynnyk, Affidavit ("Skrynnyk 11/19" Aff.) ¶ 30 (Dowd Dec. Ex. 17).

<u>Plaintiffs' Response</u>:  Admitted.

**UNDISPUTED FACTS RELATED TO NON-PARTIES**

**Matvil Corp.**

20.    Matvil Corporation d/b/a/ eTVnet ("Matvil") is a Canadian corporation with a principal place of business is located at 312 Dolomite Drive Suite 215, Toronto Ontario M3J2N2, Canada.  (Dowd Dec. Ex. 8 Referral Agreement),

<u>Plaintiffs' Response</u>:  Admitted.

21.    Matvil's current Chief Executive Officer is Mykola Skrynnyk. (Dowd Dec.; Ex. 18 April 27, 2021, Deposition Transcript of Mykola Skrynnyk in the Southern District of New York ("Skrynnyk 4/21 Tr.) at 10:4-7).

Plaintiffs' Response:  Admitted.

22.    Matvil is an IPTV company that sells and streams Russian language television programming to customers primarily in Canada and the United States. (SAC ¶¶ 16-17, 19-21).

Plaintiffs' Response:  Admitted.

█  ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████

█  ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

Plaintiffs' Response:  Admitted.

28.    Matvil competes with Kartina in the North American Russian language IPTV market. *See* Panfilova Dec. ¶ 21; *see also* (SAC ¶ 4; Answer ¶ 4).

Plaintiffs' Response:  Admitted.

**Gardenia HB, Inc.**

29.    ████████████████████████████████████████████

████████████████

██████████████████████████████████████████████

████████████████████████████████

█  ████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████

██████████████

██    ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████

**Irina Pliss**

32.    ████████████████████████████████

████████████████████

**Tatyana Zhevnerova**

██    ████████████████████████████████

████████████████████

**ACTAVA'S BUSINESS PRIOR TO FEBRUARY 2016**

██    ████████████████████████████████

██

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

██    ████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

36. 







**UNDISPUTED FACTS RELATING TO THE UNDERLYING ACTIONS**

47.    On November 4, 2015, Closed Joint Stock Company "New Channel," Closed Joint Stock Company "CTC" Network," and Closed Joint Stock Company "TV Darial," sued Actava Inc. in the Southern District of New York No. 15 Civ. 8681 (GBD) (BCM) ("*Actava* Action")

alleging, among nine counts, violations of the Federal Communications Act ("FCA"), copyright infringement, and trademark infringement. (Answer ¶ 123).

> Plaintiffs' Response:  Admitted.

48.     Actava was broadcasting these three channels' "programming via internet and set-top box" and possessed the "technology infrastructure that it had purchased and configured at considerable expense for receiving, storing, and transmitting video over the internet." Answer ¶ 124; Answer to Counterclaims ¶ 124.

> Plaintiffs' Response:  Disputed on the basis that Defendants do not define the term "programming" and it is ambiguous as to what it refers to.   Further disputed as misleading and incomplete, as Actava signed a Settlement Agreement and Mutual General Release in which all parties agreed to mutual releases and the termination of the *CTC* and *Infomir* Actions without determining any facts or claims of liability.  *See* Dowd Dec. Ex. 1.

49.     On February 29, 2016, CTC and the remaining Broadcasters in this action sued Actava TV, Inc, Master Call Communications, Inc., Master Call Corporation, Rouslan Tsoutiev ("Actava"), Matvil Corp., and others asserting claims for violations of the FCA and copyright and trademark infringement.  (*Channel One et al. v. Infomir et al.*) ("*Infomir* Action").

> Plaintiffs' Response:  Admitted.

50.     On April 26, 2016, Actava and Broadcasters entered into a Settlement Agreement to resolve the *Actava* and *Infomir* actions. (Dowd Dec. Ex. 1)("Settlement Agreement").

> Plaintiffs' Response:  Admitted.

51.     In Section 7.d.i. of the Settlement the Plaintiffs represented that they had not "previously broadcast, copied, distributed or otherwise used the Broadcasts other than through Actava and the [Actava] Website."

<u>Plaintiffs' Response</u>:  Disputed as Paragraph 51 does not provide a citation to any evidence, admissible or otherwise, to support the veracity thereof.  Also disputed in that Section 7(d)(i) of the Settlement Agreement states: "Other than as identified in the Plaintiffs' pleadings in the First Action and Second Action, Defendants have not previously broadcast, copied, distributed or otherwise used the Broadcasts other than through Actava and the Website."

52.    In Section 6.d. of the Settlement the [sic] Actava represented that:

d. Defendants [Actava] represent and warrant collectively and individually that:

i.      Other than as identified in the Plaintiffs' pleadings in the First Action and Second Action, Defendants have not previously broadcast, copied, distributed or otherwise used the Broadcasts other than through Actava and the Website;

ii.     Defendants have not and do not own or have any interest in any other website, application or other property engaged in the business of providing  internet protocol television ("IPTV");

iii.    Defendants maintain no ownership or management interest in any other IPTV service;

iv.     Defendants are not presently and will not in the future broadcast, copy, distribute or otherwise use the Broadcasts in any manner, including on the Website, without the express written consent of the relevant Plaintiffs or an authorized representative thereof, as set forth in subparagraph (e) below;

<u>Plaintiffs' Response</u>: Disputed as Paragraph 52 does not provide a citation to any evidence, admissible or otherwise, to support the veracity thereof. The Court is respectfully referred to the Settlement Agreement for the complete contents thereof. Despite these fatal procedural defects, Plaintiffs admit that Paragraph 52 accurately quotes Section 6(d) of the Settlement Agreement.

53.    Section 6.e provides:

The parties jointly agree and represent that Tsoutiev may seek to enter into a license agreement with a Plaintiff or Plaintiffs following the Effective Date without breaching this Agreement. Plaintiffs have agreed to provide Defendant Tsoutiev with a letter in the form annexed hereto as Exhibit D, which may be disclosed to a third party. For the avoidance of doubt, there is no agreement or requirement that any license agreement be entered into by any Party.

<u>Plaintiffs' Response</u>: Disputed as Paragraph 53 does not provide a citation to any evidence, admissible or otherwise, to support the veracity thereof. The Court is respectfully referred to the Settlement Agreement for the complete contents thereof. Despite these fatal procedural defects, Plaintiffs admit that Paragraph 53 accurately quotes Section 6(e) of the Settlement Agreement.

54.     Exhibit D to the Settlement Agreement provided a template letter in the following form specifying how Rouslan Tsoutiev could pursue a license from Broadcasters "sales or licensing divisions" without breaching the Settlement Agreement:

**EXHIBIT D**

(Side Letter Agreement)

**DBM LETTERHEAD**

Mr. Rouslan Tsoutiev

39 Broadway, Suite 1850

New York, New York

10006

Dear Mr. Tsoutiev:

Reference is made to the settlement agreement and release made as of April __, 2016 ("Agreement"). This letter confirms that you are authorized to attempt to enter into negotiations for a license agreement with the following entities which are collectively referred to as

"Plaintiffs": "Channel One Russia Worldwide," Closed Joint Stock Company "CTC

Network," Closed Joint Stock Company "TV DARIAL," Closed Joint Stock

Company "New Channel", Limited Liability Company "Rain TV-Channel,"

Limited Liability Company "Veriselintel," Open Joint Company "ACCEPT," and

Limited Liability Company "Comedy TV"

Any attempt to negotiate a license with any of the aforementioned Plaintiffs shall not be a breach of the Agreement. However, nothing contained herein shall be construed as a promise that any license agreement will be agreed to and Plaintiffs may reject any offer to enter into negotiations for any reason or no reason. Any attempts to enter into a license agreement shall be made to each Plaintiffs' appropriate sales and/or licensing division. Should Plaintiffs, in whole or in part, request that you cease attempts to enter into negotiations, you shall abide by such a request.

Should you have any questions regarding the Agreement or this side letter agreement, they should be communicated to the undersigned in the first instance.

