**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Actava TV, Inc., Master Call Communications, Inc., Master Call Corporation, and Rouslan Tsoutiev, <br><br>        Plaintiffs, <br><br>  v. <br><br> Joint Stock Company "Channel One Russia Worldwide," Closed Joint Stock Company "CTC Network," Closed Joint Stock Company "New Channel," Limited Liability Company "Rain TV-Channel," Closed Joint Stock Company "TV DARIAL," Open Joint Stock Company "ACCEPT", Limited Liability Company "Comedy TV," and Kartina Digital GmbH, <br><br>        Defendants. | Civ. No.: 1:18-cv-06626-ALC-KNF |

**DEFENDANTS' REPLY TO PLAINTIFFS' LOCAL CIVIL RULE 56.1 COUNTERSTATEMENT AND STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Joint Stock Company "Channel One Russia Worldwide" ("Channel One"), Closed Joint Stock Company "New Channel," Closed Joint Stock Company "CTC Network" ("CTC"), Limited Liability Company "Rain TV-Channel" ("Rain"), Closed Joint Stock Company "TV DARIAL" ("Darial"), Limited Liability, Company "Comedy TV" ("Comedy TV") (collectively, "Broadcasters") along with Kartina Digital GmbH ("Kartina" and collectively, "Defendants") submit this Local Civil Rule 56.1 Reply to the counterstatement of material facts and statement of additional facts material to Defendants' Motion submitted by Plaintiffs Actava TV, Inc.Master Call Communications, Inc., Master Call Corporation, and Rouslan Tsoutiev (collectively, "Plaintiffs" or "Actava" ) (ECF No. 404) in support of Actava's opposition to Defendants' motion for summary judgment.

## UNDISPUTED FACTS RELATING TO THE PARTIES[1]

**Channel One Russia Worldwide**

1.      Defendant Channel One is a joint stock company organized under the laws of the Russian Federation.  (Second Amended Complaint ("SAC"), ECF 147 ¶ 14; Defendants' Answer to Second Amended Complaint and Counterclaims ("Answer"), ECF 150 ¶ 14).

Plaintiffs' Response:   Admitted.

1.      Channel One is located and headquartered in 19 Akademika Koroleva St. Moscow, 127427 Russian Federation.  (Shprekher Dec. ¶ 3).[2]

Plaintiffs' Response:   Admitted.

2.      Channel One produces a version of its programming for Russia called Perviy Kanal that is first broadcast via satellite (Shprekher Dec. ¶¶ 9-10).

Plaintiffs' Response:   Admitted.

3.      Channel One creates a modified version of its programming for international audiences.  (Shprekher Dec. ¶ 11).

Plaintiffs' Response:   Admitted.

4.      A modified version of Channel One is broadcast by Channel One licensees in the United States.  (Shprekher Dec. ¶ 12).

Plaintiffs' Response:   Admitted.

---

[1] Defendants' headings are not considered fact assertions and the lack of specific response to any heading should not be construed as acceptance or admission of any assertions in that heading.

[2] Plaintiffs' Rule 56.1 Counterstatement adopts the numbering used in Defendants' Rule 56.1 Statement, which contains two consecutive Paragraphs No. 1.

5.    Channel One also produces thematic channels Dom Kino, Muzika Pervogo, Vremya:dalekoe i blizkoe, Telekafe, and Carousel International ("Thematic Channels"). (Shprekher Dec. ¶ 13).

Plaintiffs' Response:  Admitted.

6.    Channel One broadcasts a wide range of news, documentary and feature film productions as well as entertainment programs that attract over 250 million viewers worldwide. (Shprekher Dec. ¶14).

Plaintiffs' Response:  Admitted.

**CTC Network**

7.    CTC is a joint stock company incorporated and organized under the laws of the Russian Federation.  It owns and operates the CTC Network channel (the "CTC Network"), and it has entered into license agreements with third parties to distribute its programming via internet protocol television ("IPTV") in the United States and around the world.  (SAC ¶ 17; Answer ¶ 17).

Plaintiffs' Response:  Admitted.

**New Channel**

8.    Defendant New Channel is a joint stock company incorporated and organized under the laws of the Russian Federation.  It owns and operates the Domashny channel and has entered into license agreements with third parties to distribute its programming via IPTV in the United States and round the world.  (SAC ¶ 19; Answer ¶ 19).

Plaintiffs' Response:  Admitted.

**Rain**

9.    Defendant Rain is a joint stock company incorporated and organized under the laws of the Russian Federation.  It owns and operates the Rain TV channel and has entered into license

agreements with third parties to distribute its programming via IPTV in the United States and around the world.  (SAC ¶ 20; Answer ¶ 20).

<u>Plaintiffs' Response</u>:  Admitted.

**Darial**

10.    Defendant Darial is a joint stock company incorporated and organized under the laws of the Russian Federation.  It owns and operates the Che TV channel (previously named Peretz) and has entered into license agreements with third parties to distribute its programming via IPTV in the United States and round the world.  (SAC ¶ 18; Answer ¶ 18).

<u>Plaintiffs' Response</u>:  Admitted.

**Comedy TV**

11.    Defendant Comedy TV is a joint stock company incorporated and organized under the laws of the Russian Federation.  It owns and operates the TNT TV Channel and has entered into license agreements with third parties to distribute its programming via IPTV in the United States and round the world.  (SAC ¶ 21; Answer ¶ 21).

<u>Plaintiffs' Response</u>:  Admitted.

**Kartina**

12.    Defendant Kartina Digital GmbH is a limited liability corporation incorporated and organized under the laws of Germany.  Its principal place of business is in Germany.  Kartina distributes programming via IPTV in the United States and around the world.  (SAC ¶ 22; Answer ¶ 22).

<u>Plaintiffs' Response</u>:  Admitted.

**Actava TV, Inc.**

13.     Actava TV, Inc. ("Actava TV") is a Delaware corporation with a principal place of business at 39 Broadway, Suite 1850, New York, NY 10006.  (SAC ¶ 10; Answer ¶ 10).

> Plaintiffs' Response: Admitted.

14.     Actava TV was an internet protocol television ("IPTV") company that sold and streamed Russian language programming and Set-top Boxes ("STBs") to customers primarily in the northeastern United States until settling with Broadcasters in April 2016.  (Dowd Dec. Ex. 21 December 18, 2020, and January 22, 2021, Deposition of Rouslan Tsoutiev ("Tsoutiev Tr.") at 14:21-15:13, 54:12-19, 71:18-72:10; Dowd Dec. Ex. 1 (April 16, 2016 Settlement Agreement)).

> Plaintiffs' Response:  Admitted that Actava TV sold STBs and streamed Russian language broadcasts until late February 2016. Plaintiffs' Exhibit ("Pls. Ex.")[3] 1 (Declaration of Rouslan Tsoutiev dated September 17, 2021 ("Second Tsoutiev Dec."), ¶¶ 3, 4, 11).

15.     Rouslan Tsoutiev is the owner, Chief Executive Officer, and President of Actava TV, Inc., and Master Call Corporation.  (SAC ¶ 13; Dowd. Ex. 13 (Actava disclosures)).

> Plaintiffs' Response:  Admitted.

**Mastercall Communications, Inc.**

16.     Master Call Communications, Inc. is a New Jersey corporation with a principal place of business at 39 Broadway, Suite 1850, New York, NY 10006.  (SAC ¶ 11; Answer ¶ 11 ).

> Plaintiffs' Response:  Admitted.

17.     Master Call Communications, Inc. purchased server space for Actava TV, Inc's distribution of programming from January 2016 through June 2017.  (Dowd. Dec. Ex. 14; ACT002369-74).

---

[3] Plaintiffs' Exhibits in opposition to Defendants' Motion are appended hereto.

<u>Plaintiffs' Response</u>:  Admitted that Master Call Communications, Inc. purchased server space.  Otherwise disputed, as Actava ceased distribution of "broadcasts" in February 2016 and never resumed.  Pls. Ex. 1 (Second Tsoutiev Dec., ¶¶3,4); Makhotin Dec., (ECF No. 369-14, ¶ 8).  Further disputed as the Defendants have not defined "programming," neither the Settlement Agreement nor Injunctions refer to the term "programming," and it is unclear what is being referenced.  *See* Dowd Dec. Exs. 1-3.

**<u>Defendants' Reply</u>**: The word "programming" appears twenty-four (24) times in Actava's second amended complaint.  (ECF 147).  Actava used the word "programming" to describe the broadcasts of Broadcasters' television programming.  (ECF 147 ¶ 16-21).  There is no dispute about the meaning of "programming."  As a result, Actava's response fails to specifically controvert Paragraph 17 and the facts in Paragraph 17 should be deemed admitted.  *See* Local Rule 56.1(c).

**Mastercall Corporation**

18.    Master Call Corporation is a Delaware corporation with a principal place of business at 39 Broadway, Suite 1850, New York, NY 10006.  SAC ¶ 12.

<u>Plaintiffs' Response</u>:  Admitted.

19.    Master Call Corporation and Master Call Communications employees also performed work for Actava TV or worked with other companies controlled by Tsoutiev.  (Dowd. Dec. Ex. 15, January 19, 2021, Deposition of Irina Pliss ("Pliss Tr.") at 11:2-12:11; Ex. 16 January 21, 2021, Deposition of Tatyana Zhevnerova ("Zhevnerova Tr.") at 110:3-111:17)); November 27, 2019, Mykola Skrynnyk, Affidavit ("Skrynnyk 11/19" Aff.) ¶ 30 (Dowd Dec. Ex. 17).

<u>Plaintiffs' Response</u>:  Admitted.

## UNDISPUTED FACTS RELATED TO NON-PARTIES

**Matvil Corp.**

20.    Matvil Corporation d/b/a/ eTVnet ("Matvil") is a Canadian corporation with a principal place of business is located at 312 Dolomite Drive Suite 215, Toronto Ontario M3J2N2, Canada.  (Dowd Dec. Ex. 8 Referral Agreement),

Plaintiffs' Response:  Admitted.

21.    Matvil's current Chief Executive Officer is Mykola Skrynnyk. (Dowd Dec.; Ex. 18 April 27, 2021, Deposition Transcript of Mykola Skrynnyk in the Southern District of New York ("Skrynnyk 4/21 Tr.) at 10:4-7).

Plaintiffs' Response:  Admitted.

22.    Matvil is an IPTV company that sells and streams Russian language television programming to customers primarily in Canada and the United States. (SAC ¶¶ 16-17, 19-21).

Plaintiffs' Response:  Admitted.

23.    Matvil has been licensed to distribute Channel One programming since September 7, 2016.  (Shprekher Declaration ¶ 22).

Plaintiffs' Response:  Admitted.

24.    Matvil entered into a license agreement with CTC to distribute CTC programming on or about March 15, 2016. *See* Declaration of Representative of Closed Joint Stock Company "CTC Network", Closed Joint Stock Company "New Channel", and Closed Joint Stock Company "TV Darial" in Support of Defendants' Motion for Summary Judgment (hereinafter the "Koshkin Dec." at ¶ 11.  *See also,* (SAC ¶¶ 17, 19; Answer ¶¶ 17, 19), and Declaration of Erik Dykema in Support of Defendants' Motion for Summary Judgment (hereinafter the "Dykema Dec." at Ex. 1.

Plaintiffs' Response:  Admitted.

25.    Matvil entered into a license agreement with New Channel to distribute New Channel programming on or about March 15, 2016. *See* Koshkin Dec. at ¶ 11; *See also* Declaration of Representative of Kartina Digital GmbH in Support of Defendants' Motion for Summary Judgment (hereinafter the "Panfilova Dec.") at ¶ 9); *See also* (SAC ¶¶ 17, 19; Answer ¶¶ 17, 19), and Dykema Dec. Ex. 2.

    Plaintiffs' Response:   Admitted.

26.    Matvil entered into a license agreement with Comedy TV to distribute Comedy TV programming in 2016. *See* Declaration of Representative of Limited Liability Company "Comedy TV" in Support of Defendants' Motion for Summary Judgment (hereinafter the "Kan Dec." at ¶ 10. *See also* (SAC ¶ 21; Answer ¶ 21), Panfilova Dec. ¶ 9; and Dykema Dec. Ex. 3.

    Plaintiffs' Response:   Admitted.

27.    Matvil entered into a license agreement with Rain to distribute Rain since on or about January 19, 2016. *See* Declaration of Representative of Limited Liability Company "Rain TV" in Support of Defendants' Motion for Summary Judgment (hereinafter the "Sindeeva Dec." at ¶ 11, Panfilova Dec. ¶ 9; *See also,* (SAC ¶ 20; Answer ¶ 20).

    Plaintiffs' Response:   Admitted.

28.    Matvil competes with Kartina in the North American Russian language IPTV market. *See* Panfilova Dec. ¶ 21; *see also* (SAC ¶ 4; Answer ¶ 4).

    Plaintiffs' Response:   Admitted.

**Gardenia HB, Inc.**

29.    Gardenia HB, Inc. ("Gardenia") is a Delaware corporation owned by Tsoutiev. Dowd Dec. Exs. 19-20, 25.

<u>Plaintiffs' Response</u>:   Admitted; fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

30.        Gardenia paid for advertising for Actava TV.  Dowd Dec. Exs. 19-20, 25.

<u>Plaintiffs' Response</u>: Admitted; fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

**Andrey Makhotin**

31.        Andrey Makhotin ("Makhotin") is the lead engineer and technician for Actava and testified about the Actava's IPTV systems, servers, internet bandwidth, and other technical data. (Dowd. Dec. Ex. 13; Actava disclosures; Makhotin Tr. at 17:17-20).

<u>Plaintiffs' Response</u>:   Admitted as to the scope of Makhotin's testimony and prior employment at Actava, but disputed as to his current employment, as he is an independent contractor.  *See* Makhotin Dec. (ECF No. 369-14), ¶ 1.

**Irina Pliss**

32.        Pliss is the accounting manager of the Plaintiffs.  (Dowd. Dec. Ex. 13.)

<u>Plaintiffs' Response</u>:   Admitted.

**Tatyana Zhevnerova**

33.        Zhevnerova is the head of customer service of the Plaintiffs. (Dowd. Dec. Ex.13.)

<u>Plaintiffs' Response</u>:   Admitted.

**ACTAVA'S BUSINESS PRIOR TO FEBRUARY 2016**

34.        Actava TV began distributing IPTV content in 2011 or 2012 (Tsoutiev Tr. 22:9-15).

<u>Plaintiffs' Response</u>:  Disputed. The cited testimony states that Actava began broadcasting Russian television in 2011 or 2012, but does not state that Actava distributed IPTV at that time. Dowd Dec., Ex. 21 (Tsoutiev Tr. 22:9-15).

**Defendants' Reply**: Admissible evidence, A WHOIS registration, shows that defendant Mastercall Corporation registered the Actava website domain on June 24, 2010.  (September 17, 2021 Dowd Decl. Ex. 6, ECF 418-6).  Internet Archive screenshots show the Actava website active in January 2011.  (September 17, 2021 Dowd Decl. Ex. 7, ECF 418-7).  Actava also submitted a sworn affidavit to the United States Patent and Trademark Office stating that the ACTAVA mark was first used in commerce on January 1, 2012.  (*Id*.  Ex. 8, ECF 418-8).  As a result, Actava's response fails to specifically controvert Paragraph 34 and the facts in Paragraph 34 should be deemed admitted.  *See* Local Rule 56.1(c).

35.     Actava TV was a set-top box provider and website operator catering to U.S. based customers seeking access to Russian-language television programming. (SAC ¶ 3).

<u>Plaintiffs' Response</u>:  Disputed on the basis that Defendants do not define the term "television programming" and it is ambiguous as to what it refers to.

**<u>Defendants' Reply</u>**: The word "programming" appears twenty-four (24) times in Actava's second amended complaint.  (ECF 147).  Actava used the word "programming" to describe the broadcasts of Broadcasters' television programming.  (ECF 147 ¶ 16-21).  There is no dispute about the meaning of "programming."  As a result, Actava's response fails to specifically controvert Paragraph 35 and the facts in Paragraph 35 should be deemed admitted.  *See* Local Rule 56.1(c).

36.     Actava's programming included content offered by the Defendant Broadcasters. (Tsoutiev Tr. at 45:11-47:6).

<u>Plaintiffs' Response</u>:  Disputed on the basis that Defendants do not define the term "content offered by Defendant Broadcasters" and it is ambiguous as to what it refers to.  Admitted with respect to broadcasts offered by Defendants prior to February 23, 2016.  Otherwise, disputed because Actava did not offer broadcasts after that date.  Pls. Ex. 1 (Second Tsoutiev Dec., ¶¶3, 4, 11).

**<u>Defendants' Reply</u>**: The word "content" appears twenty (20) times in Actava's second amended complaint.  (ECF 147).  Actava used the word "content" to describe its broadcasts of Broadcasters' television programming prior to February 23, 2016.  (ECF 147 ¶¶ 26, 31).  There is no dispute about the meaning of "content."  As a result, Actava's response fails to specifically controvert Paragraph 36 and the facts in Paragraph 36 should be deemed admitted.  *See* Local Rule 56.1(c).

37.    At no time did Actava hold a license to broadcast, copy, distribute or otherwise use the Broadcaster Channel One's content. (Shprekher Dec. ¶ 26).

<u>Plaintiffs' Response</u>:  Disputed as misleading and incomplete; after the *Infomir* Action, Actava did not seek or require a license from Defendants.  Dowd Dec., Ex. 8, 9; *see also* Additional Material Facts ¶¶ 232-41, detailing Acatva's lawful acts with respect to Defendants' broadcasts as distributed by Matvil. Further disputed on the basis that Defendants do not define the term "Channel One's content" and it is ambiguous as to what it refers to.

**<u>Defendants' Reply</u>**: Actava's response to Paragraph 37 contains legal argument concerning purportedly "lawful acts" and the requirement for a license rather than facts that specifically controvert Paragraph 37 and should be deemed admitted.  *See* Local Rule 56.1(c).  Actava used the word "content" to describe its broadcasts of Broadcasters' television programming

11

prior to February 23, 2016. (ECF 147 ¶¶ 26, 31). There is no dispute about the meaning of "content" and the fact in Paragraph 37 should be deemed admitted. *See* Local Rule 56.1(c).

38.    At no time did Actava hold a license to broadcast, copy, distribute or otherwise use the Broadcaster CTC's content. See Koshkin Dec. ¶ 12; *see also see also, Panfilova Decl* ¶ 10, (Answer ¶¶ 122-124; Amended Answer to Defendants' Counterclaims ("Answer to Counterclaims"), ECF 158, ¶¶ 122-124).

> Plaintiffs' Response: Disputed as misleading and incomplete; after the *Infomir* Action, Actava did not seek or require a license from Defendants. Dowd Dec., Ex. 8,9; *see also* Additional Material Facts ¶¶ 232-41, detailing Actava's lawful acts with respect to Defendants' broadcasts as distributed by Matvil. Further disputed on the basis that Defendants do not define the term "CTC's content" and it is ambiguous as to what it refers to.

**Defendants' Reply**: Actava's response to Paragraph 38 contains legal argument concerning purportedly "lawful acts" and the requirement for a license rather than facts that specifically controvert Paragraph 38 and should be deemed admitted. *See* Local Rule 56.1(c). Actava used the word "content" to describe its broadcasts of Broadcasters' television programming prior to February 23, 2016. (ECF 147 ¶¶ 26, 31). There is no dispute about the meaning of "content" and the fact in Paragraph 38 should be deemed admitted. *See* Local Rule 56.1(c).

39.    At no time did Actava hold a license to broadcast, copy, distribute or otherwise use the Broadcaster New Channel's content. *See id.; see also,* Panfilova Decl ¶ 10.

> Plaintiffs' Response: Disputed as misleading and incomplete; after the *Infomir* Action, Actava did not seek or require a license from Defendants. Dowd Dec., Ex. 8,9; *see also* Additional Material Facts ¶¶ 232-41, detailing Acatva's lawful acts with respect to

Defendants' broadcasts as distributed by Matvil. Further disputed on the basis that Defendants do not define the term "New Channel's content" and it is ambiguous as to what it refers to.

