USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: ____________
DATE FILED: 3/15/2023

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**ACTAVA TV, INC., ET AL.,**

**Plaintiffs,**

**-against-**

**JOINT STOCK COMPANY "CHANNEL ONE RUSSIA WORLDWIDE," ET AL.,**

**Defendants.**

**18-cv-06626 (ALC)**

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Pending before the Court is Defendants' motion to exclude Plaintiffs' expert testimony (the "Motion" or "*Daubert* Motion"), ECF No. 496. Also pending before the Court is Defendants' motion to take judicial notice, ECF No. 498, filed in connection with their *Daubert* Motion. For the following reasons, Defendant's motion to take judicial notice is **GRANTED**, and Defendant's *Daubert* Motion is **DENIED in part** and **GRANTED in part**.

## BACKGROUND

### I. Procedural Background

On August 3, 2021, Plaintiffs[1] moved for summary judgment to dismiss Defendants' Counterclaims. ECF Nos. 367, 368, 369. Defendants[2] also moved for summary judgment on that same day. ECF Nos. 379, 392, 393. The parties filed their opposition briefs on September 17, 2021, and their reply briefs on October 5, 2021. In Plaintiffs' opposition to Defendants' motion for summary judgment, Plaintiffs cited to their damages expert, Dr. William O. Kerr, who prepared an expert report "demonstrating the Actava Parties' entitlement to $9.26 million in damages." ECF No.

[1] Actava TV, Inc., Master Call Communications, Inc., Master Call Corporation, and Rouslan Tsoutiev.
[2] Joint Stock Company "Channel One Russia Worldwide" ("Channel One") Closed Joint Stock Company "CTC Network," Closed Joint Stock Company "New Channel," Limited Liability Company "Rain TV," Closed Joint Stock Company "TV DARIAL," Limited Liability Company "Comedy TV" (collectively "Broadcasters") and with Kartina Digital GmbH ("Kartina") "Defendants."

408 at 16. On February 28, 2022, several months after summary judgment briefing had ended, Defendants sought leave from the Court to file their *Daubert* Motion to exclude Dr. Kerr's report (the "Kerr Expert Report[3]"), and his proposed testimony. ECF Nos. 484, 486.

On March 31, 2022 the Court explained that "based on the parties' letters, the anticipated *Daubert* motion implicates evidence submitted with the pending motions for summary judgment." *See* ECF No. 493. As such, the Court granted the Defendants' request to file a *Daubert* motion and denied the parties' motions for summary judgment with leave to renew upon the Court's decision on the *Daubert* Motion. *Id*. On April 8, 2022, Defendants filed their *Daubert* Motion, ECF No. 496, and their Memorandum in Support of the Motion to Exclude Plaintiffs' Expert Testimony. ECF 501. Defendants also filed a motion to take judicial notice. ECF No. 498. On April 22, 2022, Plaintiffs filed their opposition brief, ("Opp."). ECF No. 507. On April 29, Defendants filed their reply memorandum ("Reply"). ECF No. 512. The *Daubert* Motion is deemed fully briefed.[4] After careful consideration, Defendants' *Daubert* Motion is **DENIED in part** and **GRANTED in part.**

## II. Factual Background

The Court assumes the readers' familiarity with the facts that led to this action, as set forth in its September 18, 2019 Opinion and Order denying Defendants' Motion to Dismiss. *See Actava TV, Inc. v. Joint Stock Co. "Channel One Russia Worldwide"*, 412 F. Supp. 3d 338, 344 (S.D.N.Y. 2019), ECF No. 121. The Court will focus on the facts surrounding Defendants' instant Motion.

---

[3] The Kerr Expert Report is attached as Exhibit 3 to the Declaration of Erik Dykema ("Dykema Decl."), ECF No. 499-3. The Kerr Expert Report was authored by both William Kerr and Deepa Sundararaman. However, Ms. Sundararaman was not deposed in this action and Plaintiffs seek only to have Dr. Kerr's testimony at trial.

[4] The parties also filed motions to file certain exhibits and briefs under seal. The Court resolves these pending letter motions in a separate order.

Plaintiffs engaged Dr. William O. Kerr as an expert in this matter to determine the amount of damages suffered by Plaintiffs as a result of Defendants' alleged tortious conduct and breach of a settlement agreement by the Broadcaster Defendants. Dr. Kerr was retained solely to provide an assessment and calculation of damages resulting from Plaintiffs' claims against Defendants. Dr. Kerr is an economist and a Managing Director at Berkeley Research Group, LLC ("BRG"). Kerr Expert Report ¶ 3.

