UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ACTAVA TV INC., ET AL.,<br><br>        **Plaintiffs,**<br><br>-against-<br><br>JOINT STOCK COMPANY "CHANNEL ONE RUSSIA WORLDWIDE", ET AL.,<br><br>        **Defendants.** | 18-cv-06626 (ALC)<br><br>**AMENDED**<br>**OPINION AND ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

  Plaintiffs Actava TV, Inc., Master Call Communications, Inc., Master Call Corporation, and Rouslan Tsoutiev ("Plaintiffs") bring this action against Defendants Joint Stock Company "Channel One Russia Worldwide," Closed Joint Stock Company "CTC Network," Closed Joint Stock Company "New Channel," Limited Liability Company "Rain TV-Channel," Closed Joint Stock Company "TV DARIAL," Open Joint Stock Company "ACCEPT," Limited Liability Company "Comedy TV," and Kartina Digital GmbH ("Channels" or "Defendants") for malicious prosecution, tortious interference, breach of contract, and unfair competition in violation of New York state law. Defendants also filed counterclaims against Plaintiffs for tortious interference, breach of contract, and constructive fraud.[1]

  In its March 18, 2024 order, the Court granted Plaintiffs' motion for summary judgment as to all of Defendants' pleaded counterclaims and granted Defendants' motion for summary judgment only as to Plaintiffs' breach of contract claim. The Court also granted Defendants leave to amend their counterclaims to plead an additional theory of breach—articulated for the

---

[1] This Amended Opinion and Order supersedes the Court's prior Opinion and Order (ECF No. 749), which inadvertently directed the Clerk of Court to enter judgment and close this case. Under Rule 60(a), the Court may correct a clerical mistake whenever one is found in a judgment or order.

1

first time in the previous summary judgment briefing—that centered on Paragraph 4 of the Settlement Agreement between the Parties.[2]  For the reasons stated below, Plaintiffs' motion for summary judgment is **GRANTED** and Defendants' cross-motion for summary judgment is **DENIED**.

## BACKGROUND

I. **Factual Background**

The Court presumes the Parties' familiarity with its March 18, 2024 order, which recites the factual background of the case and the antecedent claims.  See ECF No. 702 ("March 18, 2024 Order").  The following facts are drawn from the Parties' 56.1 Statements and relate predominantly to Defendants' sole remaining counterclaim.

Actava was founded in 2010.  ECF No. 746 ("Pls.' 56.1 Reply") ¶ 1.  In 2013, Actava purchased certain assets from Russian Telekom Inc. ("Russian Telek"), including its hardware and platform software.  Id. ¶¶ 7–8.  Russian Telek employee Andrew Makhotin moved to Actava and became Actava's lead software engineer.  Id. ¶¶ 9, 11. Makhotin led the integration of Russian Telek's hardware and platform software into Actava's existing technological infrastructure.  Id. ¶¶ 10–11.  This integration upgraded the functionality of the Actava Website, including by enabling the website to stream television broadcasts.  Id. ¶ 12.  The integration was completed in about August 2013.  Id. ¶ 10.

From the time of the Russian Telek integration until early 2016, Actava provided its customers the ability to access streaming Russian language television broadcasts through the Actava Website.  Id. ¶ 14.  However, the Parties disagree whether the Actava Website offered the

---

[2] Defendants' Corrected Amended Counterclaim also includes the pleadings contained in its initial Counterclaim. The Court declines to reconsider judgment on any counterclaim except for the sole remaining counterclaim as to breach of contract in relation to Paragraph 4 of the Settlement Agreement.

ability to access streaming television broadcasts through its website prior to the 2013 Russian Telek integration.  *Id.* ¶¶ 2–3, 12, 14.  The Parties also disagree whether there was a single source that provided the signal and/or other data by which television broadcasts were copied and streamed through Actava's website.  *Id.* ¶ 15.

