UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

–––––––––––––––––––––––––––––––––X

Actava TV Inc., et al.                                    :                18 Civ. 6626 (ALC)

                        *Plaintiffs*,                    :

                          v.                              :

Joint Stock Company "Channel One Russia            :
Worldwide" et al.

                    *Defendants*.              :

–––––––––––––––––––––––––––––––––X

## CHANNEL ONE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW AND A NEW TRIAL UNDER FEDERAL RULES OF CIVIL PROCEDURE 50(b) AND 59

**DUNNINGTON BARTHOLOW & MILLER LLP**

Luke McGrath, Esq.
Martun Stepanyan, Esq.
230 Park Avenue, 21st Floor
New York, New York 10169
Telephone: 212-682-8811
Facsimile: 212-661-7769
LMcGrath@dunnington.com
MStepanyan@dunnington.com
*Attorneys for Defendant Channel One*

**TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT.................................................................................. 1

II.    FACTUAL BACKGROUND .................................................................................... 2

III.   LEGAL STANDARD ............................................................................................... 4

   1.  Standard for Rule 50 Generally .............................................................................4

   2.  Standard for Rule 59 Generally ............................................................................5

IV.    ARGUMENT............................................................................................................ 5

   A. RELIEF UNDER RULE 50 OR 59 IS WARRANTED BECAUSE THE EVIDENCE AT
      TRIAL DEMONSTRATED PLAINTIFFS DID INDEED VIOLATE BOTH THE
      SETTLEMENT AGREEMENT AS WELL AS THE INJUNCTION AND THEREFORE
      CHANNEL ONE COULD NOT HAVE TORTIOUSLY INTERFERED WITH
      PLAINTIFF AS A RESULT ........................................................................................5

   B. RELIEF UNDER RULE 50 IS WARRANTED ...................................................................9

   1.  The Trial Evidence Was Undisputed That Actava Never Obtained the Written
       Authorization Required Under Section 1.4 of the License Agreement to Advertise,
       Promote, or Use Channel One Content................................................................. 9

   2.  No Reasonable Jury Could Conclude that the Referral Agreement Was Lawful Where the
       Undisputed Evidence Established a Prohibited Subcontracting Arrangement and an
       Unlawful Agreement Could Not Be "Tortiously" Interfered With .................................. 10

   3.  No Reasonable Jury Could Find That Actava Complied with the Channel One Worldwide
       License Agreement Issued to Matvil Where the Evidence Established Violation of Its
       Terms Through Advertising and Promotion Before October 1, 2016............................... 12

   4.  No Reasonable Jury Could Find That Actava Was Licensed to Broadcast "Channel One"
       Content................................................................................................... 13

   5.  No Reasonable Jury Could Find Tortious Interference When Actava Violated the
       Settlement Agreement and Injunction via Transmission of Channel One Content via
       Actava's Set-Top Boxes ................................................................................ 15

   C. A NEW TRIAL IS WARRANTED UNDER RULE 59(a) BECAUSE THE VERDICT IS
      AGAINST THE WEIGHT OF THE EVIDENCE AND A MISCARRIAGE OF
      JUSTICE ...........................................................................................................17

   1.  A New Trial Is Required Because the Weight of the Evidence Shows that Channel One
       Acted Without Malice and Solely to Protect and Enforce Its Contractual and Intellectual
       Property Rights, Foreclosing Any Finding of Tortious Interference ............................... 17

2. A New Trial is Required Under Rule 59(a) Because the Weight of the Evidence Demonstrated That Channel One's Conduct Was Justified and Lawful Enforcement of the Settlement Agreement and Court-Ordered Injunctions........................................................ 18

3. A New Trial is Required Because the Jury Did Not Consider Overwhelming Evidence Demonstrating that Actava Violated the Settlement Agreement, The Injunction, and Channel One's Intellectual Property Rights........................................................................ 19

4. A New Trial is Warranted Because the Weight of the Evidence Demonstrates That Plaintiffs, Including Tsoutiev, Engaged in Pirating Channel One Content, and Channel One's Conduct Was Motivated at Least in Part by the Legitimate Protection of its Contractual and Intellectual Property Rights..................................................................... 20

5. Sustaining This Erroneous Jury Verdict Would Result in a Miscarriage of Justice Because it Would Reward Pirates for Perpetuating Their Piracy Through a Sham Agreement and Punish IP Holders for Policing Their Property Rights...................................................... 21

D. THE COURT SHOULD ENTER JUDGMENT IN CHANNEL ONE'S FAVOR BECAUSE THE UNDISPUTED EVIDENCE ESTABLISHES THAT IT SATISFIES ITS BURDEN ON AFFIRMATIVE DEFENSE NO. 9, THEREBY REQUIRING DISMISSAL OF THE TORTIOUS INTERFERENCE CLAIM...............................................................................22

1. The Settlement Agreement Expressly Incorporated the Permanent Injunctions as Exhibit C and by Cross-Reference, and Accordingly, Both Instruments Are Encompassed Within Affirmative Defense No. 9............................................................................................... 22

2. The Court Should Rule as a Matter of Law that Channel One Has Established All Facts Meeting its Burden Under Affirmative Defense No. 9 and Enter Judgment in Favor of Channel One Dismissing Tortious Interference ................................................................ 23

3. Alternatively, if the Court Declines to Enter Judgment on Affirmative Defense No. 9 in Channel One's Favor, a Judgment as a Matter of Law or, at Minimum, a New Trial is Required Under Rules 50 and 59 Because the Jury Was Not Allowed to Consider and Was Not Instructed on Affirmative Defense No. 9 ................................................................... 24

V. CONCLUSION........................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

Cases

*A.V.E.L.A., Inc. v Estate of Marilyn Monroe, LLC*,
241 F Supp 3d 461 (SDNY 2017)..................................................................................... 10

*Alexander v Stop and Shop Supermarket Co., LLC*,
2025 WL 2963184 (SDNY Oct. 21, 2025) ........................................................................ 4, 5

*Alvord and Swift v Stewart M. Muller Const. Co., Inc.*,
46 NY2d 276 (1978) ........................................................................................................ 10

*Bonilla v Lee*,
35 F Supp 3d 551 (SDNY 2014)...................................................................................... 24

*Carroll v Trump*,
590 F Supp 3d 575 (SDNY 2022)................................................................................... 23

*CDC Newburgh Inc. v. STM Bags, LLC*,
692 F. Supp. 3d 205 (S.D.N.Y. 2023) ............................................................................ 20

*Coach, Inc. v Kmart Corps.*,
756 F Supp 2d 421 (SDNY 2010).................................................................................... 24

*Don King Productions, Inc. v Smith*,
47 Fed Appx 12 (2d Cir 2002) .................................................................................... 18, 19

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006)....................................................................................................... 21

*Flatiron Acquisition Veh., LLC v CSE Mtge. LLC*,
2019 WL 1244294 (SDNY Mar. 18, 2019)....................................................................... 22

*Icahn School of Medicine at Mount Sinai v Neurocrine Biosciences, Inc.*,
191 F Supp 3d 322 (SDNY 2016)................................................................................ 10, 11

*In re Parmalat Sec. Litig.*,
375 F Supp 2d 278 (SDNY 2005)................................................................................... 11

