**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Actava TV, Inc., Master Call Communications, Inc., Master Call Corporation, and Rouslan Tsoutiev, <br><br> Plaintiffs, <br><br> -against- <br><br> Joint Stock Company "Channel One Russia Worldwide," Closed Joint Stock Company "CTC Network," Closed Joint Stock Company "New Channel", Limited Liability Company "Rain TV-Channel," Limited Liability Company "Comedy TV," and Kartina Digital GmbH, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )    Civ. No.: 1:18-cv-06626-ALC-JW |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND A NEW TRIAL UNDER FEDERAL RULES OF CIVIL PROCEDURE 50(B) AND 59**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

PROCEDURAL AND FACTUAL BACKGROUND.................................................................... 2

LEGAL STANDARD.................................................................................................................. 6

ARGUMENT .............................................................................................................................. 6

    I.    Relief Under Rule 50 or 59 Is Not Warranted Because Defendants' "Lawful Enforcement" Arguments Are Neither Supported by Undisputed Trial Evidence Nor Sound .. 6

    II.    The Jury's Verdict on Tortious Interference Against Channel One and Kartina Is Supported by Sufficient Evidence and Should Not Be Disturbed Under Rule 50(B) .............. 11

        A.    Channel One's Argument That Actava Lacked Written Authorization to Advertise Under Section 1.4 of the Channel One License Agreement Fails Because It Was a Disputed Factual Question that the Jury Decided in Plaintiffs' Favor.................................................. 11

        B.    Defendants' Contention That the Referral Agreement Was a Sublicense Was a Disputed Question That the Jury Resolved in Plaintiffs' Favor .......................................... 12

        C.    Defendants' Argument That No Jury Could Find that Actava and Matvil Had a Lawful Contract Because of Advertising and Promotion Before October 1, 2016 Lacks Merit ...... 13

        D.    Defendants' Argument That Actava Was Not Licensed to Broadcast "Channel One" Content (As Opposed to "Channel One Russia Worldwide") Presents a Disputed Factual Question Already Resolved by the Jury Against Channel One .......................................... 14

        E.    Channel One's Set-Top Box Transmission Argument Was Considered and Rejected by Both Judge Moses and the Jury ........................................................................................ 15

    III.    A New Trial Under Rule 59(A) Is Not Warranted Because The Verdict Is Not Against The Weight of the Evidence ................................................................................................ 16

        A.    The Weight of the Evidence Does Not Support Channel One's Claim That It Acted Without Malice and Solely for Legitimate Enforcement Purposes ..................................... 17

        B.    The Weight of the Evidence Does Not Support Channel One's Claim That Its Conduct Was Justified. ................................................................................................................... 20

        C.    The Jury's Verdict Fully Reflects the Overwhelming Evidence of Actava's Compliance and Channel One's Improper Conduct. .......................................................... 21

        D.    Channel One Cannot Justify Its Improper Means By Invoking "Piracy." ................... 22

    IV.    The Court Properly Declined to Submit Affirmative Defense No. 9 to the Jury.......... 23

CONCLUSION........................................................................................................................ 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Stop*,
  No. 22-cv-9557, 2025 U.S. Dist. LEXIS 209299 (S.D.N.Y. Oct. 21, 2025)............................16

*Brady v. Wal-Mart Stores, Inc.*,
  531 F.3d 127 (2d Cir. 2008).................................................................................................6

*Carroll v. Trump*,
  590 F. Supp. 3d 575 (S.D.N.Y. 2022)..................................................................................24

*Don King Prods. v. Smith*,
  47 Fed. Appx. 12 (2d Cir. 2002)..........................................................................................20

*Hoodho v. Holder*,
  558 F.3d 184 (2d Cir. 2009)..................................................................................................9

*McGuire v. Russell Miller, Inc.*,
  1 F.3d 1306 (2d Cir. 1993)..................................................................................................10

*Smith v. Lightning Bolt Prods.*,
  861 F.2d 363 (2d Cir. 1988)..................................................................................................6

*Suarez v. Big Apple Car, Inc.*,
  806 Fed. Appx. 19 (2d Cir. 2020)..........................................................................................6

## PRELIMINARY STATEMENT

On January 16, 2026, after an eight-day full and fair trial, a unanimous jury returned a verdict in favor of Plaintiffs on their claim for malicious prosecution against Defendant Kartina Digital GmbH ("Kartina") and on their claim for tortious interference with prospective economic advantage against both Kartina and Defendant Joint Stock Company "Channel One Russia Worldwide" ("Channel One"). The jury awarded compensatory damages of $750,000 for malicious prosecution and punitive damages of $1,500,000 against Kartina; for tortious interference, the jury awarded $375,000 each in compensatory damages against Channel One and Kartina, and $750,000 each in punitive damages against Channel One and Kartina. The jury's verdict was polled and confirmed as unanimous. ECF 920.

The jury verdict rested on powerful, largely unrebutted evidence. The jury heard that Kartina—a direct competitor of Actava TV, Inc. ("Actava")—drove the contempt motion that the Channels filed against Actava. *See, e.g.,* Tr. Exs. 385, 411, 450. Kartina directed the entire litigation strategy while concealing its involvement. *See id*. Kartina's representative expressed the goal of "clean[ing] up the market" so that only five to eight companies would remain. Tr. Ex. 114 at 3. The jury heard evidence that Kartina and Channel One completely disregarded Actava's rights in their drive to eliminate Actava as a competitor under the false pretext of fighting "piracy." The jury also heard contemporaneous audio recordings of Actava's business partner Matvil Corporation's representatives telling Actava that they terminated a referral agreement with Actava due to direct pressure from the Channels, including Channel One. *See e.g.,* Tr. Exs. 138, 165, 139, 166, 143, 170, 153, 180. On that record, the jury's verdict was neither a miscarriage of justice nor a reward for piracy. It was a reasoned conclusion that Defendants used improper means to destroy a business competitor, and it should stand.

1

Channel One, joined by other Defendants, now ask this Court to set aside that verdict based on flawed arguments, channeled under the farcical narrative "Revenge of the Pirates." *See* ECF 952 at 1. In their renewed motion under Rule 50(b), Defendants simply rehash arguments the Court rejected when denying the original Rule 50 motion and the jury rejected after weighing the evidence. In their Rule 59 motion, Defendants likewise ask the Court to substitute its own judgment for that of the jury, in contravention of the well-established principle that a new trial should be granted only where the verdict is "egregious" or a "miscarriage of justice." The verdict here was neither. It was the product of careful deliberation by a conscientious jury that heard multiple witnesses, weighed their credibility, reviewed extensive documentary and audio evidence, and reached a reasoned conclusion. Defendants simply ask this Court to weigh the evidence differently. That is not the law.