Sincerely,

Raymond J. Dowd

<u>Plaintiffs' Response</u>: Disputed as Paragraph 54 does not provide a citation to any evidence submitted with Defendants' Motion, admissible or otherwise, to support the veracity thereof.  The Court is respectfully referred to the Settlement Agreement and Exhibit D to the Settlement Agreement for the complete contents thereof. Despite these fatal procedural defects, Plaintiffs admit that Paragraph 54 accurately quotes Exhibit D to the Settlement Agreement, but dispute that the quoted language "specified how Rouslan Tsoutiev could pursue a license from Broadcasters 'sales or licensing divisions' without breaching the Settlement Agreement," as opposed to providing one such mechanism. In addition, this alleged fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

55.    On June 3, 2016, Judge Moses entered a "Stipulation, Order & Permanent Injunction" in the *Infomir* Action. (Dowd Dec. ¶ 9, Ex. 3 (*Infomir* Injunction).

<u>Plaintiffs' Response</u>:  Admitted, despite Defendants' failure to request judicial notice of the material they rely on.

56.    On June 6, 2016, Judge Daniels entered a "Stipulation, Order & Permanent Injunction" in the *Actava* Action. (Dowd Dec. ¶ 8, Ex. 2 (*Actava* Injunction).

Plaintiffs' Response:   Admitted, despite Defendants' failure to request judicial notice of the material they rely on.

57.    The *Infomir Injunction* and *Actava Injunction* are substantially similar. (Dowd Dec. Exs. 2-3.

Plaintiffs' Response:   Admitted, despite Defendants' failure to request judicial notice of the material they rely on.  Further, this alleged fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

58.    The Injunctions share identical language and provide as follows:

a) Broadcasting, re-broadcasting or otherwise transmitting Plaintiffs' Broadcasts as identified in Annex 1 or any other channel that Plaintiffs may in the future broadcast via any medium, including but not limited to internet protocol television ("IPTV") and social media, without authorization;

b) directly or indirectly infringing or making any use, in any manner whatsoever, of Plaintiffs' Broadcasts including any associated programs without authorization;

c) directly or indirectly infringing or making any use, in any manner whatsoever, of Plaintiffs' Marks as identified in Annex 1 without authorization; [or]

d) publishing or distributing any promotional materials referring to Plaintiffs' Broadcasts or Marks; in any medium, including but not limited to the internet (including IPTV and social media), television, radio, newspapers, magazines, direct mail or oral communications without authorization.

Ex. 3, ¶ 3(a)-(b), Ex. 4, ¶ 2(a)-(b); *see also* Dowd Dec. Exs. 2-3.

Plaintiffs' Response:   Admitted, despite Defendants' failure to request judicial notice of the material they rely on.

59.    The Injunctions further provide:

18

Defendants shall not register, purchase, manage or have any ownership interest in any website or device engaged in the unauthorized copying, caching, retransmission or distribution of Plaintiffs' Broadcasts.

Failure to comply with this Stipulation and Order shall be deemed contempt of Court. SOF ¶ 57.

This Court shall retain jurisdiction for the limited purpose of enforcement of this Order, including determinations of damages and attorneys' fees which shall be recoverable in connection with any enforcement proceeding. SOF

Ex. 3, ¶ 4, Ex. 4, ¶ 3.

Plaintiffs' Response:    Admitted, despite Defendants' failure to request judicial notice of the material they rely on.

60.    The Injunctions each further provide that failure to comply with the terms of the Injunctions constitutes contempt of Court.  (Ex. 3 ¶¶ 6-7, Ex. 4 ¶¶ 5-6).

Plaintiffs' Response:    Admitted, despite Defendants' failure to request judicial notice of the material they rely on.

## CHANNEL ONE'S LICENSE AGREEMENT WITH MATVIL

61.    ███████████████████████████

███████████████████

████████████████

██  ████████████████████████

████████████████

█████████████████████████

█████████████████████████

█████████████████████████

████████

<u>Plaintiffs' Response</u>:  Disputed.



**ACTAVA AND MATVIL SECRETLY NEGOTIATE THE REFERRAL AGREEMENT**

69.     In June 2016, soon after Judges Daniels and Moses entered the stipulated injunctions, Actava began negotiating a confidential agreement with Matvil.  (SAC ¶ 49 ("negotiations beg[an] in late June 2016 ("Skrynnyk 11/19 Aff.") ¶ 14 (stating Actava initiated negotiations in May or June 2016).

Plaintiffs' Response:  Admitted, but disputed that Actava "initiated" the negotiations.  *See* Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 28).









88.     On October 14, 2016, Actava filed an application for the ACTAVA mark with the United States Patent and Trademark Office ("USPTO") for "promoting the television broadcasting services of third parties."  (Dowd. Dec. Ex. 22 (ACTAVA trademark file wrapper)).

Plaintiffs' Response:  Admitted that Actava appropriately applied for a trademark for the service that it provided in promoting the broadcasting services of others, because Actava did not provide broadcasting services of its own.

89.     After an office action, the USPTO registered the ACTAVA Mark on November 19, 2019 (*Id.*)

Plaintiffs' Response:  Admitted; this alleged fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

90.     On November 28, 2016, Broadcasters translated a Russian-language Davidzon radio advertisement into English that included the following:

Actava TV offers an annual subscription to the best television service in America. The package includes all the leading TV channels, such as the Perviy, TNT, TVC, Dozhd, CTC, Domashniy, .... and many others. We are together again! As they say: with clear conscience and confidence in today and tomorrow. The TV service is licensed, so we have no need to hide behind other names, as some other companies are regularly forced to do. We have nothing to hide! Actava TV offers an honest and reliable service with ambitious plans for the future. We have been with you already for 7 years and have no plans to stop.

(Dowd. Dec. Ex. 29)

> Plaintiffs' Response:  Admitted.

91.    The radio ad also states: "**Broadcasting** is carried out by Matvil, which has permission to broadcast."  (*Id.*)(emphasis added).

> Plaintiffs' Response:  Admitted.

92.    Actava paid for the Davidzon Radio ad translated by Broadcasters. (Pliss Tr. at 151:12-152:2).

> Plaintiffs' Response:  Admitted.

93.    The advertisement aired from September 2016 to December 2016.  (Tsoutiev Tr. at 123:6-11).

> Plaintiffs' Response:  Admitted.

## DEFENDANTS DISCOVER THE MATVIL-ACTAVA RELATIONSHIP

94.    On September 28, 2016, Channel One's former licensee, Kartina World LLP, informed Channel One via email that Actava's website was selling subscriptions to the broadcasts via the Matvil service.  (Shprekher Dec. Ex. 6).

> Plaintiffs' Response:  Disputed. The cited evidence does not say anything about Actava "selling subscriptions to the broadcasts". The cited evidence states that Kartina believed Actava was engaging in unlawful activity as a sublicensee of Matvil (which Plaintiffs dispute), that Matvil did not have the right to sublicense the broadcasts, and Kartina

suggested various threats and legal actions for the Channels to take against Matvil and Actava.  Shprekher Dec. Ex. 6.

95.    Kartina and Channel One were concerned that Actava was distributing programming with an unauthorized sublicense from Matvil.  (*Id*. ¶¶ 44-47).

<u>Plaintiffs' Response</u>:  Disputed, as the term 'programming" has not been defined by Defendants or otherwise, making it unclear what is being referenced.  *See also* Plaintiffs' Additional Material Facts ¶¶ 232-41 explaining the relationship between Actava and Matvil under the Referral Agreement, and Actava's lawful conduct.

96.    On September 30, 2016, Matvil contacted Channel One about Matvil's relationship with Actava.  (Shprekher Dec. Ex. 8).

<u>Plaintiffs' Response</u>:  Admitted.

97.    On October 3, 2016, after reviewing Matvil's explanation, Channel One wrote: "In our opinion, this cooperation is not just unapproved by us, it is clearly goes beyond the scope of our contract and it looks like some kind of a sublicense, which is not permitted under the contract." (*Id*.)