**Defendants' Reply**: Actava's response to Paragraph 39 contains legal argument concerning purportedly "lawful acts" and the requirement for a license rather than facts that specifically controvert Paragraph 39 and should be deemed admitted. *See* Local Rule 56.1(c). Actava used the word "content" to describe its broadcasts of Broadcasters' television programming prior to February 23, 2016. (ECF 147 ¶¶ 26, 31). There is no dispute about the meaning of "content" and the fact in Paragraph 39 should be deemed admitted. *See* Local Rule 56.1(c).

40.     At no time did Actava hold a license to broadcast, copy, distribute or otherwise use the Broadcaster TV Darial's content. *See Id.*; *see also,* Panfilova Decl ¶ 10.

Plaintiffs' Response:  Disputed as misleading and incomplete; after the *Infomir* Action, Actava did not seek or require a license from Defendants. Dowd Dec., Ex. 8,9; *see also* Additional Material Facts ¶¶ 232-41, detailing Acatva's lawful acts with respect to Defendants' broadcasts as distributed by Matvil. Further disputed on the basis that Defendants do not define the term "TV Darial's content" and it is ambiguous as to what it refers to.

**Defendants' Reply**: Actava's response to Paragraph 40 contains legal argument concerning purportedly "lawful acts" and the requirement for a license rather than facts that specifically controvert Paragraph 40 and should be deemed admitted. *See* Local Rule 56.1(c). Actava used the word "content" to describe its broadcasts of Broadcasters' television programming prior to February 23, 2016. (ECF 147 ¶¶ 26, 31). There is no dispute about the meaning of "content" and the fact in Paragraph 40 should be deemed admitted. *See* Local Rule 56.1(c).

41.     At no time did Actava hold a license to broadcast, copy, distribute or otherwise use the Broadcaster Rain's content.  *See* Sindeeva Dec. ¶ 12; Panfilova Decl ¶ 10; *see also* (Answer ¶¶ 122-124; Answer to Counterclaims 158 ¶¶ 122-124)

> Plaintiffs' Response:  Disputed as misleading and incomplete; after the *Informir* Action, Actava did not seek or require a license from Defendants.  Dowd Dec., Ex. 8,9; *see also* Additional Material Facts ¶¶232-41, detailing Acatva's lawful acts with respect to Defendants' broadcasts as distributed by Matvil.  Further disputed on the basis that Defendants do not define the term "Rain's content" and it is ambiguous as to what it refers to.

> **Defendants' Reply**: Actava's response to Paragraph 41 contains legal argument concerning purportedly "lawful acts" and the requirement for a license rather than facts that specifically controvert Paragraph 41 and should be deemed admitted.  *See* Local Rule 56.1(c). Actava used the word "content" to describe its broadcasts of Broadcasters' television programming prior to February 23, 2016.  (ECF 147 ¶¶ 26, 31).  There is no dispute about the meaning of "content" and this fact in Paragraph 41 should be deemed admitted.  *See* Local Rule 56.1(c).

42.     At no time did Actava hold a license to broadcast, copy, distribute or otherwise use the Broadcaster Comedy TV's content.  *See* Kan Dec. ¶ 11; Panfilova Decl ¶ 10; *see also* (Answer ¶¶ 122-124; Answer to Counterclaims 158 ¶¶ 122-124).

> Plaintiffs' Response:  Disputed as misleading and incomplete; after the *Informir* Action, Actava did not seek or require a license from Defendants.  Dowd Dec., Ex. 8,9; *see also* Additional Material Facts ¶¶ 232-41, detailing Acatva's lawful acts with respect to Defendants' broadcasts as distributed by Matvil.  Further disputed on the basis that

Defendants do not define the term "Comedy TV's content" and it is ambiguous as to what it refers to.

43.    As a streamer of IPTV, Actava TV obtained a signal of programming from at least three programming aggregators, including MHCOM.  (Tsoutiev Tr. at 23:4-24:9; Dowd Dec. Ex. 12.

Plaintiffs' Response:  Disputed on the basis that Defendants do not define the term "a signal of programming" and it is ambiguous as to what it refers to.  ███████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ As a result, this fact should be disregarded as it is immaterial to the action and Defendants' Motion.  See Local Rule 56.1(a).

**Defendants' Reply**:  The word "programming" appears twenty-four (24) times in Actava's second amended complaint.  (ECF 147).  Actava used the word "programming" to describe the broadcasts of Broadcasters' television programming.  (ECF 147 ¶ 16-21).  There is no dispute about the meaning of "programming."  As a result, Actava's response fails to specifically controvert Paragraph 43 and the facts in Paragraph 43 should be deemed admitted.  See Local Rule 56.1(c).

44.    Gardenia purchased radio advertising for the Actava TV service from January 2015 to February 2016.  (Dowd. Dec. ¶ Ex 20; ACT002026)(Gardenia HB, Inc. Transaction Report).

Plaintiffs' Response:  Admitted; fact should be disregarded as it is immaterial to the action and Defendants' Motion. See Local Rule 56.1(a).

45.    Actava had 9,595 subscribers in February 2016. (Dowd Dec. Ex 23)(Actava subscriber list, including revenue and expenses).

<u>Plaintiffs' Response</u>:  Disputed.  The evidence explicitly refers to the number of subscriptions, not the number of subscribers.  (Dowd Dec., Ex. 23).

46.    The Plaintiffs, MHCOM, Mark Pomirtchi, Russian Telekom, and North Atlantic Broadcasting Corp. were never licensed or authorized to distribute the programming of Broadcasters.  (Tsoutiev Tr. at 26:2-19, 58:15-25; Shprekher Dec. ¶ 26; Koshkin Dec. ¶¶ 13-14; Kan Dec. ¶¶ 12-13; Sindeeva Dec. ¶¶ 13-14).

<u>Plaintiffs' Response</u>:  Disputed on the basis that Defendants do not define the term "the programming of Broadcasters" and it is ambiguous as to what it refers to.  Further, the cited evidence does not support the purported statement of fact. The cited evidence states that: (1) on or around January 2016 Actava did not have licenses for Broadcasters' content; and (2) that Plaintiffs, MHCOM, Mark Pomirtchi, Russian Telekom, and North Atlantic Broadcasting Corp did not have licensing agreements with Defendant Broadcasters.

**Defendants' Reply**: The word "programming" appears twenty-four (24) times in Actava's second amended complaint.  (ECF 147).  Actava used the word "programming" to describe the broadcasts of Broadcasters' television programming.  (ECF 147 ¶ 16-21).  There is no dispute about the meaning of "programming."   As a result, Actava's response fails to specifically controvert Paragraph 46 and the facts in Paragraph 46 should be deemed admitted.  *See* Local Rule 56.1(c).

### UNDISPUTED FACTS RELATING TO THE UNDERLYING ACTIONS

47.    On November 4, 2015, Closed Joint Stock Company "New Channel," Closed Joint Stock Company "CTC" Network," and Closed Joint Stock Company "TV Darial," sued Actava Inc. in the Southern District of New York No. 15 Civ. 8681 (GBD) (BCM) ("*Actava* Action")

alleging, among nine counts, violations of the Federal Communications Act ("FCA"), copyright infringement, and trademark infringement. (Answer ¶ 123).

> Plaintiffs' Response:  Admitted.

48.    Actava was broadcasting these three channels' "programming via internet and set-top box" and possessed the "technology infrastructure that it had purchased and configured at considerable expense for receiving, storing, and transmitting video over the internet." Answer ¶ 124; Answer to Counterclaims ¶ 124.

> Plaintiffs' Response:  Disputed on the basis that Defendants do not define the term "programming" and it is ambiguous as to what it refers to.   Further disputed as misleading and incomplete, as Actava signed a Settlement Agreement and Mutual General Release in which all parties agreed to mutual releases and the termination of the *CTC* and *Infomir* Actions without determining any facts or claims of liability.  *See* Dowd Dec. Ex. 1.

> **Defendants' Reply**: The word "programming" appears twenty-four (24) times in Actava's second amended complaint.  (ECF 147).  Actava used the word "programming" to describe the broadcasts of Broadcasters' television programming.  (ECF 147 ¶ 16-21).  There is no dispute about the meaning of "programming."   As a result, Actava's response fails to specifically controvert Paragraph 48 and the facts in Paragraph 48 should be deemed admitted.  *See* Local Rule 56.1(c).

49.    On February 29, 2016, CTC and the remaining Broadcasters in this action sued Actava TV, Inc, Master Call Communications, Inc., Master Call Corporation, Rouslan Tsoutiev ("Actava"), Matvil Corp., and others asserting claims for violations of the FCA and copyright and trademark infringement.  (*Channel One et al. v. Infomir et al.*) ("*Infomir* Action").

<u>Plaintiffs' Response</u>:  Admitted.

50.    On April 26, 2016, Actava and Broadcasters entered into a Settlement Agreement to resolve the *Actava* and *Infomir* actions. (Dowd Dec. Ex. 1)("Settlement Agreement").

<u>Plaintiffs' Response</u>:  Admitted.

51.    In Section 7.d.i. of the Settlement the Plaintiffs represented that they had not "previously broadcast, copied, distributed or otherwise used the Broadcasts other than through Actava and the [Actava] Website."

> <u>Plaintiffs' Response</u>:  Disputed as Paragraph 51 does not provide a citation to any evidence, admissible or otherwise, to support the veracity thereof.  Also disputed in that Section 7(d)(i) of the Settlement Agreement states: "Other than as identified in the Plaintiffs' pleadings in the First Action and Second Action, Defendants have not previously broadcast, copied, distributed or otherwise used the Broadcasts other than through Actava and the Website."

52.    In Section 6.d. of the Settlement the [sic] Actava represented that:

> d. Defendants [Actava] represent and warrant collectively and individually that:
>
> i.      Other than as identified in the Plaintiffs' pleadings in the First Action and Second Action, Defendants have not previously broadcast, copied, distributed or otherwise used the Broadcasts other than through Actava and the Website;
>
> ii.     Defendants have not and do not own or have any interest in any other website, application or other property engaged in the business of providing  internet protocol television ("IPTV");
>
> iii.    Defendants maintain no ownership or management interest in any other IPTV service;
>
> iv.     Defendants are not presently and will not in the future broadcast, copy, distribute or otherwise use the Broadcasts in any manner, including on the Website, without the express written consent of

the relevant Plaintiffs or an authorized representative thereof, as set forth in subparagraph (e) below;

Plaintiffs' Response: Disputed as Paragraph 52 does not provide a citation to any evidence, admissible or otherwise, to support the veracity thereof. The Court is respectfully referred to the Settlement Agreement for the complete contents thereof. Despite these fatal procedural defects, Plaintiffs admit that Paragraph 52 accurately quotes Section 6(d) of the Settlement Agreement.

53.    Section 6.e provides:

The parties jointly agree and represent that Tsoutiev may seek to enter into a license agreement with a Plaintiff or Plaintiffs following the Effective Date without breaching this Agreement. Plaintiffs have agreed to provide Defendant Tsoutiev with a letter in the form annexed hereto as Exhibit D, which may be disclosed to a third party. For the avoidance of doubt, there is no agreement or requirement that any license agreement be entered into by any Party.

Plaintiffs' Response: Disputed as Paragraph 53 does not provide a citation to any evidence, admissible or otherwise, to support the veracity thereof.  The Court is respectfully referred to the Settlement Agreement for the complete contents thereof. Despite these fatal procedural defects, Plaintiffs admit that Paragraph 53 accurately quotes Section 6(e) of the Settlement Agreement.

54.    Exhibit D to the  Settlement Agreement provided a template letter  in the following form specifying how Rouslan Tsoutiev could pursue a license from Broadcasters "sales or licensing divisions"  without breaching the Settlement Agreement:

**EXHIBIT D**

(Side Letter Agreement)

**DBM LETTERHEAD**

Mr. Rouslan Tsoutiev

39 Broadway, Suite 1850

New York, New York

10006

Dear Mr. Tsoutiev:

Reference is made to the settlement agreement and release made as of April __, 2016 ("Agreement"). This letter confirms that you are authorized to attempt to enter into negotiations for a license agreement with the following entities which are collectively referred to as

"Plaintiffs": "Channel One Russia Worldwide," Closed Joint Stock Company "CTC

Network," Closed Joint Stock Company "TV DARIAL," Closed Joint Stock

Company "New Channel", Limited Liability Company "Rain TV-Channel,"

Limited Liability Company "Veriselintel," Open Joint Company "ACCEPT," and

Limited Liability Company "Comedy TV"

Any attempt to negotiate a license with any of the aforementioned Plaintiffs shall not be a breach of the Agreement. However, nothing contained herein shall be construed as a promise that any license agreement will be agreed to and Plaintiffs may reject any offer to enter into negotiations for any reason or no reason. Any attempts to enter into a license agreement shall be made to each Plaintiffs' appropriate sales and/or licensing division. Should Plaintiffs, in whole or in part, request that you cease attempts to enter into negotiations, you shall abide by such a request.

Should you have any questions regarding the Agreement or this side letter agreement, they should be communicated to the undersigned in the first instance.

Sincerely,

Raymond J. Dowd

Plaintiffs' Response: Disputed as Paragraph 54 does not provide a citation to any evidence submitted with Defendants' Motion, admissible or otherwise, to support the veracity thereof. The Court is respectfully referred to the Settlement Agreement and Exhibit D to the Settlement Agreement for the complete contents thereof. Despite these fatal procedural defects, Plaintiffs admit that Paragraph 54 accurately quotes Exhibit D to the Settlement Agreement, but dispute that the quoted language "specified how Rouslan Tsoutiev could pursue a license from Broadcasters 'sales or licensing divisions' without breaching the Settlement Agreement," as opposed to providing one such mechanism. In addition, this

alleged fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

55.     On June 3, 2016, Judge Moses entered a "Stipulation, Order & Permanent Injunction" in the *Infomir* Action. (Dowd Dec. ¶ 9, Ex. 3 (*Infomir* Injunction).

Plaintiffs' Response:  Admitted, despite Defendants' failure to request judicial notice of the material they rely on.

56.     On June 6, 2016, Judge Daniels entered a "Stipulation, Order & Permanent Injunction" in the *Actava* Action. (Dowd Dec. ¶ 8, Ex. 2 (*Actava* Injunction).

Plaintiffs' Response:   Admitted, despite Defendants' failure to request judicial notice of the material they rely on.

57.     The *Infomir Injunction* and *Actava Injunction* are substantially similar. (Dowd Dec. Exs. 2-3.

Plaintiffs' Response:  Admitted, despite Defendants' failure to request judicial notice of the material they rely on.  Further, this alleged fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

58.     The Injunctions share identical language and provide as follows:

> a)  Broadcasting, re-broadcasting or otherwise transmitting Plaintiffs' Broadcasts as identified in Annex 1 or any other channel that Plaintiffs may in the future broadcast via any medium, including but not limited to internet protocol television ("IPTV") and social media, without authorization;

> b) directly or indirectly infringing or making any use, in any manner whatsoever, of Plaintiffs' Broadcasts including any associated programs without authorization;

> c) directly or indirectly infringing or making any use, in any manner whatsoever, of Plaintiffs' Marks as identified in Annex 1 without authorization; [or]

> d) publishing or distributing any promotional materials referring to Plaintiffs' Broadcasts or Marks; in any medium, including but not limited to the internet (including IPTV and social media), television, radio, newspapers, magazines, direct mail or oral communications without authorization.

Ex. 3, ¶ 3(a)-(b), Ex. 4, ¶ 2(a)-(b); *see also* Dowd Dec. Exs. 2-3.

Plaintiffs' Response:    Admitted, despite Defendants' failure to request judicial notice of the material they rely on.

59.    The Injunctions further provide:

> Defendants shall not register, purchase, manage or have any ownership interest in any website or device engaged in the unauthorized copying, caching, retransmission or distribution of Plaintiffs' Broadcasts.

> Failure to comply with this Stipulation and Order shall be deemed contempt of Court.  SOF ¶ 57.

> This Court shall retain jurisdiction for the limited purpose of enforcement of this Order, including determinations of damages and attorneys' fees which shall be recoverable in connection with any enforcement proceeding. SOF

Ex. 3, ¶ 4, Ex. 4, ¶ 3.

Plaintiffs' Response:    Admitted, despite Defendants' failure to request judicial notice of the material they rely on.

60.    The Injunctions each further provide that failure to comply with the terms of the Injunctions constitutes contempt of Court.  (Ex. 3 ¶¶ 6-7, Ex. 4 ¶¶ 5-6).

Plaintiffs' Response:    Admitted, despite Defendants' failure to request judicial notice of the material they rely on.

**CHANNEL ONE'S LICENSE AGREEMENT WITH MATVIL**

61.    On September 7, 2016, Channel One entered into a Licensing Agreement with Matvil.  (Shprekher Dec. Ex. 3).

<u>Plaintiffs' Response</u>:  Admitted.

62.    Article 1.1 of the Licensing Agreement grants Matvil a "non-exclusive license to distribute via [IPTV] Service."  (*Id.*).

<u>Plaintiffs' Response</u>:  Admitted that the quoted material appears in Article 1.1 of the agreement between Matvil and Channel One. Disputed as to use of the term Licensing Agreement as that term has not been defined by Defendants and it is unclear what is being referenced.

**<u>Defendants' Reply</u>**: Actava admits in Paragraph 61 that Channel One entered into a licensing agreement.  Further, Actava uses the term "licensing agreement" to describe the agreements between Matvil and Broadcasters in the Second Amended Complaint.  (ECF 147 ¶ 59).  As a result, Actava's response fails to specifically controvert Paragraph 62 and the facts in Paragraph 62 should be deemed admitted.  *See* Local Rule 56.1(c).

63.    The License Agreement defines "Service" as a "system of ways and methods to provide Subscribers with the ability to view the Channels under the brands of…Matvil via IPTV in accordance with the description of series published on the website [of Matvil]…" (*Id.*).

<u>Plaintiffs' Response</u>:  Disputed. ███████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████████████████ Disputed as to use of the term Licensing Agreement as that term has not been defined by Defendants and it is unclear what is being referenced.  In addition, this alleged fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

**Defendants' Reply**: Actava admits in Paragraph 61 that Channel One entered into a licensing agreement with Matvil.  Further, Actava uses the term "licensing agreement" to describe the agreements between Matvil and Broadcasters in the Second Amended Complaint.  (ECF 147 ¶ 59).  Actava disputes the omission of certain words from the definition of "Service" that do not change the meaning of the facts in Paragraph 63.  As a result, Actava's response fails to specifically controvert Paragraph 63 and the facts in Paragraph 62 should be deemed admitted.  *See* Local Rule 56.1(c).

64.    Article 1.4 states: "[Channel One] hereby grants to [Matvil] the right to promote, advertise, and market the [Channel One] Channels in the Territory subject to Licensor's prior written approval of materials prepared for the mentioned purposes."  (*Id.*)

Plaintiffs' Response:    Admitted as to the contents of Article 1.4 of the cited document.

65.    Matvil advertising that mentions Channel One requires Channel One approval. (Shprekher Tr. at 126:16-25).

Plaintiffs' Response:  Disputed.  The terms "Matvil advertising" and "Channel One approval" are vague and ambiguous and have not been defined by Defendants or otherwise, making it unclear what is being referenced.

**Defendants' Reply** Actava's response to Paragraph 65 contains legal argument concerning the meaning of terms rather than facts that specifically controvert Paragraph 65 and should be deemed admitted.  *See* Local Rule 56.1(c).

66.    Article 1.5 states: "No other rights, including the ability to enter into sublicense agreements in respect to provided rights hereunder as specified directly in this Agreement, are granted to [Matvil]."  (Shprekher Dec. Ex. 3).

Plaintiffs' Response:    Admitted as to the contents of Article 1.5 of the cited document.

67.    Article 3.4 states Matvil "declares and warrants not to distribute the Channels in any other way, with exemption of ways specified directly this agreement." (*Id.*).