The Kerr Expert Report and its exhibits were submitted on January 25, 2021 and a second "Reply Report"[5] was served on March 26, 2021. Dr. Kerr was deposed on April 6 and April 9, 2021 (the "Kerr Dep.").[6]

**A. Dr. Kerr's Expert Report on Damages**

In his report, Dr. Kerr concludes that Actava suffered lost-profit damages in the amount of $9,257,264. *See* Kerr Expert Report ¶ 10. Specifically, Dr. Kerr computes the profits Actava would have continued to earn through its relationship with Matvil Corp. ("Matvil") had Defendants not allegedly interrupted Actava's business operation. Dr. Kerr explains that making Plaintiffs "whole would require compensation for past losses as well as an amount sufficient to cover the ongoing lost value of the business, represented by reasonably expected future losses." *Id*. Dr. Kerr's damages calculations consist of $3,860,573 for "Past Damages"—the profits Actava would have earned in the period running from the first month after the contempt proceedings were filed by Defendants to issuance of Dr. Kerr's report (January 2017 through December 31, 2020)—and $5,396,691 for "Future Damages" —the profits Actava would have earned following issuance of Dr. Kerr's report

[5] The Reply Report was filed as Exhibit 4 to the Dykema Decl. ECF No. 499-4.

[6] Dr. Kerr's deposition transcript was filed as Exhibit 5 to the Dykema Decl. ECF No. 499-5.

to 2023, adjusted for risk and the time value money using a 25% discount rate. *Id.* ¶¶ 10, 31–33, n. 42.

To determine Actava's lost profits, Dr. Kerr "analyzed the likely success (in terms of revenues) …. and subtracted from revenues, the amount of incremental costs necessary to achieve those revenues . . . and any actual profits earned during the damages period." *Id.* ¶ 30. To calculate revenues, Dr. Kerr explains that he needed to calculate the number of "but-for subscriptions" — subscriptions Actava would have referred to Matvil absent Defendants' alleged misconduct. *Id*. Dr. Kerr determined "it is reasonable to pattern the growth of Actava's but-for subscriber base on the success it had in previously attracting subscribers." *Id.* ¶ 38. To pattern this growth, Dr. Kerr performed a "time-series regression" analysis of Actava's historical performance in obtaining subscriptions from 2011-2016. *Id*. ¶ 39; Ex. 4.

Dr. Kerr concludes that this analysis demonstrated a trend of growth of 165 subscribers per month for a period of 55 months. *Id.* ¶ 48. For the remainder of the damages period, Dr. Kerr applied an "annual rate of 9%, based on contemporaneous Matvil and industry projections." *Id*. ¶ 48. Dr. Kerr explained that this industry data showed a range in estimated annual growth rates of 8.9% to 21%. *Id*., ¶ 48 n. 52. After determining the approximate "but-for subscriptions," Dr. Kerr then calculated the prices that would be charged monthly to the "but-for subscribers" and the costs spent on these "but-for subscribers." According to Plaintiffs, Dr. Kerr relied on "Actava's financial records and interviews with Actava personnel, who will testify at trial, to determine the growth of 'but-for subscriptions' as well as to determine but-for revenues and but-for costs." Opp. at 15; *See also* Kerr Expert Report, ¶¶ 35, 38–39, 55–56, 59–63 (citing Actava's historical expenditures, financial records, and "explanatory phone communications."). Plaintiffs also argue that Dr. Kerr relies on data

from the market in determining, as well as confirming the accuracy of, his projections. *See* Kerr Expert Report ¶ 41 (citing United States OTT Market (2020-2025), Mordor Intelligence), ¶ 47 (citing Kartina North American 2015-2020 Customers.xlsx), ¶ 48 (citing Mordor Intelligence report and Matvil Valuation Report for 9% growth beyond initial 55-month period).

## LEGAL STANDARD

### I. Judicial Notice

Rule 201 of the Federal Rules of Evidence permits judicial notice of a fact that is "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably . . .questioned." *United States v. Bryant*, 402 Fed. App'x 543, 545 (2d Cir. 2010) (quoting FRE 201). Court filings in other lawsuits are "quintessential materials of which the Court may taker judicial notice." *Yencho v. Chase Home Fin. LLC*, No. 14-CV-230 NSR, 2015 WL 127721, at *1 n.1 (S.D.N.Y. Jan. 8, 2015) (citing *Rothman v. Gregor,* 220 F.3d 81, 92 (2d Cir. 2000)). "Judicial notice may encompass the status of other lawsuits in other courts and the substance of papers filed in those actions." *Johnson v. Levy*, 812 F. Supp. 2d 167, 176 (E.D.N.Y. 2011). However, when a court takes judicial notice of documents filed in other courts, it is "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Id*. at 176-77 (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767,774; *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A.,* 146 F.3d 66, 70 (2d Cir. 1998); *see also Schubert v. City of Rye*, 775 F. Supp.2d 689, 698 (S.D.N.Y. 2011).