In late 2015 and early 2016, the Channels filed two separate actions against the Actava Parties.  *Id.* ¶¶ 16–17.  The Channels alleged, among other things, that the Actava Parties streamed the Channels' content through the Actava Website without a license.  *See* Compl., ECF No. 1, *Closed Joint Stock Company "CTC Network" et al v. Actava TV, Inc,* No. 15-cv-08681, (S.D.N.Y. Nov. 4, 2015) (the "*CTC* Action"),; Compl., ECF No. 1, *Joint Stock Company Channel One Russia Worldwide, et al v. Infomir LLC, et al*, No. 15-cv-01318 (S.D.N.Y. 2016) the ("*CTC* Action") (S.D.N.Y. Feb. 19, 2016).  The Actava Parties and the Channels negotiated an agreement to settle both actions.  Pls.' 56.1 Reply ¶ 19.  During the negotiations, the Actava Parties produced business and financial records to the Channels.  *Id.*  In April 2016, the Channels and the Actava Parties executed the Settlement Agreement, which "fully and finally resolve[d] the claims between them."  *Id.* ¶ 20.  The Settlement Agreement is governed by New York law.  *Id.* ¶ 21.  Kartina is not a party to the Settlement Agreement, but the Parties dispute whether Kartina is a third-party beneficiary.  *Id.* ¶¶ 57–60.

Paragraph 4 of the Settlement Agreement includes a definition of the term "Source" as "the source of the signal and/or other data (the 'Source') by which the Broadcasts were copied and streamed through the Website."  *Id.* ¶¶ 25, 27–28; 65.  Paragraph 4 requires disclosure of the Source within 24 hours of the entry of the Orders and states that "[t]he failure to provide this information shall entitle Plaintiffs to declare this Agreement void and retain the Settlement Amount as liquidated damages and seek to reinstate both the [*CTC*] and [*Infomir*] Actions."  *Id.*

3

¶¶ 25–26; 66.

On April 26, 2016, the Channels' counsel emailed the Actava Parties' counsel stating "Pursuant to our conversation, [Channels' counsel] agrees to let you know in writing within 48 hours of receipt (excluding weekends) as to whether the source information produced is satisfactory." *Id.* ¶ 33. On April 26, 2016, within 24 hours after executing the Settlement Agreement, the Actava Parties' counsel emailed the Channels' counsel and attached "sample invoices from Actava's source for 2015, 2014, and 2013. As you will see from the invoices, the name of the source is MHCOM GmbH and its address is Kuebacher Weg-1, 86154 Augsburg. Its web address is www.mhcom.eu." *Id.* ¶¶ 34–35. In their email on April 26, 2016, the Actava Parties also stated "We look forward to receiving your confirmation that this information, together with the information we previously provided, discharges our clients' obligations under Paragraph 4 of the settlement agreement." *Id.* ¶ 36.

On April 29, 2016, the Actava Parties' counsel emailed the Channels' counsel, "We are just following-up on the confirmation regarding the source information." *Id.* ¶ 37. That same day, on April 29, 2016, the Channels' counsel sent a response email, saying "[t]he information is satisfactory thank you." *Id.* ¶ 38.

The parties filed stipulated injunctions in the *CTC* and *Infomir* Actions, which prohibited Actava from engaging in any copyright or trademark infringement concerning Defendant's copyrights and trademarks, which the court entered as orders on June 3, 2016 and June 6, 2016, respectively. *Id.* ¶¶ 39–43. Upon entry of those orders, the Channels fully released the Actava Parties from "any and all claims" relating to the CTC and Infomir Actions. *Id.* ¶¶ 22, 32, 39, 43. Also, pursuant to those orders, the court entered judgment in both cases dismissing the Channels' claims against the Actava Parties "with prejudice." *Id.* ¶¶ 40, 44

4

On July 23, 2018, the Actava Parties initiated the present action against the Channels and Kartina for tortious interference and later amended their Complaint to assert claims for tortious interference, malicious prosecution, breach of contract, and deceptive trade practices. *See* ECF Nos. 1, 40, 147. Defendants responded with counterclaims for tortious interference with contractual relationships, breach of the Settlement Agreement's provisions on warranties and use of broadcasts, and constructive fraud in contract. ECF No. 150.