*Ithaca Capital Investments I S.A. v Trump Panama Hotel Mgt. LLC*,
450 F Supp 3d 358 (SDNY 2020).................................................................................. 18, 19

*Kirch v. Liberty Media Corp.*,
449 F.3d 388 (2d Cir. 2006) ........................................................................................... 17

*Mathews v United States*,
485 US 58, 108 S Ct 883, 99 L Ed 2d 54 (1988) ............................................................... 24

*Medtech Prods. Inc. v. Ranir, LLC*,
596 F. Supp. 2d 778 (S.D.N.Y. 2008) ............................................................................. 17

*Mindspirit, LLC v Evalueserve Ltd.*,
470 F Supp 3d 366 (SDNY 2020)................................................................................... 23

*Muddy Bites, Inc. v Evergreen USA LLC*,
2025 WL 2662959 (SDNY Sept. 17, 2025) .................................................................... 18, 19

*My First Shades v Baby Blanket Suncare*,
914 F Supp 2d 339 (EDNY 2012) .................................................................................. 8, 13

*Oppel v. Empire Mutual Ins. Co.*,
92 F.R.D. 494 (S.D.N.Y 1981) ........................................................................................ 24

*Penguin Group (USA) Inc. v Am. Buddha*,
16 NY3d 295 (2011) ...................................................................................................... 21

*People v Zona*,
14 NY3d 488 (2010) ...................................................................................................... 24

*Raedle v. Credit Agricole Indosuez*,
670 F.3d 411 (2d Cir. 2012) ...................................................................................... 5, 19

*RFP LLC v. SCVNGR, Inc.*,
788 F. Supp. 2d 191 (S.D.N.Y. 2011) ............................................................................. 8

*Rhee-Karn v Lask*,
797 F Supp 3d 343 (SDNY 2025) .............................................................................. 5, 19

*Rojas v Theobald*,
2007 WL 2455133 (EDNY Aug. 23, 2007) ...................................................................... 4

*Scutti Enterprises, LLC. v Park Place Entertainment Corp.*,
322 F3d 211 (2d Cir 2003) ...................................................................................... 10, 12

*Strike 3 Holdings, LLC v Doe*,
24 CIV. 8974, 2024 WL 5146146 (SDNY Dec. 17, 2024) ............................................... 8

*Unicorn Crowdfunding, Inc. v New St. Enter., Inc.*,
507 F Supp 3d 547 (SDNY 2020) .................................................................................... 5

*Universal City Studios, Inc. v Reimerdes*,
111 F Supp 2d 346 (SDNY 2000) .................................................................................. 21

*YCF Trading Inc. v. Skullcandy, Inc.*,
781 F. Supp. 3d 56 (E.D.N.Y. 2025) .............................................................................. 20

## I. **PRELIMINARY STATEMENT**

This is a case best described as "Revenge of the Pirates."  In other words, this is a case where Plaintiffs have sought to extract vengeance and inflict economic pain upon the victims of their previous piracy.  Here, Plaintiffs are persons and entities they control that have previously admitted to; settled and paid a fine for pirating Channel One and Channel One Worldwide intellectual property and content.  Thereafter, it became clear that Plaintiffs had only pretended to settle, but all the while still sought to exploit the Channel One content without paying a license fee to Channel One.

Channel One and other channels sought a contempt finding in response to the new pirating activity.  That motion came up short.  Channel One then sought to police its license holders and put Plaintiffs in its rear-view mirror.  Plaintiffs however, after dodging a bullet with the contempt motion, could not leave well enough alone.

Plaintiffs asserted numerous claims including a tortious interference claim against Channel One and other intellectual property owners for policing their own property.  If such a gambit was allowed to stand – pirates suing for being caught—the result would have far-reaching impact on settled intellectual property law.

By this motion Channel One seeks to vindicate its rights and resolve once and for all this chapter of Pirates' Revenge.

1

## II.  FACTUAL BACKGROUND

1.      On April 26, 2016, Plaintiffs and other channel broadcasters, including Channel One (collectively referred to as "Channels") entered into a Settlement Agreement resolving prior disputes concerning Channels unauthorized programming by the Plaintiffs. Under the Settlement Agreement, Plaintiffs agreed that they were not presently, and would not in the future, broadcast, copy, distribute, or otherwise use the Channels, including Channel One's, broadcasts or content in any manner, including online, without Channel One's express written consent ("Settlement Agreement"). *See* Tr. Ex. 2, Settlement Agreement.

2.      The Settlement Agreement expressly incorporated permanent injunctions annexed as Exhibit C thereto and made entry of those Orders a material and binding component of the parties' obligations. The Injunction prohibited Plaintiffs and all persons acting in concert with them from (a) broadcasting, rebroadcasting, transmitting, or otherwise distributing Channel One's broadcasts through any medium, including IPTV and social media, without authorization; (b) directly or indirectly using, exploiting, or infringing Channel One's programming or trademarks without authorization; and (c) publishing or distributing any promotional materials referring to Channels' Broadcasts or Marks; in any medium ("Injunction"). *See* Tr. Ex. 2, Injunction, Ex. C.

3.      On September 7, 2016, Channel One entered into a License Agreement with Matvil granting Matvil limited rights to broadcast "Channel One Russia Worldwide" content ("Channel One Worldwide License Agreement"). *See* Tr. Ex. 9a, Channel One Worldwide License Agreement. The License expressly prohibited sublicensing. *See* Tr. Ex. 9a, Channel One Worldwide License Agreement, Section 1.5. The license strictly required Channel One's prior written approval of any advertisements, promotional or marketing materials. *See* Tr. Ex. 9a, Channel One Worldwide License Agreement, Sections 1.4. and 1.5. The effective date of Matvil

2

license was October 1, 2016. *See* Tr. Ex. 9a, Channel One Worldwide License Agreement, Annex No. 1.

4.      On September 8, 2016, Matvil and Actava entered into a Referral Agreement pursuant to which Actava used and distributed Channel One programming. *See* Tr. Ex. 86. After October 1, 2017, Actava was entitled to 75% of gross monthly profit per customer. *See* Tr. Ex. 86, Addendum, Section d), This arrangement was never disclosed to or approved by Channel One, and no promotional materials were submitted for Channel One's prior written authorization ("Referral Agreement"). *See* Tr. Ex. 86.

5.      Beginning in September 2016, Actava and Plaintiffs launched an advertising campaign through newspapers and radio ads representing that Actava was a licensed television service authorized to broadcast "Perviy" (Channel One). *See* Tr. Exs. 27, 103, 104. The promotional materials explicitly claimed the right to broadcast Channel One content. *See id.* As discussed above, the Matvil license expressly required all advertisements, promotional and marketing material to be approved in writing by Channel One in advance of publications. *See* Tr. Ex. 9a, Channel One Worldwide License Agreement, Sections 1.4. and 1.5.

6.      On or about October 13, 2016, Channel One obtained video recordings showing Actava broadcasting Channel One and Channel One Russia Worldwide programming, displaying Channel One and Channel One Russia Worldwide logos and marks, and providing both live streaming and video-on-demand services. *See* Tr. Exs. 130, 130a–c, 148.