## PROCEDURAL AND FACTUAL BACKGROUND

This case arises from Defendants' coordinated campaign to destroy Actava using improper means and malicious prosecution. The trial evidence established the following.

Plaintiffs are Actava, Master Call Communications, Inc., Master Call Corporation, and Rouslan Tsoutiev ("Tsoutiev"), Actava's founder and CEO. Defendants are various Russian-language television channels, including Channel One, and Kartina, a competing streaming distributor. Actava provided Russian-language IPTV services to U.S. consumers. In 2015, the Channels sued Actava for alleged unauthorized broadcasts. That case settled in April 2016 (the "Settlement Agreement"). The Court issued injunctions ordering Actava not to broadcast the Channels' content or use their trademarks without a license (the "Injunctions").

After the settlement, Actava sought lawful means to continue its business. On September 8, 2016, Matvil Corporation, a Canadian company ("Matvil") and Actava entered into the Referral

Agreement. Tr. Ex. 86; ECF 865-1, Undisputed Facts, para. 48. Matvil has been licensed to distribute Channel One programming since September 7, 2016. ECF 865-1, para. 24; Tr. Ex. 9. Under the Referral Agreement, Actava served as a dealer for Matvil's IPTV services: it signed up customers and provided support, while Matvil performed all broadcasting through its own servers. Tr. Ex. 86; ECF 865-1, paras. 48-58. This was a common arrangement. Kartina used approximately 600 dealers worldwide, with about 50 in New York. Jan. 13 Tr. 752:5-9 (Reich testimony).

The evidence showed that Kartina was the principal force behind the litigation campaign against Actava. Kartina retained Dunnington Bartholow & Miller LLP ("Dunnington") in July 2014 to combat alleged IPTV piracy. *See* Tr. Ex. 93. Extensive email correspondence demonstrated that Kartina orchestrated the legal strategy, directed Dunnington, and paid the legal fees—all while concealing its involvement. *See, e.g.*, Tr. Ex. 385 (Dowd email confirming Kartina's representative Olga Panfilova's direction, "and she approves every move [Dowd] make[s]"); Jan. 13 Tr. 700:22-701:12 (Dowd testimony); Tr. Ex. 411 (Panfilova stating: "[W]e do not move forward against Actava or Matvil before me and Andreas will make a decision"); Tr. Ex. 450 (Panfilova stating: "Of course you have my authority to file the contempt"); Jan. 13 Tr. 699:23-703:5; 706:5-708:8 (Dowd testimony confirming Kartina's direction); Jan.7 Tr. 84:3-11 (Tsoutiev testimony that Reich urged him to settle); Jan. 14 Tr. 808:20-809:1 (Reich testimony that he did not tell Actava that Kartina was behind the litigation); *see also* Tr. Exs. 445, 446, 447, 448, 451, 439, 435, 356, 363, 368.

When Kartina learned Actava was back in business in a new capacity, it immediately sought legal action against Actava, Matvil, or both. Tr. Exs. 108, 356. On November 14, 2016, Dunnington asked Actava to provide a copy of the Referral Agreement. Tr. Ex. 90. On November 18, 2016, Actava's counsel offered to bring a redacted version to Dunnington for inspection. ECF

3

865-1, para. 81; *see* Tr. Ex. 91. On December 12, 2016, Actava's counsel presented the Referral Agreement at Dunnington's office in person, ECF 865-1, para. 82, but Dunnington refused to look at it. Jan. 9 Tr. 334:3-13 (Malki testimony).

Contemporaneous internal emails showed that Kartina deliberately chose not to review the Referral Agreement. Dunnington's own analysis had concluded the Referral Agreement "may not breach the Settlement and Orders," and Dowd sought approval to request a copy from Panfilova. *See* Tr. Ex. 451. On November 4, 2016, Panfilova shut that down, stating she and Andreas Reich, Kartina's CEO "just do not see that demanding the copy of the agreement between Matvil and Actava will bring us something." Tr. Ex. 447. Kartina's refusal to review the Referral Agreement—while simultaneously characterizing Actava as a "weak link" whose destruction would "bring in some more money," Tr. Ex. 445—showed the contempt motion was filed not in good faith, but to eliminate a competitor.

On December 13, 2016, the day after refusing to review the Referral Agreement, the Channels filed a contempt motion against Actava. Channel One had authorized Dunnington to bring the motion. *See* Tr. Exs. 4, 453; Jan. 13 Tr. 666:23-667:2 (Dowd testimony that contempt motion "had approval of the clients"); ECF 865-1, para. 84. The motion sought ruinous fines, including $10,000 per day in coercive penalties, statutory damages, treble damages, and attorneys' fees. Tr. Exs. 4, 453; Jan. 8 Tr. 119:5-13 (Tsoutiev testimony). On September 27, 2017, Magistrate Judge Moses denied the contempt motion. Tr. Ex. 5.

Judge Moses found the Channels had not shown by clear and convincing evidence that Actava violated any clear and unambiguous provision of the Injunctions. *See id*. She specifically found that: advertising Matvil's services did not violate the Injunction; Actava was not "infringing" the Channels' broadcasts under the Referral Agreement; and Matvil's authority to

4

engage Actava as a dealer was "undisputed". *See id*. at 19-27. The Channels did not appeal her decision, nor did they cite it once in their Rule 50(b) and Rule 59 motion. That silence is telling.

Despite Actava prevailing on the contempt motion, the damage was done. The contempt filing forced Actava to suspend its advertising and marketing for nine months. Jan. 8 Tr. 119:18-120:20 (Tsoutiev testimony). The penalties sought were ruinous. As Tsoutiev testified, they would have amounted to "$300,000 per month; a year, it will be almost 4 million, besides some other penalties." Jan. 8 Tr. 119:11-22. The contempt motion thus achieved its intended effect: Actava was paralyzed for nine months, unable to market its services. Jan. 8 Tr. 119:15-120:20; Jan. 12 Tr. 482:6-483:13, 485:4-486:7.