<u>Plaintiffs' Response</u>:  Admitted that Channel One wrote that language, the substance of which Plaintiffs dispute.

98.    Channel One then exchanged emails with Matvil in October and November 2016 about the Actava- Matvil relationship.  (*Id*. Exs 9-12).

<u>Plaintiffs' Response</u>: Admitted.

99.    Channel One made a business decision not to pursue legal action against its licensee, Matvil.  (*Id*. ¶ 54).

<u>Plaintiffs' Response</u>: Admitted that Channel One made a decision not to pursue legal action against its licensee, Matvil.  Otherwise disputed, as Channel One's decision not to pursue legal action against Matvil was part of Channel One and Kartina's scheme to target Actava and tortiously interfere with both Actava's relationships with its customers and with Actava's contract with Matvil. Pls. Ex. 1 (Second Tsoutiev Dec., ¶¶ 52-55).  Channel One's motives and credibility are an issue for the jury.  *See, e.g.,* Pls. 56.1, ¶ 258.

### BROADCASTERS SERVE NOTICE OF SUSPECTED BREACH ON ACTAVA

100.    Upon learning of a business relationship between Actava and Matvil, Broadcasters reviewed the Actava website, Settlement Agreement, Injunctions, and Matvil settlement agreement.  (Dowd. Dec. Ex. 4).

<u>Plaintiffs' Response</u>:    Disputed.  The cited evidence is Defendants' counsel's correspondence to Plaintiffs' counsel dated October 19, 2016 and does not support the statement that Broadcasters "reviewed" any documents, but instead that Broadcasters engaged counsel to threaten Actava. Dowd. Dec. Ex. 4.

101.    Paragraph 8 of the Settlement Agreement specifically provides that if Broadcasters suspect Actava of a breach of the Settlement, Broadcasters must provide written notice to Actava of the suspected breach and then if not cured, shall be entitled to seek all judicial relief.  (Dowd. Dec. Ex. 1).

<u>Plaintiffs' Response</u>:  Admitted.

102.    Broadcasters served a notice of suspected breach on Actava on October 19, 2016. (Dowd. Dec. Ex. 4).

<u>Plaintiffs' Response</u>:  Admitted. This alleged fact and the written "notice" reference therein contain nothing concerning any notice that any radio adverting was a suspected

breach, so it should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

103.    The Settlement Agreement further provides that if Actava fails to remedy the suspected breach within ten (10) business days of receiving such written notice, Broadcasters can "pursue all judicial relief" for the suspected breach.  (Settlement Agreement ¶ 8).

>    Plaintiffs' Response:    Disputed as misleading and incomplete.    The Settlement Agreement's Notice and Cure Provision states that "[i]n the event that any Plaintiff suspects that any Defendant is in breach of this Agreement, such plaintiff shall provide written notice of the suspected breach to the appropriate Defendant(s) as set forth in paragraph 17," and only if the "Defendant fails to remedy such suspected breach within ten (10) business days of receiving written notice, the Plaintiffs shall be entitled to seek all judicial relief against Defendants for such suspected breach."  (Dowd Dec., Ex. 1 (Settlement Agreement ¶ 8)).  Defendants' alleged fact contains nothing concerning any Notice that any radio adverting was a suspected breach, which Notice they were required to provide the Actava Parties.

104.    On October 26, 2016, Actava denied it was breaching the Settlement Agreement. (Dowd Dec. ¶ 25 and Ex. 5).

>    Plaintiffs' Response:  Admitted.

105.    Actava wrote Broadcasters that: "We write now not simply to reject the Broadcasters' allegations out of hand, but instead to clarify the nature of Actava's relationship with Matvil, and to reassure your clients that Actava's conduct is consistent with its obligations under the Settlement and the strictures of the Orders."  (*Id.* at 1).

<u>Plaintiffs' Response</u>: Admitted that Actava's October 26, 2016 letter contained the sentence quoted in ¶ 105.

106.    Actava continued: "Please be assured that in referring customers to Matvil's services by linking to Matvil's streaming video player, Actava has neither access to nor any interaction of any kind with your clients' streams, broadcasts, channels, or programming." (*Id.* at 2).

<u>Plaintiffs' Response</u>: Admitted that Actava's October 26, 2016 letter contained the sentence quoted in ¶ 106.

107.    Actava did not cure or end its business relationship with Matvil within the 10-day cure period.  (Dowd Dec. ¶ 26, Ex. 6).

<u>Plaintiffs' Response</u>: Disputed that Actava had any obligation to "cure" or "end" its business relationship with Matvil at any time. Admitted that Actava did not "cure" any alleged breach, as it had committed no breach, or alter or end its business relationship with Matvil after receiving notice from Broadcasters.



[REDACTED]

[REDACTED]

109.    In the October 26 letter, Actava did not disclose it was advertising on Davidzon Radio.  (Dowd Dec. Exs. 5, 25).

Plaintiffs' Response:  Admitted. Disputed that Actava had any obligation to provide any details about Matvil's advertising to Broadcasters in the October 26 letter.  This alleged fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

110.    In the October 26 letter, Actava did not disclose the vast majority of the customers it referred to Actava were former customers of Actava's unlicensed streaming business.  (Dowd Dec. Ex. 23).

Plaintiffs' Response:  Admitted that Actava did not disclose in the October 26 letter that the vast majority of the customers it referred to Matvil were former customers of Actava's. The characterization that Actava's prior streaming business was unlicensed is disputed as misleading and incomplete, as, among other reasons, Actava signed a Settlement Agreement and Mutual General Release in which it did not admit liability for its prior activities.  (*See* Dowd Dec. Ex. 1).  Disputed that Actava had any obligation to provide any details about the identity of its customers to Broadcasters in the October 26 letter.  This alleged fact should be also disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

111.    On November 14, 2016, Broadcasters rejected the contentions in Actava's October 26 letter, but requested a copy of the Referral Agreement to review.  (Dowd Dec. Ex. 6).

Plaintiffs' Response:  Admitted.

112.    On November 18, 2016, Actava offered to provide inspection of a redacted version of the Referral Agreement.  (Dowd Dec. Ex. 27) (November 11, 2016, email from Malki to Dowd).

Plaintiffs' Response:  Admitted. Actava's confidentiality obligations to Matvil prevented Actava from allowing inspection of the entire, unredacted agreement. Dowd Dec., Ex 27.

113.    Actava's attorney wrote that the redacted "terms do not bear on the salient question of the services rendered to Matvil by Actava."  (*Id.*).

Plaintiffs' Response:  Admitted. Actava's confidentiality obligations to Matvil prevented Actava from allowing for inspection of the entire, unredacted agreement. Dowd Dec., Ex 27.  This alleged fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

114.    Actava's attorney also demanded that "Actava will not make the Referral Agreement available for copying or transmission, and the specific details of the Referral Agreement may not be disclosed to your clients or anyone associated with your clients."  (*Id.*).

Plaintiffs' Response:  Disputed; mischaracterization of the cited evidence. Actava's attorney did not make any "demands". Admitted that the quoted sentence in ¶ 114 appeared in the email correspondence attached as Dowd Dec., Ex. 27. Actava's confidentiality obligations to Matvil prevented Actava from allowing for inspection of the entire, unredacted agreement. Dowd Dec., Ex 27. This alleged fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

115.    On December 12, 2016, Actava's counsel provided for only limited inspection at Dunnington's office.  2017 Declaration of Jonathan Malki, Esq. (*Infomir* Action ECF 161) ("Malki Dec.") ¶ 18).

<u>Plaintiffs' Response</u>:  Disputed as misleading and incomplete, as Actava's prior counsel stated that Dunnington repeatedly rejected any inspection of the Referral Agreement, which had limited redactions of sensitive commercial details.  Further, Dunnington never indicated that it would be open to an inspection if Actava removed the redactions.  *See* Dowd Dec., Ex. 28 (Malki Dec., ¶¶ 12-18).  Plaintiffs further note that Defendants have not requested judicial notice of the material relied on.