Plaintiffs' Response:  Admitted as to the contents of Article 3.4 of the cited document.  In addition, this alleged fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

68.    Channel One renewed the license with Matvil on July 1, 2018.  (Shprekher Dec. Ex. 4).

Plaintiffs' Response: Admitted.

**ACTAVA AND MATVIL SECRETLY NEGOTIATE THE REFERRAL AGREEMENT**

69.    In June 2016, soon after Judges Daniels and Moses entered the stipulated injunctions, Actava began negotiating a confidential agreement with Matvil.  (SAC ¶ 49 ("negotiations beg[an] in late June 2016 ("Skrynnyk 11/19 Aff.") ¶ 14 (stating Actava initiated negotiations in May or June 2016).

Plaintiffs' Response:  Admitted, but disputed that Actava "initiated" the negotiations.  *See* Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 28).

**Defendants' Reply**: Tsoutiev's alleged "fact" should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

70.    According to Tsoutiev, Actava and Broadcasters, "settled everything I believe, and I paid my bloody money for them. You understand that? I paid money. Not you. Not anyone else. And I paid for that to start --restart my business as soon as possible."  (Tsoutiev Tr. at 261:2-6).

Plaintiffs' Response:  Admitted.

71.    Plaintiffs did not seek permission from Broadcasters, including via the Settlement Agreement's side letter, to enter into negotiations with Matvil.  (Settlement Agreement ¶ 6.e and

Exhibit D attached thereto; Tsoutiev Tr. at 274:24- 279:13; Shprekher Dec. ¶ 42, Sindeeva Dec. ¶ 16, Kan Dec. ¶ 15, Koshkin Dec. ¶ 16, Panfilova Decl ¶ 14).

Plaintiffs' Response: Admitted that Plaintiffs did not seek permission from Broadcasters to enter into the Referral Agreement. Disputed that there was any requirement for Plaintiffs to seek permission from Broadcasters to enter into the Referral Agreement or negotiations with Matvil. *See* Dowd Dec., Ex. 1 (Ex. D to Settlement Agreement); Dowd Dec. Ex. 8 (Referral Agreement); Shprekher Dec., Ex. 3 (Matvil/Channel One license); Dykema Dec. Exs. 1, 2, 3 (CTC, New Channel, Comedy licenses).

**Defendants' Reply** Actava's response to Paragraph 71 contains legal argument concerning the legal requirements of the Settlement Agreement, Broadcasters' Matvil licenses, rather than facts that specifically controvert Paragraph 71 and should be deemed admitted. *See* Local Rule 56.1(c).

72.    Matvil did not seek permission from the Broadcasters to enter into the Referral Agreement.  (Shprekher Dec. ¶ 43, Sindeeva, Dec. ¶ 16, Kan Dec. ¶ 15, Koshkin Dec. ¶ 16, Panfilova Decl ¶ 14).

Plaintiffs' Response: Admitted that Matvil did not seek permission from Broadcasters to enter into the Referral Agreement. Disputed that there was any requirement for Matvil to seek permission from Broadcasters to enter into the Referral Agreement. *See* Dowd Dec., Ex. 1 (Ex. D to Settlement Agreement); Dowd Dec. Ex. 8 (Referral Agreement); Shprekher Dec., Ex. 3 (Matvil/Channel One license); Dykema Dec. Exs. 1, 2, 3 (CTC, New Channel, Comedy licenses).  Accordingly, this alleged fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

73.    Channel One did not learn about the Referral Agreement prior to its execution. (Shprekher Tr. at 74:5-10; Shprekher ¶¶ 42-43).

Plaintiffs' Response:  Admitted.  This alleged fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

74.    On September 8, 2016, Matvil and Actava entered into the Referral Agreement and addendum.  (Dowd Dec. Ex. 8)("Referral Agreement").

Plaintiffs' Response:  Admitted.

75.    In Paragraph 1.e. and 1.f. Actava and Matvil mutually "represent[ed] and warrant[ed] that [they were] under no contractual or other restrictions or obligations that are inconsistent with the execution of this Agreement or that prohibit [Actava or Matvil] from covenanting to and/or performing all the terms of this Agreement."

Plaintiffs' Response:  Admitted.

76.    On September 30, 2016, Matvil and Actava TV entered into a second addendum. (Dowd Dec. ¶ 32 and Ex. 9)("Second Addendum").

Plaintiffs' Response:  Admitted.

77.    The Second Addendum stated: "e)…. Up until that date, [Actava] may advertise and offer 1-year subscription priced at [Actava]'s discretion without approval from [Matvil]." (Dowd Dec. ¶ 32 and Ex. 9).

Plaintiffs' Response:  Admitted.

78.    Matvil had no authority under Channel One's license agreement to grant Actava carte blanche advertising.  (Shprekher Dec. Ex. 3, Article 1.4 of Channel One License Agreement).

Plaintiffs' Response:  Disputed.  And disputed as the term 'carte blanche advertising" has not been defined by Defendants or otherwise, making it unclear what is being referenced.

Article 1.4 of the agreement between Matvil and Channel One grants Matvil the right to promote, advertise and market the Channels subject to Channel One's written approval, does not impose any restrictions on how such written approval may be sought or obtained, does not prohibit granting of approval for "carte blanche advertising" (whatever that may be) and does not prescribe any restrictions on Matvil's right to advertise.

**Defendants' Reply** Actava's response to Paragraph 78 contains legal argument concerning the legal requirements of the Channel One-Matvil License, rather than facts that specifically controvert Paragraph 71 and should be deemed admitted.  *See* Local Rule 56.1(c).

### ACTAVA'S BUSINESS ACTIVITIES AFTER ENTERING INTO THE REFERRAL AGREEMENT

**Authorization of Subscribers**

79.    Though unstated in the Referral Agreement, Addendum, or Second Addendum, Actava TV provided authorization for customers Actava referred to Matvil.  (Makhotin Tr. at 74:2-75:19, 156:25-157:14).

Plaintiffs' Response:  Disputed as misleading and incomplete. The cited testimony states that customers received an initial authorization from Actava prior to a second authorization by Matvil, which was required for customers to access video content.  Customers were not able to see the authorization module and all content came directly from CDN Matvil. Dowd Dec., Ex. 24 (Makhotin Tr. at 74:2-75:24).  In addition, the Referral Agreement does not prohibit Actava TV from providing its own authorization or authentication to Matvil, prior to Matvil authorizing customers to access content.  (Dowd Dec., Ex. 8).

**Defendants' Reply** Actava's response to Paragraph 79 parses the meaning of the term "authorization" yet fails to present admissible evidence to dispute the fact that Actava authorized customers.  Makhotin's testimony about what the customer could see should be disregarded as it

28

is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).  Paragraph 79 also contains legal argument concerning the legal requirements of the Referral Agreement, rather than facts that specifically controvert Paragraph 79 and should be deemed admitted.  *See* Local Rule 56.1(c).

80.    Actava middleware authorized subscribers to access Matvil IPTV streams from 2016 to 2018.  (Makhotin Tr. at 43:14-18, 67:2-13).

> Plaintiffs' Response: Disputed as misleading and incomplete.  As Andrey Makhotin testifies, Actava used a "dual authentication module" by which Actava authorized subscribers only to seek further authorization from Matvil and Matvil authorized subscribers to access Matvil IPTV streams.  (Makhotin Dec., ECF No. 369-14, ¶ 12).

**Defendant's Response:**  The Makhotin declaration presents inadmissible evidence that contradicts Makhotin's prior testimony.  Because Makhotin facts that specifically controvert Paragraph 79 and should be deemed admitted.  *See* Local Rule 56.1(c).

81.    Actava TV Middleware allowed Actava to authenticate the STBs it sold and configured for the Matvil service.  (SAC ¶ 42; Makhotin Tr. at 108:22-109:22).

> Plaintiffs' Response:  Admitted.

**Customer Transfer**

82.    Actava TV transferred hundreds of its Pre-Settlement customers to the Matvil service for a portion of the subscription fee charged by Matvil.  (Tsoutiev Tr. at 84:6-14; Makhotin Tr. at 61:21-62:10, 73:5-14; Pliss Tr. at 154:20-34; Dowd. Dec. Ex. 26; Referral Agreement Addendum a)).

<u>Plaintiffs' Response</u>: Admitted, but disputed as to use of the term "Pre-Settlement customers" as that term has not been defined by Defendants and it is unclear what is being referenced.

**Advertising**

83.    Tsoutiev approved Actava TV's advertising.  (Zhevnerova Tr. at 33:18-19).

<u>Plaintiffs' Response</u>:  Admitted.

84.    Matvil saw, but did not control Actava's advertising.  (Skrynnyk 4/21 Tr. at 78:5-9; Dowd Dec. Ex. 9 Second Addendum to Referral Agreement).

<u>Plaintiffs' Response</u>:  Admitted, but the characterization is disputed as misleading and incomplete, as Matvil authorized Actava to place its advertisements. Pls. Ex. 1 (Second Tsoutiev Dec., ¶¶ 30, 31).

85.    Actava TV began advertising on Davidzon radio and in newspapers in September 2016.  (Tsoutiev Tr. at 123:6-11; Zhevnerova Tr. at 35:14-36:3).

<u>Plaintiffs' Response</u>:  Admitted, but the characterization is disputed as misleading and incomplete.  Actava placed advertisements for Matvil's service, which specified that services were provided by Matvil, and Matvil authorized Actava to place the Davidzon advertisements on Davidzon radio, in newspapers and all other locations. Pls. Ex. 1 (Second Tsoutiev Dec., ¶¶ 30, 31).

86.    Gardenia HB, Inc. placed Actava TV ads on Davidzon Radio, a Russian language radio station on October 4 and 18, 2016.  (Dowd. Dec. Ex. 28).

<u>Plaintiffs' Response</u>:  Admitted; fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

87.    On October 25, 2016, Matvil wrote Channel One seeking approval of certain advertising, but failed to disclose the Actava's radio advertising. (Shprekher. Dec. Ex 12).

Plaintiffs' Response: Disputed as misleading and incomplete.  Defendants have not established what radio advertising Matvil was required to request approval for from Channel One, or how; what advertising Matvil did seek approval for from Channel One; or what advertising was approved by Channel One.  This alleged fact should be disregarded as it is immaterial to the action and Defendants' Motion. See Local Rule 56.1(a).

**Defendants' Reply**: Actava presents no facts that specifically controvert the facts in Paragraph 87 and the facts in Paragraph 87 should be deemed admitted.  See Local Rule 56.1(c).

88.    On October 14, 2016, Actava filed an application for the ACTAVA mark with the United States Patent and Trademark Office ("USPTO") for "promoting the television broadcasting services of third parties."  (Dowd. Dec. Ex. 22 (ACTAVA trademark file wrapper)).

Plaintiffs' Response:  Admitted that Actava appropriately applied for a trademark for the service that it provided in promoting the broadcasting services of others, because Actava did not provide broadcasting services of its own.

89.    After an office action, the USPTO registered the ACTAVA Mark on November 19, 2019 (Id.)

Plaintiffs' Response:  Admitted; this alleged fact should be disregarded as it is immaterial to the action and Defendants' Motion. See Local Rule 56.1(a).

90.    On November 28, 2016, Broadcasters translated a Russian-language Davidzon radio advertisement into English that included the following:

Actava TV offers an annual subscription to the best television service in America. The package includes all the leading TV channels, such as the Perviy, TNT, TVC, Dozhd, CTC, Domashniy, .... and many others. We are together again! As they say: with clear conscience and confidence in today and tomorrow. The TV service is

licensed, so we have no need to hide behind other names, as some other companies are regularly forced to do. We have nothing to hide! Actava TV offers an honest and reliable service with ambitious plans for the future. We have been with you already for 7 years and have no plans to stop.

(Dowd. Dec. Ex. 29)

Plaintiffs' Response:  Admitted.

91.    The radio ad also states: "**Broadcasting** is carried out by Matvil, which has permission to broadcast." (*Id.*)(emphasis added).

Plaintiffs' Response:  Admitted.

92.    Actava paid for the Davidzon Radio ad translated by Broadcasters. (Pliss Tr. at 151:12-152:2).

Plaintiffs' Response:  Admitted.

93.    The advertisement aired from September 2016 to December 2016.  (Tsoutiev Tr. at 123:6-11).

Plaintiffs' Response:  Admitted.

## DEFENDANTS DISCOVER THE MATVIL-ACTAVA RELATIONSHIP

94.    On September 28, 2016, Channel One's former licensee, Kartina World LLP, informed Channel One via email that Actava's website was selling subscriptions to the broadcasts via the Matvil service.  (Shprekher Dec. Ex. 6).

Plaintiffs' Response:  Disputed. The cited evidence does not say anything about Actava "selling subscriptions to the broadcasts". The cited evidence states that Kartina believed Actava was engaging in unlawful activity as a sublicensee of Matvil (which Plaintiffs dispute), that Matvil did not have the right to sublicense the broadcasts, and Kartina suggested various threats and legal actions for the Channels to take against Matvil and Actava.  Shprekher Dec. Ex. 6.

**Defendants' Reply**: Actava presents no facts that specifically controvert the facts in Paragraph 94 and the facts in Paragraph 94 should be deemed admitted. *See* Local Rule 56.1(c).

95.    Kartina and Channel One were concerned that Actava was distributing programming with an unauthorized sublicense from Matvil. (*Id.* ¶¶ 44-47).

Plaintiffs' Response: Disputed, as the term 'programming" has not been defined by Defendants or otherwise, making it unclear what is being referenced. *See also* Plaintiffs' Additional Material Facts ¶¶ 232-41 explaining the relationship between Actava and Matvil under the Referral Agreement, and Actava's lawful conduct.

96.    On September 30, 2016, Matvil contacted Channel One about Matvil's relationship with Actava. (Shprekher Dec. Ex. 8).

Plaintiffs' Response:  Admitted.

97.    On October 3, 2016, after reviewing Matvil's explanation, Channel One wrote: "In our opinion, this cooperation is not just unapproved by us, it is clearly goes beyond the scope of our contract and it looks like some kind of a sublicense, which is not permitted under the contract." (*Id.*)

Plaintiffs' Response:  Admitted that Channel One wrote that language, the substance of which Plaintiffs dispute.

98.    Channel One then exchanged emails with Matvil in October and November 2016 about the Actava- Matvil relationship. (*Id.* Exs 9-12).

Plaintiffs' Response: Admitted.

99.    Channel One made a business decision not to pursue legal action against its licensee, Matvil. (*Id.* ¶ 54).

<u>Plaintiffs' Response</u>: Admitted that Channel One made a decision not to pursue legal action against its licensee, Matvil.  Otherwise disputed, as Channel One's decision not to pursue legal action against Matvil was part of Channel One and Kartina's scheme to target Actava and tortiously interfere with both Actava's relationships with its customers and with Actava's contract with Matvil. Pls. Ex. 1 (Second Tsoutiev Dec., ¶¶ 52-55).  Channel One's motives and credibility are an issue for the jury.  *See, e.g.,* Pls. 56.1, ¶ 258.

**BROADCASTERS SERVE NOTICE OF SUSPECTED BREACH ON ACTAVA**

100.    Upon learning of a business relationship between Actava and Matvil, Broadcasters reviewed the Actava website, Settlement Agreement, Injunctions, and Matvil settlement agreement.  (Dowd. Dec. Ex. 4).

<u>Plaintiffs' Response</u>:    Disputed.  The cited evidence is Defendants' counsel's correspondence to Plaintiffs' counsel dated October 19, 2016 and does not support the statement that Broadcasters "reviewed" any documents, but instead that Broadcasters engaged counsel to threaten Actava. Dowd. Dec. Ex. 4.

**Defendants' Reply:**  Page 1 of the October 19, 2016 notice of suspected breach states: "After reviewing the Website and Settlement, we suspect Actava has breached the Settlement." (*Id*. at 1). This fact should be deemed admitted.

101.    Paragraph 8 of the Settlement Agreement specifically provides that if Broadcasters suspect Actava of a breach of the Settlement, Broadcasters must provide written notice to Actava of the suspected breach and then if not cured, shall be entitled to seek all judicial relief.  (Dowd. Dec. Ex. 1).

<u>Plaintiffs' Response</u>:  Admitted.

102.    Broadcasters served a notice of suspected breach on Actava on October 19, 2016. (Dowd. Dec. Ex. 4).

Plaintiffs' Response: Admitted. This alleged fact and the written "notice" reference therein contain nothing concerning any notice that any radio adverting was a suspected breach, so it should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

103.    The Settlement Agreement further provides that if Actava fails to remedy the suspected breach within ten (10) business days of receiving such written notice, Broadcasters can "pursue all judicial relief" for the suspected breach. (Settlement Agreement ¶ 8).

Plaintiffs' Response:    Disputed as misleading and incomplete.    The Settlement Agreement's Notice and Cure Provision states that "[i]n the event that any Plaintiff suspects that any Defendant is in breach of this Agreement, such plaintiff shall provide written notice of the suspected breach to the appropriate Defendant(s) as set forth in paragraph 17," and only if the "Defendant fails to remedy such suspected breach within ten (10) business days of receiving written notice, the Plaintiffs shall be entitled to seek all judicial relief against Defendants for such suspected breach." (Dowd Dec., Ex. 1 (Settlement Agreement ¶ 8)).    Defendants' alleged fact contains nothing concerning any Notice that any radio adverting was a suspected breach, which Notice they were required to provide the Actava Parties.

104.    On October 26, 2016, Actava denied it was breaching the Settlement Agreement. (Dowd Dec. ¶ 25 and Ex. 5).

Plaintiffs' Response: Admitted.

105.    Actava wrote Broadcasters that: "We write now not simply to reject the Broadcasters' allegations out of hand, but instead to clarify the nature of Actava's relationship with Matvil, and to reassure your clients that Actava's conduct is consistent with its obligations under the Settlement and the strictures of the Orders." (*Id.* at 1).

Plaintiffs' Response:  Admitted that Actava's October 26, 2016 letter contained the sentence quoted in ¶ 105.

106.    Actava continued: "Please be assured that in referring customers to Matvil's services by linking to Matvil's streaming video player, Actava has neither access to nor any interaction of any kind with your clients' streams, broadcasts, channels, or programming." (*Id.* at 2).

Plaintiffs' Response:  Admitted that Actava's October 26, 2016 letter contained the sentence quoted in ¶ 106.

107.    Actava did not cure or end its business relationship with Matvil within the 10-day cure period.  (Dowd Dec. ¶ 26, Ex. 6).

Plaintiffs' Response:  Disputed that Actava had any obligation to "cure" or "end" its business relationship with Matvil at any time. Admitted that Actava did not "cure" any alleged breach, as it had committed no breach, or alter or end its business relationship with Matvil after receiving notice from Broadcasters.

**Defendants' Reply**: Actava's response to Paragraph 107 contains no facts that specifically controvert Paragraph 107 and should be deemed admitted.  *See* Local Rule 56.1(c).

108.    In the October 26 letter, Actava did not disclose it was currently authenticating Matvil subscribers through an "authorization module."  (Makhotin Tr. at 61:21-62:10, 65:17-67:19, 71:15-20,74:2-75:19).

<u>Plaintiffs' Response</u>:  Disputed, the purported fact is not supported by the cited testimony. The cited testimony contains a description of Actava's software and the interaction between Actava's technology and Matvil's content. Further, it is disputed that Actava had any obligation to provide any details to Broadcasters in the October 26 letter or otherwise about any authentication or authorization or anything else relating to Actava's proprietary software and technology.  This alleged fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

**Defendants' Reply**: Actava's response to Paragraph 108 contains no facts that specifically controvert Paragraph 108 and should be deemed admitted.  *See* Local Rule 56.1(c).

109.    In the October 26 letter, Actava did not disclose it was advertising on Davidzon Radio.  (Dowd Dec. Exs. 5, 25).

<u>Plaintiffs' Response</u>:  Admitted. Disputed that Actava had any obligation to provide any details about Matvil's advertising to Broadcasters in the October 26 letter.  This alleged fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

**Defendants' Reply:** Actava's response to Paragraph 109 contains no facts that specifically controvert Paragraph 109 and should be deemed admitted.  *See* Local Rule 56.1(c).