### II. Admissibility of Expert Testimony

Admitting expert testimony is a three-step process governed by Federal Rules of Evidence ("FRE") 702 and 403. A court must conclude that (1) a witness is "qualified as an expert;" (2) the

witness's testimony is based on reliable data and methodology; and (3) the testimony will "assist the trier of fact." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005). Expert testimony may also be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Id.* (quoting FRE 403). FRE 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.
>
> FRE 702.

"It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions," and district courts enjoy broad discretion to admit expert testimony. *Nimely*, 414 F.3d at 395. There is "a presumption of admissibility of expert evidence and 'the rejection of expert testimony is the exception rather than the rule.'" *Oleg Cassini, Inc. v. Electrolux Home Prods., Inc.*, No. 11-CV-1237 (LGS)(JCF), 2014 WL 1468118, at *6 (S.D.N.Y. Apr. 15, 2014) (quoting FRE 702 advisory committee note) (internal citation omitted). However, "[t]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied," *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593 n.10 (1993)), and "the district court is the ultimate gatekeeper." *Id.* (internal citation omitted).

The court must first determine "whether a witness is 'qualified as an expert by knowledge, skill, experience, training, or education.'" *Nimely*, 414 F.3d at 396 n.11 (quoting FRE 702). This is an important inquiry because experts are "permitted substantially more leeway than 'lay witnesses

in testifying as to opinions that are not rationally based on [their] perception." *Id*. (quoting *United States v. Garcia*, 291 F.3d 127, 139 & n.8 (2d Cir. 2002)). If an expert is qualified within the meaning of FRE 702, then the Court must turn to "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Williams*, 506 F.3d at 160 (quoting *Daubert*, 509 U.S. at 597).

"In assessing reliability, 'the district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case.'" *Id*. at 160 (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002)). This list of criteria is not exhaustive, *see Wills v. Amerada Hess Corp.*, 379 F.3d 32, 48 (2d Cir. 2004), and courts may also look to whether a theory or technique has been or can be tested; whether the theory or technique has been subjected to peer review and publication; the technique's known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and whether a particular technique or theory has gained general acceptance in the relevant scientific community. *Williams*, 506 F.3d at 160 (citing *Daubert*, 509 U.S. at 593–94). Even for nonscientific evidence, "Rule [702] as amended provides that all types of expert testimony present questions of admissibility for the trial court in deciding whether the evidence is reliable and helpful." FRE. 702 advisory committee note; *See also In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 593 F.Supp.2d 549, 555 (S.D.N.Y. 2008) ("In *Kumho Tire Company v. Carmichael*, the Supreme Court held that Rule 702 imposed a basic gatekeeping obligation upon a trial judge when considering *any* expert testimony regardless of whether it involved scientific testimony.").

Finally, the Court will inquire into whether the expert's testimony will "assist the trier of fact,"—i.e., whether the testimony is relevant. *Nimely*, 414 F.3d at 397 (citing FRE 702). "We have consistently held . . . that expert testimony that 'usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it,' by definition does not 'aid the jury in making a decision'; rather, it 'undertakes to tell the jury what result to reach,' and thus 'attempts to substitute the expert's judgment for the jury's[.]'" *Id.* (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)).

As the Second Circuit has recognized, the inquiry under *Daubert* is limited, and "[a] minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible." *Amorgianos*, 303 F.3d at 267. Rather, "[t]he judge should only exclude the evidence if the flaw is large enough that the expert lacks good grounds for his or her conclusions." *Id*. at 266–67 (citation omitted) (Rule 702 and *Daubert* mandate exclusion where "an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached")."This limitation on when evidence should be excluded accords with the liberal admissibility standards of the federal rules and recognizes that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." *Id.* at 267. "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (citation omitted). At bottom, the *Daubert* analysis is intended to give the district court the discretion "needed to ensure that the courtroom door remains closed to junk science while admitting reliable expert testimony that will assist the trier of fact." *Id*.

In addition to the three requirements of Rule 702, expert testimony is also subject to FRE 403. This rule provides that testimony "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." FRE 403.

## DISCUSSION

### I. Judicial Notice

Defendants requested that this Court take judicial notice of five documents that Defendants rely on in their *Daubert* Motion.[7] ECF 498. The Court grants the Defendants' motion insofar that the Court takes judicial notice for the fact that these documents were filed in other proceedings and that the statements contained therein were made, but not for the truth of the statements.