On February 17, 2021, after Defendants had filed their counterclaims, Channel One sent the Actava Parties a "Third Notice of Breach" of the Settlement Agreement in which it alleged that there were "other sources" that Actava "failed to identify" as required by Paragraph 4 of the Settlement Agreement. Pls.' 56.1 Reply ¶¶ 49, 51. Channel One asserted that it was "exercising its right to declare the [Settlement] Agreement void and to reinstate and pursue its [Federal Communications Act] claims" from the CTC and Infomir Actions "as counter-claims in [this] case." *Id.* ¶¶ 50, 53. On March 3, 2021, the Actava Parties responded to Channel One's Third Notice of Breach. *Id.* ¶ 54. Since then, none of the Defendants has attempted to take any action against the Actava Parties with respect to the *CTC* or *Infomir* Actions. *Id.* ¶¶ 55–56.

In 2021, and again in 2023, the parties cross-moved for summary judgment. The Actava Parties asked the Court to dismiss Defendants' counterclaims. *See* ECF No. 588. Defendants, in their opposition to the Actava Parties' motion, raised an additional theory that Actava breached Paragraph 4 of the Settlement Agreement by not disclosing additional "sources." ECF No. 646 at 19–20.

On March 18, 2024, the Court issued its order granting Plaintiffs' motion for summary judgment as to all of Defendants' pleaded counterclaims and granted Defendants' motion for summary judgment only as to Plaintiffs' breach of contract claim. *See* ECF No. 701. The Court

5

granted Defendants leave to amend their counterclaims to add their theory of breach "centering around Section 4 of the Settlement Agreement" and "with[held] judgment as to this theory of breach until receiving the benefit of more fulsome briefing." *Id.* at 33.

Defendants' breach theory arises out of information gleaned from discovery in this case in 2020. Defendants submit that the "source" information provided by Plaintiffs did not fully disclose all sources of the Broadcast as Actava had multiple sources for the television broadcasts that were copied and streamed through Actava's website. Pls.' 56.1 Reply ¶ 68. Defendants cite to testimony by Tsoutiev in which, in response to the question "What were the names of the aggregators supplying you the content?" Tsoutiev replied "The one who worked just – it was – I just recall they were based in Russia and Germany. . . . But I don't recall the name." *Id.* From this, Defendants allege that Tsoutiev testified that Actava had sources for pirated content "based in Russia and Germany[,]" which gave them the streams for Actava to broadcast, but Plaintiffs dispute this characterization of the testimony. *Id.* ¶ 69–70. Defendants also submit that Tsoutiev further testified to the existence of another source based in Ukraine that "provided the streams[,]" but Plaintiffs dispute whether Tsoutiev was asked about the sources of the signal. *Id.* ¶ 71.

## II. Procedural History

On March 18, 2024, the Court issued its Opinion and Order on the parties' summary judgment motions. ECF No. 701. On May 10, 2024, Defendants filed their Amended Counterclaims. ECF No. 724. On May 23, 2024, Defendants filed a corrected version of their Amended Counterclaims. ECF No. 725. On June 14, 2024, Plaintiffs filed their motion for summary judgment, their memorandum in support of their motion, and their Rule 56.1 statement ECF Nos. 727–29. On August 1, 2024, Defendants filed their motion for summary judgment,

6

their memorandum in support of their motion, and their response to Plaintiffs' Rule 56.1 statement. ECF Nos. 738–40. Plaintiffs filed a reply to Defendants' motion and reply to Defendants' response to Plaintiffs' 56.1 statement. ECF Nos. 745, 747. On September 19, 2024, Defendants filed their reply to Plaintiffs' motion.

## STANDARD OF REVIEW

Summary judgment is proper where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). There is no issue of material fact where the facts are irrelevant to the disposition of the matter. *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that a fact is material if it would "affect the outcome of the suit under governing law"). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). Courts may not assess credibility, nor may they decide between conflicting versions of events because those matters are reserved for the jury. *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252).

At summary judgment, the moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). "[I]n cases where the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Brady v. Town of Colchester*, 863 F.2d 205, 210–11 (2d Cir. 1988) (citations omitted). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citations omitted). "More specifically, it must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (internal citations and quotation marks omitted).

## DISCUSSION

The Parties cross-moved for summary judgment on Defendants' Amended Counterclaim alleging breach of Paragraph 4 of the Settlement Agreement. Defendants did not assert this claim in the Original Counterclaims. Rather, Defendants raised this allegation for the first time in the prior summary judgment proceedings. As a threshold matter, the Court rejects Defendants' argument that this Court's grant of leave to amend in its March 18, 2024 order constitutes an implicit judgment finding the Counterclaim to be timely. The Court specifically withheld judgment on the allegation in the prior summary judgment proceedings given the dearth of briefing as to this claim. As explained below, the Amended Counterclaim is time-barred.