7.      On October 19, 2016, Channel One sent Plaintiffs a written notice of suspected breach pursuant to the Settlement Agreement. *See* Tr. Ex. 88.  On October 26, 2016, Plaintiffs denied any breach of the Settlement Agreement while continuing the challenged conduct and acknowledging their arrangement with Matvil. *See* Tr. Ex. 89.

8.      On November 14, 2016, Channel One issued a final warning reiterating Plaintiffs' obligations under the Settlement Agreement and the incorporated Injunction. *See* Tr. Ex. 90.  On December 13, 2016, after Plaintiffs failed to cure their violations, Channel One filed a contempt motion seeking enforcement of the Settlement Agreement and Injunction. *See* Tr. Ex. 4.[1]

9.      On January 16, 2026, the jury returned its verdict, finding in favor of Channel One on the malicious prosecution claim but found Channel One liable on the tortious interference claim. *See* ECF 920.

### III.    **LEGAL STANDARD**

**1. Standard for Rule 50 Generally**

The judgment as a matter of law should be granted when "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it]." *Rojas v Theobald*, 02-CV-3623 DRH/MLO, 2007 WL 2455133, at *5 (EDNY Aug. 23, 2007), *affd sub nom. Rojas v Schkoda*, 319 Fed Appx 43 (2d Cir 2009).

"[I]n deciding any Rule 50 motion, a court must give deference to all credibility determinations and reasonable inferences of the jury, and may not weigh the credibility of witnesses or otherwise consider the weight of the evidence." *Alexander v Stop and Shop Supermarket Co., LLC,* 22-CV-9557 (AEK), 2025 WL 2963184, at *5 (SDNY Oct. 21, 2025).

---

[1] As a courtesy, Channel One will provide the Court with a binder of the trial exhibits cited herein along with the courtesy copy of this motion.

**2. Standard for Rule 59 Generally**

In the Second Circuit, a motion for a new trial may be granted when "the verdict is against the weight of the evidence," *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417 (2d Cir. 2012); *Rhee-Karn v Lask*, 797 F Supp 3d 343, 357 (SDNY 2025).

For a district court to order a new trial pursuant to Rule 59(a), it must conclude either that the jury "reached a seriously erroneous result" or, alternatively, that "the verdict is a miscarriage of justice." A court "should only grant such a motion when the jury's verdict is egregious," and "should rarely disturb a jury's evaluation of a witness's credibility." *Alexander v Stop and Shop Supermarket Co., LLC*, 22-CV-9557 (AEK), 2025 WL 2963184, at *6 (SDNY Oct. 21, 2025).

## IV.  ARGUMENT

**A. RELIEF UNDER RULE 50 OR 59 IS WARRANTED BECAUSE THE EVIDENCE AT TRIAL DEMONSTRATED PLAINTIFFS DID INDEED VIOLATE BOTH THE SETTLEMENT AGREEMENT AS WELL AS THE INJUNCTION AND THEREFORE CHANNEL ONE COULD NOT HAVE TORTIOUSLY INTERFERED WITH PLAINTIFF AS A RESULT**

Relief under Rule 50 or Rule 59 is warranted because the evidence at trial demonstrated Plaintiffs did indeed violate the Settlement and the Injunction and infringed on Channel One's Intellectual Property Rights, and therefore Channel One could not have Tortiously Interfered with Plaintiff as a result. "To establish tortious interference with business relations under New York law, 'the plaintiff must show that defendant's conduct was not "lawful" but "more culpable." *Unicorn Crowdfunding, Inc. v New St. Enter., Inc.*, 507 F Supp 3d 547, 566 (SDNY 2020).

Pursuant to the Settlement Agreement, "Plaintiffs are not presently and will not in the future broadcast, copy, distribute or otherwise use the Broadcasts in any manner, including on the Website, without the express written consent of the relevant Defendants or an authorized representative thereof." *See* Tr. Ex. 2, Settlement Agreement, Section 6(d)(iv). Also, pursuant to

5

the Injunction incorporated as Exhibit C to the Settlement Agreement, the Plaintiffs and "all persons acting in concert with them are prohibited from: (a) broadcasting, rebroadcasting, **transmitting, or otherwise distributing** Plaintiffs' broadcasts through any medium, including IPTV and social media, without authorization; and (b) directly or indirectly using, exploiting, or infringing Plaintiffs' broadcasts, associated programming, or trademarks without authorization." *See* Tr. Ex. 2, Injunction, Exhibit C, Sections 1(a), (b) (emphasis added).

Here, the trial evidence conclusively demonstrated that Plaintiffs violated the Settlement Agreement and the Injunction. Such evidence forecloses any finding that Channel One engaged in tortious interference. Multiple witnesses confirmed conduct expressly prohibited by Section 6(d)(iv) of the Settlement Agreement and Sections 1(a) and (b) of the Injunction:

| No. | Witness | Testimony | Cite |
|---|---|---|---|
| 1. | Rouslan Tsoutiev | Q So you knew that if you violated the injunction, the Court retained jurisdiction over you, and one of the channels may file -- one or more may file a contempt motion, right? [Tsoutiev]A Yes. | January 8 Transcript, 206:12-15 |
| 2. | Rouslan Tsoutiev | "Q. And in this letter, Actava denies that its conduct violates the injunction right? [Tsoutiev] A. Right. Q. Actava … in this letter, Actava – [Tsoutiev] A. Excuse me. We denied that we violated settlement agreement not the injunction." | January 8 Transcript, 223-25, 224:1-5 |
| 3. | Rouslan Tsoutiev | "Q. And could the customers using a set-top box receive real time programming from Actava at that time? [Tsoutiev] A. Yes." | January 9 Transcript, 364:24–25, 365:1 |
| 4. | Rouslan Tsoutiev | "Q: And then step two, the provider then processes the request, and transmits a video stream from the server to the set box for the TV of the end user; is that right? [Tsoutiev] A: That is correct." | January 9 Transcript, 313:22-25, |

| 5. | Andrew Makhotin | "Q. But after the customer was authenticated, how the data flowed was from Matvil's servers to the set-top box where it was decoded by the set-top box and then was transmitted from the set-top box to the television; is that correct? A. Yes. Yes." | January 9 Transcript, 383:3-8 |
|----|----|----|----|

Tsoutiev testified that the Injunction barred Actava from using Channel One's marks and trademarks, yet acknowledged that Actava denied only a violation of the Settlement Agreement— not the Injunction itself. *See* Tsoutiev Testimony, Jan. 8 Tr., 222:23–24; 223:25–224:5. Critically, Tsoutiev admitted that Actava's set-top box functions by "**transmitting a video stream**" from the server to the device for television viewing. *See* Tsoutiev Testimony, Jan. 9 Tr., 313:22-25 (emphasis added). Tsoutiev's testimony supports a finding that Plaintiffs engaged in conduct restricted by the Settlement Agreement and Injunction while attempting to evade its scope. Thus, testimony established that Plaintiffs transmitted Channel One content through a set-top box to televisions—i.e., an unauthorized transmittal in violation of the Settlement Agreement's and Injunction's prohibition on transmitting or distributing Plaintiffs' broadcasts through any medium, including IPTV. *See* Makhotin Testimony, Jan. 9 Tr. 383:3–8.