Moreover, the Channels and Kartina continued to pressure Matvil to terminate its relationship with Actava as a reprisal for Actava filing this action in 2018. The jury heard contemporaneous audio recordings of Matvil's representatives telling Tsoutiev that they terminated the Referral Agreement because of pressure from the Channels and Kartina. *See* Tr. Exs. 138, 139, 153, 165, 166, 170, 180; Jan. 8 Tr. 149:3-151:25; 153:2-158:1 (Tsoutiev testimony). Vladimir Zaykin of Matvil told Tsoutiev that the Channels "keep an eye on them" and that if Matvil continued to work with Actava, it would "suffer great loss because of channels." Jan. 8 Tr. 155:25-156:8. *See also* Tr. Ex. 170 ("[I]f it hadn't been for the pressure from the channels we'd never have terminated the agreement. Everything was great. We worked well together."); Tr. Ex. 180 ("Unfortunately, both the channels and Kartina learned that we'd take your subscribers and started asking us very, very unpleasant questions."). Under this pressure, Matvil terminated the Referral Agreement, and the business relationship was completely destroyed.

5

**LEGAL STANDARD**

Judgment as a matter of law should be granted under Rule 50(b) only when (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it. *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 133 (2d Cir. 2008). In deciding a Rule 50 motion, a court must defer to all credibility determinations and reasonable inferences of the jury and may not weigh the credibility of witnesses or consider the weight of the evidence. *Id.*

For a new trial under Rule 59(a), the court must conclude that the jury's verdict is "egregious" or that there was a miscarriage of justice. *Suarez v. Big Apple Car, Inc.*, 806 Fed. Appx. 19, 23 (2d Cir. 2020). Critically, a court reviewing a Rule 50(b) motion "cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." *Smith v. Lightning Bolt Prods.*, 861 F.2d 363, 367 (2d Cir. 1988). Defendants' motion is an invitation to do precisely that, and it should be denied in its entirety.

**ARGUMENT**

I.    **Relief Under Rule 50 or 59 Is Not Warranted Because Defendants' "Lawful Enforcement" Arguments Are Neither Supported by Undisputed Trial Evidence Nor Sound**

Defendants argue that "[t]he undisputed trial evidence established Plaintiffs' violations of the Settlement Agreement and Injunctions and confirmed Channel One's lawful enforcement of its intellectual property rights," excusing their campaign to destroy Actava, which they do not deny pursuing. ECF 952 at 8. As Mr. Dowd wrote, Defendants "destroyed Actava," and it was a "weak link". Tr. Ex. 445. In their motion, Defendants raise "five instances" to justify the contempt motion against Actava. ECF 952 at 8. None is based on undisputed trial evidence.

*First*, Defendants rely on out-of-context testimony to argue that Mr. Tsoutiev and Andrew Makhotin "confirmed" that the Settlement Agreement and Injunction were violated. ECF 952, at 6-7. The table below includes Plaintiffs' responses to each excerpt Defendants cite in support:

| # | Witness | Defendants' Excerpt | Plaintiffs' Response |
|---|---------|---------------------|----------------------|
| 1 | Rouslan Tsoutiev *Jan. 8 Tr. 206:12-15* | "Q So you knew that if you violated the injunction, the Court retained jurisdiction over you, and one or more may file a contempt motion, right? [Tsoutiev] A Yes." | Tsoutiev is not admitting a violation. He acknowledged only his understanding of the consequences of a hypothetical violation. *See* Jan. 8 Tr. 206:6-15. |
| 2 | Rouslan Tsoutiev *Jan. 8 Tr. 223-25, 224:1-5* | "Q. And in this letter, Actava denies that its conduct violates the injunction right? [Tsoutiev] A. Right. [Tsoutiev] A. Excuse me. We denied that we violated settlement agreement not the injunction." | Defendants are taking Mr. Tsoutiev's testimony out of context in an attempt to mislead the Court. During his cross-examination, Mr. Tsoutiev was shown Actava's written response to Defendants' notice of breach. See Jan. 8 Tr. 223:16-224:6 (showing Mr. Tsoutiev Tr. Ex. 89). In their first notice of breach, Tr. Ex. 88, Defendants notified Actava of the "suspected breach of the Settlement Agreement", not of a suspected breach of the Injunctions. Actava responded to that accusation by denying that it violated the Settlement Agreement. That is what Mr. Tsoutiev clarified when he was reviewing the Actava response, Tr. Ex. 89, during cross examination. This is not an admission of a violation of the Injunctions. |
| 3 | Rouslan Tsoutiev *Jan. 9 Tr. 364:24-25, 365:1* | "Q. And could the customers using a set-top box receive real time programming from Actava at that time? [Tsoutiev] A. Yes." | This excerpt is from Andrew Makhotin's testimony, not Tsoutiev's. The answer pertained to the period prior to the Referral Agreement, when Actava had its own streaming services. *See* Jan. 9 Tr. 364:20-365:1 (Makhotin testimony). |
| 4 | Rouslan Tsoutiev *Jan. 9 Tr. 313:22-25* | "Q: And then step two, the provider then processes the request, and transmits a video stream from the server to the set box for the TV of the end user; is that right? [Tsoutiev] A: That is correct." | Tsoutiev's answer is consistent with Matvil being the broadcaster. Actava sold customers set-top boxes; those customers became Matvil customers who could view content delivered by Matvil. This is not an admission that Actava was broadcasting. |

| # | Witness | Defendants' Excerpt | Plaintiffs' Response |
|---|---------|--------------------|--------------------|
| 5 | Andrew Makhotin *Jan. 9 Tr.* 383:3-8 | "Q. But after the customer was authenticated, how the data flowed was from Matvil's servers to the set-top box where it was decoded by the set-top box and then was transmitted from the set-top box to the television; is that correct? A. Yes. Yes." | As explained below, Channel One's argument that "Plaintiffs transmitted Channel One content through a set-top box to televisions" was weighed but rejected by the jury based on the evidence at trial. |

*Second*, Defendants' argument that "Plaintiffs transmitted Channel One content through a set-top box to televisions" was weighed and rejected by the jury. Makhotin testified that Actava's set-top box was solely the terminal delivery device in a chain originating entirely at Matvil's servers. Jan. 9 Tr. at 376:3-378:12. The Actava application performed only authentication functions. *Id.* at 367:12-368:14. After that, as Makhotin testified, "Matvil can send […] streaming channels -- directly to set-top box for users." *Id.* at 376:19-24. Makhotin was unequivocal: "We used only Matvil TV streaming," and "all data including channels, logos, and programming guides with logos getting only from Matvil TV." *Id.* at 368:12-14, 383:2-21; 399:1-400:5. Judge Moses also expressly rejected this argument, finding that even if the set-top boxes "transmit[ted]" content, such transmission violated the injunction "only if Actava is acting without 'authorization,'" and that "authorization" was "ambiguous"—preventing a contempt finding. Tr. Ex. 5 at 23-25.