116.    Broadcasters declined to review the Referral Agreement under the restrictions imposed by Actava.  (*Id*.).

<u>Plaintiffs' Response</u>:  Admitted that Broadcasters declined to review the Referral Agreement.  Otherwise disputed, as Actava's prior counsel stated that Dunnington repeatedly rejected any inspection of the Referral Agreement, and there were no "restrictions imposed by Actava."  Further, Dunnington never indicated that it would be open to an inspection if Actava removed limited redactions of sensitive commercial information.  *See* Dowd Dec., Ex. 28 (Malki Dec., ¶¶ 12-18).  Plaintiffs further note that Defendants have not requested judicial notice of the material relied on.

## BROADCASTERS FILE A CONTEMPT MOTION AGAINST ACTAVA

117.    Channel One authorized Dunnington to bring the contempt motion.  (Shprekher ¶ 55).

<u>Plaintiffs' Response</u>:  Admitted.

118.    Broadcasters filed a contempt motion on December 13, 2016, alleging that Actava was transmitting and advertising the Broadcasters' content.  (*Infomir* Action ECF 149).

<u>Plaintiffs' Response</u>:  Despite Defendants' failure to seek judicial notice of the material on which they rely, Plaintiffs admit that Defendants' contempt proceeding alleged that they

were violating the Injunctions by broadcasting Defendants' Broadcasts and using Defendants' Marks. Disputed that Defendants' Failed Contempt Proceeding alleged Actava was transmitting or advertising any other content.

119. Broadcasters included the certified translation of an Actava radio advertisement as part of the motion. (Dowd Dec. Ex. 26; *see also Infomir* Action ECF 150-9).

Plaintiffs' Response: Admitted, despite Defendants' failure to request judicial notice of the material they rely on.

120. Actava filed its opposition to the motion on January 13, 2017. Actava failed to cross-move or otherwise seek relief against Broadcasters from Judge Moses in response to the Contempt Motion (*Infomir* Action ECF 162).

Plaintiffs' Response: Disputed as Paragraph 120 does not provide a citation to any evidence submitted with Defendants' Motion, admissible or otherwise, to support the veracity thereof. This statement is also disputed, as pleadings, orders or filings from a separate, prior action, which were not produced in discovery, are not admissible evidence in the instant action. Plaintiffs further note that Defendants have not requested judicial notice of the material relied on.

121. Actava supported its opposition with five declarations and one expert report in opposition to the contempt motion: (1) Toby Butterfield, Esq. Declaration, (2) Brad Gilmer Expert Report, (3) Tsoutiev Declaration, (4) Mikhail Gayster Declaration, (5) Alexandr Crivoi (Matvil System Admin) Declaration, and (6) Jonathan Malki, Esq. Declaration. (*Infomir* Action ECFs 157-61) ("Actava Contempt Declarations"). In opposing the Contempt Motion, Actava represented to Judge Moses that it did not use its own software to deliver the Programming and did not authenticate customers.

<u>Plaintiffs' Response</u>: Disputed, as the term 'Programming" has not been defined by Defendants or otherwise, making it unclear what is being referenced.  In addition, Paragraph 121 does not provide a citation to any evidence submitted with Defendants' Motion, admissible or otherwise, to support the veracity thereof. Plaintiffs further note that Defendants have not requested judicial notice of the material relied on.

122.    Actava filed a redacted copy of the Referral Agreement and addendum as Exhibit A to the January 10, 2017, Declaration of Mikhail Gayster.  (*Infomir* Action ECF 159; 159-1).

<u>Plaintiffs' Response</u>:  Admitted, despite Defendants' failure to request judicial notice of the material they rely on.

123.    The number "9" is the last page of the Referral Agreement provided to Judge Moses.  (*Infomir* Action ECF 159-1).  The Second Addendum does not have a page number. (Dowd Dec. Ex. 9).

<u>Plaintiffs' Response</u>:  Admitted, despite Defendants' failure to request judicial notice of the material they rely on.  This fact should also be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

124.    Actava provided an incomplete copy of the Referral Agreement for Judge Moses's consideration during the contempt proceeding.  (*Compare. Infomir* Action ECF 159-1 *with* Second Addendum).

<u>Plaintiffs' Response</u>:  Disputed as Paragraph 124 does not provide a citation to evidence submitted with Defendants' Motion, admissible or otherwise, to support the veracity thereof. Plaintiffs further note that Defendants have not requested judicial notice of the material relied on.  Further, this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

**ACTAVA'S CONDUCT DURING THE PENDENCY OF THE CONTEMPT MOTION**

██  ████████████████████████████████████

████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████

██  ████████████████████████████████

██████████████████████████████

████████████  ██████████████████████

████████████████████████████████████

████████

**JUDGE MOSES' DECISION ON THE CONTEMPT MOTION**

127.    Judge Moses found in Part III.A of the September 27, 2017, Order that Actava's sale of set-top boxes preloaded with Matvil software that accessed Broadcasters' programming meant that Broadcasters were unable to show at the time of the hearing based on available "clear and convincing" evidence that Actava violated the Injunction in light of the very high standard necessary to prove contempt.  (ECF 1-3; Answer ¶ 146).

Plaintiffs' Response:  Admitted that Judge Moses determined in the September 27, 2017 Order that Broadcasters' failed to establish that Actava violated the Injunction. Dowd Decl, Ex. 10.  Otherwise disputed, as Defendants' characterizations are not supported by the cited evidence.

128.    Judge Moses' further found that "the recurring question of 'authorization'" raised by Actava's characterizations of the Matvil license prevented her from determining if Actava's radio advertisement violated the Injunctions.  (ECF 1-3; Answer ¶ 148).

Plaintiffs' Response:   Disputed as misleading and incomplete.  Judge Moses found that the Channels failed to submit the required evidence (in the form of licenses) to prove that the radio advertisement was unauthorized. Dowd Dec., Ex. 10 (Moses Order) at 28-29.  Further, the Channels failed to notify Actava of any violation with respect to the radio advertisement in their Notice of Breach, depriving Actava of the contractually-required opportunity to cure.  Dowd Ex. 5 (Notice of Suspected Breach); Dowd Ex. 1 (Settlement Agmt, ¶ 8).  Finally, Judge Moses determined in in the September 27, 2017 Order that Broadcasters failed to establish that Actava violated the Injunction. Dowd Decl, Ex. 10 (Moses Order).

129.    Judge Moses' analysis of a potential violation of Paragraph 2(a) of the Injunctions focused on the role of authentication:

> Paragraph 2(a) of the Stipulated Injunction prohibits the Actava Defendants from "[b]roadcasting, re-broadcasting or otherwise transmitting" plaintiffs' Broadcasts (that is, their Channels) "without authorization." Advertising and promoting Matvil's service, whether on the Website or on the radio, does not violate this provision. Nor is Actava in contempt merely by redirecting customers from its Website to the Matvil website, where they can sign up for Matvil's service or download the Matvil app, **so long as it is Matvil, not Actava, that delivers plaintiffs' content through its own servers, using its own software, and authenticates the customers through its own website**. Thus, in the scenario where the customer accesses Matvil's CDN directly, via computer or "smart TV," see Vidulich Dec. ¶¶ 2-5, Actava's role in "referring" the customer to Matvil does not appear to violate ¶ 2(a) of the Stipulated Injunction.

(ECF 1-3 at 22) (emphasis added).

Plaintiffs' Response: Disputed as misleading and incomplete. Judge Moses' complete analysis of the parties' conduct and Paragraph 2(A) of the Injunctions is at pages 22-25 of the Order, of which Defendants' excerpted only a small paragraph that does not accurately depict the "focus" of Judge Moses' analysis. *See* Dowd Dec., Ex. 10, pp. 22-25. Further, the term "authentication" does not appear in the Injunctions.