110.    In the October 26 letter, Actava did not disclose the vast majority of the customers it referred to Actava were former customers of Actava's unlicensed streaming business.  (Dowd Dec. Ex. 23).

<u>Plaintiffs' Response</u>:  Admitted that Actava did not disclose in the October 26 letter that the vast majority of the customers it referred to Matvil were former customers of Actava's. The characterization that Actava's prior streaming business was unlicensed is disputed as

misleading and incomplete, as, among other reasons, Actava signed a Settlement Agreement and Mutual General Release in which it did not admit liability for its prior activities. (*See* Dowd Dec. Ex. 1). Disputed that Actava had any obligation to provide any details about the identity of its customers to Broadcasters in the October 26 letter. This alleged fact should be also disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

**Defendants' Reply**. Actava's response to Paragraph 110 contains no facts that specifically controvert Paragraph 110 and should be deemed admitted. *See* Local Rule 56.1(c).

111.    On November 14, 2016, Broadcasters rejected the contentions in Actava's October 26 letter, but requested a copy of the Referral Agreement to review. (Dowd Dec. Ex. 6).

Plaintiffs' Response:  Admitted.

112.    On November 18, 2016, Actava offered to provide inspection of a redacted version of the Referral Agreement. (Dowd Dec. Ex. 27) (November 11, 2016, email from Malki to Dowd).

Plaintiffs' Response:  Admitted. Actava's confidentiality obligations to Matvil prevented Actava from allowing inspection of the entire, unredacted agreement. Dowd Dec., Ex 27.

113.    Actava's attorney wrote that the redacted "terms do not bear on the salient question of the services rendered to Matvil by Actava." (*Id.*).

Plaintiffs' Response:  Admitted. Actava's confidentiality obligations to Matvil prevented Actava from allowing for inspection of the entire, unredacted agreement. Dowd Dec., Ex 27.  This alleged fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

114.    Actava's attorney also demanded that "Actava will not make the Referral Agreement available for copying or transmission, and the specific details of the Referral Agreement may not be disclosed to your clients or anyone associated with your clients." (*Id.*).

Plaintiffs' Response: Disputed; mischaracterization of the cited evidence. Actava's attorney did not make any "demands". Admitted that the quoted sentence in ¶ 114 appeared in the email correspondence attached as Dowd Dec., Ex. 27. Actava's confidentiality obligations to Matvil prevented Actava from allowing for inspection of the entire, unredacted agreement. Dowd Dec., Ex 27. This alleged fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

**Defendants' Reply**. Actava's response to Paragraph 114 contains no facts that specifically controvert Paragraph 114 and should be deemed admitted. *See* Local Rule 56.1(c).

115.    On December 12, 2016, Actava's counsel provided for only limited inspection at Dunnington's office. 2017 Declaration of Jonathan Malki, Esq. (*Infomir* Action ECF 161) ("Malki Dec.") ¶ 18).

Plaintiffs' Response: Disputed as misleading and incomplete, as Actava's prior counsel stated that Dunnington repeatedly rejected any inspection of the Referral Agreement, which had limited redactions of sensitive commercial details. Further, Dunnington never indicated that it would be open to an inspection if Actava removed the redactions. *See* Dowd Dec., Ex. 28 (Malki Dec., ¶¶ 12-18). Plaintiffs further note that Defendants have not requested judicial notice of the material relied on.

**Defendants' Reply**. Actava's response to Paragraph 115 contains no facts that specifically controvert Paragraph 115 and should be deemed admitted. *See* Local Rule 56.1(c). Defendants

also have requested judicial notice of the materials cited. (Defendants' October 5, 2021 Request for Judicial Notice ("RJN") Ex. 19).

116.    Broadcasters declined to review the Referral Agreement under the restrictions imposed by Actava. (*Id*.).

> Plaintiffs' Response: Admitted that Broadcasters declined to review the Referral Agreement. Otherwise disputed, as Actava's prior counsel stated that Dunnington repeatedly rejected any inspection of the Referral Agreement, and there were no "restrictions imposed by Actava." Further, Dunnington never indicated that it would be open to an inspection if Actava removed limited redactions of sensitive commercial information. *See* Dowd Dec., Ex. 28 (Malki Dec., ¶¶ 12-18). Plaintiffs further note that Defendants have not requested judicial notice of the material relied on.

**Defendants' Reply**. Actava's response to Paragraph 116 contains no facts that specifically controvert Paragraph 116 and should be deemed admitted. *See* Local Rule 56.1(c). Defendants also have requested judicial notice of the materials cited. (RJN Ex. 19).

### BROADCASTERS FILE A CONTEMPT MOTION AGAINST ACTAVA

117.    Channel One authorized Dunnington to bring the contempt motion. (Shprekher ¶ 55).

> Plaintiffs' Response: Admitted.

118.    Broadcasters filed a contempt motion on December 13, 2016, alleging that Actava was transmitting and advertising the Broadcasters' content. (*Infomir* Action ECF 149).

> Plaintiffs' Response: Despite Defendants' failure to seek judicial notice of the material on which they rely, Plaintiffs admit that Defendants' contempt proceeding alleged that they were violating the Injunctions by broadcasting Defendants' Broadcasts and using

Defendants' Marks. Disputed that Defendants' Failed Contempt Proceeding alleged Actava was transmitting or advertising any other content.

119.    Broadcasters included the certified translation of an Actava radio advertisement as part of the motion. (Dowd Dec. Ex. 26; *see also Infomir* Action ECF 150-9).

Plaintiffs' Response: Admitted, despite Defendants' failure to request judicial notice of the material they rely on.

120.    Actava filed its opposition to the motion on January 13, 2017. Actava failed to cross-move or otherwise seek relief against Broadcasters from Judge Moses in response to the Contempt Motion (*Infomir* Action ECF 162).

Plaintiffs' Response: Disputed as Paragraph 120 does not provide a citation to any evidence submitted with Defendants' Motion, admissible or otherwise, to support the veracity thereof. This statement is also disputed, as pleadings, orders or filings from a separate, prior action, which were not produced in discovery, are not admissible evidence in the instant action. Plaintiffs further note that Defendants have not requested judicial notice of the material relied on.

**Defendants' Reply**. Actava's response to Paragraph 120 contains no facts that specifically controvert Paragraph 120 and should be deemed admitted. *See* Local Rule 56.1(c). Defendants also have requested judicial notice of the materials cited (RJN Ex. 18).

121.    Actava supported its opposition with five declarations and one expert report in opposition to the contempt motion: (1) Toby Butterfield, Esq. Declaration, (2) Brad Gilmer Expert Report, (3) Tsoutiev Declaration, (4) Mikhail Gayster Declaration, (5) Alexandr Crivoi (Matvil System Admin) Declaration, and (6) Jonathan Malki, Esq. Declaration. (*Infomir* Action ECFs 157-61) ("Actava Contempt Declarations"). In opposing the Contempt Motion, Actava represented to

Judge Moses that it did not use its own software to deliver the Programming and did not authenticate customers.

> Plaintiffs' Response: Disputed, as the term 'Programming" has not been defined by Defendants or otherwise, making it unclear what is being referenced. In addition, Paragraph 121 does not provide a citation to any evidence submitted with Defendants' Motion, admissible or otherwise, to support the veracity thereof. Plaintiffs further note that Defendants have not requested judicial notice of the material relied on.

> **Defendants' Reply**: The word "programming" appears twenty-four (24) times in Actava's second amended complaint. (ECF 147). Actava used the word "programming" to describe the broadcasts of Broadcasters' television programming. (ECF 147 ¶ 16-21). There is no dispute about the meaning of "programming." As a result, Actava's response fails to specifically controvert Paragraph 121 and the facts in Paragraph 121 should be deemed admitted. *See* Local Rule 56.1(c). Defendants also have requested judicial notice of the materials cited. (RJN Exs. 14, 15, 17, 19, 22-24).

122. Actava filed a redacted copy of the Referral Agreement and addendum as Exhibit A to the January 10, 2017, Declaration of Mikhail Gayster. (*Infomir* Action ECF 159; 159-1).

> Plaintiffs' Response: Admitted, despite Defendants' failure to request judicial notice of the material they rely on.

123. The number "9" is the last page of the Referral Agreement provided to Judge Moses. (*Infomir* Action ECF 159-1). The Second Addendum does not have a page number. (Dowd Dec. Ex. 9).

<u>Plaintiffs' Response</u>:  Admitted, despite Defendants' failure to request judicial notice of the material they rely on.  This fact should also be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

124.    Actava provided an incomplete copy of the Referral Agreement for Judge Moses's consideration during the contempt proceeding.  (*Compare. Infomir* Action ECF 159-1 *with* Second Addendum).

<u>Plaintiffs' Response</u>:  Disputed as Paragraph 124 does not provide a citation to evidence submitted with Defendants' Motion, admissible or otherwise, to support the veracity thereof. Plaintiffs further note that Defendants have not requested judicial notice of the material relied on.  Further, this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

**<u>Defendants' Reply</u>**: Actava presents no facts that specifically controvert the facts in Paragraph 124, so the facts in Paragraph 124 should be deemed admitted.  *See* Local Rule 56.1(c). Defendants have requested judicial notice of the incomplete Referral Agreement provided by Actava to Judge Moses.  (RJN Ex. 21).

**ACTAVA'S CONDUCT DURING THE PENDENCY OF THE CONTEMPT MOTION**

125.    On December 13, 2016, Actava voluntarily ceased advertising on behalf of Matvil. (Skrynnyk 11/19 Aff. ¶ 18; Skrynnyk 4/21 Tr. 85:11-86:3).

<u>Plaintiffs' Response</u>:  Disputed.  The Failed Contempt Proceeding threatened Actava with severe penalties, forcing Actava to temporarily suspend advertising until the Failed Contempt Proceeding had been resolved.  Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 39).

**<u>Defendants' Reply:</u>**    The Tsoutiev declarations present "evidence" that contradicts Paragraph 73 of Actava's Second Amended Complaint that states "Actava voluntarily ceased

advertising and signing up new customers to Matvil" (ECF 147). Because Actava presents no admissible evidence that controverts the facts in Paragraph 125 and Actava's pleadings, the facts in Paragraph 125 should be deemed admitted. *See* Local Rule 56.1(c).

126. Though Actava ceased advertising, it continued to sign up Pre-Settlement Actava customers to the Matvil service (Skrynnyk 11/19 Aff. ¶ 18; Dowd Dec. Ex. 23).

> <u>Plaintiffs' Response</u>: Disputed as to the use of the term "Pre-Settlement Actava customers," as that term has not been defined by Defendants and it is unclear what is being referenced.

**<u>Defendants' Reply:</u>** Actava's objection to the term "Pre-Settlement Actava customers," is contradicted by Actava own accounting records that distinguish between "Active" or Pre-Settlement and "New" or Post-settlement customers. (ECF 381-23). Actava's objection presents no facts that specifically controvert the facts in Paragraph 126, so the facts in Paragraph 128 should be deemed admitted. *See* Local Rule 56.1(c).

### JUDGE MOSES' DECISION ON THE CONTEMPT MOTION

127. Judge Moses found in Part III.A of the September 27, 2017, Order that Actava's sale of set-top boxes preloaded with Matvil software that accessed Broadcasters' programming meant that Broadcasters were unable to show at the time of the hearing based on available "clear and convincing" evidence that Actava violated the Injunction in light of the very high standard necessary to prove contempt. (ECF 1-3; Answer ¶ 146).

> <u>Plaintiffs' Response</u>: Admitted that Judge Moses determined in the September 27, 2017 Order that Broadcasters' failed to establish that Actava violated the Injunction. Dowd Decl, Ex. 10. Otherwise disputed, as Defendants' characterizations are not supported by the cited evidence.

128.    Judge Moses' further found that "the recurring question of 'authorization'" raised by Actava's characterizations of the Matvil license prevented her from determining if Actava's radio advertisement violated the Injunctions.  (ECF 1-3; Answer ¶ 148).

Plaintiffs' Response:   Disputed as misleading and incomplete.  Judge Moses found that the Channels failed to submit the required evidence (in the form of licenses) to prove that the radio advertisement was unauthorized. Dowd Dec., Ex. 10 (Moses Order) at 28-29. Further, the Channels failed to notify Actava of any violation with respect to the radio advertisement in their Notice of Breach, depriving Actava of the contractually-required opportunity to cure.  Dowd Ex. 5 (Notice of Suspected Breach); Dowd Ex. 1 (Settlement Agmt, ¶ 8).  Finally, Judge Moses determined in in the September 27, 2017 Order that Broadcasters failed to establish that Actava violated the Injunction. Dowd Decl, Ex. 10 (Moses Order).

**Defendants' Reply**: Actava presents no facts that specifically controvert the facts in Paragraph 128, so the facts in Paragraph 128 should be deemed admitted.  *See* Local Rule 56.1(c).

129.    Judge Moses' analysis of a potential violation of Paragraph 2(a) of the Injunctions focused on the role of authentication:

> Paragraph 2(a) of the Stipulated Injunction prohibits the Actava Defendants from "[b]roadcasting, re-broadcasting or otherwise transmitting" plaintiffs' Broadcasts (that is, their Channels) "without authorization." Advertising and promoting Matvil's service, whether on the Website or on the radio, does not violate this provision. Nor is Actava in contempt merely by redirecting customers from its Website to the Matvil website, where they can sign up for Matvil's service or download the Matvil app, **so long as it is Matvil, not Actava, that delivers plaintiffs' content through its own servers, using its own software, and authenticates the customers through its own website**. Thus, in the scenario where the customer accesses Matvil's CDN directly, via computer or "smart TV," see Vidulich Dec. ¶¶ 2-5, Actava's role in "referring"

the customer to Matvil does not appear to violate ¶ 2(a) of the
Stipulated Injunction.

(ECF 1-3 at 22) (emphasis added).

Plaintiffs' Response:  Disputed as misleading and incomplete. Judge Moses' complete analysis of the parties' conduct and Paragraph 2(A) of the Injunctions is at pages 22-25 of the Order, of which Defendants' excerpted only a small paragraph that does not accurately depict the "focus" of Judge Moses' analysis. *See* Dowd Dec., Ex. 10, pp. 22-25.   Further, the term "authentication" does not appear in the Injunctions.

**Defendants' Reply**: Actava presents no facts that specifically controvert the facts in Paragraph 129, so the facts in Paragraph 129 should be deemed admitted.  *See* Local Rule 56.1(c).

130.    As Judge Moses noted in the Order addressing Actava's contempt, the Broadcasters did not submit any license agreements with the contempt motions, so Matvil CEO "Gayster's assertion that Matvil had whatever authority it needed from plaintiffs to engage Actava pursuant to the Referral Agreement must therefore be deemed undisputed." (ECF 1-3 at 15 n. 13).

Plaintiffs' Response: Disputed as to characterization of the "Order addressing Actava's contempt". The Order was issued on Broadcaster's Action seeking to find Actava in contempt, and Actava was found not to be in contempt of the Injunctions.  Dowd Dec., Ex. 10. Admitted that Broadcasters did not submit any agreements with Matvil to the Court in connection with the Contempt Proceeding.

**Defendants' Reply**: Actava presents no facts that specifically controvert the facts in Paragraph 130, so the facts in Paragraph 130 should be deemed admitted.  *See* Local Rule 56.1(c).

131.    Judge Moses explicitly stated that she expressed "no opinion as to whether Actava Defendants violated" the underlying Settlement Agreement.  (ECF 1-3 at 30 n. 18).

<u>Plaintiffs' Response</u>: Disputed as misleading and incomplete. Footnote 18 to the Order states: "As noted above, the parties' Settlement Agreement is not before the Court for enforcement. Consequently, I express no opinion as to whether the Actava Defendants have violated that contract." Dowd Dec., Ex. 10, n.18.

**<u>Defendants' Reply</u>**: Actava presents no facts that specifically controvert the facts in Paragraph 131, so the facts in Paragraph 131 should be deemed admitted. *See* Local Rule 56.1(c).

132.    Rather, Judge Moses made clear that Broadcasters' arguments in favor of contempt against Actava had "some force."  (ECF 1-3 at 23).

<u>Plaintiffs' Response</u>:  Disputed. Judge Moses did not say that Broadcasters' "arguments" had any force. Judge Moses' Decision and Order at page 23 states that a single argument offered by Broadcasters had "some force" but still failed. Specifically, Judge Moses was addressing Broadcasters' argument concerning Paragraph 2A of the Injunctions that "Actava is disobeying the Stipulated Injunction by selling set-top boxes pre-programmed with the Matvil app to its own customers. When those customers watch one of plaintiffs' Channels, plaintiffs contend, some form of "transmission" must occur between the Matvil servers and the Actava set-top box, and/or between the set-top box and the television set itself…." Judge Moses rejected this argument stating: "This argument has some force. However, even assuming that Actava is "transmitting" plaintiffs' Channels through its pre-programmed set-top boxes, such transmission violates the injunction only if Actava is acting without "authorization."" Dowd Dec., Ex. 10 at p. 23. Judge Moses' conclusion was that, "[Broadcasters] therefore fall well short of establishing the alleged contemnors' noncompliance by "clear and convincing" evidence.  Given this record, I cannot conclude

that Actava's sale of settop boxes pre-loaded with the Matvil app violates [Paragraph] 2(a) of the Stipulated Injunction." Dowd Dec., Ex. 10 at p.25.

## ACTAVA RESUMES MARKETING

133.    Tsoutiev rejected a proposed agreement to purchase a 50% share of Matvil in October 2017.  (Dowd Dec. Ex. 29).

Plaintiffs' Response:  Admitted; this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

134.    Actava resumed marketing for Matvil in February 2018.  (SAC ¶ 80).

Plaintiffs' Response:  Disputed:  Actava did not cease marketing for Matvil; Actava resumed normal advertising for Matvil no later than February 2018.  Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 44).

**Defendants' Reply**: Actava presents no facts that specifically controvert the facts in Paragraph 134, so the facts in Paragraph 134 should be deemed admitted.  *See* Local Rule 56.1(c).

135.    Between July 10 and 20, 2018, Actava began negotiating new service plans with Matvil.  (Dowd Dec. Ex. 30, 31).

Plaintiffs' Response:  Admitted.

136.    Channel One did not contact Matvil about its relationship with Actava after the decision on the contempt motion.  (Shprekher Dec. ¶ 57).

Plaintiffs' Response: Disputed. Pls. Ex. 1 (Second Tsoutiev Dec., ¶¶ 49, 52); ▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬

**Defendants' Reply**: The secret telephone recordings are inadmissible evidence. *See* Fed. R. Civ. P. 56(c)(2), Fed. R. Evid. 901(a).  Because Actava presents no admissible evidence that specifically controvert the facts in Paragraph 136, the facts in Paragraph 136 should be deemed admitted.  *See* Local Rule 56.1(c).

137.    Channel One did not contact any known customers or business associates of Actava.  (Shprekher ¶ 59).

Plaintiffs' Response:  Disputed. Pls. Ex. 1 (Second Tsoutiev Dec., ¶¶ 49, 52), ██████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

**Defendants' Reply**: The secret telephone recordings are inadmissible evidence. *See* Fed. R. Civ. P. 56(c)(2), Fed. R. Evid. 901(a).  Further, Actava presents no facts that specifically controvert the facts in Paragraph 137, so the facts in Paragraph 137 should be deemed admitted. *See* Local Rule 56.1(c).

### ACTAVA SUES BROADCASTERS IN JULY 2018 TO THE SHOCK OF MATVIL

138.    On July 23, 2018, Plaintiffs sued Channel One, CTC, New Channel, TV Darial, Comedy TV, and Rain TV alleging tortious interference with the Referral Agreement, malicious prosecution, and breach of contract.  (ECF 1).

Plaintiffs' Response:  Admitted.

139.    On July 26, 2018, Matvil learned about the lawsuit from Tsoutiev.  (Skrynnyk 4/21 Tr. at 56:20-57:16).

Plaintiffs' Response:  Admitted.