### II. Admissibility of Dr. Kerr's Expert Testimony

### A. Dr. Kerr is a Qualified Expert

Dr. Kerr was asked by Plaintiffs to "analyze issues related to damages," and in particular, he was "asked to determine the amount of damages, if any, suffered by Plaintiffs as a result of Defendants' complained of activities, including: engaging in unfair and deceptive business practices, breach of contract, interference with Plaintiffs' legitimate business relationships and malicious prosecution." Kerr Export Report ¶ 5. Rule 702 provides that a witness may be "qualified as an expert by knowledge, skill, experience, training, or education." FRE 702. Courts in this Circuit liberally construe these requirements. *See United States v. Brown*, 776 F.2d 397, 400 (2d Cir.1985)

---

[7] Those five documents are: (1) the Affidavit of Sidney Blum dated December 9, 2019 filed in *Actava TV Inc. et al. v. Matvil Corp.,* Case No. CV-19-628938-00CL (Ontario Superior Court of Justice); (2)the Supplementary Affidavit of Sidney Blum dated April 13, 2020 filed in *Actava TV Inc. et al. v. Matvil Corp.,* Case No. CV-19-628938-00CL (Ontario Superior Court of Justice); (3) the Fresh As Amended Factum of the Applicants filed in *Actava TV Inc. et al. v. Matvil Corp.,* Case No. CV-19-628938-00CL (Ontario Superior Court of Justice); (4) the Decision of the Court of Appeal for Ontario dated October 23, 2020; and (5) the Amended Complaint [ECF 47] filed in *Actava TV, Inc., v. Matvil Corporation d/b/a eTVnet,* Case No. 21 Civ. 3027 (S.D.N.Y.).

(qualification requirements of Rule 702 "must be read in light of the liberalizing purpose of the rule"). Defendants do not contest that Dr. Kerr is sufficiently qualified as an expert. Dr. Kerr holds a Ph.D. in Economics and is an economic consultant and author, with more than 40 years of experience. *Id*. at Appendix B. His practice involves application of economic, financial and statistical methods in areas such as: valuation of intellectual property and business assets, economic policy analysis and economic damages in litigation. *Id.* The Court finds Dr. Kerr is qualified to serve as an expert.

**B. Reliability of Dr. Kerr's Expert Opinions**

Defendants argue that Dr. Kerr's expert opinions are unreliable because they contain analytical gaps, are based on undocumented hearsay, lack sufficient data, and state speculative opinions unsupported by a reliable methodology. They argue that Dr. Kerr's expert reports should be excluded in full.[8] Specifically, Defendants argue that (1) Dr. Kerr's testimony is based on inadmissible hearsay, (2) Dr. Kerr used an unreliable methodology in estimating damages, (3) Dr. Kerr's opinions lack any analytical or evidentiary foundation relating to liability or causation, and (4) that the Background Section of the Kerr Expert Report is inadmissible hearsay. However, many of these issues are better resolved by the trier of fact and go to the weight given to Dr. Kerr's opinions rather than their admissibility.

**I. Hearsay**

"Although the Rules permit experts some leeway with respect to hearsay evidence, Fed. R. Evid. 703, a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Marvel Characters, Inc. v.*

[8] Defendants argue in the alternative that if the Court sees fit to allow any of the Kerr testimony, "Paragraphs 10-13, 19-30, 32-42, 44-45, 47-48, 50, 53, 56, 59, 61-63, 65-66 should be excluded because they do not meet the *Daubert* standard." Mot. at 25.

*Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) (internal quotations omitted). Authenticated business records are admissible despite being hearsay. *See* FRE 803(6).

Defendants argue that Dr. Kerr's entire testimony is inadmissible because he relies on unauthenticated business records of Actava and third party Matvil and summary documents prepared for this litigation. Mot. at 10. Additionally, Defendants argue that Actava's employees and CEO failed to authenticate the summary documents that Dr. Kerr relied on. *Id*. at 11. Defendants assert that in addition to his reliance on summary documents and unauthenticated business records, Kerr's testimony should still be excluded because his analysis uses "figures from an IPTV piracy business to speculate about lost revenue for a lawful marketing business," and therefore this comparison has no probative value and will mislead the jury because it " conflates Actava's unlawful activities as an IPTV pirate with its purportedly legal marketing activities for Matvil." *Id*. at 11-12. Finally, Defendants argue that Dr. Kerr's opinions in the background section are inadmissible because, again, they rely on conversations with Plaintiff Tsoutiev and unauthenticated business records of Plaintiffs and Matvil.