The elements of a breach of contract claim are: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant,

8

and (4) damages." *Jill Stuart (Asia) LLC v. Sanei Intern. Co.*, 548 Fed. Appx. 20, 21 (2d Cir. 2013) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).  In New York, the statute of limitations for breach of contract is six years.  N.Y. C.P.L.R. § 213(2).  To successfully submit a breach claim, Defendants should have brought a claim on or before April 26, 2022, six years after Plaintiffs were required to identify all of the sources it used for the television broadcasts that were copied and streamed through the Actava website.

Having failed to have brought a claim during that timeframe, Defendants are required to show that the statute of limitations has been tolled enough to make the filing of their Amended Counterclaim timely.  Defendants argue that the statute of limitations was tolled on February 17, 2021, when Channel One sent a "Third Notice of Breach" letter to Actava.  ECF No. 743 at 12. Defendants argue that by sending the letter, "Plaintiffs were specifically put on notice that they had failed to identify other sources of Broadcasters' pirated content despite being required to do so under the Settlement."  *Id.*

Defendants cite to two cases:  *Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40 (E.D.N.Y. 2015) and *Santiago v. Agadjani*, No. 21-CV-7090, 2023 WL 8531588 (E.D.N.Y. Feb. 4, 2023) in which courts ruled that the respective claims in an amended complaint were not time-barred because the defendants had been on notice of the new claims.  However, both cases involve motions by a party for leave to amend their initial complaints.  *See Charlot*, 97 F. Supp. at 40 (adopting magistrate judge's recommendation to grant plaintiffs' motion to amend and denying relation back of certain claims); *Santiago*, WL 8531588 at *1 ("On August 23, 2022, plaintiff sought leave to file an amended Complaint. . . . For the reasons set forth below, it is respectfully recommended that plaintiff's motion to amend be granted in part and denied in part.").

*Charlot* is clear that generally "[t]he date of the filing of the motion to amend is the date the action was commenced for statute of limitations purposes since the defendant is on notice of the new claims as of the filing of the motion." *See Charlot*, 97 F. Supp. at 69 (quotiong *Lekic v. 222 E. 8th St. LLC*, No. 11-CV-1242, 2012 WL 4447625, at *4 (E.D.N.Y. Sept. 25, 2012). The "Third Notice of Breach" letter does not give Plaintiffs notice in the way that a proposed Amended Counterclaim would have provided. Indeed, in *Santiago*, the Court credited the defendants' concession that they "were on notice of the plaintiff's intention to bring the FLSA claims prior to the actual filing date of the motion to amend. Specifically, defendants say they were first put on notice of plaintiff's FLSA claims [when defense counsel] received an email from plaintiff's counsel, attaching an earlier version of a proposed amended complaint." *Santiago*, WL 8531588 at *6.

Here, the "Third Notice of Breach" does not amount to a proposed amended complaint giving notice of the new claims that Defendants seek to bring against Plaintiffs. The letter also does not contemplate that Defendants would in fact bring a Counterclaim based on Plaintiffs' alleged breach. Indeed, the letter purports that Defendants would assert additional claims stemming from the Settlement Agreement, none of which were ultimately alleged as Amended Counterclaims in this action. Pls.' 56.1 Reply ¶¶ 49–53.

Therefore, the Amended Counterclaim is untimely because it fell outside of the six-year statute of limitations on breach of contract claims. *See LiveIntent, Inc. v. Naples*, 293 F. Supp. 3d 433, 442 (S.D.N.Y. 2018).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED and Defendants' motion for summary judgment is DENIED. The remaining claims in this action shall

10

proceed. The Clerk of Court is respectfully directed to vacate its March 31, 2025 judgment (ECF No. 750) following the entry of this Amended Order and Opinion.

**SO ORDERED.**

**Dated: May 8, 2025**
      **New York, New York**

                                    **ANDREW L. CARTER, JR.**
                                    **United States District Judge**