To make matters worse, neither Actava nor Matvil held any license whatsoever to air Channel One programming at all. *See* Section B of this Memorandum. Such conduct constitutes direct infringement and unauthorized exploitation of Channel One's intellectual property. *See* Tr. Ex. 2, Settlement Agreement, Section 6(d)(iv); Tr. Ex. 2, Injunction, Exhibit C, Sections 1(a), (b).

Moreover, Plaintiffs did not have any written authorization from Channel One whatsoever. Section 1.4. of the License Agreement between Channel One and Matvil states that "the Licensor hereby grants to the Licensee the right to promote, advertise and market the Channels in the Territory subject to Licensor's prior written approval of materials prepared for the mentioned purposes." *See* Tr. Ex. 9a, Channel One Worldwide License Agreement Section 1.4. Tsoutiev

7

expressly admitted that Actava did not have a license from Channel One. *See* Tsoutiev Testimony, Jan. 8 Tr. 195:24–25; 196:1. In light of at least five instances above, Channel One's response is *per se* lawful enforcement activity when addressed by Channel One. *See Strike 3 Holdings, LLC v Doe*, 24 CIV. 8974, 2024 WL 5146146, at *1 (SDNY Dec. 17, 2024); *My First Shades v Baby Blanket Suncare*, 914 F Supp 2d 339, 348-49 (EDNY 2012). Under New York law, "[l]itigation or the threat of litigation" constitutes wrongful means only where the claimant has no belief in the merit of the action, or where the claimant, despite some belief in its merit, proceeds in bad faith solely to harass and not to obtain adjudication. *See RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 197 (S.D.N.Y. 2011). The record here establishes the opposite. Channel One acted in response to Plaintiffs' ongoing violations of the Settlement Agreement, Injunction and its intellectual property rights. *See* Chart above. Channel One sought to prevent further unauthorized exploitation of its intellectual property. The undisputed trial evidence established Plaintiffs' violations of the Settlement Agreement and Injunction and confirmed Channel One's lawful enforcement of its intellectual property rights. Notably, because the jury expressly found in favor of Channel One on the malicious prosecution claim, it would have been impossible for a reasonable jury to reach the opposite conclusion on tortious interference arising from the same alleged conduct. Accordingly, no reasonable jury could find tortious interference, and judgment as a matter of law is warranted under Rule 50 and Rule 59.

In addition to the arguments herein, Channel One adopts, joins and incorporates herein each of the respective defenses Non-Channel One Defendants asserted at trial and in post-trial letters to this Court including but not limited to the Noerr-Pennington doctrine defense and the compulsory counterclaim defense. Channel One has joined and renews Non-Channel One Defendants' request for additional briefing on those issues. *See* ECF 931, 932. Channel One

respectfully requests the opportunity to fully brief such defenses and reserves all rights to do so at the time the Court schedules additional briefing.

## B.  RELIEF UNDER RULE 50 IS WARRANTED

### 1.  The Trial Evidence Was Undisputed That Actava Never Obtained the Written Authorization Required Under Section 1.4 of the License Agreement to Advertise, Promote, or Use Channel One Content

As detailed above, Plaintiffs lacked any prior written authorization from Channel One as required by Section 1.4 of the Channel One–Matvil License Agreement, and Tsoutiev admitted Actava had no Channel One license. He further conceded that Actava did not submit any promotional materials, scripts, or advertisements to Channel One for approval prior to publication or broadcast, acknowledging that any materials were not provided to Channel One. Tsoutiev Testimony, Jan. 9 Tr. 307:10–17. This lack of authorization was independently confirmed by Mr. Raymond Dowd, who testified unequivocally that Channel One had not approved any Actava advertising and that Actava never provided written authorization from Channel One approving any promotional materials. ("Channel One had not approved any of this advertising,", *see* Dowd Testimony, Jan. 13 Tr. 714:8–15). Because Section 1.4 conditions any promotional or advertising rights on Channel One's prior written approval, and the evidence established that no such approval existed, Actava's use and promotion of Channel One content was unauthorized as a matter of law. Actava lacked any authorization to advertise, promote, or use Channel One's content because Matvil did not have such authorization and could not authorize Actava without written approval from Channel One. *See* Tr. Ex. 9a, Channel One Worldwide License Agreement Section 1.4.  No reasonable jury could find tortious interference without such approval. Channel One never provided that written approval. Channel One was lawfully protecting and enforcing its contractual rights by seeking to prevent unauthorized promotion and use of its programming of a known pirate.

As a matter of law, Channel One could not have interfered with conduct that itself violated the Channel One Worldwide License Agreement granted to Matvil.

2. **No Reasonable Jury Could Conclude that the Referral Agreement Was Lawful Where the Undisputed Evidence Established a Prohibited Subcontracting Arrangement and an Unlawful Agreement Could Not Be "Tortiously" Interfered With**

An agreement that permits a licensee to exploit licensed rights under the direction or control of a third party constitutes an unauthorized *de facto* sublicense where the governing license prohibits sublicensing. *Icahn School of Medicine at Mount Sinai v Neurocrine Biosciences, Inc.*, 191 F Supp 3d 322, 332 (SDNY 2016). Under New York law, an absence of an enforceable or valid contract is sufficient to dismiss a claim for tortious interference with contractual relations. *See Scutti Enterprises, LLC. v Park Place Entertainment Corp.*, 322 F3d 211, 215 (2d Cir 2003); *A.V.E.L.A., Inc. v Estate of Marilyn Monroe, LLC*, 241 F Supp 3d 461, 485 (SDNY 2017). Similarly, tortious interference claims are dismissed where any interference resulted from the defendant's pursuit of "some other, lawful, purpose." *See Alvord and Swift v Stewart M. Muller Const. Co., Inc.*, 46 NY2d 276, 281 (1978).

Pursuant to the Section 1.5. of the Channel One Worldwide License Agreement, "[n]o other rights, including the ability to enter to sublicense agreements in respect to provided rights hereunder as specified directly in this Agreement, are granted to the Licensee." *See* Tr. Ex. 9a, Section 1.5. According to Addendum of Referral Agreement, "the Marketer [Actava] shall be entitled to 75 of gross monthly profit per customer. The Broadcaster [Matvil] shall be entitled to 25% of gross monthly profit per customer." *See* Tr. Ex. 86, Referral Agreement, Addendum, Section d).

The undisputed evidence established that the Referral Agreement functioned as a prohibited *de facto* sublicense. In particular:

10

1.  As per the Referral Agreement, "[t]he Marketer [Actava] shall diligently promote the Broadcaster's [Matvil] Service Offerings for the benefit of the Broadcaster and the Marketer." *See* Tr. Ex. 86, Referral Agreement, Addendum, Section d). Tsoutiev confirmed that Actava had no license from Channel One to enter into such arrangement. *See* Tsoutiev Testimony, Jan. 8 Tr. 195:24–25, 196:1.
2.  Tsoutiev also confirmed that Plaintiffs lacked Channel One's written authorization on promoting Channel One's content. *See* Tsoutiev Testimony, Jan. 9 Tr. 307:1–21.