*Third*, Channel One's argument that "neither Actava nor Matvil held any license whatsoever to air Channel One programming" is disputed by the trial evidence. At trial, Channel One advanced an "ambush theory" that Actava breached the Injunction because Matvil lacked a license to "Channel One" content as opposed to "Channel One Russia Worldwide", and only from October 1, 2016. Channel One did not believe this defense. It had neither raised this theory in the contempt proceedings nor in its summary judgment motions in this case. Further, the parties stipulated in the undisputed facts: "Matvil has been licensed to distribute Channel One

8

programming *since September 7, 2016.*" ECF 865-1, para. 24 (emphasis added). Channel One cannot back out of its admission. *See Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009) ("Facts admitted by a party 'are judicial admissions that bind th[at] [party] throughout the[e] litigation.'").

Also, Defendants' alleged distinction between "Channel One" and "Channel One Russia Worldwide" was presented through the testimony of one of Defendants' witnesses, Andreas Reich. *See* Jan. 14 Tr. at 831-832 (Reich testimony). But Reich suffered from credibility issues that made his testimony unreliable. On cross-examination, Reich first testified that it was untrue that "Kartina expressed the desire not to be disclosed in the litigation…." Jan. 14 Tr. at 791:2-792:6. Reich was then impeached with his prior deposition testimony, admitting that Kartina had requested in the Retainer Agreement with Dunnington "for commercial reasons," that it "not be named as a plaintiff" and that "to the extent legally and ethically possible, Kartina remains confidential in these proceedings." *Id.* 793:23-795:25; 805:13-807:11. At trial, Reich claimed the concealment was driven solely by fear of denial of server attacks, *id.* at 806:22-807:3, contradicting his testimony that Kartina "did not care one way or the other" whether it was disclosed. *Id.* at 793:17-22. He also lied on the stand about not driving the litigation strategy. *Id.* at 792:6-14. *See* Tr. Exs. 411, 398, 385, 445, 447, 387, 363 (emails confirming Kartina drove litigation strategy and wanted to remain hidden). Based on these lies, the jury was entitled to reject his testimony on any and all issues. Rule 50(b) does not permit this Court to reweigh that credibility determination.

Instead of relying on the testimony of Reich, the jury was within its powers to find that no meaningful distinction existed between the words "Channel One" and "Channel One Russia Worldwide" when they viewed the video, Tr. Ex. 130 and screenshots Tr. Ex. 130a, on the basis that *both* channels shared the same *logo* that Channel One License expressly permitted Matvil to use. *See* Tr. Ex. 9a, Annex No. 1, § 6.1.1, displaying this logo for use by Matvil:

9

CONFIDENTIAL - ATTORNEYS' EYES ONLY



6.1.2. Дом Кино Премиум/ Dom Kino Premium:

*See* Tr. Ex. 9a, Annex No. 1 to Channel One License Agreement, § 6.1.1.

That *same* logo appeared in the October 2016 video screenshots.



*See* Tr. Ex. 130b, Screenshots showing the same logo for "Channel One" as for "Channel One Russia Worldwide"

*Fourth*, Channel One's argument that Plaintiffs lacked written authorization for advertisements was considered and rejected by the jury. Tsoutiev testified that advertisements were discussed with Matvil. Jan. 9 Tr. 307:10-15. The jury could disregard Dowd's testimony that Channel One had not approved any advertising, Jan. 13 Tr. 714:7-15, given the serious grounds to doubt his credibility. Corroborating the reasonableness of the jury's findings, Judge Moses found authorization existed based on Matvil's license agreement with Channel One. Tr. Ex. 5 at 28-29.

Finally, the jury's finding in Channel One's favor on malicious prosecution is not inconsistent with the tortious interference verdict against Channel One. Defendants conflate two distinct claims with different elements. In evaluating in consistency, courts "must adopt a view of the case, if there is one, that resolves any seeming inconsistency." *See McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1311 (2d Cir. 1993) (internal quotations omitted). Here, there is no inconsistency at all. The jury responded to legally distinct inquiries.

10

Malicious prosecution required Plaintiffs to prove actual malice and lack of probable cause by each specific defendant. Tortious interference offered an alternative pathway: the jury could find liability if a Defendant "either [A] acted solely out of malice, **or** [B] used dishonest, unfair, wrongful, or improper means to interfere with the relationship between Plaintiffs and Matvil." ECF 919, Jury Instructions, p. 16 (emphasis added). The jury could reasonably find that regardless of whether Channel One's conduct rose to actual malice, Channel One nonetheless used improper means—including secretly allowing Kartina to orchestrate litigation in the Channels' names, participating in a campaign to "clean up the market" (Tr. Ex. 114), and directly pressuring Matvil to terminate the business relationship with Actava (Tr. Exs. 108, 110, 119). Indeed, Channel One fails to recognize that the tortious interference claim also encompassed Defendants' later conduct pressuring Matvil to terminate the Referral Agreement. The verdicts are entirely consistent.

## II. The Jury's Verdict on Tortious Interference Against Channel One and Kartina Is Supported by Sufficient Evidence and Should Not Be Disturbed Under Rule 50(B)

### A. Channel One's Argument That Actava Lacked Written Authorization to Advertise Under Section 1.4 of the Channel One License Agreement Fails Because It Was a Disputed Factual Question that the Jury Decided in Plaintiffs' Favor

Channel One argues that Actava lacked written authorization under Section 1.4 of the Channel One License, and that Dowd's testimony (Jan. 13 Tr. 714:7-15) conclusively established no approval was ever given. ECF 952 at 9-10. The jury disagreed. The jury credited evidence that Matvil, as the licensed broadcaster, had authority to engage Actava as its dealer, and that Actava's advertising was conducted with Matvil's knowledge and approval. Tsoutiev testified that all advertising was discussed with Matvil prior to publication. Jan. 9 Tr. 307:10-15. Magistrate Judge Moses examined the same licensing framework and found the Channels had "conspicuously failed to submit any actual evidence" that Matvil's license prohibited such a dealer arrangement, so Matvil's authority to authorize Actava "must therefore be deemed undisputed." Tr. Ex. 5 at 15.

11

The jury was thus entitled to find Actava's promotional activity was authorized through Matvil's license. Also, the jury could disregard Mr. Dowd's testimony based on the serious credibility issues discussed above. That credibility determination cannot be disturbed under Rule 50(b). Jury Instructions, ECF 919, pp. 6-7.