130.    As Judge Moses noted in the Order addressing Actava's contempt, the Broadcasters did not submit any license agreements with the contempt motions, so Matvil CEO "Gayster's assertion that Matvil had whatever authority it needed from plaintiffs to engage Actava pursuant to the Referral Agreement must therefore be deemed undisputed." (ECF 1-3 at 15 n. 13).

Plaintiffs' Response: Disputed as to characterization of the "Order addressing Actava's contempt". The Order was issued on Broadcaster's Action seeking to find Actava in contempt, and Actava was found not to be in contempt of the Injunctions.  Dowd Dec., Ex. 10. Admitted that Broadcasters did not submit any agreements with Matvil to the Court in connection with the Contempt Proceeding.

131.    Judge Moses explicitly stated that she expressed "no opinion as to whether Actava Defendants violated" the underlying Settlement Agreement.  (ECF 1-3 at 30 n. 18).

Plaintiffs' Response: Disputed as misleading and incomplete. Footnote 18 to the Order states: "As noted above, the parties' Settlement Agreement is not before the Court for enforcement. Consequently, I express no opinion as to whether the Actava Defendants have violated that contract." Dowd Dec., Ex. 10, n.18.

132.    Rather, Judge Moses made clear that Broadcasters' arguments in favor of contempt against Actava had "some force."  (ECF 1-3 at 23).

<u>Plaintiffs' Response</u>:  Disputed. Judge Moses did not say that Broadcasters' "arguments" had any force. Judge Moses' Decision and Order at page 23 states that a single argument offered by Broadcasters had "some force" but still failed. Specifically, Judge Moses was addressing Broadcasters' argument concerning Paragraph 2A of the Injunctions that "Actava is disobeying the Stipulated Injunction by selling set-top boxes pre-programmed with the Matvil app to its own customers. When those customers watch one of plaintiffs' Channels, plaintiffs contend, some form of "transmission" must occur between the Matvil servers and the Actava set-top box, and/or between the set-top box and the television set itself…." Judge Moses rejected this argument stating: "This argument has some force. However, even assuming that Actava is "transmitting" plaintiffs' Channels through its pre-programmed set-top boxes, such transmission violates the injunction only if Actava is acting without "authorization."" Dowd Dec., Ex. 10 at p. 23. Judge Moses' conclusion was that, "[Broadcasters] therefore fall well short of establishing the alleged contemnors' noncompliance by "clear and convincing" evidence.  Given this record, I cannot conclude that Actava's sale of settop boxes pre-loaded with the Matvil app violates [Paragraph] 2(a) of the Stipulated Injunction." Dowd Dec., Ex. 10 at p.25.

### ACTAVA RESUMES MARKETING

133.    Tsoutiev rejected a proposed agreement to purchase a 50% share of Matvil in October 2017.  (Dowd Dec. Ex. 29).

<u>Plaintiffs' Response</u>:  Admitted; this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

134.    Actava resumed marketing for Matvil in February 2018.  (SAC ¶ 80).

Plaintiffs' Response:  Disputed:  Actava did not cease marketing for Matvil; Actava resumed normal advertising for Matvil no later than February 2018.  Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 44).

135.    Between July 10 and 20, 2018, Actava began negotiating new service plans with Matvil.  (Dowd Dec. Ex. 30, 31).

Plaintiffs' Response:  Admitted.

136.    Channel One did not contact Matvil about its relationship with Actava after the decision on the contempt motion.  (Shprekher Dec. ¶ 57).

Plaintiffs' Response: Disputed. Pls. Ex. 1 (Second Tsoutiev Dec., ¶¶ 49, 52); ▮



137.    Channel One did not contact any known customers or business associates of Actava.  (Shprekher ¶ 59).

Plaintiffs' Response:  Disputed. Pls. Ex. 1 (Second Tsoutiev Dec., ¶¶ 49, 52), ▮

**ACTAVA SUES BROADCASTERS IN JULY 2018 TO THE SHOCK OF MATVIL**

138.    On July 23, 2018, Plaintiffs sued Channel One, CTC, New Channel, TV Darial, Comedy TV, and Rain TV alleging tortious interference with the Referral Agreement, malicious prosecution, and breach of contract.  (ECF 1).

Plaintiffs' Response:  Admitted.





146.    On August 2, 2018, Matvil served a notice of suspected breach of the Referral Agreement on Actava.  (Dowd Dec. Ex. 34).  The notice warned Actava that the lawsuit breached the Referral Agreement.  (*Id.*)

Plaintiffs' Response:   Admitted.

147.    Matvil wrote that Actava could cure the breach by withdrawing the lawsuit against the Broadcasters and apologizing.  (*Id.*)

Plaintiffs' Response:   Admitted.

148.    On August 9, 2018, Matvil and Actava entered into a non-disclosure agreement. (Dowd Dec. Ex. 35).  Paragraph 2.5 of the NDA stated: "During the pendency of said lawsuit filed by Actava against the Channels, or at any other time, Matvil shall not voluntarily disclose any Confidential Information or any other information regarding Actava to the Channels, or to any other party, absent a court order, and shall not otherwise cooperate with the Channels with respect to Actava's lawsuit."  (*Id.*)

Plaintiffs' Response:   Admitted.

149.    On August 10, 2018, Actava rejected Matvil's notice of breach and demanded Matvil withdraw the notice of breach.  (Dowd Dec. Ex. 36).

Plaintiffs' Response: Admitted.

150.    Matvil terminated the Referral Agreement on August 13, 2018, after Actava failed to cure the suspected breach.  (Skrynnyk 11/19 Aff. ¶ 27; SAC ¶ 81; Dowd Dec. Ex. 23).

Plaintiffs' Response:   Admitted that Matvil terminated the Referral Agreement on August 13, 2018, but disputed that Actava breached the Referral Agreement or had any obligation to cure.  (Dowd Dec., Ex. 36).



152.    On October 1, 2018, Matvil emailed Actava and informed them that a Broadcaster was considering terminating its contract with Matvil and again requested that Actava withdraw the lawsuit.  (Dowd Dec. Ex. 38).

Plaintiffs' Response:  Admitted.



154.    On October 2, 2018, Actava's counsel wrote Matvil's counsel a response to the October 1 email that recounted Actava's understanding of the Matvil-Actava negotiations.  (Dowd Dec. Ex. 39).

Plaintiffs' Response:  Admitted.

155.    On January 18, 2019, Actava wrote Matvil demanding monies Actava claimed were unpaid due under the Referral Agreement.  (Dowd Dec. Ex. 40).

Plaintiffs' Response:  Admitted.

156.    On January 25, 2019, Matvil responded that "We believe that the issues which you have raised in your letters were discussed and settled earlier."  (Dowd Dec. Ex. 41).

<u>Plaintiffs' Response</u>:  Admitted.

**MATVIL AND DEFENDANTS CONFIRM DEFENDANTS DID NOT PRESSURE MATVIL TO TERMINATE THE REFERRAL AGREEMENT**





161.    Matvil terminated Actava for business reasons, including reputational damage by its association with Actava.  (Skrynnyk 4/21 Tr. at 89:9-20).

Plaintiffs' Response: Disputed. Matvil terminated its business relationship with Actava as the result of pressure and interference from Defendants and for fear of being penalized for doing business with Actava.  Pls. Ex. 1 (Second Tsoutiev Dec., ¶¶ 49, 52-55); ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮  *See also* Plaintiffs' Additional Material Facts ¶¶ 296-306.

## ACTAVA AMENDS COMPLAINT TO ADD CLAIMS AGAINST KARTINA

162.    On October 4, 2018, Actava added Kartina as a defendant and added a New York Business Law § 349 claim against Kartina.  (ECF ¶ 38).

Plaintiffs' Response:  Admitted.

## ACTAVA WAS INVOLVED WITH DISTRIBUTING MATVIL'S STREAMING IN 2016



164.    Makhotin did not submit a declaration in the Contempt Proceeding. (*Infomir* ECF 157-62)

Plaintiffs' Response:  Admitted, despite Defendants' failure to request judicial notice of the material they rely on. This alleged fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

165.    None of the Actava Contempt Declarations nor the Gilmer expert report mention Actava's middleware nor Actava's "authorization module." (*Infomir* ECFs 157-61).