140.    Matvil did not know about Actava's plan to sue Broadcasters (Skrynnyk 11/19 Aff. ¶ 23; Skrynnyk 4/21 Tr. at 65:24-66:3).

Plaintiffs' Response: Admitted.

141.    On July 29, 2018, Matvil emailed Tsoutiev and expressed Matvil's concerns about the lawsuit, stating: "[c]onsidering that you are our agent and sell the service offered by Matvil Corp., we strongly object to your filing this lawsuit, and we request that you immediately, as of this Monday, July 30, withdraw your lawsuit. . . . If you do not withdraw the lawsuit this Monday, we will be forced to terminate our relationship with you, and we will bring any and all causes of action against you for the damages you have caused Matvil by bringing this lawsuit." (Dowd Dec. Ex. 32).

Plaintiffs' Response:  Admitted.

142.    Matvil feared a second litigation against Broadcasters would damage its business with Broadcasters because the Broadcasters could believe Matvil was supporting Actava as it had during the contempt proceeding.  (Skrynnyk 11/19 Aff. ¶¶ 24-25; Skrynnyk 4/21 Tr. 65:8-20).

Plaintiffs' Response:  Disputed. ██████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████

**Defendants' Reply**: Actava presents no facts that specifically controvert the facts in Paragraph 142 and the facts in Paragraph 142 should be deemed admitted.  *See* Local Rule 56.1(c).

143.    Matvil called Broadcasters of the Actava lawsuit shortly thereafter.  (Skrynnyk 4/21 Tr. at 48:4-65:9; Shprekher Dec. ¶ 58; Koshkin Dec. ¶ 21; Sindeeva Dec. ¶ 27).

Plaintiffs' Response:  Admitted.

144.    Channel One asked Matvil to resolve the dispute with Matvil's partner Actava. (Shprekher Dec. ¶ 59).

Plaintiffs' Response:  Disputed. Pls. Ex. 1 (Second Tsoutiev Dec., ¶¶ 49, 52-55), ███

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████

**Defendants' Reply**: The secret telephone recordings are inadmissible evidence. *See* Fed. R. Civ. P. 56(c)(2), Fed. R. Evid. 901(a).  Because Actava presents no admissable evidence that specifically controvert the facts in Paragraph 144, the facts in Paragraph 144 should be deemed admitted.  *See* Local Rule 56.1(c).

145.    Broadcasters did not communicate with Matvil about the lawsuit again until after Matvil served its notice of breach.  (Skrynnyk 4/21 Tr. at 64:2-9).

Plaintiffs' Response:  Disputed. Pls. Ex. 1 (Second Tsoutiev Dec., ¶¶ 49, 52-55); ███

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████

**Defendants' Reply**: The secret telephone recordings are inadmissible evidence. *See* Fed. R. Civ. P. 56(c)(2), Fed. R. Evid. 901(a). Because Actava presents no admissable evidence that

specifically controvert the facts in Paragraph 145, the facts in Paragraph 145 should be deemed

admitted.  *See* Local Rule 56.1(c).

### MATVIL SERVES NOTICE OF BREACH ON ACTAVA, MATVIL AND ACTAVA ENTER INTO A NON-DISCLOSURE AGREEMENT, AND THE PARTIES CANNOT NEGOTIATE A RESOLUTION

146.    On August 2, 2018, Matvil served a notice of suspected breach of the Referral

Agreement on Actava.  (Dowd Dec. Ex. 34).  The notice warned Actava that the lawsuit breached

the Referral Agreement.  (*Id.*)

Plaintiffs' Response:  Admitted.

147.    Matvil wrote that Actava could cure the breach by withdrawing the lawsuit against

the Broadcasters and apologizing.  (*Id.*)

Plaintiffs' Response:  Admitted.

148.    On August 9, 2018, Matvil and Actava entered into a non-disclosure agreement.

(Dowd Dec. Ex. 35).  Paragraph 2.5 of the NDA stated: "During the pendency of said lawsuit filed

by Actava against the Channels, or at any other time, Matvil shall not voluntarily disclose any

Confidential Information or any other information regarding Actava to the Channels, or to any

other party, absent a court order, and shall not otherwise cooperate with the Channels with respect

to Actava's lawsuit."  (*Id.*)

Plaintiffs' Response:  Admitted.

149.    On August 10, 2018, Actava rejected Matvil's notice of breach and demanded

Matvil withdraw the notice of breach.  (Dowd Dec. Ex. 36).

Plaintiffs' Response: Admitted.

150.    Matvil terminated the Referral Agreement on August 13, 2018, after Actava failed

to cure the suspected breach.  (Skrynnyk 11/19 Aff. ¶ 27; SAC ¶ 81; Dowd Dec. Ex. 23).

Plaintiffs' Response:   Admitted that Matvil terminated the Referral Agreement on August 13, 2018, but disputed that Actava breached the Referral Agreement or had any obligation to cure.  (Dowd Dec., Ex. 36).

**Defendants' Reply**: Because Actava presents no admissible evidence that specifically controverts the facts in Paragraph 150, the facts in Paragraph 150 should be deemed admitted.  *See* Local Rule 56.1(c).

151.    The negotiations between Matvil and Actava focused on the transfer of approximately 1,200 referred customers from Actava to Matvil.  (Dowd Dec. Ex. 37 MATVIL0002796-97; Skrynnyk 4/21 Tr. 92:20-93:4; Tsoutiev Tr.239:25-240:4).

Plaintiffs' Response:   Admitted.

152.    On October 1, 2018, Matvil emailed Actava and informed them that a Broadcaster was considering terminating its contract with Matvil and again requested that Actava withdraw the lawsuit.  (Dowd Dec. Ex. 38).

Plaintiffs' Response:   Admitted.

153.    Matvil's president swore that Matvil's statements to Actava about pressure from Broadcasters to terminate the Referral Agreement were a "business tactic" (Dowd Dec. Ex. 18 Skrynnyk 4/21 Tr. 99:11-22-103:16; 120:5-16).

Plaintiffs' Response:   Disputed. The cited language is incomplete and misleading in light of numerous contrary statements by multiple Matvil representatives to Mr. Tsoutiev.  Pls. Ex. 8; Pls. Ex. 1 (Second Tsoutiev Dec., ¶¶49, 52).

**Defendants' Reply**: The secret telephone recordings are inadmissible evidence. *See* Fed. R. Civ. P. 56(c)(2), Fed. R. Evid. 901(a).  Because Actava presents no facts or admissible evidence

that specifically controverts facts in Paragraph 153, the facts in Paragraph 153 should be deemed admitted.  *See* Local Rule 56.1(c).

154.    On October 2, 2018, Actava's counsel wrote Matvil's counsel a response to the October 1 email that recounted Actava's understanding of the Matvil-Actava negotiations.  (Dowd Dec. Ex. 39).

<u>Plaintiffs' Response</u>:   Admitted.

155.    On January 18, 2019, Actava wrote Matvil demanding monies Actava claimed were unpaid due under the Referral Agreement.  (Dowd Dec. Ex. 40).

<u>Plaintiffs' Response</u>:   Admitted.

156.    On January 25, 2019, Matvil responded that "We believe that the issues which you have raised in your letters were discussed and settled earlier."  (Dowd Dec. Ex. 41).

<u>Plaintiffs' Response</u>:   Admitted.

**MATVIL AND DEFENDANTS CONFIRM DEFENDANTS DID NOT PRESSURE MATVIL TO TERMINATE THE REFERRAL AGREEMENT**

157.    Upon learning of the Actava lawsuit against the Channels, Matvil's CEO, Mykola Skrynnyk, informed Channel One, Rain TV, and CTC about the lawsuit.  (Dowd Dec. Ex. 42 December 12, 2019, Deposition Transcript of Skrynnyk in the Ontario Superior Court Of Justice ("Skrynnyk 12/19 Tr.") at 20-24; Skrynnyk 4/21 Tr.59:21-62:25); *see also*, Koshkin Dec. ¶ 21, Sindeeva Dec. ¶ 27).

<u>Plaintiffs' Response</u>:   Admitted.

158.    Channel One spoke to Matvil about the lawsuit and asked Matvil to try to "settle this situation [with Actava] on good terms[]" but Matvil was unable to do that.  (Shprekher Tr. 163:3-20).

<u>Plaintiffs' Response</u>:  Disputed. Pls. Ex. 1 (Second Tsoutiev Dec., ¶¶ 49, 52-55); ███

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████

**Defendants' Reply**: The secret telephone recordings are inadmissible evidence. *See* Fed. R. Civ. P. 56(c)(2), Fed. R. Evid. 901(a).  Because Actava presents no facts or admissible evidence that specifically controverts facts in Paragraph 158, the facts in Paragraph 158 should be deemed admitted.  *See* Local Rule 56.1(c).

159.     Between about March 13, 2017, and April 3, 2017, Rain communicated with Matvil to negotiate the renewal of Matvil's license to Rain's programming.  Those communications included a discussion of whether the Referral Agreement was a breach of the Rain-Matvil licensing agreement. Rain concluded that Matvil was likely not violating the Rain-Matvil licensing agreement and on or about March 30, 2017, Rain and Matvil renewed the License.  *See* Sindeeva Dec. ¶¶ 19-23.

<u>Plaintiffs' Response</u>:  Admitted.

160.     Defendants did not pressure anyone at Matvil to terminate its relationship with Actava.   (Skrynnyk Aff. ¶¶ 20, 27; Skrynnyk 12/19 Tr. 28-29; Skrynnyk 4/21 Tr. 128:16-21; 151:3-52:19; Shprekher Dec. ¶ 59; Koshkin Dec. ¶¶ 22-23; Kan Dec. ¶¶ 20-21; Sindeeva Dec. ¶¶ 28-29; Panfilova Decl ¶¶ 19-20).

<u>Plaintiffs' Response</u>:  Disputed. Matvil was forced to terminate its relationship with Actava as a direct result from pressure from Defendants. Pls. Ex. 1 (Second Tsoutiev Dec., ¶¶ 49, 52-55); ███████████████████████████████████████████



*See also* Plaintiffs' Additional Material Facts ¶¶ 296-306.

**Defendants' Reply**: The secret telephone recordings are inadmissible evidence. *See* Fed. R. Civ. P. 56(c)(2), Fed. R. Evid. 901(a).  Actava presents no facts that specifically controvert the facts in Paragraph 160 and the facts in Paragraph 160 should be deemed admitted.  *See* Local Rule 56.1(c).

161.    Matvil terminated Actava for business reasons, including reputational damage by its association with Actava.  (Skrynnyk 4/21 Tr. at 89:9-20).

Plaintiffs' Response: Disputed. Matvil terminated its business relationship with Actava as the result of pressure and interference from Defendants and for fear of being penalized for doing business with Actava.  Pls. Ex. 1 (Second Tsoutiev Dec., ¶¶ 49, 52-55);

*See also* Plaintiffs' Additional Material Facts ¶¶ 296-306.

**Defendants' Reply**: The secret telephone recordings are inadmissible evidence. *See* Fed. R. Civ. P. 56(c)(2), Fed. R. Evid. 901(a). Actava presents no facts that specifically controvert the facts in Paragraph 161 and the facts in Paragraph 161 should be deemed admitted.  *See* Local Rule 56.1(c).

### ACTAVA AMENDS COMPLAINT TO ADD CLAIMS AGAINST KARTINA

162.    On October 4, 2018, Actava added Kartina as a defendant and added a New York Business Law § 349 claim against Kartina.  (ECF ¶ 38).

<u>Plaintiffs' Response</u>:  Admitted.

**ACTAVA WAS INVOLVED WITH DISTRIBUTING MATVIL'S STREAMING IN 2016**

163.    Makhotin testified that Actava used an "authorization module" in Actava middleware to authenticate Matvil subscribers before they accessed an IPTV programming stream. (Makhotin Tr. 61:21-62:10, 65:17-67:19, 71:15-20,74:2-75:19).

> <u>Plaintiffs' Response</u>:  Disputed as incomplete and misleading.  Andrey Makhotin testified that Actava used a "dual authentication system" by which "no customer was able to access Matvil CDN until Matvil (i) verified the customer's information; and (ii) authorized the delivery of the stream to that user's set-top box."  Makhotin Dec., ¶ 12.

> **<u>Defendants' Reply</u>**: Actava presents no facts that specifically controvert the facts in Paragraph 163, namely that Actava authenticated customers, so the facts in Paragraph 163 should be deemed admitted.  *See* Local Rule 56.1(c).

164.    Makhotin did not submit a declaration in the Contempt Proceeding.  (*Infomir* ECF 157-62)

> <u>Plaintiffs' Response</u>:  Admitted, despite Defendants' failure to request judicial notice of the material they rely on. This alleged fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

165.    None of the Actava Contempt Declarations nor the Gilmer expert report mention Actava's middleware nor Actava's "authorization module."  (*Infomir* ECFs 157-61).

> <u>Plaintiffs' Response</u>:  Disputed as Paragraph 165 does not provide a citation to any evidence submitted with Defendants' Motion, admissible or otherwise, to support the veracity thereof. This statement is also disputed as pleadings, orders or filings from a separate, prior action, which were not produced in discovery, are not admissible evidence

in the instant action. Plaintiffs further note that Defendants have not requested judicial notice of the material relied on. This alleged fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a). Defendants also have requested judicial notice of the materials cited. (RJN Exs. 14, 15 17, 19, 22-24).

**Defendants' Reply**: Actava presents no facts that specifically controvert the facts in Paragraph 165, so the facts in Paragraph 165 should be deemed admitted. *See* Local Rule 56.1(c).

166.    The word "middleware" does not appear in any of the Actava Contempt Declarations or the Gilmer expert report.

Plaintiffs' Response: Admitted.

167.    Tsoutiev swore in his declaration that:

As explained in a separate declaration by Mikhail Gayster, Matvil does not provide [Actava] with access to its broadcast stream or Content Delivery Network ("CDN"). To the contrary, only paying Matvil subscribers obtain access to that stream, and they can only do so directly via a computer-to-computer connection between Matvil and each individual subscriber. Furthermore, a computer may only establish that connection **after it has been authenticated** as being operated by a paying Matvil subscriber.

(Dowd Dec. Ex. 11, January 12, 2017, Declaration of Rouslan Tsoutiev ¶ 22)(emphasis added).

Plaintiffs' Response:   Admitted as to the accuracy of the quotation, but Defendants' selective emphasis of Mr. Tsoutiev's testimony should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).  It is also misleading, as Andrey Makhotin testifies that Actava used a "dual authentication system" by which "[n]o customer was able to access to Matvil CDN until Matvil (i) verified the customer's information; and (ii) authorized the delivery of the stream to that user's set-top box."  (Makhotin Dec., ECF No. 369-14 at ¶ 12).

**Defendants' Reply**: Judge Moses was unable to review any testimony of Makhotin because, as Actava admits, Makhotin did not submit a declaration in the contempt proceeding. *See* Actava response to Paragraph 164. Because Actava presents no facts or admissisble evidence that specifically controvert the facts in Paragraph 167, the facts in Paragraph 167 should be deemed admitted. *See* Local Rule 56.1(c).

168.    On April 14, 15, and 16, 2021 Actava permitted inspection of the source code for the Actava middleware used during the Referral Agreement to Channel One's expert, Andrey Chechulin. (Dowd Dec. Ex. 7, April 19, 2021, Declaration of Andrey Chechulin)("Chechulin Dec.") ¶ 2.

Plaintiffs' Response:  Admitted.

169.    Chechulin's key conclusions were:

- The Actava source code reveals that Actava's middleware accessed and reused Channel One's electronic programming guides ("EPGs") and transmitted the EPGs to U.S. consumers independently of any access to Matvil content.
- The Actava source code reveals that Actava's middleware enabled the distribution of IPTV programming to U.S. consumers by combining EPGs from Channel One Russia's servers with programming streams from Matvil.
- The Actava source code reveals that Actava generated access codes that are necessary to the authentication of consumers of Russian-language television programming that originates on Matvil servers.
- The Actava source code reveals that Actava middleware was the first step in a three part process for billing U.S. consumers for programming that originated on Matvil's servers.
- The Actava source code reveals that Actava middleware collected billing information from consumers so that those consumers could access Matvil's servers for programming.
- The Actava source code reveals that Actava's middleware is necessary to the processing of credit card payments.

(Chechulin Dec.¶¶ 7-12).

Plaintiffs' Response:  Disputed; the statement is in violation of Local Rule 56.1 as it asserts numerous purported facts. Admitted that Paragraph 169 contains a summary of

Chechulin's conclusions. The veracity of the conclusions from Defendants' purported expert is disputed by the testimony of Andrey Makhotin.  *See* Makhotin Dec. (ECF No. 369-14), ¶¶ 12-15.

**Defendants' Reply**: The Makhotin Declaration (ECF 369-14) contains unauthorized and late expert testimony and therefore presents no material issues of fact.  *See* Defendants' September 17, 2021 Counterstatement of Material Facts (ECF 419), ¶¶ 276-83(describing how Actava failed to submit a timely rebuttal report to the April 19, 2021 Chechulin Declaration). Because Actava presents no facts or admissisble evidence that specifically controvert the facts in Paragraph 169, the facts in Paragraph 169 should be deemed admitted.  *See* Local Rule 56.1(c).

## ACTAVA SUES MATVIL

170.    On April 28, 2021, Actava TV sued Matvil in the Southern District of New York alleging breach of contract and unjust enrichment.  *See Actava TV, Inc. v. Matvil Corp.*, No. 1:21-cv-03027.

Plaintiffs' Response: Admitted; fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a). The institution of an action against a third party is not a material fact in the instant action.

## ECONOMIC SELF INTEREST

171.    Stopping piracy is in the Defendants' economic self-interest. By stopping or limiting piracy, licensees are able to obtain more users and, as a result, more revenue. In turn, the more revenues a licensee collect, the higher licensing fees a Broadcaster is able to charge licensees. *See* Koshkin Dec. ¶¶ 7, 18; Kan Dec. ¶¶ 6, 17; Sindeeva Dec. ¶¶ 7, 18, Panfilova Dec. ¶¶ 6, 16), Shprekher Dec. ¶¶ 28-37; *see also*, (SAC ¶ 5).

Plaintiffs' Response:  The first two sentences are disputed as immaterial to this action and Defendants' Motion, as no evidence establishes that Actava was a "pirate" during any time

period relevant to this action.  *See* Local Rule 56.1(a).  Admitted that "the more revenues

a licensee collect[s], the higher licensing fees a Broadcaster is able to charge licensees."

Otherwise disputed as misleading and incomplete. ▮▮▮▮▮▮▮▮▮▮



**Defendants' Reply**: Actava presents no facts that specifically controvert the facts in

Paragraph 171, namely that Actava authenticated customers, and the facts in Paragraph 171 should

be deemed admitted.  *See* Local Rule 56.1(c).

## PLAINTIFFS' ADDITIONAL MATERIAL FACTS

172.    Actava was a for-profit business that catered to customers of Russian-language

Internet Protocol Television ("IPTV") broadcasts, including the content offered by Joint Stock

Company "Channel One Russia Worldwide," Closed Joint Stock Company "CTC Network,"

Closed Joint Stock Company "New Channel", Limited Liability Company "Rain TV-Channel,"

Closed Joint Stock Company "DARIAL TV", and Limited Liability Company "Comedy TV"

(together, the "Defendant Channels").  (Pls. Ex. 2 (Declaration of Rouslan Tsoutiev dated

August 2, 2021 ("Tsoutiev Dec."), ¶ 2).