At this time, the Court finds these arguments unavailing. Plaintiffs have indicated that Actava's corporate representative, Ms. Irna Pliss, will provide testimony authenticating business records at trial and Defendants will have the opportunity to bring up their concerns. The Court notes that these records must be authenticated at trial.

**II. Blum Affidavits**

Defendants argue that two affidavits authored by Sidney Blum, Plaintiffs' former damages expert, filed in a proceeding in Canada, act as judicial admissions that Dr. Kerr used an unreliable methodology in estimating the Plaintiffs' damages. They claim that, through Blum, Actava informally admitted that the "Yardstick Method" of measuring damages is the only method that can

reliably be used to calculate Plaintiffs' damages, and that the methodology employed by Dr. Kerr is unreliable. Mot. at 12-13. The Defendants introduced these affidavits via their motion to take judicial notice. As explained previously, the Court takes judicial notice for the fact that these documents were filed in other proceedings and that the statements contained therein were made, but not for the truth of the statements. These affidavits concern the weight to be afforded to Dr. Kerr's opinions, not their admissibility.

**III. Methodology in estimating damages**

Defendants argue that Paragraphs 44 to 49 of the Kerr Expert Report should be excluded because his simple regression analysis is unreliable under *Daubert*. Mot. at 14. As mentioned previously, Dr. Kerr used a "time series regression" in his expert Report to compute the number of subscribers Actava would have if it had continued in business. Kerr Expert Report ¶ 39. Dr. Kerr explains that this is a "a standard statistical approach commonly used by economists and financial professionals." Reply Report ¶ 12.

Defendants assert that Dr. Kerr employed a single, or "simple," linear regression because it relates one input variable (time) to one output variable (number of subscribers) and that his model "assumes that the number of subscribers Actava could sign up would increase, no matter what else was happening in the nice Russian IPTV market, and regardless of any other factors or variables." Mot. at 14-15. Defendants' main contention is that Dr. Kerr should have considered other variables in calculating subscriber growth and, therefore, damages. *Id*. at 15. Defendants cite to a number of cases that demonstrate a preference for the use of multiple regression analyses by expert witnesses. A multiple regression analysis is one that "determines the effect of two or more explanatory variables on a variable to be explained, called the dependent variable." *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 667 (S.D.N.Y. 2007). Plaintiffs assert that Dr. Kerr did consider

these other factors, "but determined, in his expert opinion, that no evidence contradicted his analysis." Opp. at 1-2.

Again, Defendants' argument goes to the weight of the expert's testimony, not to its admissibility. Defendants' concerns about the expert's methodology can be addressed during cross-examination. As explained by the Supreme Court, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

**IV. Dr. Kerr's opinions relating to liability and causation**

Defendants argue that Dr. Kerr's alleged opinions relating to liability or causation in Paragraphs 10, 65, and 66 of his Report are inadmissible and should be excluded. Mot. at 21. Defendants claim Dr. Kerr should be precluded from testifying about liability because it is improper, and he should be precluded from testifying about causation because the testimony lacks a sufficient basis. Defendants also argue that his causation of damages testimony is an end around for testimony regarding liability. In opposition, Plaintiffs argue that Kerr offers no opinion on liability or causation. *See* Opp. at 23-24. Defendants assert that "Plaintiffs' concessions warrant exclusion of the proposed testimony." Reply at 5.

The Court agrees that Dr. Kerr cannot testify as to liability.[9] However, the Court disagrees with Plaintiff's conclusory statement that Dr. Kerr does not discuss the issue of causation. In explaining the amount of alleged damages, Dr. Kerr will inherently need to refer to how the Defendants' actions caused the damages. Dr. Kerr should explain how Defendants' activities caused a significant decline in Actava's business or at least that the significant decline in business cost

[9] As an expert on damages, Dr. Kerr can assume a finding of liability. *See, e.g.*, *AngioDynamics, Inc. v. C.R. Bard, Inc.*, 537 F. Supp. 3d 273, 333 (N.D.N.Y. 2021) (it is appropriate for an expert on causation and damages to assume a finding of liability).

Actava so much money. Again, Defendants will have the opportunity to cross-examine the expert on his opinions and present contrary evidence.

**CONCLUSION**

For the foregoing reasons, Defendants' *Daubert* Motion, ECF No. 496, is **DENIED in part** and **GRANTED in part**, and Defendants' motion to take judicial notice, ECF No. 498, is **GRANTED.** Dr. Kerr cannot opine on the issue of liability.

Accordingly, the Clerk of the Court is respectfully directed to terminate ECF Nos. 496 and 498.

**SO ORDERED.**
**Dated: March 15, 2023**
**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**