Here, a *de facto* sublicense is unlawful as a matter of law. *See Icahn Sch. of Med. at Mount Sinai*, 191 F. Supp. 3d at 332. Section 1.5 of the License Agreement expressly barred sublicensing, and no witness testified that Channel One ever authorized any sublicense to Actava. The Referral Agreement's addendum granted Actava 75% of the gross monthly profit per customer, while Matvil retained only 25%. *See* Tr. Ex. 86, Referral Agreement, Addendum, Section d. Actava exercised substantial control over the exploitation of Channel One content— having a direct economic stake inconsistent with a mere marketing or "agent-dealer" role. *See In re Parmalat Sec. Litig.*, 375 F Supp 2d 278, 290 (SDNY 2005) (an agency relationship exists where the agent agrees to act for the principal and the **principal retains a degree of control over the agent, with control being the essential characteristic** of the relationship) (emphasis added). Notably, Dowd's testimony confirmed that Channel One's licenses categorically prohibit sublicensing and that Channel One did not grant any license permitting Matvil to sublicense Channel One rights to Actava. Dowd testified that "It couldn't be because Channel One didn't give out licenses that permitted any sublicenses. So Channel One told me we didn't give this license, and there's no way that there could be a sublicense to Actava because we don't do that. All of their form agreements bar sublicensing." *See* Dowd Testimony, Jan. 13 Tr. 715:6–15. Dowd further testified that Actava itself attempted to characterize the Referral Agreement as a sublicense, which he knew to be false given Channel One's absolute prohibition on sublicensing. Dowd testified that "Yes. They [Actava] represented to me that somehow this referral agreement acted as a sublicense, and I knew

11

that to be untrue." *See* Dowd Testimony Jan. 13 Tr. 715:17–20. In the absence of any written authorization and in light of the Referral Agreement's economic and operational structure, no reasonable jury could conclude that the Referral Agreement was lawful rather than a prohibited sublicensing arrangement.

Because the Referral Agreement was unlawful *de facto* licensing and incapable of supporting a tortious-interference claim, no reasonable jury could find liability, and Channel One is entitled to judgment as a matter of law under Rule 50.

3. **No Reasonable Jury Could Find That Actava Complied with the Channel One Worldwide License Agreement Issued to Matvil Where the Evidence Established Violation of Its Terms Through Advertising and Promotion Before October 1, 2016**

Under New York law, the absence of an enforceable or valid contract is sufficient to dismiss a claim for tortious interference with contractual relations. *See Scutti Enterprises, LLC. v Park Place Entertainment Corp.*, 322 F3d 211, 215 (2d Cir 2003). Under the Channel One License Agreement, the license term runs from October 1, 2016 through September 30, 2019. *See* Tr. Ex. 9a, Annex No. 1 to Channel One License Agreement, § 2.

Here, Plaintiffs expressly conceded that Actava began its advertising and promotional campaign in September 2016, prior to the October 1, 2016 effective date of the license. *See* Undisputed Facts Related to the Parties, ¶ 60 ("Actava TV began advertising on Davidzon radio and in newspapers in September 2016."). Contemporaneous documentary evidence confirms that Actava ordered advertising as early as September 23, 2016, well before the license term commenced and before the Matvil license became effective. *See* Tr. Ex. 192, *V Novom Svete* Invoice. Trial testimony further corroborates this timeline. Rouslan Tsoutiev conceded that Actava's advertising campaign began in September 2016.

12

"Q: And that ad aired between September 2016 and mid --approximately December 2016; is that correct?",

Tsoutiev replied, "A That's correct."

*See* Tsoutiev Testimony, Jan. 8 Tr., 261:1–5; Jan. 9 Tr., 285:2-4.

Respectively, Channel One was allowed to police its intellectual property rights and the licenses issued. *See My First Shades v Baby Blanket Suncare*, 914 F Supp 2d 339, 348-49 (EDNY 2012) (holding that "subject to prior submission to and approval" language reserves to the licensor the right to control the licensee's conduct, including whether a sublicense may be issued). Given this record, there can be no finding that Channel One interfered with a lawful contractual relationship. Actava's advertising, promotion and marketing:

1.  began before the Channel One–Matvil license term became effective;

2.  began without written authorization or approval and thus without "authorization;"

3.  advertised, promoted and marketed Channel One live streaming which was never licensed to Actava or Matvil.

Accordingly, no reasonable jury could find a lawful, enforceable contractual relationship with which Channel One tortiously interfered, and judgment as a matter of law is warranted.

**4. No Reasonable Jury Could Find That Actava Was Licensed to Broadcast "Channel One" Content.**

Under the Channel One License Agreement, the licensee, Matvil, was authorized to use only the graphic signs and logos associated with "Channel One Russia Worldwide." *See* Tr. Ex. 9a, Annex No. 1 to Channel One License Agreement § 6.1.1.

Even assuming *arguendo* that Actava claimed to possess broadcasting rights to Channel One content (which it did not), the rights conferred under the Channel One Worldwide License Agreement granted to Matvil were narrow and expressly limited to a license for a different set of

13

channels—not "Channel One." The License Agreement authorized Matvil to broadcast only "Channel One Russia Worldwide," "Dom Kino Premium," "Telekafe," not "Channel One" content. *See* Tr. Ex. 9a, Annex No. 1 to Channel One License Agreement, § 6.1.1. The plain language of the License Agreement leaves no ambiguity. Section 6.1.1 limits the licensed rights to "Channel One Russia Worldwide." Channel One and Channel One Worldwide are two separate channels.  *See* Tsoutiev Testimony, Jan. 9 Tr., 297:11-25; Tr. Ex. 9a, Channel One Worldwide License Agreement, Definition of "Channels," Annex No. 1 to Channel One Worldwide License Agreement, § 6; *see also* Tr. Exs. 130, 130b and 130c. The Matvil license does not grant any right to broadcast Channel One content, but instead Channel One Worldwide. *See id*.

<table>
<tr><td>6. Использование логотипа Каналов</td><td>6. Use of the Channels' logos</td></tr>
<tr><td>6.1. Лицензиат обязуется использовать следующие графические изображения логотипов Каналов:</td><td>6.1. Licensee shall use the following graphic signs of the Channels' logos:</td></tr>
</table>

6.1.1. Первый Канал. Всемирная сеть / Channel One Russia Worldwide:

CHANNELONEACTAVA002262      16

CONFIDENTIAL - ATTORNEYS' EYES ONLY



6.1.2. Дом Кино Премиум/ Dom Kino Premium:

*See* Tr. Ex. 9a, Annex No. 1 to Channel One License Agreement, § 6.1.1.

The trial evidence confirmed that Actava violated Channel One's rights. Screenshots admitted at trial show Actava displaying and broadcasting under both the "Channel One" and "Channel One Russia Worldwide" logos, notwithstanding the absence of any license to broadcast "Channel One" content.



*See* Tr. Ex. 130b, Screenshots showing "Channel One" (left) and "Channel One Russia Worldwide" (right) logos/marks. These logos are links to the content for both channels.

Tsoutiev further acknowledged that Actava broadcast both "Channel One" and "Channel One Russia Worldwide" content on Actava TV. Nothing in the record, however, establishes that either Actava or Matvil was licensed to broadcast "Channel One" content. At most, the License Agreement permitted broadcast of "Channel One Russia Worldwide," and nothing more. *See* Tsoutiev Testimony, Jan. 9 Tr. 297:5–25, 298:5–14.