### B. Defendants' Contention That the Referral Agreement Was a Sublicense Was a Disputed Question That the Jury Resolved in Plaintiffs' Favor

Defendants argue that the Referral Agreement was a prohibited de facto sublicense under Section 1.5 of the Channel One License. ECF 952 at 10-12. This was a contested factual issue that the jury resolved in Plaintiffs' favor. Substantial evidence supported the jury's conclusion. Matvil's CEO Gayster wrote directly to Channel One's representative Shprekher that "Actava is not broadcasting its own content" and "acts solely as a seller of Matvil's services," and that "[o]ur interactions with ACTAVA are no different from KARTINATV's interactions with its dealers." Tr. Ex. 119. Tsoutiev testified that all streaming was performed by Matvil's servers, that Actava received no content directly, and that the Referral Agreement expressly provided that Actava "will not be engaged in broadcasting television content." Tr. Ex. 86; Jan. 9 Tr. 301:1-307:15. Makhotin testified to the technical streaming setup confirming Matvil's servers—not Actava—provided all streaming. Jan. 9 Tr. 368:2-14. Kartina's CEO Reich confirmed Kartina operated through approximately 600 dealers worldwide, including about 50 in New York—the same model used by Actava and Matvil. Jan. 13 Tr. 752:5-9. Even the advertisements that Defendants complained about said that the service was provided by Matvil. *See* Tr. Ex. 108.

Moreover, Defendants' legal theory was already examined and rejected by Judge Moses. She found the Channels offered no evidence that Matvil's license prohibited such a dealer arrangement. Tr. Ex. 5 at 15. Judge Moses further found that advertising Matvil's services did not violate the Injunctions, that Actava was not "infringing" under the Referral Agreement, and that

12

"infringing" was "inherently ambiguous" in the context of the Injunctions. *See generally id.* A judicial determination that Actava's arrangement was not a violation is powerful corroboration that the jury's finding was reasonable. The jury heard both sides and was entitled to credit the evidence that the Referral Agreement was a standard dealer arrangement—the same one Kartina itself used with its 600 dealers worldwide.

### C. Defendants' Argument That No Jury Could Find that Actava and Matvil Had a Lawful Contract Because of Advertising and Promotion Before October 1, 2016 Lacks Merit

Channel One argues that because Actava began advertising in September 2016—allegedly before the Matvil-Channel One License's October 1, 2016 effective date—no lawful "contractual relationship" between Actava and Matvil existed. ECF 952 at 12-13 (citing Tr. Ex. 192, *V Novom Svete* Invoice). The jury, however, found that Channel One and Kartina tortiously interfered with a "business relationship" between Matvil and Actava, not just a contract. In any event, Channel One's argument, which it debuted at trial, is wrong.

The jury considered the evidence relating to the dates of advertising and rejected Defendants' position based on the evidence. The parties stipulated that Matvil had all necessary licenses to broadcast Channel One starting September 7, 2016, ECF 865-1, para. 24, and Judge Moses found in the contempt proceeding that the Channels conceded Matvil had all necessary licenses. *See* Tr. Ex. 5 at 25. Invoices showed the first airing of the radio advertisement at issue occurred on October 4, 2016, not in September 2016. Tr. Ex. 192, p. 1. The September 23, 2016 invoice cited by Defendants for support was for a different *newspaper* ad, not the same radio ad. Tr. Ex. 192, p. 29. Defendants presented no evidence of what that newspaper ad contained. The jury was also entitled to credit Tsoutiev's testimony that all Actava's advertising of Matvil services was approved by Matvil. Jan. 9 Tr. 307:10-15.

13

The jury was correct to discredit Dowd's testimony on what was allowed under the Channel One License and its effective date, Jan. 13 Tr. at 716:9-718:1, as Dowd's testimony suffered from credibility issues as well. Dowd's account of whether Jonathan Malki, Actava's counsel, came to Dunnington's offices to show the Referral Agreement was contradicted by Malki's own credible testimony. *Compare* Jan. 9 Tr. 334:3-13; 337:5-25 (Malki testimony) *with* Jan. 13 Tr. 688:19-21 (Dowd testimony). Dowd also testified that Matvil's Channel One license did not cover livestreaming and was limited to old video on demand content. Jan. 13 Tr. at 717:18-718:1. That assertion was plainly false. Section 1.1 of the Channel One License expressly granted Matvil "the nonexclusive license to distribute via service during the license term within the territory, the channels"—with "channels" defined as content "broadcasted under the constant name logo on a day-to-day and 24-hour basis," i.e., a *live stream.* Tr. Ex. 9A*; see* Jan. 15 Tr. at 1133-1134; *see also* Jan. 13 Tr. at 760, 762 (Reich testimony). Given that Dowd made this patently false reading of a license he had personally reviewed, the jury had every right to discount his testimony on any and all issues. The Court should reject Defendants' attempt to manufacture a narrow technical point on the back of its own attorney witness's demonstrably false reading of a license he personally reviewed—a falsehood the jury rightly saw through, weigh the evidence in favor of the Plaintiffs.

### D. Defendants' Argument That Actava Was Not Licensed to Broadcast "Channel One" Content (As Opposed to "Channel One Russia Worldwide") Presents a Disputed Factual Question Already Resolved by the Jury Against Channel One

Defendants argue that no reasonable jury could find Actava had any right to broadcast "Channel One" content because Matvil's license authorized only "Channel One Russia Worldwide." ECF 952 at 13-15. If Channel One believed that Actava had violated the Injunctions on this basis, then it would have included this argument in its contempt motion. It did not.

14

Similarly, Channel One did not sue Matvil, its licensee, for any alleged violation on this ground. Regardless, as discussed above, the implications of the alleged distinction between "Channel One" and "Channel One Russia Worldwide" in the video, Tr. Ex. 130, were disputed at trial. Sufficient evidence existed for the jury to find that this distinction was not relevant. *See* Tr. Ex. 9a, Annex No. 1 to Channel One License Agreement, § 6.1.1 (showing the logo Matvil could use) and Tr. Ex. 130b, Screenshots showing the same logo for "Channel One" as for "Channel One Russia Worldwide" in video Tr. Ex. 130. Moreover, the jury was within its power to disregard the testimony of Reich, while giving full credit to Tsoutiev's testimony that Matvil's TV content was controlled and delivered by Matvil, not by Actava, consistent with the terms of the Referral Agreement. *See* Jan. 7. Tr. 87:11-88:13, Tr. Ex. 86. This Court cannot reweigh that factual question under Rule 50(b).