Plaintiffs' Response:  Disputed as Paragraph 165 does not provide a citation to any evidence submitted with Defendants' Motion, admissible or otherwise, to support the veracity thereof. This statement is also disputed as pleadings, orders or filings from a separate, prior action, which were not produced in discovery, are not admissible evidence in the instant action. Plaintiffs further note that Defendants have not requested judicial notice of the material relied on. This alleged fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

166.    The word "middleware" does not appear in any of the Actava Contempt Declarations or the Gilmer expert report.

Plaintiffs' Response: Admitted.

167.    Tsoutiev swore in his declaration that:

As explained in a separate declaration by Mikhail Gayster, Matvil does not provide [Actava] with access to its broadcast stream or Content Delivery Network ("CDN"). To the contrary, only paying Matvil subscribers obtain access to that stream, and they can only do so directly via a computer-to-computer connection between Matvil and each individual subscriber. Furthermore, a computer may only establish that connection **after it has been authenticated** as being operated by a paying Matvil subscriber.

(Dowd Dec. Ex. 11, January 12, 2017, Declaration of Rouslan Tsoutiev ¶ 22)(emphasis added).

Plaintiffs' Response:   Admitted as to the accuracy of the quotation, but Defendants' selective emphasis of Mr. Tsoutiev's testimony should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).  It is also misleading, as Andrey Makhotin testifies that Actava used a "dual authentication system" by which "[n]o customer was able to access to Matvil CDN until Matvil (i) verified the customer's information; and (ii) authorized the delivery of the stream to that user's set-top box."  (Makhotin Dec., ECF No. 369-14 at ¶ 12).

168.    On April 14, 15, and 16, 2021 Actava permitted inspection of the source code for the Actava middleware used during the Referral Agreement to Channel One's expert, Andrey Chechulin.  (Dowd Dec. Ex. 7, April 19, 2021, Declaration of Andrey Chechulin)("Chechulin Dec.") ¶ 2.

Plaintiffs' Response:  Admitted.

█████   ███████████████████████████

      █  ████████████████████████████████████████

         █████████████████████████████████████



**ACTAVA SUES MATVIL**

170.    On April 28, 2021, Actava TV sued Matvil in the Southern District of New York alleging breach of contract and unjust enrichment.  *See Actava TV, Inc. v. Matvil Corp.*, No. 1:21-cv-03027.

Plaintiffs' Response: Admitted; fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a). The institution of an action against a third party is not a material fact in the instant action.

**ECONOMIC SELF INTEREST**

171.    Stopping piracy is in the Defendants' economic self-interest. By stopping or limiting piracy, licensees are able to obtain more users and, as a result, more revenue. In turn, the

more revenues a licensee collect, the higher licensing fees a Broadcaster is able to charge

licensees. *See* Koshkin Dec. ¶¶ 7, 18; Kan Dec. ¶¶ 6, 17; Sindeeva Dec. ¶ 7, 18, Panfilova Dec.

¶¶ 6, 16), Shprekher Dec. ¶¶ 28-37; *see also*, (SAC ¶ 5).

> Plaintiffs' Response:   The first two sentences are disputed as immaterial to this action and
>
> Defendants' Motion, as no evidence establishes that Actava was a "pirate" during any time
>
> period relevant to this action. *See* Local Rule 56.1(a).  Admitted that "the more revenues
>
> a licensee collect[s], the higher licensing fees a Broadcaster is able to charge licensees."
>
> Otherwise disputed as misleading and incomplete.

## PLAINTIFFS' ADDITIONAL MATERIAL FACTS

172.    Actava was a for-profit business that catered to customers of Russian-language

Internet Protocol Television ("IPTV") broadcasts, including the content offered by Joint Stock

Company "Channel One Russia Worldwide," Closed Joint Stock Company "CTC Network,"

Closed Joint Stock Company "New Channel", Limited Liability Company "Rain TV-Channel,"

Closed Joint Stock Company "DARIAL TV", and Limited Liability Company "Comedy TV"

(together, the "Defendant Channels").  (Pls. Ex. 2 (Declaration of Rouslan Tsoutiev dated August 2, 2021 ("Tsoutiev Dec."), ¶ 2).

173.    The Defendant Channels control an assortment of television channels that are broadcast in the Russian Federation, including state-run Channel One.  (SAC., ECF No. 147, ¶ 2; Answer, ECF No. 150, ¶ 2).

174.    Defendant Kartina Digital GmbH ("Kartina") is a German entity that broadcasts the content of certain Defendant Channels, including that of Defendant Channel One.  (Pls. Ex. 3 (Excerpt from February 7, 2021 and February 9, 2021 Deposition of Andreas Reich ("Reich Tr.") at 109:2-4)).

### Kartina's Retainer of the Dunnington Law Firm

175.    Defendant Kartina retained Dunnington, Bartholow, & Miller ("Dunnington") on or around July 7, 2014 to investigate and litigate against alleged unlicensed broadcasters on behalf of the Defendant Channels. (Second Am. Compl., ECF No. 147, ¶ 26; Answer, ECF No. 150, ¶ 26; Pls. Ex. 10).

176.    Pursuant to Kartina's Retainer Agreement, Kartina "authorized [Dunnington] to investigate and pursue legal efforts to combat unauthorized IPTV broadcasts, including commencing litigation, issuing cease and desist letters, and contacting credit card processing companies that may be facilitating infringement."   (Pls. Ex. 10 at p. 1).

177.    Also pursuant to the Retainer Agreement, Kartina "authorized the Firm to obtain authority from Kartina's licensors of copyrighted television programs and films to commence litigation in the names of those licensors."  (Pls. Ex. 10 at p. 1).

178. ███████████████████████████████████

███████████████████████████████████████████

████████████████████████████

179. ███████████████████████████████████

████████████████████████████

180.     Kartina requested "for commercial reasons" that Kartina not be named as a plaintiff in lawsuits filed by Dunnington in the name of the Channels.  (Pls. Ex. 16 (Panfilova Dec., ¶ 15)).

181. ████████████████████████████████████

████████████████

182. ██████████████████████████████████

█████████

183. ████████████████████████████████████

████████████

184. █████████████████████████████████████

███████████  ████████████████████

185. ████████████████████████████████████

█████████████

186. ██████████████████████████████████

████████████████████████████████████████

████

187.  

188.

### Kartina's Involvement in the Prior Litigation and Instant Action

189.    Defendant Kartina was not a party to either the *Actava* Action or the *Infomir* Action.[4] Pls. Ex. 24.

190.    Kartina funded Dunnington's representation of the Channels in the *Actava* Action. (Pls. Ex. 3 (2/7/21 Reich Tr. at 222:10).

191.    Kartina funded Dunnington's representation of the Channels in the *Infomir* Action.  (Pls. Ex. 3 (2/7/21 Reich Tr. at 222:10).

192.    In the *Infomir* Action, Olga Panfilova, Kartina's Deputy Director of Strategy & Business Development, testified that Kartina "has worked very closely with Dunnington since it entered the Retainer in investigating piracy of Broadcasters' content in the United States, crafting pleadings and coordinating a joint legal strategy to be pursued on behalf of the Broadcasters." (Pls. Ex. 16 (Panfilova Dec., ¶ 17)).

193.

---

[4] The "*Actava* Action" (or the "*CTC* Action") refers to the action filed on November 4, 2015 by certain Defendant Channels (CTC Network, DARIAL, and New Channel) against Actava in the Southern District of New York (No. 15-cv-08681) (ECF 369-24).  The "*Infomir* Action" refers to the action filed on February 19, 2016 by certain Defendant Channels (Joint Stock Company 'Channel One Russia Worldwide', Closed Joint Stock Company 'CTC Network', Closed Joint Stock Company 'TV DARIAL', Closed Joint Stock Company 'New Channel,' Limited Liability Company 'Rain TV-Channel,' Limited Liability Company 'Veriselintel,' Open Joint Stock Company 'ACCEPT,' and Limited Liability Company 'Comedy TV') against Actava, the Master Call Entities, and Rouslan Tsoutiev, together with other defendants in the Southern District of New York (1:16-cv-01318)  (ECF 369-25).