**Defendants' Reply**: Defendants do not dispute that Actava was a for profit business that catered to Russian-language IPTV viewers.  Defendants dispute that Actava was a legitimate business because it provided unlicensed and unauthorized programming to its customers, including programming of Broadcasters. (ECF 418-2  (December 18, 2020 and January 22, 2021 Deposition of Rouslan Tsoutiev ("Tsoutiev Tr.") at 26:2-19, 58:15-25); ECF 384 (August 2, 2021 Declaration of Alexander Shprekher ("Shprekher Decl.") ¶ 26;  July 30, 2021 Declaration of Vitaly Kan, ECF 389  ("Kan Decl.") ¶ 11, August 3, 2021 Declaration of Alexander Koshkin, ECF 388  ("Koshkin Decl.") ¶ 12,;  August 2, 2021 Declaration of Natalya Sindeeva, ECF 383 ("Sindeeva Decl.") ¶¶ 12-13, August 3, 2021 Declaration of Olga Panfilova, ECF 391 ("Panfilova Decl.") ¶ 11). Actava's expert witness, William Kerr, also admitted he did not know whether Actava paid licensing fees for content from 2010 to 2016.  (Dowd Decl. Ex. 4 (April 6, 2021 Deposition of William Kerr at 29:18-30:8)).

173.    The Defendant Channels control an assortment of television channels that are broadcast in the Russian Federation, including state-run Channel One.  (SAC., ECF No. 147, ¶ 2; Answer, ECF No. 150, ¶ 2).

**Defendants' Reply**: Undisputed.  For completeness, Defendants aver that Broadcasters also license their content for distribution outside of Russia and own all rights for the use of their content.  (Kan Decl. ¶ 6, Koshkin Decl. ¶ 7, Shprekher Decl. ¶¶ 17-18, Sindeeva Decl. ¶ 7).  Rain TV channel may also be referred to as "Dozhd," in English, which is an English transliteration of the Russian word for "rain." (Sindeeva Decl. ¶ 7).  Channel One channel may also be referred to as "Perviy," in English, which is an English transliteration of the Russian word for "First Channel." (ECF 418-47, Dowd Decl. Ex. 47 (Apr. 24, 2018 Shprekher Deposition in the *Infomir* Action at 36:16-25).)

174.    Defendant Kartina Digital GmbH ("Kartina") is a German entity that broadcasts the content of certain Defendant Channels, including that of Defendant Channel One.  (Pls. Ex. 3 (Excerpt from February 7, 2021 and February 9, 2021 Deposition of Andreas Reich ("Reich Tr.") at 109:2-4)).

**Defendants' Reply**: Disputed, though this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).  Kartina does not currently broadcast Channel One programming.  The full context of the Reich testimony indicates ███

████████████████████████.  (Plaintiffs' August 3, 2021 Rule 56.1 Statement of Undisputed Facts ("Actava SUF") ECF 369 Ex. 22 (2/9/21 Tr. of Andreas Reich at 107:5-109:4)).  ████████████████████████████████████████

██████████  (*Id*. at 34:17-22; Shprekher Decl.¶ 25).

## Kartina's Retainer of the Dunnington Law Firm

175.    Defendant Kartina retained Dunnington, Bartholow, & Miller ("Dunnington") on or around July 7, 2014 to investigate and litigate against alleged unlicensed broadcasters on behalf of the Defendant Channels. (Second Am. Compl., ECF No. 147, ¶ 26; Answer, ECF No. 150, ¶ 26; Pl. Ex. 23).

**Defendants' Reply**: Undisputed

176.    Pursuant to Kartina's Retainer Agreement, Kartina "authorized [Dunnington] to investigate and pursue legal efforts to combat unauthorized IPTV broadcasts, including commencing litigation, issuing cease and desist letters, and contacting credit card processing companies that may be facilitating infringement."  (Pls. Ex. 10 at p. 1).

**Defendants' Reply**: Undisputed

177.    Also pursuant to the Retainer Agreement, Kartina "authorized the Firm to obtain authority from Kartina's licensors of copyrighted television programs and films to commence litigation in the names of those licensors."  (Pls. Ex. 10 at p. 1).

**Defendants' Reply**: Undisputed

178.    ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████

**Defendants' Reply**: Defendants do not dispute Mr. Shprekher's testimony, though his testimony on this issue should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

179.    ███████████████████████████████████████████

█████████████████████████████████

**Defendants' Reply**: Undisputed.

180.    Kartina requested "for commercial reasons" that Kartina not be named as a plaintiff in lawsuits filed by Dunnington in the name of the Channels.  (Pls. Ex. 16 (Panfilova Dec., ¶ 15)).

**Defendants' Reply**: Disputed as misleading.  Ms. Panfilova further explained that "[t]he reason that Kartina did not wish to be named or identified is that Kartina in the past has been subjected to denial of service ("DOS") attacks by pirates that entirely shut down Kartina's ability to deliver programming to its subscribers. Additionally, Kartina's management has received threats (unrelated to defendants)."  (Pls. Ex. 16 (Panfilova Dec., ¶ 16); *See also* Reich Tr. at 85:19-86:9.

181. █████████████████████████████████████████████

████████████████████████

**Defendants' Reply**: Disputed as misleading.  Kartina World, LLP, had a licensing agreement with Channel One.  *See* Actava August 3, 2021 Rule 56.1 Statement ¶ 42; Ex. 33 (ECF 369, ECF 369-33); see also Reich Tr. at 195:12-17.  Kartina had a license to the Channel's broadcasts via Kartina World, LLP.  Reich Tr. at 194:16-20.  Nevertheless, this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

182. ███████████████████████████████████████████

█████████████

**Defendants' Reply**: Undisputed, though this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

183. ████████████████████████████████████████████

█████████████████

**Defendants' Reply**: Undisputed, though this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

184. █████████████████████████████████████████████

██████████████.  (Pls. Ex. 3 (2/9/21 Reich Tr. at 39:18 – 41:23)).

**Defendants' Reply**: Undisputed, though this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

185. ██████████████████████████████████████████████

████████████████████

**Defendants' Reply**: Disputed as misleading. The ███████████████████ determined there was insufficient evidence. (█████████████ Further, this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

186. ███████████████████████████████████

███████████████████████████████████████████████████████

████████ .

**Defendants' Reply**: Disputed as misleading. ████████████████████████

████████████████████████████ Further, this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

187. ████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████

**Defendants' Reply**:  Defendants do not dispute Mr. Reich's testimony, though this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

188. ██████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

**Defendants' Reply**:  Defendants do not dispute Mr. Reich's testimony, though this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

### Kartina's Involvement in the Prior Litigation and Instant Action

189.    Defendant Kartina was not a party to either the *Actava* Action or the *Infomir* Action.[4] Pls. Ex. 24.

**Defendants' Reply**: Undisputed, though this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

190.    Kartina funded Dunnington's representation of the Channels in the *Actava* Action. (Pls. Ex. 3 (2/7/21 Reich Tr. at 222:10).

**Defendants' Reply**: Undisputed, though this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

191.    Kartina funded Dunnington's representation of the Channels in the *Infomir* Action.  (Pls. Ex. 3 (2/7/21 Reich Tr. at 222:10).

**Defendants' Reply**: Undisputed, though this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

192.    In the *Infomir* Action, Olga Panfilova, Kartina's Deputy Director of Strategy & Business Development, testified that Kartina "has worked very closely with Dunnington since it entered the Retainer in investigating piracy of Broadcasters' content in the United States, crafting pleadings and coordinating a joint legal strategy to be pursued on behalf of the Broadcasters." (Pls. Ex. 16 (Panfilova Dec., ¶ 17)).

**Defendants' Reply**: Undisputed.

193.    ████████████████████████████████████████████████████

---

[4] The "*Actava* Action" (or the "*CTC* Action") refers to the action filed on November 4, 2015 by certain Defendant Channels (CTC Network, DARIAL, and New Channel) against Actava in the Southern District of New York (No. 15-cv-08681) (Pls. Ex. 24).  The "*Infomir* Action" refers to the action filed on February 19, 2016 by certain Defendant Channels (Joint Stock Company 'Channel One Russia Worldwide', Closed Joint Stock Company 'CTC Network', Closed Joint Stock Company 'TV DARIAL', Closed Joint Stock Company 'New Channel,' Limited Liability Company 'Rain TV-Channel,' Limited Liability Company 'Veriselintel,' Open Joint Stock Company 'ACCEPT,' and Limited Liability Company 'Comedy TV') against Actava, the Master Call Entities, and Rouslan Tsoutiev, together with other defendants in the Southern District of New York (1:16-cv-01318)  (Pls. Ex. 25).

[REDACTED]

[REDACTED]

**Defendants' Reply**: Defendants do not dispute the testimony of Mr. Reich, but aver that Ms. Panfilova directed the litigation on behalf of Kartina (Pls. Ex. 16 (Panfilova Dec., ¶ 17)) playing the role of a middleman between Dunnington and the Broadcasters. (Excerpt from May 21, 2021 and May 27, 2021 Deposition of Olga Panfilova ("Panfilova Tr.") at 207:6-22). Further, this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

194. [REDACTED]

[REDACTED]

[REDACTED]

**Defendants' Reply**: Defendants do not dispute the testimony of Mr. Reich, but aver that Ms. Panfilova directed the litigation on behalf of Kartina (Pls. Ex. 16 (Panfilova Dec., ¶ 17)) playing the role of a middleman between Dunnington and the Broadcasters. (Panfilova Tr.at 207:6-22)). Further, this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).  On Septmber 22, 2021, Judge Schofield in a case brought against another ITPV pirate of Channel One, *Joint Stock Company "Channel One Russia Worldwide" v. Russian TV Company,* Case No. 18 Civ. 2318 (S.D.N.Y.), found that Channel One "should not be precluded from enforcing its rights simply because Kartina may benefit from [the] enforcement [of Channel One's right to stop piracy]."  (RJN Ex. 1  at 14-15).

195. [REDACTED]

[REDACTED]

**Defendants' Reply**: Defendants do not dispute the testimony of Mr. Reich, but aver that

Ms. Panfilova directed the litigation on behalf of Kartina (Pls. Ex. 16 (Panfilova Dec., ¶ 17)) playing the role of a middleman between Dunnington and the Broadcasters. (Panfilova Tr.at 207:6-22)). Further, this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

196. ██████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████

197. **Defendants' Reply**: Defendants do not dispute the testimony of Mr. Reich, but aver that Ms. Panfilova directed the litigation on behalf of Kartina (Pls. Ex. 16 (Panfilova Dec., ¶ 17)) playing the role of a middleman between Dunnington and the Broadcasters. (Panfilova Tr.at 207:6-22)). Further, this fact should be disregarded as it is immaterial to the action and Defendants' Motion. See Local Rule 56.1(a). ███████████████████████████

██████████████████████████████████████████████

██████████

**Defendants' Reply**: Disputed as misleading.  In the cited portion of the transcript, Reich testified that retrospectively Kartina did not benefit from the lawsuits because Kartina had losses from them.  (████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████).  Further, this fact should be disregarded as it is immaterial to the action and Defendants' Motion. See Local Rule 56.1(a).

198. ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

**Defendants' Reply**: Defendants do not dispute Mr. Reich's testimony, though this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

199.    ████████████████████████████████

████████████████████████████████

**Defendants' Reply**: Defendants do not dispute Mr. Reich's testimony, though this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

200.    ████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

██████████

**Defendants' Reply**: Defendants do not dispute Mr. Reich's testimony, though this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

201.    ████████████████████████████████

████████████████████████████████████

**Defendants' Reply**: Defendants do not dispute the testimony of Mr. Reich, but aver that Ms. Panfilova directed the litigation on behalf of Kartina (Pls. Ex. 16 (Panfilova Dec., ¶ 17)) playing the role of a middleman between Dunnington and the Broadcasters. (Panfilova Tr.at 207:6-22)). Further, this fact should be disregarded as it is immaterial to the action and Defendants' Motion. See Local Rule 56.1(a).

**Reich's Meetings with Rouslan Tsoutiev**

202.    In Spring 2016, Reich and Mr. Tsoutiev conducted a CEO to CEO business meeting in Wiesbaden, Germany (the "Wiesbaden Meeting") to discuss the *Infomir* and *Actava* Actions.  (Pls. Ex. 3 (2/9/21 Reich Tr. at 202:13-17; Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 17)).

**Defendants' Reply**: Defendants' do not dipsute that a meeting took place, though this fact should be disregarded as it is immaterial to the action and Defendants' motion nor pleaded by Actava.  *See* Local Rule 56.1(a); Second Amended Complaint (ECF 147).

203.    ███████████████████████████████████

████████████████████████████████████████████

██████████████████████████

**Defendants' Reply**: Disputed as misleading in that Mr. Reich testified that Tsoutiev did not ask about the financing of the litigation.  Reich Tr. at 203:23-204:19.  The Wiesbaden Meeting was requested by Rouslan Tsoutiev primarily as part of Mr. Tsoutiev's effort to resolve Actava's problem of needing to find a way to continue to provide Russian TV programming to Actava's customers who had already paid for the service while Actava was enjoined from doing so.  October 1, 2021 Declaration of Andreas Reich, ("Reich Decl.") ¶¶ 6-8.  Further, the fact should be disregarded as it is immaterial to the action and Defendants' motion nor pleaded by Actava.  *See* Local Rule 56.1(a); Second Amended Complaint (ECF 147).

204.    ███████████████████████████████████

████████████████████████████████████████████

**Defendants' Reply**: Disputed as misleading in that Mr. Reich testified that Tsoutiev asked if he could sell Kartina's Russian TV programming service provided by as a Kartina dealer.  While Mr. Reich considered this arrangment, he did not offer Mr. Tsoutiev any terms

regarding the potential arrangement and it soon appeared that Actava lost interest in the opportunity and entered into secret negotiations with Matvil. Reich Decl. ¶¶ 9-11. Further, the fact should be disregarded as it is immaterial to the action and Defendants' motion nor pleaded by Actava. *See* Local Rule 56.1(a); Second Amended Complaint (ECF 147).

205. ████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

**Defendants' Reply**: Defendants' do not dipsute that a meeting took place, though this fact should be disregarded as it is immaterial to the action and Defendants' motion nor pleaded by Actava. *See* Local Rule 56.1(a); Second Amended Complaint (ECF 147).

206. ████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████

**Defendants' Reply**: Undisputed, though this fact should be disregarded as it is immaterial to the action and Defendants' motion nor pleaded by Actava. *See* Local Rule 56.1(a); Second Amended Complaint (ECF 147).

207. At the Weisbaden Meeting, Mr. Tsoutiev told Mr. Reich of his desire to settle the the *Infomir* Action as soon as possible and to restart its set-top Internet Protocol Television business in the Russian ethnic markets in the United States on an unquestionably legal basis. Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 18).

**Defendants' Reply**: Undisputed, though this fact should be disregarded as it is immaterial to the action and Defendants' motion nor pleaded by Actava. *See* Local Rule 56.1(a); Second Amended Complaint (ECF 147).

208.    At the Weisbaden Meeting, Mr. Reich stated words of sympathy to Mr. Tsoutiev, and Actava, and confided that Kartina had been recently in a similar situation, as Kartina had been sued in Germany by some of the Channels for copyright infringement and even faced criminal proceedings, which included the German police conducting searches of Kartina's offices and records.  Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 18).

**Defendants' Reply**:  Tsoutiev's charaterizations of what Mr. Reich may have stated at the Wiesbaden Meeting are inadmissible evidence. *See* Fed. R. Civ. P. 56(c)(2), Fed. R. Evid. 802 and 901(a).   Because Actava presents no admissable evidence the supports the statements in Paragraph 208, it should be disregarded.  *See* Local Rule 56.1(d).  Disputed as misleading.  The Wiesbaden Meeting was requested by Rouslan Tsoutiev primarily as part of Mr. Tsoutiev's effort to resolve Actava's problem of needing to find a way to continue to provide Russian TV programming to Actava's customers who had already paid for the service while Actava was enjoined from doing so.  Reich Decl. ¶¶ 6-8).  Further, this fact should be disregarded as it is immaterial to the action and Defendants' motion nor pleaded by Actava.  *See* Local Rule 56.1(a); Second Amended Complaint (ECF 147).

209.    At the Weisbaden Meeting, Mr. Tsoutiev asked Mr. Reich directly if he or Kartina participated or had anything to do with the *Infomir* Acton in any way. Mr. Reich flatly denied that Kartina was in any way involved in the *Infomir* Action.  Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 19).

**Defendants' Reply**: Disputed.  Mr. Reich testified that Mr. Tsoutiev never asked whether Kartina was paying for the lawsuit.  Reich Tr. at 203:23-204:19.  Further, this fact should be disregarded as it is immaterial to the action and Defendants' motion nor pleaded by Actava.  *See* Local Rule 56.1(a); Second Amended Complaint (ECF 147).

210.    At the Weisbaden Meeting, Mr. Reich advised Mr. Tsoutiev that Actava should settle the claims against it in the *Infomir* Action as soon as possible.  Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 19).

**Defendants' Reply**: Tsoutiev's charaterizations of what Mr. Reich may have stated at the Wiesbaden Meeting are inadmissible evidence. *See* Fed. R. Civ. P. 56(c)(2), Fed. R. Evid. 802 and 901(a).  Because Actava presents no admissable evidence the supports the statements in Paragraph 210, it should be disregarded.  *See* Local Rule 56.1(d). Mr. Reich testified that he did not remember whether he advised Mr. Tsoutiev to settle.  Reich Tr. at 204:2-205:2.  This fact should be disregarded as it is immaterial to the action and Defendants' motion nor pleaded by Actava.  *See* Local Rule 56.1(a); Second Amended Complaint (ECF 147).

211.    At the Weisbaden Meeting, Mr. Tsoutiev revealed to Mr. Reich Actava's and Mr. Tsoutiev's desire to avoid litigation in general and with the Channels in particular. Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 19).

**Defendants' Reply**: Undisputed, though this fact should be disregarded as it is immaterial to the action and Defendants' motion nor pleaded by Actava.  *See* Local Rule 56.1(a); Second Amended Complaint (ECF 147).

212.    At the Weisbaden Meeting, Mr. Reich suggested to Mr. Tsoutiev that Actava should sign up United States customers for Kartina's service by becoming a "dealer" or sales agent for Kartina.  Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 20).

**Defendants' Reply**: Tsoutiev's charaterizations of what Mr. Reich may have stated at the Wiesbaden Meeting are inadmissible evidence. *See* Fed. R. Civ. P. 56(c)(2), Fed. R. Evid. 802 and 901(a).  Because Actava presents no admissable evidence the supports the statements in Paragraph 212, it should be disregarded.  *See* Local Rule 56.1(d).Disputed as misleading in that

Mr. Reich testified that Tsoutiev asked if he could sell Kartina's Russian TV programming service provided by as a Kartina dealer. While Mr. Reich considered this arrangment, he did not offer Mr. Tsoutiev any terms regarding the potential attangement and it soon appeared that Actava lost interest in the opportunity and entered into secret negotiations with Matvil. Reich Decl. ¶¶ 9-11). Further, the fact should be disregarded as it is immaterial to the action and Defendants' motion nor pleaded by Actava. *See* Local Rule 56.1(a); Second Amended Complaint (ECF 147).

213.    At the Weisbaden Meeting, Mr. Reich showed excitement at the prospect of Actava bringing its customers to Kartina, and suggested financial terms, offering that Kartina's share of each subscriber's monthly payment would be $23, and that Actava's share would be between $4 and $6 per subscriber. Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 20).

**Defendants' Reply**: Tsoutiev's charaterizations of what Mr. Reich may have stated at the Wiesbaden Meeting are inadmissible evidence. *See* Fed. R. Civ. P. 56(c)(2), Fed. R. Evid. 802 and 901(a). Because Actava presents no admissable evidence the supports the statements in Paragraph 213, it should be disregarded. *See* Local Rule 56.1(d). Disputed as misleading in that Mr. Reich testified thatTsoutiev asked if he could sell Kartina's Russian TV programming service provided by as a Kartina dealer. While Mr. Reich considered this arrangment, he did not offer Mr. Tsoutiev any terms regarding the potential attangement and it soon appeared that Actava lost interest in the opportunity and entered into secret negotiations with Matvil. Reich Decl. ¶¶ 9-11). Further, the fact should be disregarded as it is immaterial to the action and Defendants' motion nor pleaded by Actava. *See* Local Rule 56.1(a); Second Amended Complaint (ECF 147).