Under these circumstances, no reasonable jury could conclude that Actava had the right to broadcast Channel One content. The evidence establishes the opposite: Channel One was not interfering with the Actava–Matvil relationship, but was lawfully protecting its intellectual property rights against piracy and unauthorized broadcasting.

### 5. No Reasonable Jury Could Find Tortious Interference When Actava Violated the Settlement Agreement and Injunction via Transmission of Channel One Content via Actava's Set-Top Boxes

Actava and Tsoutiev transmitted Channel One content. Pursuant to the Settlement and the Injunction, the Plaintiffs and all persons acting in concert with them are prohibited from (a) broadcasting, rebroadcasting, transmitting, or otherwise distributing Plaintiffs' broadcasts through any medium, including IPTV and social media, without authorization; and (d) publishing or

15

distributing any promotional materials referring to Plaintiffs' Broadcasts; in any medium, including, but not limited to the internet (including IPTV and social media) (emphasis added). *See* Tr. Ex. 2, Settlement Agreement § 6(d)(iv); Section Tr. Ex. 2, Injunction, Exhibit C, Sections 1(a), (d).

At trial, the evidence established that Actava transmitted Channel One content to end users through Actava's set-top boxes. This is "transmission" in direct violation of the Settlement Agreement and the Injunction. In particular:

1. Tsoutiev confirmed that Actava customers using Actava set-top boxes were able to receive real-time programming. *See* Tsoutiev Testimony, Jan. 9 Tr. 364:24–25, 365:1.
2. Tsoutiev acknowledged that the Actava set-top box transmitted content to the customer's television through a direct physical and functional "connection." *See* Jan. 8 Tr. 258:17–23.
3. Mr. Makhotin, back-then engineer at Actava, further established the transmission path. Per his testimony, after a customer was authenticated, "the data flowed was from Matvil's servers to the set-top box where it was decoded by the set-top box and **then was transmitted** from the set-top box to the television." (emphasis added). *See* Makhotin Testimony Jan. 9 Tr. 383:3–8.
4. Mr. Makhotin also confirmed that only the Actava application resided on the set-top box, with a special code enabling connection to Matvil TV, and that "[n]o any Matvil TV code in Actava application." *See* Makhotin Testimony, Jan. 9 Tr. 399:18–25.

This evidence establishes that Actava's set-top boxes functioned as the means by which Actava and Tsoutiev transmitted Channel One and Channel One Worldwide content to consumers. Such transmission constitutes broadcasting, rebroadcasting, transmitting, or otherwise distributing Plaintiffs' broadcasts through IPTV without authorization. It is further fatal to Actava and Tsoutiev because Channel One content was never authorized to be transmitted to Matvil—only Channel One Worldwide—so no Channel One transmission was ever authorized.

The undisputed evidence establishes that Actava transmitted content—not just Matvil—of Channel One and Channel One Worldwide to customers through its set-top boxes. No reasonable jury could find the absence of a violation of the Settlement Agreement or the Injunction. Indeed, the jury did not find such an absence—the verdict sheet is devoid of such finding. Channel One

16

was not interfering with any lawful activity, but enforcing binding court-ordered prohibitions against unauthorized transmission of its content. Importantly, because the jury expressly found in favor of Channel One on the malicious prosecution claim, it would have been impossible for a reasonable jury to reach the opposite conclusion on tortious interference arising from the same alleged conduct

### C. A NEW TRIAL IS WARRANTED UNDER RULE 59(a) BECAUSE THE VERDICT IS AGAINST THE WEIGHT OF THE EVIDENCE AND A MISCARRIAGE OF JUSTICE

#### 1. A New Trial Is Required Because the Weight of the Evidence Shows that Channel One Acted Without Malice and Solely to Protect and Enforce Its Contractual and Intellectual Property Rights, Foreclosing Any Finding of Tortious Interference

A tortious interference claim fails where the defendant did not act with malice. *See Kirch v. Liberty Media Corp*., 449 F.3d 388, 397 (2d Cir. 2006). Conduct that is neither criminal nor tortious is generally lawful and insufficiently culpable to support liability for tortious interference. *See Medtech Prods. Inc. v. Ranir, LLC,* 596 F. Supp. 2d 778, 815 (S.D.N.Y. 2008).

The trial record contains no evidence of malice or improper motive by Channel One. Instead, the evidence uniformly showed legitimate enforcement of its rights against unauthorized broadcasting and machinations of Plaintiffs. Dowd confirmed that Actava accessed and streamed live programming and fresh video-on-demand content that Channel One had never licensed to Plaintiff or Matvil, demonstrating piracy rather than any lawful business activity. *See* Dowd Testimony, Jan. 13 Tr., 666:15-22, 717:11-25; *see also* List of Trial Testimony and Evidence Showing Piracy, Ex. A of this Memorandum. He further testified that Channel One's licenses categorically prohibited sublicensing and that neither Matvil nor Actava had authority to sublicense or transmit Channel One's live stream content. *See* Dowd Testimony, Jan. 13 Tr., 752:11–24. This testimony established that Channel One's actions—issuing notices, warnings, and

17

pursuing enforcement—were ordinary antipiracy measures taken by Channel One. *See* Tr. Exs. 88, 90. Such conduct reflects lawful self-protection, not malicious interference. In sum, the weight of the evidence demonstrates that Channel One acted without malice and solely to enforce its legal rights. Accordingly, the verdict is against the evidence, and a new trial is warranted under Rule 59(a).

> **2. A New Trial is Required Under Rule 59(a) Because the Weight of the Evidence Demonstrated That Channel One's Conduct Was Justified and Lawful Enforcement of the Settlement Agreement and Court-Ordered Injunctions**

Justification constitutes a complete defense to a claim for tortious interference with contract. Where a defendant's conduct is justified, liability cannot attach for the alleged intentional procurement of a third party's breach. *See Muddy Bites, Inc. v Evergreen USA LLC*, 24-CV-07089 (LAK), 2025 WL 2662959, at *5 (SDNY Sept. 17, 2025); *Ithaca Capital Investments I S.A. v Trump Panama Hotel Mgt. LLC*, 450 F Supp 3d 358, 372 (SDNY 2020); *See also Don King Productions, Inc. v Smith*, 47 Fed Appx 12, 15 (2d Cir 2002) ("economic interest is a defense to an action for tortious interference with a contract").

Here, the trial evidence demonstrated that Channel One acted with justification—namely, to enforce the Settlement Agreement, the court-ordered Injunction, and its intellectual property rights—rather than to procure any breach without justification. *See* Tr. Ex. 2, Settlement Agreement § 6(d)(iv); Tr. Ex. 2, Injunction, Ex. C §§ 1(a), (b), (d). Tsoutiev admitted that Actava lacked any license or written authorization from Channel One and acknowledged the technical operation of Actava's system transmitting a video stream to customers' televisions. *See* Tsoutiev Testimony, Jan. 8 Tr. 195:24–25; 196:1; Jan. 9 Tr. 313:22–25.