Further, Plaintiffs presented enough evidence that demonstrated that Defendants' true motive was competitive market elimination, not good-faith IP protection. Tr. Exs. 114, 385, 411, 450, 445, 446, 447, 448, 451, 439, 435, 356, 363, 368. The jury credited that evidence. Channel One's post-contempt recharacterization of its conduct as "lawful enforcement" based on alleged technical irregularities it did not even raise in the contempt proceedings does not transform a factual finding into legal error reviewable under Rule 50(b).

### E. Channel One's Set-Top Box Transmission Argument Was Considered and Rejected by Both Judge Moses and the Jury

Channel One argues that Actava's set-top boxes "transmitted" Channel One content in violation of the Settlement Agreement and Injunction. ECF 952 at 15-17. This argument was presented to the jury and rejected. It was also rejected by Judge Moses. Judge Moses found that even if the set-top boxes "transmit[ted]" content in a technical sense, such transmission violated the injunction "only if Actava is acting without 'authorization,'" and that authorization in the

15

Injunctions was "ambiguous", foreclosing a contempt finding. Tr. Ex. 5 at 23-25. Judge Moses further construed "authorization" to encompass Matvil's authority, finding it "consistent with 'the spirit of the order" because Actava's promotion of Matvil's service increased the Channels' own profits. Tr. Ex. 5 at 25.

The jury also weighed in favor of the Plaintiffs: the Referral Agreement's express provision that Actava "will not be engaged in broadcasting television content" (Tr. Ex. 86), Makhotin's testimony that all streaming was done by Matvil (Jan. 9 Tr. 399:18-25), and Tsoutiev's testimony about Actava's marketing role under the Referral Agreement and that Matvil's servers performed all actual broadcasting (Jan. 7 Tr. 87:8-90:2). The parties' undisputed facts confirmed the signal flow: "Matvil receives the data from the Defendant Channels and streams that data onto its Content Delivery Network ("CDN"), which feeds the content to Matvil-controlled edge servers. The edge servers then deliver Matvil's broadcasting streams directly to Matvil's customers. ECF 865-1, para. 56. The parties also stipulated that "[w]hen Actava entered into the Referral Agreement, Actava did not operate a CDN," and that "Matvil did not grant Actava access to its broadcast stream or CDN." *Id.*, paras. 57-58. This evidence supports the jury's finding in Plaintiffs' favor. The jury's determination is not subject to revision under Rule 50(b).

### III.   A New Trial Under Rule 59(A) Is Not Warranted Because The Verdict Is Not Against The Weight of the Evidence

Channel One alternatively seeks a new trial, arguing the verdict is "against the weight of the evidence" and constitutes "a miscarriage of justice." *See* ECF 952 at 17. This standard requires the Court to find that the verdict was "egregious." The Court "should rarely disturb a jury's evaluation of a witness's credibility." *Alexander v. Stop*, No. 22-cv-9557, 2025 U.S. Dist. LEXIS 209299, at *14 (S.D.N.Y. Oct. 21, 2025). There is no basis to do so here.

16

**A. The Weight of the Evidence Does Not Support Channel One's Claim That It Acted Without Malice and Solely for Legitimate Enforcement Purposes**

Defendants argue that the "trial record contains no evidence of malice or improper motive" and that its conduct was "ordinary antipiracy measures." ECF 952 at 17-18. The record substantially refutes this. Far from "ordinary antipiracy measures," the evidence showed that Channel One: (1) allowed Kartina, a direct competitor of Actava, to secretly fund and direct the legal campaign in Channel One's name, Tr. Exs. 93, 385, 411, 450; (2) participated in a campaign driven by Kartina whose stated purpose was to "clean up the market" and reduce it to "5-8 companies," Tr. Ex. 114; and (3) exerted pressure on Matvil to terminate the Referral Agreement in 2018 by improper means.

The jury was instructed that to prevail on tortious interference, Plaintiffs had to show: (1) Defendants had knowledge of the Actava-Matvil business relationship; (2) Defendants intentionally interfered with it; (3) Defendants acted solely out of malice or used dishonest, unfair, wrongful, or improper means; and (4) Defendants' actions caused injury. ECF 919. The evidence on each element was more than sufficient.

The email evidence demonstrated that Channel One, through Shprekher, was aware of and actively authorized the campaign against Actava from its inception. On September 28, 2016, Panfilova emailed Shprekher to report that Actava had resumed operations with Matvil, noting "the service is provided by Matvil Corp." Tr. Ex. 108. Shprekher responded that same day: "You can begin actions regarding Actava immediately. Actions against Matvil and Gayster will need to be agreed upon further, but after a more detailed discussion of tactics." *Id*. This was an affirmative authorization to act against Actava—without even looking at the specific terms of the Referral Agreement. Channel One also disregarded Matvil's representations that Actava was not

17

broadcasting. *See* Tr. Ex. 119; Shprekher Depo. at 14:08-14:23; 44:07-44:18; 91:4-92:4; 92:11-92:17, 94:5-8, 94:16-95:2.

Separately, there is evidence of Channel One's interference with the Actava-Matvil relationship in 2018—which Defendants omit to address—that could independently support the jury's finding. The contemporaneous audio recordings of conversations between Matvil's representatives and Tsoutiev are powerful evidence of deliberate, intentional interference by the Channels, including Channel One. Tr. Ex. 170 (the Matvil representative stated: "if it hadn't been from the pressure from the channels we'd never have terminated the agreement. Everything was great. We worked well together."); Ex. 180 (another representative stated: "Unfortunately, both the channels and Kartina learned that we'd take your subscribers and started asking us very, very unpleasant questions."). *See* Tr. Exs. 138, 139, 153, 165, 166; Jan. 8 Tr. 149:3-151:25; 153:2-158:1 (Tsoutiev testimony). The Channels made Matvil fear that if it kept working with Actava, it could lose its licenses and see its business destroyed. The jury was within its power to find that Channel One strongarmed Matvil into terminating the relationship by using wrongful means for the purpose of harming Actava and Tsoutiev.

The evidence amply supported findings of malice and improper means as to both Kartina and Channel One. While Kartina directed the litigation campaign, Channel One was knowingly participating. Channel One allowed Kartina to finance and direct the legal campaign through Dunnington. *See* Tr. Ex. 93 ("Kartina will be entirely responsible for paying the Firm for all its fees, costs and disbursements"); Tr. Ex. 102. Panfilova of Kartina controlled litigation strategy, demanding no steps be taken against Actava or Matvil without her and Reich's approval. Tr. Ex. 411; *see also* Tr. Ex. 385 (Dowd confirming: "Under our retainer agreement we are under Olga's

18

direction and she approves every move I make, including who to speak to and when"); Jan. 13 Tr. 700:1-708:25.