194.

195.

196.

197.

198.

199.

200.

201.

███████████████████████████████████████████████████████

### Reich's Meetings with Rouslan Tsoutiev

202.    In Spring 2016, Reich and Mr. Tsoutiev conducted a CEO to CEO business meeting in Weisbaden, Germany (the "Weisbaden Meeting") to discuss the *Infomir* and *Actava* Actions.  (Pls. Ex. 3 (2/9/21 Reich Tr. at 202:13-17; Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 17)).



207.    At the Weisbaden Meeting, Mr. Tsoutiev told Mr. Reich of his desire to settle the the *Infomir* Action as soon as possible and to restart its set-top Internet Protocol Television business in the Russian ethnic markets in the United States on an unquestionably legal basis.  Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 18).

208.    At the Weisbaden Meeting, Mr. Reich stated words of sympathy to Mr. Tsoutiev, and Actava, and confided that Kartina had been recently in a similar situation, as Kartina had been sued in Germany by some of the Channels for copyright infringement and even faced

criminal proceedings, which included the German police conducting searches of Kartina's offices and records.  Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 18).

209.    At the Weisbaden Meeting, Mr. Tsoutiev asked Mr. Reich directly if he or Kartina participated or had anything to do with the *Infomir* Acton in any way. Mr. Reich flatly denied that Kartina was in any way involved in the *Infomir* Action.  Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 19).

210.    At the Weisbaden Meeting, Mr. Reich advised Mr. Tsoutiev that Actava should settle the claims against it in the *Infomir* Action as soon as possible.  Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 19).

211.    At the Weisbaden Meeting, Mr. Tsoutiev revealed to Mr. Reich Actava's and Mr. Tsoutiev's desire to avoid litigation in general and with the Channels in particular. Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 19).

212.    At the Weisbaden Meeting, Mr. Reich suggested to Mr. Tsoutiev that Actava should sign up United States customers for Kartina's service by becoming a "dealer" or sales agent for Kartina.  Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 20).

213.    At the Weisbaden Meeting, Mr. Reich showed excitement at the prospect of Actava bringing its customers to Kartina, and suggested financial terms, offering that Kartina's share of each subscriber's monthly payment would be $23, and that Actava's share would be between $4 and $6 per subscriber.  Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 20).

214.    Actava did not pursue Mr. Reich's suggestion that Actava should sign up United States customers for Kartina's service by becoming a "dealer" or sales agent for Kartina.  Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 20).

215.    In early March 2016, Mr. Tsoutiev on behalf of Actava arranged with Mr. Reich

on behalf of Kartina for Actava to purchase 500 of Kartina's set-top boxes in order to provide Actava's customers with Kartina's TV services. Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 22).

216.    Kartina's agent personally delivered the 500 set-top boxes to Actava's headquarters in New York, and also offered an additional 500 set-top boxes.  Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 22).

217.    Kartina shipped another 500 set top boxes to Actava without Actava ordering or agreeing to pay for them, and Actava shipped the 500 additional set top boxes back to Kartina. Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 22).

218.    In April of 2016, Mr. Tsoutiev met with Mr. Reich in New York (the "Second Meeting").  Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 23).

219.    During the Second Meeting, Mr. Tsoutiev admitted to Mr. Reich that Actava was keen to resume its business as swiftly as possible on an unquestionably legal basis.  Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 23)

220.    During the Second Meeting, Mr. Reich suggested to Mr. Tsoutiev that the two of them should talk more about doing business together after Actava had settled the claims against it. Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 23).

## Settlement and Injunctions

221.    On April 23, 2016, the Actava Parties and the Defendant Channels executed a Settlement Agreement to "fully and finally resolve the claims between them" in the *CTC* and *Infomir* Actions (together, the "Prior Litigations"). (Dowd Dec., Ex. 1).

222.    The Actava Parties agreed to settle the *CTC* and *Infomir* Actions for ███████ (Dowd Dec., Ex. 1).

223.    ████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████

224.    On June 3, 2016, and June 6, 2016, Magistrate Judge Barbara Moses and Judge George Daniels of the Southern District entered Stipulated Injunctions and terminated each of the actions brought by the Channels against Actava. SAC ECF No. 147, ¶ 35; Answer, ECF No. 150, ¶ 35.

225.    The Clerk of the Southern District entered Judgment terminating the actions as to the Actava Parties.  (Pls. Ex. 17) (*Infomir* ECF No. 76).

226.    The Stipulated Injunctions do not define the term "broadcasting."  SAC, ECF No. 147, ¶ 36; Answer, ECF No. 150, ¶ 36.

227.    The Stipulated Injunctions do not define the term "re-broadcasting". SAC, ECF No. 147, ¶ 36; Answer, ECF No. 150, ¶ 36.

228.    The Stipulated Injunctions do not define the terms "transmitting." SAC, ECF No. 147, ¶ 36; Answer, ECF No. 150, ¶ 36.

229.    The Stipulated Injunctions do not define the term "infringing."  SAC, ECF No. 147, ¶ 36; Answer, ECF No. 150, ¶ 36.

230.    The Stipulated Injunctions do not define the term "authorization."  SAC, ECF No. 147, ¶ 36; Answer, ECF No. 150, ¶ 36.

231.    Moreover, "Broadcasts or "Marks" are not defined, except "as identified in Annex 1" of the Injunctions (the "Annexes"), which list the English names of the Channels' television channels and feature colorized visual logos associated with those channels.  SAC, ECF No. 147, ¶ 37; Answer, ECF No. 150, ¶ 37.

**Matvil and Actava Negotiate and Sign the Referral Agreement**

232.    The September 7, 2016 License Agreement between Channel One and Matvil does not prohibit Matvil from using dealers to advertise or sell subscriptions to its service. (Shprekher Dec., Ex. 4 (ECF No. 384-4)).

233.    Section 1(b) of the Referral Agreement provides that "[Matvil] hereby engages [Actava] to provide and perform the services set forth in this sub-paragraph [(b)]. . . and [Actava] hereby accept the engagement."  (Dowd Dec. Ex. 8, ¶ 1(b)).

234.    Section 1(b)(i) of the Referral Agreement provides that "[Actava] shall diligently promote [Matvil's] Service Offerings for the benefit of [Matvil] and [Actava].  [Actava] shall create, enlarge and exploit the marketplace through sales, special events, fieldwork, meetings and/or other customary means of promotion."  (Dowd Dec. Ex. 8, ¶ 1(b)(i)).

235.    Section 1(b)(ii) of the Referral Agreement provides that "[Actava] shall sell [Matvil's] IPTV services to customers (i.e., sign up customers) and register customers to the Broadcaster's site / database…."  ((Dowd Dec. Ex. 8, ¶ 1(b)(ii)).

236.    In Section 1(f)(i) of the Referral Agreement, Matvil represented and warranted "that it is under no contractual or other restrictions or obligations that are inconsistent with the execution of this Agreement or that prohibit [Matvil] from covenanting to and/or performing all the terms of this Agreement."  (Dowd Dec. Ex. 8, ¶ 1(f)(i)).

237.    In Section 1(f)(ii) of the Referral Agreement, Matvil represented and warranted that "it is fully licensed to transmit, broadcast, display, and otherwise use all channels, programs, content, and other materials (including, without limitation, all third party trademarks, logos, and names) constituting or comprising the Service Offerings."  (Dowd Dec. Ex. 8, ¶ 1(f)(ii)).

238.    ██████████████████████████████████████████



239. 

240. 

241. 

**The Parties' Authorized Dealer Relationships**

242. 

243. 

244. 

**Defendants' Decision to Pursue Actava**

245. 

246.



247.

248.

249.

250.

251.    Actava was not Matvil's sublicensee.  (Pls. Ex. 1; Second Tsoutiev Dec., ¶ 29).

252. 