214.    Actava did not pursue Mr. Reich's suggestion that Actava should sign up United

States customers for Kartina's service by becoming a "dealer" or sales agent for Kartina.  Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 20).

215.  **Defendants' Reply**: Disputed as misleading in that Mr. Reich testified that Tsoutiev asked if he could sell Kartina's Russian TV programming service provided by as a Kartina dealer.  While Mr. Reich considered this arrangment, he did not offer Mr. Tsoutiev any terms regarding the potential attangement and it soon appeared that Actava lost interest in the opportunity and entered into secret negotiations with Matvil.  Reich Decl. ¶¶ 9-11).  Further, the fact should be disregarded as it is immaterial to the action and Defendants' motion nor pleaded by Actava.  *See* Local Rule 56.1(a); Second Amended Complaint (ECF 147).  In early March 2016, Mr. Tsoutiev on behalf of Actava arranged with Mr. Reich on behalf of Kartina for Actava to purchase 500 of Kartina's set-top boxes in order to provide Actava's customers with Kartina's TV services. Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 22).

**Defendants' Reply**: Disputed.  Reich testified that Kartina sold Actava 500 of its set top boxes.  Reich Tr. at 206:10-13.  But when asked if the sale was to provide Actava's customers with Kartina's services, Mr. Reich testified that Kartina probably sold the boxes to Actava because Actava was out of its own boxes.  *Id.* at 206:14-22.  He went on to testify that Kartina would sell its boxes to anyone who wanted to buy them.  *Id.* at 211:7-10.  When asked whether the boxes were preloaded with the Kartina TV app, Mr. Reich testified that they were but that he understood that Actava deleted that app and loaded its own.  *Id.* at 211:16-212:10.  This fact should be disregarded as it is immaterial to the action and Defendants' motion nor pleaded by Actava.  *See* Local Rule 56.1(a); Second Amended Complaint (ECF 147).

216.  Kartina's agent personally delivered the 500 set-top boxes to Actava's headquarters in New York, and also offered an additional 500 set-top boxes.  Pls. Ex. 1 (Second

Tsoutiev Dec., ¶ 22).

**Defendants' Reply:** Undisputed, though this fact should be disregarded as it is immaterial to the action and Defendants' motion nor pleaded by Actava.  See Local Rule 56.1(a); Second Amended Complaint (ECF 147).

217.    Kartina shipped another 500 set top boxes to Actava without Actava ordering or agreeing to pay for them, and Actava shipped the 500 additional set top boxes back to Kartina. Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 22).

**Defendants' Reply**: Undisputed, though this fact should be disregarded as it is immaterial to the action and Defendants' motion nor pleaded by Actava.  *See* Local Rule 56.1(a); Second Amended Complaint (ECF 147).

218.    In April of 2016, Mr. Tsoutiev met with Mr. Reich in New York (the "Second Meeting").  Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 23).

**Defendants' Reply**: Undisputed, though this fact should be disregarded as it is immaterial to the action and Defendants' motion nor pleaded by Actava.  *See* Local Rule 56.1(a); Second Amended Complaint (ECF 147).

219.    During the Second Meeting, Mr. Tsoutiev admitted to Mr. Reich that Actava was keen to resume its business as swiftly as possible on an unquestionably legal basis.  Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 23)

**Defendants' Reply**: Disputed. ███████████████████████████

████████████████████████████████████████████████

████████████████ This fact should be disregarded as it is immaterial to the action and Defendants' motion nor pleaded by Actava.  *See* Local Rule 56.1(a); Second Amended Complaint (ECF 147).

220.    During the Second Meeting, Mr. Reich suggested to Mr. Tsoutiev that the two of them should talk more about doing business together after Actava had settled the claims against it. Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 23).

**Defendants' Reply**: Disputed. 

 This fact should be disregarded as it is immaterial to the action and Defendants' motion nor pleaded by Actava.  *See* Local Rule 56.1(a); Second Amended Complaint (ECF 147).

### Settlement and Injunctions

221.    On April 23, 2016, the Actava Parties and the Defendant Channels executed a Settlement Agreement to "fully and finally resolve the claims between them" in the *CTC* and *Infomir* Actions (together, the "Prior Litigations"). (Dowd Dec., Ex. 1).

**Defendants' Reply**: Undisputed.

222.    The Actava Parties agreed to settle the *CTC* and *Infomir* Actions for ████████ (Dowd Dec., Ex. 1).

**Defendants' Reply**: Undisputed, though the Settlement Agreement included other contractual obligations for Actava.  (Settlement Agreement (Dowd Dec., Ex. 1; ECF 381-1) ¶¶ 4, 6).

223.    ████████████████████████████████████████████████████████████████

**Defendants' Reply**: Undisputed.

224.    On June 3, 2016, and June 6, 2016, Magistrate Judge Barbara Moses and Judge George Daniels of the Southern District entered Stipulated Injunctions and terminated each of the actions brought by the Channels against Actava. SAC ECF No. 147, ¶ 35; Answer, ECF No. 150, ¶ 35.

**Defendants' Reply**: Undisputed.

225.    The Clerk of the Southern District entered Judgment terminating the actions as to the Actava Parties.  (Pls. Ex. 17) (*Infomir* ECF No. 76).

<u>**Defendants' Reply**</u>: Undisputed.

226.    The Stipulated Injunctions do not define the term "broadcasting."  SAC, ECF No. 147, ¶ 36; Answer, ECF No. 150, ¶ 36.

<u>**Defendants' Reply**</u>: Undisputed.

227.    The Stipulated Injunctions do not define the term "re-broadcasting". SAC, ECF No. 147, ¶ 36; Answer, ECF No. 150, ¶ 36.

**Defendants' Reply**: Undisputed.

228.    The Stipulated Injunctions do not define the terms "transmitting." SAC, ECF No. 147, ¶ 36; Answer, ECF No. 150, ¶ 36.

<u>**Defendants' Reply**</u>: Undisputed.

229.    The Stipulated Injunctions do not define the term "infringing."  SAC, ECF No. 147, ¶ 36; Answer, ECF No. 150, ¶ 36.

<u>**Defendants' Reply**</u>: Undisputed.

230.    The Stipulated Injunctions do not define the term "authorization."  SAC, ECF No. 147, ¶ 36; Answer, ECF No. 150, ¶ 36.

**Defendants' Reply**: Undisputed.

231.    Moreover, "Broadcasts or "Marks" are not defined, except "as identified in Annex 1" of the Injunctions (the "Annexes"), which list the English names of the Channels' television channels and feature colorized visual logos associated with those channels.  SAC, ECF No. 147, ¶ 37; Answer, ECF No. 150, ¶ 37.

**Defendants' Reply**: Undisputed.

### Matvil and Actava Negotiate and Sign the Referral Agreement

232.    The September 7, 2016 License Agreement between Channel One and Matvil does not prohibit Matvil from using dealers to advertise or sell subscriptions to its service. (Shprekher Dec., Ex. 4 (ECF No. 384-4)).

**Defendants' Reply**: Disputed, though this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a). ███████████████████████ ██████████████████████████████████████ (September 16, 2021 Declaration of Peter Blehm, ECF 407 ("Blehm Decl.") ¶¶ 8-28).  At the contempt motion oral argument, Judge Moses stated: "But Mr. Butterfield, let me say this again, [Actava is] not a standard dealer. You are a dealer, your client is a dealer which has an injunction in force that it has to comply with. So what Tom or Dick or Harry could do as a dealer may not be coextensive with what you can do as a dealer."  (Dowd Decl. Ex. 17 (April 24, 2017 Contempt Motion Oral Argument Tr. at 41:1-6)). Further, Channel One must approve marketing by Matvil.  Article 1.4 of the Channel One/Matvil License states: ██████████████████████████ ██████████████████████████████████████████ ████████████████████████████ (Actava SUF Ex. 34 (Channel One/Matvil License); Actava SUF Ex. 35 (12/16/20 Tr. of Alexander Shprekher) at 126:16-25)).

233.    Section 1(b) of the Referral Agreement provides that "[Matvil] hereby engages [Actava] to provide and perform the services set forth in this sub-paragraph [(b)]. . . and [Actava] hereby accept the engagement."  (Dowd Dec. Ex. 8, ¶ 1(b)).

**Defendants' Reply**: Undisputed.

234.    Section 1(b)(i) of the Referral Agreement provides that "[Actava] shall diligently promote [Matvil's] Service Offerings for the benefit of [Matvil] and [Actava].  [Actava] shall create, enlarge and exploit the marketplace through sales, special events, fieldwork, meetings and/or other customary means of promotion."  (Dowd Dec. Ex. 8, ¶ 1(b)(i)).

**Defendants' Reply**: Undisputed.

235.    Section 1(b)(ii) of the Referral Agreement provides that "[Actava] shall sell [Matvil's] IPTV services to customers (i.e., sign up customers) and register customers to the Broadcaster's site / database…."  ((Dowd Dec. Ex. 8, ¶ 1(b)(ii)).

**Defendants' Reply**: Undisputed.

236.    In Section 1(f)(i) of the Referral Agreement, Matvil represented and warranted "that it is under no contractual or other restrictions or obligations that are inconsistent with the execution of this Agreement or that prohibit [Matvil] from covenanting to and/or performing all the terms of this Agreement."  (Dowd Dec. Ex. 8, ¶ 1(f)(i)).

**Defendants' Reply**: Defendants do not dispute the text of what Matvil represented and warranted in the Referral Agreement.

237.    In Section 1(f)(ii) of the Referral Agreement, Matvil represented and warranted that "it is fully licensed to transmit, broadcast, display, and otherwise use all channels, programs, content, and other materials (including, without limitation, all third party trademarks, logos, and names) constituting or comprising the Service Offerings."  (Dowd Dec. Ex. 8, ¶ 1(f)(ii)).

**Defendants' Reply**: Defendants do not dispute the text of what Matvil represented and

warranted in the Referral Agreement.

238. ███████████████████████████████████

████████████████████████████████████████████████

███████████

**Defendants' Reply**: Defendants do not dispute Skrynnyk's testimony though this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a). Defendants aver that this fact omits the technical integration of the Matvil-Actava services. Defendants aver that Actava's responsibility also included authenticating referred customers by reprogramming Actava's legacy middleware to connect to Matvil's content delivery networks or CDNs. (Actava SUF Ex. 14, (Makhotin Decl. ¶ 11; Dowd. Decl. Ex. 5 Makhotin Tr.at 69:2-11). Actava also provided an electronic programming guide for the programming. (Actava SUF Ex. 41, Chechulin Decl., ¶¶ 13-18). Advertising of the Matvil platform that mentions Channel One also requires Channel One approval. (Actava SUF Ex. 34 Channel One/Matvil License ¶ 1.4; Actava SUF Ex. 35, Shprekher Tr. at 126:16-25). Finally,

████████████████████████████████████████████████

███████ (Blehm Decl. ¶¶ 27-28)

239. ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

**Defendants' Reply**: Defendants do not dispute Skrynnyk's testimony though this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a). Defendants aver that this fact omits the technical integration of the Matvil-Actava services. Actava's responsibility also included authenticating referred customers by

reprogramming Actava's legacy middleware to connect to Matvil's content delivery networks or

CDNs.  (Actava SUF Ex. 14, (Makhotin Decl. ¶ 11; Dowd. Decl. Ex. 5 Makhotin Tr.at 69:2-11).

Actava also provided an electronic programming guide for the programming.  (Actava SUF Ex.

41, Chechulin Decl., ¶¶ 13-18).  Advertising of the Matvil platform that mentions Channel One

also requires Channel One approval.  (Actava SUF Ex. 34 Channel One/Matvil License ¶ 1.4;

Actava SUF Ex. 35, Shprekher Tr. at 126:16-25).  Finally, ███████████████████████████

██████████████████████████████████████.  (Blehm Decl. ¶¶ 27-28)

240.    ██████████████████████████████████████

████████████████████████████████████████████

**Defendants' Reply**: Undisputed, though this fact should be disregarded as it is

immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

241.    ██████████████████████████████████████

████████████████████████████████████████████

████████████████

**Defendants' Reply**: Defendants do not dispute Skrynnyk's testimony, though this fact

should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule

56.1(a).  Defendants aver ████████████████████████████████████████

████████████████████████  (Blehm Decl. ¶¶ 9-28).  Counsel to Actava objected to Channel

One's only question to Skrynnyk about the use of Actava's middleware in distributing Matvil

programming, so Defendants have been unable to question Matvil about this relationship.  (Ex.

36 (4/27/21 Tr. of Mykola Skrynnyk at 142:4-150:9)).

**The Parties' Authorized Dealer Relationships**

242. ████████████████████████████████████████████

████████████████████████████████████

**Defendants' Reply**: Defendants do not dispute that Kartina has approximately 600

dealers around the world. ████████████████████████████████

████████████████████████████████ Reich Tr. at 22:4-6, Blehm Decl. ¶ 8). ████████

████████████████████████████ (Blehm Decl.¶¶ 14-18).

243. ████████████████████████████████████████████

████████████████████████

**Defendants' Reply**: Kartina does not dispute that its dealers ████████████████

████ Kartina avers ████████████████████████████████████████████.

(Blehm Decl. ¶¶ 9-12).

244. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

**Defendants' Reply**:  Defendants do not use dispute the text of Mr. Shprekher's

testimony.  Defendants aver that Mr. Shprekher testified ████████████████████████

████████████████████████████████████ ECF 404-5 (12/16/20 Tr. of

Alexander Shprekher at 72:19-22)). Mr. Shprekher further testified that ████████████

████████████████████████████ (*Id*. at 73:15-17).

**Defendants' Decision to Pursue Actava**

245. ████████████████████████████████████████████

████████████████████████

**Defendants' Reply**: Undisputed

246. ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

**Defendants' Reply**: Undisputed as to the text of the email.

247. ██████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████

**Defendants' Reply**: Undisputed as to the text of the email.

248. ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

**Defendants' Reply**: Undisputed as to the text of the email.

249. ██████████████████████████████████

████████████████████████████████████████

██████████████████████████

**Defendants' Reply**: Undisputed as to the text of the email.

████████████████████████████████████████

██████████████████████████████

█████████████████████████████

███████████████████████████████

████████████████████████

**Defendants' Reply**: Undisputed as to the text of the email.

251.    Actava was not Matvil's sublicensee.  (Pls. Ex. 1; Second Tsoutiev Dec., ¶ 29).

**Defendants' Reply**: Disputed.  A sublicensee is a legal conclusion that is improper to include in a statement of facts.  *See* Local Rule 56.1(a).

252.    ███████████████████████

████████████████████████████

███████████████████████

**Defendants' Reply**: Undisputed as to the text of the email.  Though Broadcasters, including Channel One, took no legal action against Actava until December 13, 2016.  (Second Am. Compl., ECF No. 147, ¶ 8); Answer, ECF No. 150, ¶ 8).

253.    ████████████████████████

████████████████████████████

█████████████

**Defendants' Reply**: Undisputed.  Though, Mr. Shrepkher corresponded with Matvil's Gayster to try to understand the relationship between Matvil and Actava in September and October 2016. (Shprekher Dec. Ex. 8 (ECF No. 384-08)).

254.    ████████████████████████

████████████████████████████

████████

**Defendants' Reply**: Undisputed.  Though Broadcasters, including Channel One, took no legal action against Actava until December 13, 2016.  (Second Am. Compl., ECF No. 147, ¶ 8); Answer, ECF No. 150, ¶ 8).

255.  ██████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████

**Defendants' Reply**: Disputed as misleading.  Mr. Shprekher's complete testimony shows that by "actions" he meant the actions of Broadcasters' attorneys.  (Pls. Ex. 5, Shprekher Tr. at 103:2-104:16).  Further, Broadcasters, including Channel One, took no legal action against Actava until December 13, 2016.  (Second Am. Compl., ECF No. 147, ¶ 8); Answer, ECF No. 150, ¶ 8).

256.    The Defendant Channels did not take legal action against Matvil in connection with the Referral Agreement.  (Pls. Ex. 5, Shprekher Tr. at 103:6-14; Pls. Ex. 18, Koshkin Tr. at 32:15-18).

**Defendants' Reply**: Undisputed.

257.    The Defendant Channels did not otherwise penalize Matvil in connection with the Referral Agreement.  (Pls. Ex. 5, Shprekher Tr. at 102:20 - 103:14; Pls'. Ex. 18, Koshkin Tr. at 32:15-18).

**Defendants' Reply**: Undisputed.  Though this fact should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

258.  ██████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████

**Defendants' Reply**: Undisputed.

259. ██████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████

**Defendants' Reply**: ████████████████████████████████████████

████████████████ Plaintiffs also did not submit  a copy of the "nearly identical email" to

support this counterstatement.

260. █████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████

**Defendants' Reply**: Defendants do not dispute the text of Gayster's email to Mr.

Shrprekher.

261. █████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

**Defendants' Reply**: Defendants do not dispute the text of Gayster's email, though the

fact should be disregarded as it is immaterial to the action and Defendants' motion.  *See* Local

Rule 56.1(a).  Gayster's understanding of Kartina's dealer relationships is also innacurate.  ████

██████████████████████████████████████████████████████████.  (Blehm

Decl.  ¶¶ 8-28).  At the contempt motion oral argument, Judge Moses stated: "But Mr.

Butterfield, let me say this again, [Actava is] not a standard dealer. You are a dealer, your client

is a dealer which has an injunction in force that it has to comply with. So what Tom or Dick or

Harry could do as a dealer may not be coextensive with what you can do as a dealer." (Dowd

Decl. Ex. 17 (April 24, 2017 Contempt Motion Oral Argument Tr. at 41:1-6)). Further, Channel

One must approve marketing by Matvil. Article 1.4 of the Channel One/Matvil License states:

██████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████ (Actava SUF Ex. 34 (Channel One/Matvil License);

Actava SUF Ex. 35 (12/16/20 Tr. of Alexander Shprekher) at 126:16-25)).

262.    ████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████

**Defendants' Reply**: Undisputed as to the text of the email.

263.    ████████████████████████████████████████

█████████████████████████████████

**Defendants' Reply**: Undisputed.

264.    ██████████████████████████████████████████

████████████████████████████████████

**Defendants' Reply**: Defendants do not dispute that ███████████████████

█████████████████████████████ Though the fact should be

disregarded as it is immaterial to the action and Defendants' motion. *See* Local Rule 56.1(a).

265.    ████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

**Defendants' Reply**: Undisputed as to the text of the email.

266.     ████████████████████████████████████

████████████████████████████████████████

██████████████████████████

**Defendants' Reply**: Undisputed.

267.     ████████████████████████████████████████

██████████████

**Defendants' Reply**: Undisputed.

268.     █████████████████████████████████████

████████████████████████████

**Defendants' Reply**: Undisputed, though the fact should be disregarded as it is immaterial to the action and Defendants' motion.  *See* Local Rule 56.1(a). Actava's counsel expressly forbid Dunnington from disclosing the contents of the Referral Agreement to Broadcasters or anyone associated with Dunnington's clients.  *See* November 18, 2016 email from Actava's former counsel to Dunnington:

> Further to this matter, and in response to your letter of November 14, Actava is willing to make the Referral Agreement available to you and your colleagues for in-person inspection. By agreement with Matvil, **Actava will not make the Referral Agreement available for copying or transmission, and the specific details of the Referral Agreement may not be disclosed to your clients or anyone associated with your clients**.

(ECF 381-27 at 2)

269.     ████████████████████████████████████████

████████████████████████████████████

**Defendants' Reply**: Undisputed, though the fact should be disregarded as it is immaterial to the action and Defendants' motion.  *See* Local Rule 56.1(a).  Actava expressly forbid Dunnington from disclosing the contents of the Referral Agreement to any Broadcaster, including Channel One.  *See* November 18, 2016 email from Actava's former counsel to Dunnington (ECF 381-27 at 2).

270. ███████████████████████████████████████

████████████████████████████████

**Defendants' Reply**: Undisputed, though the fact should be disregarded as it is immaterial to the action and Defendants' motion.  *See* Local Rule 56.1(a).  Actava expressly forbid Dunnington from disclosing the contents of the Referral Agreement to any Broadcaster, including Rain.  *See* November 18, 2016 email from Actava's former counsel to Dunnington. (ECF No. 381-27 at 2).