Makhotin further testified that content flowed from Matvil's servers to Actava's set-top box, was decoded, and then transmitted to the television, confirming prohibited transmission

18

through IPTV. *See* Makhotin Testimony, Jan. 9 Tr. 383:3–8; 399:18–25. Dowd likewise confirmed that Channel One never approved Actava's advertising or sublicensing and that Channel One's licenses categorically prohibited such conduct. *See* Jan. 13 Tr. 714:8–15; 715:6–20. This evidence, if credited, establishes lawful enforcement and economic-interest justification, which constitutes a complete defense to tortious interference. *See Muddy Bites, Inc. v. Evergreen USA LLC*, 2025 WL 2662959, at *5; *Ithaca Cap. Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC*, 450 F. Supp. 3d 358, 372 (S.D.N.Y. 2020); *Don King Prods., Inc. v. Smith*, 47 F. App'x 12, 15 (2d Cir. 2002).

Because the overwhelming trial evidence established that Channel One acted with legitimate contractual, legal, and economic justification in enforcing the Settlement Agreement, the Injunction, and its intellectual property rights, the verdict is against the weight of the evidence and a new trial is warranted under Rule 59(a) to prevent a miscarriage of justice.

3. **A New Trial is Required Because the Jury Did Not Consider Overwhelming Evidence Demonstrating that Actava Violated the Settlement Agreement, The Injunction, and Channel One's Intellectual Property Rights**

In the Second Circuit, a motion for a new trial may be granted when "the verdict is against the weight of the evidence." *See Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417 (2d Cir. 2012); *Rhee-Karn v Lask*, 797 F Supp 3d 343, 357 (SDNY 2025). The record contains extensive, largely undisputed evidence that Plaintiffs breached the Settlement Agreement and the court-ordered Injunction and unlawfully exploited Channel One's intellectual property, including testimony confirming unauthorized transmissions of Channel One content through Actava's system, the absence of any license or written authorization, and Channel One's efforts to enforce its contractual and court-ordered rights. *See* Tr. Ex. 2 § 6(d)(iv); Injunction Ex. C §§ 1(a), (b), (d); Tsoutiev Tr. 195:24–25; 196:1; 313:22–25; Makhotin Tr. 383:3–8; *see also* Sections A, B of this Memorandum. Because the jury did not fully evaluate these violations in assessing Channel One's

19

conduct, the liability finding rests on an incomplete and distorted evidentiary picture, contrary to the clear weight of the proof. Accordingly, because the weight of the evidence demonstrates that Plaintiffs violated the Settlement Agreement, the Injunction, and Channel One's intellectual property rights, the verdict cannot stand and a new trial is warranted under Rule 59(a).

4. **A New Trial is Warranted Because the Weight of the Evidence Demonstrates That Plaintiffs, Including Tsoutiev, Engaged in Pirating Channel One Content, and Channel One's Conduct Was Motivated at Least in Part by the Legitimate Protection of its Contractual and Intellectual Property Rights**

A claim for tortious interference fails where the defendant acted out of normal economic self-interest and did not employ unlawful means. *See YCF Trading Inc. v. Skullcandy, Inc*., 781 F. Supp. 3d 56,9 (E.D.N.Y. 2025). Courts likewise reject tortious-interference claims where the challenged conduct consists of enforcing intellectual property rights or removing allegedly infringing uses. *See CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 224 (S.D.N.Y. 2023).

The trial record overwhelmingly established that Plaintiffs transmitted Channel One programming without authorization through Actava's set-top boxes and promoted themselves as licensed broadcasters despite lacking any license or written approval. Tsoutiev admitted that Actava had no license and described the system's operation as transmitting video streams from Matvil's servers to customer televisions. *See* Tsoutiev Testimony, Jan 8 Tr., 195:24–25; 196:1; Jan 9 Tr., 313:22–25. Makhotin confirmed that the content flowed to Actava's device and was then transmitted to viewers, demonstrating direct, unauthorized distribution. *See* Makhotin Testimony, Jan 9 Tr. 383:3–8, 399:18-25. In response, Channel One pursued enforcement of the Settlement Agreement, the Injunction, and its intellectual property rights—conduct that reflects ordinary economic self-interest and lawful protection against piracy, not wrongful interference. As in *CDC Newburgh*, actions taken to stop infringing or unauthorized use cannot constitute tortious

20

interference. The evidence shows Channel One acted lawfully to protect itself against ongoing piracy rather than to improperly interfere. Accordingly, the verdict is against the weight of the evidence and a new trial is required under Rule 59(a).

> **5. Sustaining This Erroneous Jury Verdict Would Result in a Miscarriage of Justice Because it Would Reward Pirates for Perpetuating Their Piracy Through a Sham Agreement and Punish IP Holders for Policing Their Property Rights**

This court should not sustain the verdict, which punishes Channel One for enforcing its rights. "[A] copyright holder possesses an overarching 'right to exclude others from using his property.'" *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006); *Penguin Group (USA) Inc. v Am. Buddha*, 16 NY3d 295, 305 (2011). In addition, no person shall circumvent a technological measure that effectively controls access to a copyrighted work. *See Universal City Studios, Inc. v Reimerdes*, 111 F Supp 2d 294, 316 [SDNY 2000], *judgment entered,* 111 F Supp 2d 346 (SDNY 2000), *affd sub nom. Universal City Studios, Inc. v Corley*, 273 F3d 429 (2d Cir 2001).

Here, the verdict here produces precisely the type of inequitable and legally unsustainable outcome that warrants post-trial relief. Channel One, as copyright holder, possessed the lawful right to control and exclude unauthorized uses of their content. *See* Tr. Ex. 2, Settlement Agreement and Injunction, Tr. Ex. 9a, Channel One Worldwide License Agreement. Channel One's efforts to enforce those rights—by challenging continued exploitation and attempting to stop unauthorized distribution—were not wrongful conduct but the very conduct copyright law is designed to protect. Nevertheless, the jury's verdict effectively legitimizes Plaintiffs' continued exploitation by crediting a sham agreement that masks the underlying reality of unauthorized use. *See* Tr. Ex. 86, Referral Agreement. In doing so, the verdict rewards those who perpetuate infringement while penalizing the party that sought to enforce its lawful property rights. Such a

result turns copyright law on its head: it discourages enforcement, incentivizes evasion through form over substance, and strips the exclusionary right of meaningful protection. Because the verdict rewards wrongful exploitation and penalizes Channel One for exercising their lawful right to control and protect access to its copyrighted works, allowing it to stand would constitute a miscarriage of justice.