Channel One's Shprekher knew this and accepted it. Tr. Ex. 398 (Panfilova instructed Dowd: "you can inform CTC and Alexander from Channel One about it. You do not need to ask them if they agree with the text. Just inform them that you will send this letter."). Channel One was content to let Actava's competitor drive the litigation while lending its name and IP claims to that effort. Channel One then acted as a party to the contempt motion, which was signed by Channel One's counsel.

The malice evidence was compelling. In a March 2017 email, Andreas Reich of Kartina wrote: "It is the only right decision in order to clean up the market. There should be 5-8 companies left on the market that pay the channels and compete with each other." Tr. Ex. 114; *see also* Jan. 14 Tr. 824:17-826:20. As early as September 28, 2016, Panfilova expressed concern that if Actava's dealer model succeeded, "all those companies against which legal action is taken will likely follow the example of Actava TV and come under the umbrella of Matvil Corp." Tr. Ex. 108. Kartina was motivated not by IP enforcement but by the desire to eliminate a competitor and prevent others from using Matvil as an alternative to Kartina's distribution services. Tr. Exs. 114, 385, 411, 450, 445, 446, 447, 448, 451, 439, 435, 356, 363, 368.

Dowd, the lawyer for both Kartina and Channel One, used language that betrayed the campaign's true purpose. In an October 25, 2016 email, Dowd told Panfilova: "Because we completely destroyed Actava, the judge issued an injunction. . . . Actava is the 'weak link' and if we attack we can perhaps bring in some more money . . . relatively quickly to assist with the legal bills and shut them down." Tr. Ex. 445. Dowd also advocated for "draconian" measures. Jan. 13 Tr. 700:1-708:25; 650:17-25 (Dowd testimony). Dowd was Channel One's lawyer and represented

19

Channel One in connection with the contempt motion. The jury could reasonably impute Dowd's stated purpose to "destroy" Actava and employ "draconian" measures to Channel One. Channel One cannot disclaim its own counsel's documented malicious intent. No basis exists to disturb that inference

### B. The Weight of the Evidence Does Not Support Channel One's Claim That Its Conduct Was Justified.

Channel One argues a new trial is warranted because the weight of evidence showed its conduct was "justified" enforcement of the Settlement Agreement and Injunctions, and that justification is a complete defense to tortious interference. ECF 952 at 18-19.

This argument fails for multiple independent reasons. First, whether Channel One's conduct was justified was a central disputed issue that the jury resolved against Channel One. The jury was expressly instructed it must find for Channel One on tortious interference if Channel One had "legitimate business and legal interests" in the contempt motion. ECF 919 at 13. The jury heard Channel One's justification argument and rejected it after hearing conduct inconsistent with that defense, including a refusal to review the Referral Agreement and lack of a basis to believe that Actava was violating the injunction, especially considering Matvil's assurances that Actava was not broadcasting. Second, the justification defense cannot override evidence of improper means: Channel One allowed Kartina to finance, direct, and conceal its role in the litigation and to pursue that litigation to "clear the market," and Dowd described his purpose as "completely destroy[ing]" and "shut[ting] down" Actava. Tr. Ex. 445. Enforcement conducted through a secretly-orchestrated competitor-driven litigation, and for explicitly anti-competitive purposes is not "justified" under any reasonable reading of the case law Channel One cites. *See, e.g., Don King Prods. v. Smith*, 47 Fed. Appx. 12, 15 (2d Cir. 2002) ("And the New York Court of Appeals has stated that economic interest is a defense to an action for tortious interference with a contract unless

20

there is a showing of malice or illegality") (internal quotations omitted). Third, Channel One's reliance on the economic interest defense is unavailing where the evidence showed interference was driven not by Channel One's own IP interests but by Kartina's commercial interest in eliminating a competitor. Tr. Exs. 114, 385, 411, 450, 445, 446, 447, 448, 451, 439, 435, 356, 363, 368. Panfilova expressed concern that if Actava's dealer model succeeded, competitors "will likely follow the example of Actava TV" and move to Matvil—meaning Kartina would lose distribution revenue. Tr. Ex. 108. The jury was entitled to find that Channel One, by ceding control of the litigation to Kartina, forfeited the justification defense.

### C. The Jury's Verdict Fully Reflects the Overwhelming Evidence of Actava's Compliance and Channel One's Improper Conduct.

Channel One argues a new trial is required because "the jury did not consider overwhelming evidence" that Actava violated the Settlement Agreement and Injunction. ECF 952 at 19-20. This is wrong on both the law and the facts. The jury was not required to find that Actava complied with every provision of the Settlement Agreement to find tortious interference. It was required to find that Defendants acted with malice or used improper means to interfere with the Actava-Matvil relationship. ECF 919 at 15-16.

The evidence does not show the jury "failed to consider" Channel One's compliance argument. Channel One devoted significant trial time to this defense. The jury considered it and found it unpersuasive. The jury had before it, among other things: Judge Moses's finding that the Channels had not met the clear and convincing evidence standard (Tr. Ex. 5); the Referral Agreement's express provision that Actava would "not be engaged in broadcasting television content" (Tr. Ex. 86); Matvil's contemporaneous email to Shprekher confirming Actava was "solely as a seller of Matvil's services" (Tr. Ex. 119); the audio recordings attributing the Referral Agreement's termination to Channel One and Kartina pressure, not any legal violation by Actava

21

(Tr. Exs. 170, 180); and Malki's testimony that Channel One's attorneys refused to examine the Referral Agreement before launching the contempt motion. The jury weighed all of this evidence and reached a reasoned verdict. That is not a "failure to consider."

### D.  Channel One Cannot Justify Its Improper Means By Invoking "Piracy."

Channel One argues a new trial is warranted because "the weight of the evidence demonstrates that Plaintiffs, including Tsoutiev, engaged in pirating Channel One content." ECF 952 at 20-21. This is the same "Revenge of the Pirates" narrative Channel One advanced throughout the trial and which the jury unanimously rejected.