253.

254.

255.

256.     The Defendant Channels did not take legal action against Matvil in connection with the Referral Agreement.  (Pls. Ex. 5, Shprekher Tr. at 103:6-14; Pls. Ex. 18, Koshkin Tr. at 32:15-18).

257.     The Defendant Channels did not otherwise penalize Matvil in connection with the Referral Agreement.  (Pls. Ex. 5, Shprekher Tr. at 102:20 - 103:14; Pls'. Ex. 18, Koshkin Tr. at 32:15-18).

258.

259.



260.

261.

262.

263.

264.

265.

266.



267.   ETVnet.com is the address for Matvil's website.  (Shprekher Dec., Ex. 4 (ECF No. 384-4) at p. 2).

272.   Dunnington did not examine the Referral Agreement before filing for contempt. *See* Dec. of Jonathan A. Malki, Esq. (Dowd Dec., Ex. 28 (ECF No. 381-28)).

273.   Dunnington was counsel for all Defendants when filing for contempt.  Dec. of Raymond Dowd, Esq. (Krimnus Aff., Ex. F (ECF No. 373-06), ¶ 1; Pls. Ex. 3 (2/9/21 Reich Tr. at 223:1-13).

274.   On December 13, 2016, the Defendant Channels moved for contempt against the Actava Parties in the *Infomir* Action, alleging that the Actava Parties violated the Injunction entered in that action.  (SAC, ECF No. 147, ¶ 8; Answer, ECF No. 150, ¶ 8).

275.   In the Contempt Proceeding, the Defendants acknowledged that after sending the Actava Parties the Notice of Breach, they "discovered that there were Russian-language advertisements for Actava offering Russian-language television," purportedly identifying certain Channels by name.  (Pls. Ex. 6, p. 7).

276. 

277.

278.

279.

280.

281.

282.    On January 5, 2018, Olga Panfilova of Kartina e-mailed Raymond Dowd of

Dunnington in connection with a company called "Russian TV", stating that Andreas Reich

"asked me how it could happen that I was not able to achieve such quick results within more than a couple of years and one illegal company was able to do such harm to Matvil." (Pls. Ex. 21).

**Defendants' Related 2016 Investigation into Infomir**



288.    On September 26, 2019, Magistrate Judge Barbara Moses held that Channel One, CTC, New Channel, Rain TV, Comedy TV, and DARIAL (the Plaintiffs in *Infomir*), "[t]hrough their investigator and counsel . . . made numerous false statements of fact (many under oath), about the [Infomir] Wireshark Investigation, the ESI evidencing that investigation, and their discovery compliance…." (Pls. Ex. 22 (*Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, 16-CV-1318 (GBD) (BCM), 2019 WL 4727537, at *21-28 (S.D.N.Y. Sep. 26,

2019) (The "September 26, 2019 Sanctions Opinion").

289.    In the September 26, 2019 Sanctions Opinion, Judge Moses determined that "[t]hese statements, taken together, formed a near-constant stream of factual misdirection…." (Pls. Ex. 22 at p. 20).

290.    In the September 26, 2019 Sanctions Opinion, Judge Moses determined that "these statements were made so cavalierly, with so little regard for counsel's duties of candor and diligence, as to rise to the level of bad faith."  (Pls. Ex. 22 at p. 20).

291.    ████████████████████████████████

████████████████████████████████████████

### Judge Moses' Denial of the Contempt Motion

292.    On September 27, 2017, Judge Moses denied the Defendant Channels' contempt motion. (Dowd Dec., Ex. 10 (ECF No. 381-10)).

293.    Judge Moses stated in her September 27, 2017 Opinion that "[a]dvertising and promoting Matvil's service, whether on the Website or the radio," does not violate the provision of the Injunction that prohibits "'[b]roadcsting, re-broadcasting, or otherwise transmitting' [Defendant Channels'] Broadcasts (that is, their Channels) 'without authorization'."  (Dowd Dec., Ex. 10 (ECF No. 381-10), at p. 22).

294.    Judge Moses stated in her September 27, 2017 Opinion that "Nor is Actava in contempt merely by redirecting customers from its Website to the Matvil website, where they can sign up for Matvil's service or download the Matvil app, so long as it is Matvil, not Actava, that delivers plaintiffs' content through its own servers, using its own software, and authenticates the customers through its own website." (Dowd Dec., Ex. 10 (ECF No. 381-10), at p. 22).

295.    Judge Moses' Order "respectfully directed" the Clerk of the Court "to close [the

Contempt Proceedings].'"   (Dowd Dec., Ex. 10 (ECF No. 381-10), at p. 30).

296.    Defendants did not appeal Judge Moses' ruling.  (Second Tsoutiev Dec. at ¶ 43).

### Effect of Defendants' Conduct and Damage to Actava

297.    Mr. Tsoutiev had multiple telephone conversations with Matvil representatives in late 2018, after Actava filed its lawsuit.  (Pls. Ex. 9, Skrynnyk Tr. at 120:23 – 121:4).





304. ████████████████████████████████████

█████████████████████████████████████

██████████████████

305. ████████████████████████████████

████████████████████████████████████████

████████████████████████

306.     On October 1, 2018, Skrynnyk e-mailed Tsoutiev, stating that "our company now has a serious problem.  We received a complaint from one of the central channels which has been our counterparty for many years.  The TV channel refuses to extend the contract with us, citing the fact that they have reliable information that we are a party to the lawsuit that you filed . . . According to information at our disposal, other counterparties that we have are discussing our participation in your lawsuit and reprisals against us." (Pls. Ex. 25).

307. ████████████████████████████████████

██████████████████████

308.     In the Failed Contempt Proceeding, the Channels claimed that it was a contempt of court for Actava to say the name of any of the Channels to actual or prospective customers. (Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 40)).

309.     As a result, Actava's CEO Ross Tsoutiev was forced to instruct Actava's customer sales and service personnel not to say the name of any of the Channels to actual or prospective customers while the Failed Contempt Proceeding was pending.  (Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 41)).

310.    When actual or prospecitve customers of customers asked Actava sales and service representatives what television channels were included in the Matvil service that Actava was selling, Actava could not answer except to say "whatever channels Matvil offers, you will receive."  (Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 42)).

311.    As a result. customers became confused, expressing bewilderment at the inability of Actava's customer service representatives to answer the basic question of what services Actava was selling.  (Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 42)).

312.    The resulting confusion damaged Actava's ability to sell subscriptions to consumers.  (Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 42)).

313.    Mr. Tsoutiev testifies that the "Failed Contempt Proceeding caused an enormous disruption to Actava's business, which could not continue as usual.  I had to devote my and Actava's time and energy to fighting the Channels, rather than growing the business, and Actava was now plunged into a period of uncertainty.  The Defendants also named the Master Call entities, and me personally, in addition to Actava, creating substantial risks to all of my businesses and my livelihood.  Therefore, due to Defendants' actions, Actava had to suspend advertising Matvil's IPTV services." (Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 46)).

314.    Plaintiffs' damages expert, William Kerr, prepared a 62-page expert report in which he wrote that the Failed Contempt Proceeding caused Actava to suffer ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Therefore, total damages amount to $9.26 million."  (Pls. Ex. 24 at p. 20, ¶ 66).

Dated:  September 17, 2021
        New York, New York

Respectfully submitted,

**MOSES & SINGER LLP**

/s/ *Toby Butterfield*
_____
Toby Butterfield
Michael Rosenberg
Valeria Castanaro
The Chrysler Building
405 Lexington Avenue
New York, New York 10174-1299
212-554-7800 (telephone)
212-554-7700 (facsimile)

**FOLEY HOAG LLP**

/s/ *Diana Tsutieva*
_____
Diana Tsutieva
dtsutieva@foleyhoag.com
1717 K Street, NW
Washington, DC 20006-5350
202-223-1200 (telephone)
202-785-6687 (facsimile)

*Attorneys for Plaintiffs/Counterclaim-
Defendants*