271. ███████████████████████████████████████

██████████████████████████████████

**Defendants' Reply**: Undisputed, though the fact should be disregarded as it is immaterial to the action and Defendants' motion.  *See* Local Rule 56.1(a).  Actava expressly forbid Dunnington from disclosing the contents of the Referral Agreement to any Broadcaster, including CTC.  *See* November 18, 2016 email from Actava's former counsel to Dunnington. (ECF No. 381-27 at 2).

272. Dunnington did not examine the Referral Agreement before filing for contempt. *See* Dec. of Jonathan A. Malki, Esq. (Dowd Dec., Ex. 28 (ECF No. 381-28)).

**Defendants' Reply**: Disputed as misleading.  Actava, through its counsel, Jonathan A. Malki, Esq., did not provide for reasonable or ethical inspection of the Referral Agreement.  *See*

November 18, 2016 email from Actava's former counsel to Dunnington. (ECF No. 381-27 at 2); N.Y. Rules of Prof. Conduct R.3.4.

273.    Dunnington was counsel for all Defendants when filing for contempt. Dec. of Raymond Dowd, Esq. (Krimnus Aff., Ex. F (ECF No. 373-06), ¶ 1; Pls. Ex. 3 (2/9/21 Reich Tr. at 223:1-13).

**Defendants' Reply**: Undisputed.

274.    On December 13, 2016, the Defendant Channels moved for contempt against the Actava Parties in the *Infomir* Action, alleging that the Actava Parties violated the Injunction entered in that action. (SAC, ECF No. 147, ¶ 8; Answer, ECF No. 150, ¶ 8).

**Defendants' Reply**: Undisputed.

275.    In the Contempt Proceeding, the Defendants acknowledged that after sending the Actava Parties the Notice of Breach, they "discovered that there were Russian-language advertisements for Actava offering Russian-language television," purportedly identifying certain Channels by name. (Pls. Ex. 6, p. 7).

**Defendants' Reply**: Undisputed

276.    ███████████████████████████████████████

████████████████████████████████████████████████

███████

**Defendants' Reply**: Disputed regarding the characterization "to the exclusion of Matvil." Mr. Reich testified that Kartina wanted exclusive rights to Rain TV because it was a very popular channel and having it in Kartina's channel lineup would help attract customers. Reich Tr. at 162:12-163:13. The fact should be disregarded as it is immaterial to the action and Defendants' motion. *See* Local Rule 56.1(a).

277.    ████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████

**Defendants' Reply**: Undisputed, though the fact should be disregarded as it is immaterial to the action and Defendants' motion. *See* Local Rule 56.1(a).

278.  ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

**Defendants' Reply**: Undisputed, though the fact should be disregarded as it is immaterial to the action and Defendants' motion. *See* Local Rule 56.1(a).

279.  ███████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

**Defendants' Reply**: Undisputed, though the fact should be disregarded as it is immaterial to the action and Defendants' motion. *See* Local Rule 56.1(a).

280.  ███████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████

**Defendants' Reply**: Undisputed, though the fact should be disregarded as it is immaterial to the action and Defendants' motion. *See* Local Rule 56.1(a).

281.  ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

**Defendants' Reply**: Undisputed, though the fact should be disregarded as it is immaterial to the action and Defendants' motion.  *See* Local Rule 56.1(a).

282.    On January 5, 2018, Olga Panfilova of Kartina e-mailed Raymond Dowd of Dunnington in connection with a company called "Russian TV", stating that Andreas Reich "asked me how it could happen that I was not able to achieve such quick results within more than a couple of years and one illegal company was able to do such harm to Matvil."  (Pls. Ex. 21).

**Defendants' Reply**: Undisputed, though the should be disregarded as it is immaterial to the action and Defendants' motion.  *See* Local Rule 56.1(a).

### Defendants' Related 2016 Investigation into Infomir

283.    ███████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████

**Defendants' Reply**: Undisputed.  The fact should be disregarded as it is immaterial to the action and Defendants' motion.  *See* Local Rule 56.1(a).

284.    ████████████████████████████████████
████████████████████████████████

**Defendants' Reply**: Undisputed.  The fact should be disregarded as its is immaterial to the action and Defendants' motion.  *See* Local Rule 56.1(a).

285.    ████████████████████████████████████
████████████████████████████████████████████████
██

**Defendants' Reply**: Undisputed. The fact should be disregarded as its is immaterial to the action and Defendants' motion. *See* Local Rule 56.1(a).

286.

**Defendants' Reply**: Undisputed. The fact should be disregarded as its is immaterial to the action and Defendants' motion. *See* Local Rule 56.1(a).

287.

**Defendants' Reply**: Undisputed. The fact should be disregarded as its is immaterial to the action and Defendants' motion. *See* Local Rule 56.1(a).

288.    On September 26, 2019, Magistrate Judge Barbara Moses held that Channel One, CTC, New Channel, Rain TV, Comedy TV, and DARIAL (the Plaintiffs in *Infomir*), "[t]hrough their investigator and counsel . . . made numerous false statements of fact (many under oath), about the [Infomir] Wireshark Investigation, the ESI evidencing that investigation, and their discovery compliance…." (Pls. Ex. 22 (*Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, 16-CV-1318 (GBD) (BCM), 2019 WL 4727537, at *21-28 (S.D.N.Y. Sep. 26, 2019) (The "September 26, 2019 Sanctions Opinion").

**Defendants' Reply**: Undisputed. The fact should be disregarded as its is immaterial to the action and Defendants' motion. *See* Local Rule 56.1(a).

289.    In the September 26, 2019 Sanctions Opinion, Judge Moses determined that "[t]hese statements, taken together, formed a near-constant stream of factual misdirection…."

(Pls. Ex. 22 at p. 20).

**Defendants' Reply**: Undisputed.  The fact should be disregarded as its is immaterial to the action and Defendants' motion.  *See* Local Rule 56.1(a).

290.    In the September 26, 2019 Sanctions Opinion, Judge Moses determined that "these statements were made so cavalierly, with so little regard for counsel's duties of candor and diligence, as to rise to the level of bad faith."  (Pls. Ex. 22 at p. 20).

**Defendants' Reply**: Undisputed.  The fact should be disregarded as its is immaterial to the action and Defendants' motion.  *See* Local Rule 56.1(a).

291.    ████████████████████████████████████████

████████████████████████████████████████████████

**Defendants' Reply**: Disputed.  The transcript of the Reich deposition at at page 177 lines 3-9 of the Reich transcriptcontains an error.  October 1, 2021 Declaration of Andreas Reich ("Reich Decl.") ¶ 12; October 5, 2021 Declaration of Serge Krimnus ("Krimnus Decl.") ¶¶ 3-7, and Exs. 1 and 2. Riech did not testify that Kartina provided false information regarding Actava's streaming to Dunnington.  Reich Decl. ¶ 12; Krimnus Decl. ¶¶ 5-7 and Exs 1 and 2. The Reich Tr. at page 177, line 7 does not accurately reflect Reich's testimony as demombrated by the video recording of the deposition.  Reich Decl. ¶ 12; Krimnus Decl. ¶¶ 5-7 and Exs 1 and 2.  .Specifically, Reich never said the word yes and the interpreter never said yes in English in response to the question at Reich Tr. page 177, lines 3-6.  Krimnus Decl. ¶¶ 5-7 and Exs 1 and 2

### Judge Moses' Denial of the Contempt Motion

292.    On September 27, 2017, Judge Moses denied the Defendant Channels' contempt motion. (Dowd Dec., Ex. 10 (ECF No. 381-10)).

**Defendants' Reply**: Undisputed. Though Judge Moses made clear that Broadcasters'

arguments in favor of contempt against Actava had "some force."  (ECF 381-10 at 23).

293.    Judge Moses stated in her September 27, 2017 Opinion that "[a]dvertising and promoting Matvil's service, whether on the Website or the radio," does not violate the provision of the Injunction that prohibits "'[b]roadcsting, re-broadcasting, or otherwise transmitting' [Defendant Channels'] Broadcasts (that is, their Channels) 'without authorization'."  (Dowd Dec., Ex. 10 (ECF No. 381-10), at p. 22).

**Defendants' Reply**: Undisputed.

294.    Judge Moses stated in her September 27, 2017 Opinion that "Nor is Actava in contempt merely by redirecting customers from its Website to the Matvil website, where they can sign up for Matvil's service or download the Matvil app, so long as it is Matvil, not Actava, that delivers plaintiffs' content through its own servers, using its own software, and authenticates the customers through its own website." (Dowd Dec., Ex. 10 (ECF No. 381-10), at p. 22).

**Defendants' Reply**: Undisputed

295.    Judge Moses' Order "respectfully directed" the Clerk of the Court "to close [the Contempt Proceedings]."  (Dowd Dec., Ex. 10 (ECF No. 381-10), at p. 30).

**Defendants' Reply**: Undisputed.

296.    Defendants did not appeal Judge Moses' ruling.  (Second Tsoutiev Dec. at ¶ 43).

**Defendants' Reply**: Undisputed

### Effect of Defendants' Conduct and Damage to Actava

297.    Mr. Tsoutiev had multiple telephone conversations with Matvil representatives in late 2018, after Actava filed its lawsuit.  (Pls. Ex. 9, Skrynnyk Tr. at 120:23 – 121:4).

**Defendants' Reply**: Undisputed.

298.    ██████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████

**Defendants' Reply**: The secret telephone recordings are inadmissible evidence. *See* Fed. R. Civ. P. 56(c)(2), Fed. R. Evid. 901(a).  Because Actava presents no admissable evidence the supports the statements in Paragraph 298, it should be disregarded.  *See* Local Rule 56.1(d).  It is undipsuted that Matvil's president testified that Matvil's statements to Actava about pressure from Broadcasters were a "business tactic"  (¶ 153 *Supra*).  The evidence should also be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

299.   ██████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

**Defendants' Reply**: The secret telephone recordings are inadmissible evidence. *See* Fed. R. Civ. P. 56(c)(2), Fed. R. Evid. 901(a).  Because Actava presents no admissable evidence the supports the statements in Paragraph 299, it should be disregarded.  *See* Local Rule 56.1(d).  It is undipsuted that Matvil's president testified that Matvil's statements to Actava about pressure from Broadcasters were a "business tactic"  (¶ 153 *Supra*).  The evidence should also be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

300.   ██████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████

**Defendants' Reply**: The secret telephone recordings are inadmissible evidence. *See* Fed.

R. Civ. P. 56(c)(2), Fed. R. Evid. 901(a).  Because Actava presents no admissible evidence the

supports the statements in Paragraph 300, it should be disregarded.  *See* Local Rule 56.1(d).  The

evidence should also be disregarded as it is immaterial to the action and Defendants' Motion. *See*

Local Rule 56.1(a).

301.  ███████████████████████████████████

██████████████████████████████████████████

████████████████████████████

**Defendants' Reply**: The secret telephone recordings are inadmissible evidence. *See* Fed.

R. Civ. P. 56(c)(2), Fed. R. Evid. 901(a).  Because Actava presents no admissible evidence the

supports the statements in Paragraph 301, it should be disregarded.  *See* Local Rule 56.1(d).  It is

undipsuted that Matvil's president testified that Matvil's statements to Actava about pressure

from Broadcasters were a "business tactic"  (¶ 153 *Supra*).  The evidence should also be

disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

302.  ███████████████████████████████████

██████████████████████████████████████████

██████████

**Defendants' Reply**: The secret telephone recordings are inadmissible evidence. *See* Fed.

R. Civ. P. 56(c)(2), Fed. R. Evid. 901(a).  Because Actava presents no admissible evidence the

supports the statements in Paragraph 302, it should be disregarded.  *See* Local Rule 56.1(d).  It is

undipsuted that Matvil's president testified that Matvil's statements to Actava about pressure

from Broadcasters were a "business tactic"  (¶ 153 *Supra*).  The evidence should also be

disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

303.  ███████████████████████████████████

███████████████████████████████████████████████

███

**<u>Defendants' Reply</u>**: The secret telephone recordings are inadmissible evidence. *See* Fed.
R. Civ. P. 56(c)(2), Fed. R. Evid. 901(a).  Because Actava presents no admissable evidence the
supports the statements in Paragraph 303, it should be disregarded.  *See* Local Rule 56.1(d).  The
evidence should also be disregarded as it is immaterial to the action and Defendants' Motion. *See*
Local Rule 56.1(a).

    304.    ████████████████████████████████████

███████████████████████████████████████

████████████████████

**<u>Defendants' Reply</u>**: The secret telephone recordings are inadmissible evidence. *See* Fed.
R. Civ. P. 56(c)(2), Fed. R. Evid 901(a).  Mr. Skrynnyk's testimony is also inadmissible hearsay.
Because Actava presents no admissable evidence the supports the statements in Paragraph 304, it
should be disregarded.  *See* Local Rule 56.1(d).  The evidence should also be disregarded as it is
immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

    305.    ███████████████████████████████████

█████████████████████████████████████████

██████████████████████████████

**<u>Defendants' Reply</u>**: Undisputed, though this fact should be disregarded as it is
immaterial to the action and Defendants' Motion. *See* Local Rule 56.1(a).

    306.    On October 1, 2018, Skrynnyk e-mailed Tsoutiev, stating that "our company now
has a serious problem.  We received a complaint from one of the central channels which has been
our counterparty for many years.  The TV channel refuses to extend the contract with us, citing

the fact that they have reliable information that we are a party to the lawsuit that you filed . . .
According to information at our disposal, other counterparties that we have are discussing our
participation in your lawsuit and reprisals against us." (Pls. Ex. 25).

**Defendants' Reply**: Undisputed.

307.  ███████████████████████████████████████████

███████████████████████████████

**Defendants' Reply**: The secret telephone recordings are inadmissible evidence. *See* Fed.
R. Civ. P. 56(c)(2), Fed. R. Evid. 901(a).  Because Actava presents no admissable evidence the
supports the statements in Paragraph 307, it should be disregarded.  *See* Local Rule 56.1(d). This
staement should also be disregarded as it is immaterial to the action and Defendants' Motion. *See*
Local Rule 56.1(a).  It is undisputed that Matvil's president testified that Matvil's statements to
Actava about pressure from Broadcasters were a "business tactic"  (¶ 153 *Supra*).  The evidence
should also be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local
Rule 56.1(a).

308.    In the Failed Contempt Proceeding, the Channels claimed that it was a contempt
of court for Actava to say the name of any of the Channels to actual or prospective customers.
(Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 40)).

**Defendants' Reply**: Undisputed.  Defendants aver that in response to a question during
oral arugment before Judge Moses, Actava's counsel could cite no authority stating audio
references to Broadcasters marks did not violate the injunctions.  (April 24, 2017 Tr. at 40:1-
42:19).

309.    As a result, Actava's CEO Ross Tsoutiev was forced to instruct Actava's
customer sales and service personnel not to say the name of any of the Channels to actual or

prospective customers while the Failed Contempt Proceeding was pending.  (Pls. Ex. 1 (Second

Tsoutiev Dec., ¶ 41)).

**<u>Defendants' Reply</u>**: Undisputed, though Paragraph 41 of the Second Tsoutiev

Declaration proffers inadmissible evidence.  *See* Fed. R. Civ. P. 56(c)(2). Further, this fact

should be disregarded as it is immaterial to the action and Defendants' Motion. *See* Local Rule

56.1(a).

310.    When actual or prospecitve customers of customers asked Actava sales and

service representatives what television channels were included in the Matvil service that Actava

was selling, Actava could not answer except to say "whatever channels Matvil offers, you will

receive."  (Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 42)).

**<u>Defendants' Reply</u>**: Undisputed, though Paragraph 42 of the Second Tsoutiev

Declaration proffers inadmissible hearsay evidence.  *See* Fed. R. Civ. P. 56(c)(2).  Tsoutiev also

does not cite to any evidence of what was said between customers and Actava sales and service

representatives.  Because Actava presents no admissable evidence the supports the statements in

Paragraph 310, it should be disregarded.  *See* Local Rule 56.1(d).

311.    As a result. customers became confused, expressing bewilderment at the inability

of Actava's customer service representatives to answer the basic question of what services

Actava was selling.  (Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 42)).

**<u>Defendants' Reply</u>**: Paragraph 42 of the Second Tsoutiev Declaration proffers

inadmissible hearsay evidence.  *See* Fed. R. Civ. P. 56(c)(2).  Tsoutiev cites to zero evidence in

support of his conclusory declaration about customer confusion, including the source of the

quoted statements.  Because Actava presents no admissable evidence that supports the statements

in Paragraph 311, it should be disregarded.  *See* Local Rule 56.1(d).

312.    The resulting confusion damaged Actava's ability to sell subscriptions to consumers.  (Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 42)).

**Defendants' Reply**: Paragraph 42 of the Second Tsoutiev Declaration proffers inadmissible evidence.  *See* Fed. R. Civ. P. 56(c)(2).  Tsoutiev cites to zero evidence in support of his conclusory declarations.  Because Actava presents no admissable evidence the supports the statements in Paragraph 312, it should be disregarded.  *See* Local Rule 56.1(d).

313.    Mr. Tsoutiev testifies that the "Failed Contempt Proceeding caused an enormous disruption to Actava's business, which could not continue as usual.  I had to devote my and Actava's time and energy to fighting the Channels, rather than growing the business, and Actava was now plunged into a period of uncertainty.  The Defendants also named the Master Call entities, and me personally, in addition to Actava, creating substantial risks to all of my businesses and my livelihood.  Therefore, due to Defendants' actions, Actava had to suspend advertising Matvil's IPTV services." (Pls. Ex. 1 (Second Tsoutiev Dec., ¶ 46)).

**Defendants' Reply**:  Undisputed that the quoted statement appears in Paragraph 46 of the Tsoutiev dclaration.  However, it is undisputed that the Mastercall entities were involved with Tsoutiev's piracy.  *See* Paragraph 17 above, Plaintiffs' admitting Mastercall purchased server space.  *See also* reply to Paragraph 34 above  (describing a WHOIS registration showing that Mastercall Corporation registered the Actava website domain on June 24, 2010).

314.    Plaintiffs' damages expert, William Kerr, prepared a 62-page expert report in which he wrote that the Failed Contempt Proceeding caused Actava to suffer ███████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████  Therefore, total damages amount to

$9.26 million."  (Pls. Ex. 24 at p. 20, ¶ 66).

    **Defendants' Reply**: Defendants do no dispute the quotations from Kerr's report.  Kerr

admitted during his depostion that ████████████████████████████████████

████████████████████████████████████████████████████

████████████  Defendants' rebuttal expert, Mark Gottlieb CPA, submitted a detailed expert

report on March 5, 2021 explaining Kerr's methodological errors.  (October 5, 2021 Dowd. Decl.

Ex. 1.  ("Gottlieb Rpt.").████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████.

Dated: October 5, 2021                          Respectfully Submitted,

                                    By:    /s/ Erik Dykema

                                           Serge Krimnus, Esq.
                                           Andrew Bochner, Esq.
                                           Erik Dykema, Esq.
                                           Michael Gabriel, Esq.
                                           **Bochner IP, PLLC**
                                           295 Madison Avenue
                                           12th Floor
                                           New York, New York 10017
                                           (646) 971-0685
                                           *Attorneys for Defendants*
                                           *CTC Network, New Channel, Rain, TV*
                                           *Darial, Comedy TV, and Kartina*




                                           DUNNINGTON BARTHOLOW & MILLER
                                           LLP
                                           *Attorneys for Defendant Channel One*


                                    By:    /s/ Raymond J. Dowd

                                           Raymond J. Dowd, Esq.
                                           Hardin P. Rowley, Esq.
                                           230 Park Avenue, 21st Floor
                                           New York, New York 10169
                                           Telephone: 212-682-8811
                                           Facsimile: 212-661-7769
                                           RDowd@dunnington.com
                                           HRowley@dunnington.com