### D. THE COURT SHOULD ENTER JUDGMENT IN CHANNEL ONE'S FAVOR BECAUSE THE UNDISPUTED EVIDENCE ESTABLISHES THAT IT SATISFIES ITS BURDEN ON AFFIRMATIVE DEFENSE NO. 9, THEREBY REQUIRING DISMISSAL OF THE TORTIOUS INTERFERENCE CLAIM

#### 1. The Settlement Agreement Expressly Incorporated the Permanent Injunctions as Exhibit C and by Cross-Reference, and Accordingly, Both Instruments Are Encompassed Within Affirmative Defense No. 9

Affirmative Defense No. 9 incorporates the Injunction by reference and expressly. Pursuant to Section 5 of the Settlement Agreement, "[t]he Parties acknowledge and represent that entry into a stipulation and final order in both the First Action and Second Action (collectively the "Orders") substantially in the forms annexed hereto as Exhibit B and Exhibit C is a condition precedent to the effectiveness of this Agreement and that the entry into and subsequent Court approval of the Orders is a material part of this Agreement. *See* Tr. Ex. 2, Settlement Agreement, Section 5. Here, Defendants expressly pleaded "Failure to Comply with the Settlement Agreement" as an affirmative defense thereby squarely placing Plaintiffs' compliance at issue. *See* ECF No. 724, ¶¶ 114-115. Section 5 of the Settlement Agreement makes entry of the Orders annexed as Exhibits B and C a condition precedent and a material term of the Settlement, expressly incorporating the permanent Injunctions into the Agreement itself. *See* Tr. Ex. 2, Settlement Agreement, Section 5. As a result, compliance with those Injunctions is contractual rather than collateral, and any breach constitutes a violation that falls within the scope of Affirmative Defense No. 9. *See Flatiron Acquisition Veh., LLC v CSE Mtge. LLC,* 1:17-CV-8987-GHW, 2019 WL 1244294, at *7 (SDNY

22

Mar. 18, 2019). In other words, the Settlement Agreement expressly incorporates the permanent Injunctions by exhibit and by reference. Channel One thus properly pled and proved the Affirmative Defense No 9 that Plaintiffs violated the Settlement Agreement and Injunction.

2. **The Court Should Rule as a Matter of Law that Channel One Has Established All Facts Meeting its Burden Under Affirmative Defense No. 9 and Enter Judgment in Favor of Channel One Dismissing Tortious Interference**

The Court should dismiss the tortious interference claim as to Channel One. "An affirmative defense is defined as' [a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true." *Carroll v Trump*, 590 F Supp 3d 575, 581-82 (SDNY 2022). All that a party needs to show to include particular instruction is that there is some evidence supporting the theory behind the instruction so that a question of fact may be presented to the jury. *See Mindspirit, LLC v Evalueserve Ltd*., 470 F Supp 3d 366, 377 (SDNY 2020).

Here, the record contains substantial and undisputed evidence that Plaintiffs failed to comply with the Settlement Agreement and the incorporated Injunctions. *See* List of Trial Testimony and Evidence Showing Piracy, Ex. A of this Memorandum. The jury's rejection of Plaintiffs' malicious prosecution claim further confirms that Channel One had probable cause to initiate contempt proceedings, demonstrating legitimate enforcement rather than wrongful interference. *See* ECF No. 920. By excluding Affirmative Defense No. 9 from the charge, the Court prevented the jury from evaluating whether Plaintiffs' own breaches of the Settlement Agreement and Injunction barred their tortious interference claim. This omission removed a complete defense from the jury's consideration and materially skewed the verdict in Plaintiffs' favor for the tortious interference claim. Notably, the courts in this district have held that affirmative defenses which serve as "mere denials of liability" do not prejudice plaintiff and therefore should not be stricken.

23

*See Coach, Inc. v Kmart Corps.*, 756 F Supp 2d 421, 431 (SDNY 2010); *Oppel v. Empire Mutual Ins. Co.*, 92 F.R.D. 494, 498 (S.D.N.Y 1981). Because the undisputed evidence establishes Affirmative Defense No. 9 as a matter of law, the Court should enter judgment in Channel One's favor dismissing the tortious interference claim.

3. **Alternatively, if the Court Declines to Enter Judgment on Affirmative Defense No. 9 in Channel One's Favor, a Judgment as a Matter of Law or, at Minimum, a New Trial is Required Under Rules 50 and 59 Because the Jury Was Not Allowed to Consider and Was Not Instructed on Affirmative Defense No. 9**

Should this Court not dismiss the case against Channel One, it must order a new trial. New York law provides that a court "must instruct a jury on the defense of justification 'if on any reasonable view of the evidence, the fact finder might have decided that the defendant's actions were justified.'" *See Bonilla v Lee*, 35 F Supp 3d 551, 563 (SDNY 2014). "[T]he jury must be instructed on all claimed defenses which are supported by a *reasonable view* of the evidence." *Id.*

The Court did not and could not strike Affirmative Defense No. 9—Breach of Settlement Agreement. *See Bonilla*, 35 F. Supp. 3d at 563; *People v Zona*, 14 NY3d 488, 493 (2010) ("[i]n determining whether to instruct a jury on a claimed defense, the court must view the evidence adduced at trial in the light most favorable to the defendant."); *Mathews v United States*, 485 US 58, 63, 108 S Ct 883, 887, 99 L Ed 2d 54 (1988) ("a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."). The Affirmative Defense must go to jury if not stricken. *See Bonilla*, 35 F. Supp. 3d at 563. The evidence consistently demonstrated that Plaintiffs lacked authorization, engaged in prohibited transmissions, used Channels' names and marks in their advertisement without prior authorization, as well as exploited Channel One's content despite clear restrictions and prohibitions under the Settlement Agreement and Injunction. *See* Sections A & B of this Memorandum; List of Trial Testimony and Evidence Showing Piracy, Ex. A of this Memorandum. No evidence suggested

malice, bad faith, or independently wrongful conduct. *Id*. On this record, the only reasonable conclusion is that Channel One acted to protect its contractual and intellectual property rights. *Id*.

Accordingly, the Court should first enter judgment in Channel One's favor based on Affirmative Defense No. 9; if the Court declines to do so, it should grant judgment as a matter of law under Rule 50 or, at minimum, order a new trial under Rule 59.

## V. CONCLUSION

For the foregoing reasons, Defendant Joint Stock Company "Channel One Russia Worldwide" respectfully requests that the Court enter an Order:

(1) Granting Channel One's motion for judgment as a matter of law under Rule 50(b) and entering judgment in Channel One's favor on Plaintiffs' tortious interference claim, dismissing that claim with prejudice;

(2) Alternatively, granting Channel One a new trial under Rule 59(a) on Plaintiffs' tortious interference claim because the verdict is against the weight of the evidence and constitutes a miscarriage of justice;

(3) Further or alternatively, entering judgment in Channel One's favor based on Affirmative Defense No. 9 (Plaintiffs' failure to comply with the Settlement Agreement and the incorporated permanent Injunction), and dismissing the tortious interference claim with prejudice;

(4) Further or alternatively, ordering a new trial because the jury was not instructed on Affirmative Defense No. 9 despite a reasonable view of the evidence supporting that defense.

(5) Awarding such other and further relief as the Court deems just and proper.

Date: February 13, 2026                    Respectfully Submitted,
        New York, New York

                                           DUNNINGTON BARTHOLOW & MILLER LLP


                                           By: /s/ *Luke McGrath*_____

                                           Luke McGrath, Esq.
                                           Martun Stepanyan, Esq.
                                           230 Park Avenue, 21st Floor
                                           New York, New York 10169
                                           Telephone: 212-682-8811
                                           Facsimile: 212-661-7769
                                           LMcGrath@dunnington.com
                                           MStepanyan@dunnington.com
                                           *Attorneys for Defendant Channel One*

26