The jury was instructed that Defendants could prevail if they "had legitimate business and legal interests in the filing of or assistance in the filing of the Contempt Motion." ECF 919 at 13. The jury found otherwise. As discussed above, contemporaneous documents showed Kartina's primary objective was to eliminate Actava as a competitor. Tr. Exs. 114, 385, 411, 450, 445, 446, 447, 448, 451, 439, 435, 356, 363, 368. For example, as early as November 4, 2016, Kartina concluded that demanding a copy of the Referral Agreement would not "bring [them] something," Tr. Ex. 447. Channel One's own attorneys' internal discussions acknowledged the importance of analyzing the Referral Agreement before acting, Tr. Exs. 356, 439, 450 (Dowd's email to Panfilova: "Actava's lawyer is coming to visit our firm on Monday morning we will listen respectfully and then we will move for contempt (unless he tells us something completely surprising"), yet strategically chose not to review it at all. Jan. 9 Tr. 334:3-13; 337:5-25 (Malki testimony). The jury heard all of this evidence and rejected the piracy narrative. A new trial is not warranted because Channel One disagrees with the jury's assessment.

22

**IV.    The Court Properly Declined to Submit Affirmative Defense No. 9 to the Jury**

Channel One argues the Court should enter judgment based on its Affirmative Defense No. 9—breach of the Settlement Agreement—or, alternatively, grant a new trial because the jury was not instructed on it. This argument should be rejected.

The Court considered and declined to submit this defense to the jury. Channel One's Affirmative Defense No. 9 alleged that Plaintiffs' claims were "barred, in whole or in part, because Plaintiff failed to comply with the Settlement Agreement which prohibited Actava from distributing the Channels" and that "[p]laintiffs' failure to comply with the Settlement Agreement caused damages to the Defendants." ECF No. 724 at 12-13. Following briefing and oral argument on January 14-15, 2026, ECF Nos. 912, 914, 916, 918, the Court excluded the defense from the jury instructions and verdict sheet. Channel One's post-verdict attempt to resurrect this defense is procedurally improper, legally meritless, and contrary to the Court's own ruling.

The Court's ruling rested on a legally correct distinction. As the Court stated on January 15, 2026: "[T]he contempt [proceeding] [was] for violating the injunction, not the settlement agreement." Jan. 15 Tr. 1011:19-1012:4. This distinction is dispositive, not merely semantic. Channel One's Affirmative Defense No. 9 makes no mention of the Injunctions whatsoever. Judge Moses also drew a clear line between the Settlement Agreement and the Injunctions, noting that "the parties' Settlement Agreement is not before the Court for enforcement. Consequently, I express no opinion as to whether the Actava Defendants have violated that contract." Tr. Ex. 5, n.18.

Channel One's argument that the Settlement Agreement and Injunctions are "one and the same" because the Settlement Agreement incorporates the Injunctions by reference was considered and rejected by the Court. The Court acknowledged the documents may have "very similar, if not identical" terms, but held "they're not" the same. Jan. 15 Tr. at 1011:24-1012:4. A defense

23

premised on breach of the settlement agreement does not map onto a claim arising from the filing of a contempt motion for violation of the injunctions. Importantly, the Injunctions did not incorporate the Settlement Agreement by reference. Defendants do not claim otherwise. Thus, a breach of the Settlement Agreement would not necessarily violate the Injunctions. Consequently, Affirmative Defense No. 9 is barking up the wrong tree.

Further, breach of contract is not a cognizable affirmative defense to a malicious prosecution claim. An affirmative defense is defined as "new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true." *Carroll v. Trump*, 590 F. Supp. 3d 575, 581-82 (S.D.N.Y. 2022). Channel One cited no authority establishing that breach of contract can serve as an affirmative defense to malicious prosecution. Even if Plaintiffs had breached the Settlement Agreement, that would not establish that Defendants had a good-faith belief they could prove contempt based on the evidence available in 2016, nor would it establish that Defendants acted without improper motive. ECF No. 914 at 3.

Defendants asserted counterclaims in this case for breach of the Settlement Agreement, and the Court dismissed them on summary judgment. ECF Nos. 701 at 11-12, 30-33; 755 at 8-10. Now, through Affirmative Defense No. 9, Channel One seeks to assert a counterclaim that was never properly pursued or was already dismissed. The defense's own language makes this plain: it alleges that "[p]laintiffs' failure to comply with the Settlement Agreement caused damages to the Defendants." ECF No. 724 at 12-13 (emphasis added). A claim seeking damages is a counterclaim, not an affirmative defense. Even a proven breach of the settlement agreement would not establish a good-faith basis to file the contempt motion, nor disprove improper motive. Jan. 14 Tr. at 984.

24

After two days of argument and full letter briefing, the Court refused to include this defense, Jan. 15 Tr. 1012:13-25, and when Channel One renewed its objection, the Court overruled it again. *Id.* at 1022:2-11. Now, with a verdict in Plaintiffs' favor, Channel One seeks to resurrect a defense the Court twice refused to submit. Nothing in the trial record, the verdict, or the law has changed the reasoning that led the Court to exclude the defense. The defense remains what it always was: a dismissed (or never pursued) counterclaim dressed as an affirmative defense, with no cognizable legal basis as a defense to malicious prosecution, and no connection to the Injunctions at the heart of this case.

For these reasons, Channel One's post-verdict attempt to resurrect Affirmative Defense No. 9 must fail. The Court correctly excluded it based on the clear distinction between the Settlement Agreement and the Injunctions, the absence of any authority treating breach of contract as an affirmative defense to malicious prosecution, and the recognition that the defense was functionally a dismissed counterclaim. The jury's verdict should stand undisturbed.

Finally, even if the jurors had been instructed on this defense, it would not have "skewed the verdict in Plaintiffs' favor for the tortious interference claim" because the defense fails on its face: there was no substantial and undisputed evidence that Plaintiffs failed to comply with the Settlement Agreement, while there was evidence to hold in favor of Plaintiffs. ECF 952, at 23.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' renewed motion for judgment as a matter of law under Rule 50(b) and their motion for a new trial under Rule 59(a) in their entirety in relation to all Defendants, and that the Court enter judgment consistent with the jury's unanimous verdict.

25

Dated: March 27, 2026.

/s/ *Peter A. Sullivan*
Peter A. Sullivan
**FOLEY HOAG LLP**
1301 Avenue of the Americas
25th Floor
New York, NY 10019
212-812-0310
Email: psullivan@foleyhoag.com

Mark Finsterwald
**FOLEY HOAG LLP**
155 Seaport Boulevard
Boston, Massachusetts 02210
617-832-1000
Email: mfinsterwald@foleyhoag.com

*Attorneys for Plaintiffs*